FILED
CLERK, U.S. DISTRICT COURT

FEB 15 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ___EEE___ DEPUTY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CALEB L. MCGILLVARY

    PLAINTIFF

       V.

NETFLIX, INC., BUNIM MURRAY
PRODUCTIONS, JIMMY KIMMEL
LIVE!, KMPH FOX NEWS,
EBAUMSWORLD, FULTON 55,
RAWTV, A BRITISH CORPORATION,
COLETTE CAMDEN, SALLY
BRINDLE, BRAD MULCAHY,
ALEX AGUIRRE, JEFF STRICKER,
ROB MILLER, GABRIEL SANCHEZ,
TONY MARTIN, LISA SAMSKY,
JENSEN RUFE, CARTER HARRIS,
JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,
JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,
JOHN DOE 10, JANE DOE 1, JANE DOE 2,
JANE DOE 3, JANE DOE 4, JANE DOE 5

    DEFENDANTS

CIVIL ACTION

LACV23-01195-JLS-SKx

COMPLAINT

* PLAINTIFF REQUESTS A JURY TRIAL *

1

I. PARTIES IN THIS COMPLAINT

A. PLAINTIFF (* PRO SE PLAINTIFF IS INCARCERATED *)

NAME: CALEB L. MCGILLVARY

STREET ADDRESS: #1222665/SBI #102317G NJSP PO BOX 861

COUNTY, CITY: MERCER, TRENTON

STATE & ZIP CODE: NEW JERSEY 08625

TELEPHONE NUMBER: N/A

B. DEFENDANTS

DEFENDANT NO. 1

NAME: NETFLIX, INC.

STREET ADDRESS: 100 WINCHESTER CIRCLE

COUNTY, CITY: SANTA CLARA, LOS GATOS

STATE & ZIP CODE: CALIFORNIA, 95032

TELEPHONE NUMBER: UNKNOWN

DEFENDANT NO. 2

NAME: BUNIM MURRAY PRODUCTIONS

STREET ADDRESS: 1015 GRANDVIEW AVE

COUNTY, CITY: LOS ANGELES, GLENDALE

STATE & ZIP CODE: CALIFORNIA 91201

TELEPHONE NUMBER: UNKNOWN

2

DEFENDANT NO. 3

NAME: JIMMY KIMMEL LIVE!

STREET ADDRESS: 6838 HOLLYWOOD BLVD.

COUNTY, CITY: LOS ANGELES, LOS ANGELES

STATE & ZIP CODE: CALIFORNIA 90028

TELEPHONE NUMBER: UNKNOWN


DEFENDANT NO. 4

NAME: KMPH FOX NEWS

STREET ADDRESS: 5111 E. MCKINLEY AVE

COUNTY, CITY: FRESNO, FRESNO

STATE & ZIP CODE: CALIFORNIA 93727

TELEPHONE NUMBER: UNKNOWN


DEFENDANT NO. 5

NAME: EBAUMSWORLD

STREET ADDRESS: 612 HOWARD ST. STE 600

COUNTY, CITY: SAN FRANCISCO, SAN FRANCISCO

STATE & ZIP CODE: CALIFORNIA 94105

TELEPHONE NUMBER: UNKNOWN

3

DEFENDANT No. 6
NAME: FULTON 55
STREET ADDRESS: 875 DIVISADERO ST.
COUNTY, CITY: FRESNO, FRESNO
STATE & ZIP CODE: CALIFORNIA 93721
TELEPHONE NUMBER: UNKNOWN


DEFENDANT No. 7
NAME: RAWTV, A BRITISH CORPORATION
STREET ADDRESS: 13-21 CURTAIN ROAD FLAT 3
COUNTY, CITY: GREATER LONDON, LONDON
STATE & ZIP CODE: UNITED KINGDOM EC2A 3LT
TELEPHONE NUMBER: UNKNOWN


DEFENDANT No. 8
NAME: COLETTE CAMDEN
STREET ADDRESS: 91 SHEPARDESS WALK
COUNTY, CITY: GREATER LONDON, LONDON
STATE & ZIP CODE: UNITED KINGDOM N2 7QD
TELEPHONE NUMBER: UNKNOWN


DEFENDANT No. 9
NAME: SALLY BRINDLE
STREET ADDRESS: 7 TYNDALE TERRACE
COUNTY, CITY: GREATER LONDON, LONDON
STATE & ZIP CODE: UNITED KINGDOM N1 2AT

4

DEFENDANT NO. 10
NAME: BRAD MULCAHY
STREET ADDRESS: 2434 MOUNTAINVIEW DR.
COUNTY, CITY: SAN DIEGO , ESCONDIDO
STATE & ZIP CODE: CALIFORNIA  92027
TELEPHONE NUMBER: UNKNOWN


DEFENDANT NO. 11
NAME: ALEX AGUIRRE
STREET ADDRESS: 18616  ACEITUNO ST.
COUNTY, CITY: SAN DIEGO , SAN DIEGO
STATE & ZIP CODE: CALIFORNIA  92128
TELEPHONE NUMBER: UNKNOWN


DEFENDANT NO. 12
NAME: JEFF STRICKER
STREET ADDRESS: 3248 N. APPLEGATE AVE
COUNTY, CITY: FRESNO      , FRESNO
STATE & ZIP CODE: CALIFORNIA  93737
TELEPHONE NUMBER: UNKNOWN


DEFENDANT NO. 13
NAME: ROB MILLER
STREET ADDRESS: 13-21 CURTAIN ROAD FLAT 3
COUNTY, CITY: GREATER LONDON, LONDON
STATE & ZIP CODE: UNITED KINGDOM  EC2A 3LT

5

DEFENDANT NO. 14
NAME: GABRIEL SANCHEZ
STREET ADDRESS: 6315 N. SELLAND AVE
COUNTY, CITY: FRESNO , FRESNO
STATE & ZIP CODE: CALIFORNIA 93711
TELEPHONE NUMBER: (559) 916 - 8312

DEFENDANT NO. 15
NAME: TONY MARTIN
STREET ADDRESS: 178 N. FULTON ST.
COUNTY, CITY: FRESNO , FRESNO
STATE & ZIP CODE: CALIFORNIA 93701
TELEPHONE NUMBER: (559) 430 - 5071

DEFENDANT NO. 16
NAME: LISA SAMSKY
STREET ADDRESS: 1626 SHELBY AVE
COUNTY, CITY: ~~TENNESSEE~~ DAVIDSON , NASHVILLE
STATE & ZIP CODE: TENNESSEE 37206
TELEPHONE NUMBER: UNKNOWN

6

DEFENDANT NO. 17
NAME: JENSEN RUFE
STREET ADDRESS: 8819 BETTY WAY
COUNTY, CITY: LOS ANGELES   , WEST HOLLYWOOD
STATE & ZIP CODE: CALIFORNIA 90069
TELEPHONE NUMBER: (310) 367-9541

DEFENDANT NO. 18
NAME: CARTER HARRIS
STREET ADDRESS: 507 NORTHERN AVE, APT 12
COUNTY, CITY: MARIN   , MILL VALLEY
STATE & ZIP CODE: CALIFORNIA 94941
TELEPHONE NUMBER: (415) 845-1700

DEFENDANT NO. 19
NAME: JOHN DOE 1
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. 20
NAME: JOHN DOE 2
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT No. 21
NAME: JOHN DOE 3
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT No. 22
NAME: JOHN DOE 4
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT No. 23
NAME: JOHN DOE 5
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT No. 24
NAME: JOHN DOE 6
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. ~~PLA~~ ~~LEA~~ 25
NAME: JOHN DOE 7
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN


DEFENDANT NO. ~~DLA~~ ~~LEA~~ 26
NAME: JOHN DOE 8
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN


DEFENDANT NO. ~~LAA~~ ~~LEA~~ 27
NAME: JOHN DOE 9
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN


DEFENDANT NO. ~~LAS~~ ~~LEA~~ 28
NAME: JOHN DOE 10
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. [X][X] 29
NAME: JANE DOE 1
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. [X][X] 30
NAME: JANE DOE 2
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. [X][X] 31
NAME: JANE DOE 3
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

DEFENDANT NO. [X][X] 32
NAME: JANE DOE 4
STREET ADDRESS: UNKNOWN
COUNTY, CITY: UNKNOWN
STATE & ZIP CODE: UNKNOWN

10

DEFENDANT NO. 🚾 Ⓜ 33

NAME: JANE DOE 5

STREET ADDRESS: UNKNOWN

COUNTY, CITY: UNKNOWN

STATE & ZIP CODE: UNKNOWN

## II. BASIS FOR JURISDICTION

THIS COURT HAS JURISDICTION UNDER 28 USC 1331 OVER PLAINTIFF'S CLAIMS UNDER 15 USC 1125, 17 USC 501, & 18 USC 1964. THIS COURT HAS JURISDICTION UNDER 28 USC 1332 & 28 USC 1367 OVER PLAINTIFF'S STATE LAW CLAIMS. PLAINTIFF IS A RESIDENT OF NEW JERSEY & DEFENDANTS ARE CITIZENS OR RESIDENTS OF CALIFORNIA. THE AMOUNT IN CONTROVERSY EXCEEDS $75,000.

## III. STATEMENT OF CLAIM

A. THE EVENTS GIVING RISE TO THESE CLAIMS OCCURED AT NUMEROUS PLACES IN CALIFORNIA, PRIMARILY AT NETFLIX'S PLACE OF BUSINESS AT OR AROUND LOS GATOS, CA

B. MOST OF THESE CLAIMS ACCRUED ON JANUARY 10, 2023 PER SE OR BY EQUITABLE TOLLING UNDER THE "DISCOVERY RULE" DOCTRINE & WHERE OTHER CLAIMS ACCRUED AT OTHER TIMES, SUCH ARE PLEADED WITH SPECIFICITY INDICATING ANY APPLICABLE REASONS FOR EQUITABLE TOLLING

C. THE FACTS GIVING RISE TO THESE CLAIMS ARE AS FOLLOWS:

# INTRODUCTION

1.) PLAINTIFF BECAME WIDELY KNOWN AS A HERO FOR HIS ACTIONS IN SAVING A CROWD OF PEOPLE FROM AN ACT OF TERRORISM. AFTER BEING CLEARED OF ANY WRONGDOING BY POLICE AT THE SCENE, PLAINTIFF WAS ABOUT TO LEAVE WHEN KMPH FOX NEWS STOPPED HIM. THEY VIDEO RECORDED HIM DESCRIBING THE EVENTS, WHICH INCLUDE HIS USE OF A HATCHET TO SUBDUE THE ATTACKER. THAT VIDEO WENT VIRAL, ATTRACTING A SWARM OF PREDATORY ENTERPRISES THAT WANTED TO USE PLAINTIFF FOR THEIR OWN SELFISH ENDS. SEE HTTPS://WWW.YOUTUBE.COM/WATCH?v=-XoONFCdlk4

PLAINTIFF, WHO HAD BEEN RAPED AS A TEENAGER, SUFFERS FROM POST TRAUMATIC STRESS DISORDER ("PTSD") & HAS SINCE AT LEAST 17 YEARS OF AGE. HIS ACT OF HEROISM CAME AT A HEAVY PRICE TO HIMSELF: HIS PTSD WAS SEVERELY TRIGGERED BY THE INCIDENT, & HE FELL INTO A SPIRAL OF SELF-MEDICATING SUBSTANCE ABUSE. THE CAPTIONED DEFENDANTS, TO QUOTE "THE ROLLING STONE", LIKE "A PACK OF MEDIA VULTURES DESCENDED ON THE 24 YEAR OLD DRIFTER, IGNORING ALL SIGNS OF HIS MENTAL INSTABILITY." THEY "ENTICED" HIM TO SIGN DOCUMENTS WHILE HE WAS TOO INTOXICATED TO KNOW WHAT THEY WERE OR WHAT HE WAS DOING; ABUSING THEIR FIDUCIARY RELATIONSHIP WHICH THEY VOLUNTARILY

ASSUMED, & DEFRAUDING PLAINTIFF IN THE SAME FELL SWOOP. THEY LURED HIM INTO PERFORMANCES WITH THE PROMISE OF FAIR PAY, ONLY TO KEEP THE MONEY FOR THEMSELVES & SPREAD SLANDER ABOUT PLAINTIFF TO "WIN OVER" PLAINTIFF'S "CROWD". THEY EXPLOITED PUBLIC RECOGNITION OF PLAINTIFF TO MAKE THEMSELVES RICHER; WHILE LEAVING THE ALREADY IMPOVERISHED PLAINTIFF WORSE OFF THAN BEFORE.

THREE MONTHS LATER, AFTER HAVING STAYED WITH DOZENS OF PEOPLE WHO'D SEEN HIS VIRAL VIDEO, PLAINTIFF WAS USED TO PEOPLE INVITING HIM HOME FOR A PLACE TO STAY. UNFORTUNATELY, A SEXUAL PREDATOR TOOK ADVANTAGE OF PLAINTIFF'S TRUST; DRUGGED PLAINTIFF; & SEXUALLY ASSAULTED HIM. PLAINTIFF AWOKE ON THE FLOOR & FOUGHT HIS WAY OUT FROM UNDERNEATH; IN A PTSD-TRIGGERED SELF-PROTECTIVE IMPULSE. THE RAPIST DIED OF HIS INJURIES. PLAINTIFF WAS CONVICTED OF MURDER, BUT NOT BEFORE THE RAPIST'S BROTHER CUT AT LEAST 2 CHECKS FROM THE RAPIST'S ESTATE; ONE FOR $150,000 TO THE WORKPLACE OF THE MEDICAL EXAMINER, & ANOTHER FOR $150,000 TO THE DRUG EFFECT EXPERT. SEE MCGILLVARY V. GALFY CIVIL DKT NO. 2:21-CV-17121-MCA-CLW ECF 66 (JULY 28, 2022 DNJ);

SEE ALSO MCGILLVARY v. DAVIS CIVIL ACTION NO. 2:22-CV-04185-MCA (JUNE 22, 2022) (HABEAS PETITION REGARDING SAID EVENTS). ALTHOUGH THE FACTS OF THAT CASE ARE NOT AT ISSUE IN THIS ACTION, THE CONVICTION ITSELF EMBOLDENED THE CAPTIONED DEFENDANTS TO ATTEMPT WHAT AMOUNTS TO AN ATTAINDER ON PLAINTIFF.

THE CAPTIONED DEFENDANTS CONSPIRED TO SMEAR PLAINTIFF'S HEROIC ACTIONS ON FEBRUARY 1, 2013. THEY INTERFERED WITH PLAINTIFF'S BUSINESS RELATIONS WITH A FILM COMPANY WHO WAS GOING TO PAY FOR A LAWYER FOR PLAINTIFF. THEY RIPPED OFF PLAINTIFF'S INTELLECTUAL PROPERTY THROUGH FRAUD & DECEIT. THEN THEY PRODUCED & BROADCAST A FEATURE-LENGTH DOCUMENTARY FILM FILLED WITH SLANDER & LIES, A FILM DESIGNED TO STRIP PLAINTIFF OF HIS HEROIC TITLE FOR THEIR OWN SELFISH GAIN.

A MARINE IS NOT STRIPPED OF HIS MEDALS FOR STEALING A MINIVAN, A PARAMEDIC WHO'S WON A NATIONAL LIFESAVING AWARD DOES NOT LOSE IT FOR CHEATING ON HIS TAXES. PLAINTIFF SAVED MANY LIVES THAT DAY IN FRESNO, & A CONVICTION FOR KILLING A RAPIST IS NOT LICENSE TO SLANDER HIM ABOUT THAT.

14

# PEOPLE V. JETT SIMMONS MCBRIDE

2.) PLAINTIFF CALEB L. MCGILLVARY ("PLAINTIFF") RELIES UPON THE COURT RECORD OF PEOPLE V. MCBRIDE NO. F13901235 IN THE CALIFORNIA SUPERIOR COURT OF FRESNO COUNTY; & OF PEOPLE V. MCBRIDE NO. F068949 IN THE COURT OF APPEAL OF CALIFORNIA, 5TH APPELLATE DISTRICT; & INCORPORATES SAME BY REFERENCE HEREIN. SPECIFICALLY, PLAINTIFF MAKES REFERENCE TO THE FOLLOWING FACTS ADDUCED AT TRIAL:

a.) NELSON PEREIRA & NICHOLAS STARKEY; BOTH EYEWITNESSES TO THE EVENTS OF FEBRUARY 1, 2013 AT THE INTERSECTION OF MARKS & MCKINLEY IN FRESNO, CA ("THE INCIDENT"); AS WELL AS KENNETH SIMON; TESTIFIED UNDER OATH THAT THEY COULD SEE INTO JETT SIMMONS MCBRIDE (MCBRIDE)'S CAR. THEY SAW THAT, IMMEDIATELY BEFORE MCBRIDE CRASHED HIS CAR INTO A CROWD OF WORKERS, MCBRIDE HAD HIS HANDS ON THE STEERING WHEEL & PLAINTIFF HAD HIS HANDS IN FRONT OF HIMSELF IN HIS LAP, NEITHER MCBRIDE NOR PLAINTIFF WERE COMMUNICATING WITH EACH OTHER.

b.) PEREIRA, STARKEY, & TWO OTHER EYEWITNESSES, GINGER MILLER-BARRAZA & TONYA BAKER; EACH TESTIFIED UNDER OATH THAT THEY OBSERVED MCBRIDE'S CONDUCT AFTER THE COLLISION BUT BEFORE PLAINTIFF

15

SMASHED HIM IN THE HEAD WITH A HATCHET. THEY STATED THAT MCBRIDE WAS CONTINUING HIS ASSAULT ON RAYSHAWN NEELY, YELLING THAT HE WAS "SENT TO TAKE [NEELY] HOME"; THAT "I AM GOD. I AM JESUS. I WAS SENT HERE TO TAKE ALL THE NIGGERS TO HEAVEN"; THAT "ALL NIGGERS NEED TO DIE"; "DEATH TO ALL NIGGERS"; & "I WILL KILL YOU ALL."

C.) SUBSEQUENT TO MCBRIDE'S EXPRESSIONS OF DEADLY INTENT IN "2.)b.)"; PEREIRA, STARKEY, MILLER-BARRAZA, & BAKER EACH TESTIFIED UNDER OATH THAT MCBRIDE GRABBED BAKER IN A "BEAR HUG" & ESCALATING FORCE AGAINST HER RAPIDLY. PLAINTIFF LOUDLY WARNED MCBRIDE TO RELEASE BAKER 3 TIMES, MCBRIDE YELLED "I'LL KILL YOU ALL", THEN PLAINTIFF USED HIS CAMPING HATCHET WITH FORCE 3 TIMES ON MCBRIDE'S HEAD.

d.) FRESNO COUNTY SHERIFF'S OFFICER LYMAN TESTIFIED THAT MCBRIDE YELLED "I DID IT. GET OFF OF ME. I'LL KILL YOU ALL."

e.) LABORATORY ANALYSIS OF THE MARIJUANA SMOKED BY PLAINTIFF & MCBRIDE PRIOR TO THE INCIDENT REVEAL THAT THERE WAS "NO SUBSTANCE IN THE PLANT MATERIAL OTHER THAN THE ACTIVE INGREDIENT IN MARIJUANA."

f.) BLOOD WAS DRAWN FROM MCBRIDE AT THE HOSPITAL. TESTS ON THE BLOOD WERE NEGATIVE FOR EVERY DRUG EXCEPT FOR MARIJUANA.

g.) MCBRIDE ADMITTED TO JEFF STRICKER THAT HE "DID IT"; & WHEN STRICKER ASKED MCBRIDE WHETHER HE HIT THE TRUCK ON PURPOSE & TRIED TO KILL NEELY, MCBRIDE RESPONDED IN THE AFFIRMATIVE & EXPLAINED HE DID SO BECAUSE NEELY WAS ILLUMINATI, & EXPRESSED REMORSE.

h.) MCBRIDE ADMITTED DURING HIS SWORN TESTIMONY THAT HE TOLD STRICKER THAT HE "HIT THE TRUCK ON PURPOSE & TRIED TO KILL NEELY". HE DENIED DOING IT BECAUSE NEELY WAS BLACK, BUT AGREED HE DID IT BECAUSE NEELY WAS ILLUMINATI

i.) PLAINTIFF WAS FOUND BY LAW ENFORCEMENT AT THE SCENE TO HAVE USED JUSTIFIED LETHAL FORCE IN DEFENSE OF OTHERS, CLEARED OF ANY WRONG-DOING, & RELEASED WITHOUT ANY CHARGES.

3.) WHEN PLAINTIFF USED THE JUSTIFIED FORCE DESCRIBED IN "2.) c.)", HE HIT MCBRIDE TWICE WITH THE BLUNT SIDE OF HIS HATCHET, CAUSING MCBRIDE TO MOMENTARILY LOOSEN HIS GRIP ON BAKER. MCBRIDE AGAIN GRABBED BAKER & SCREAMED "I'LL KILL YOU"; BUT BAKER WAS AT ARMS LENGTH, SO PLAINTIFF WAS CONFIDENT HE

WOULDN'T ACCIDENTLY HIT BAKER IF HE MISSED.
HE FLIPPED HIS HATCHET AROUND & SMASHED THE
BLADE AS HARD AS HE COULD INTO MCBRIDE'S
SKULL. IT WAS A DIRECT BLOW, & PLAINTIFF COULD
FEEL MCBRIDE'S SKULL FRACTURE THROUGH THE
HANDLE. THE BLADE SUNK IN SO DEEP THAT THE
SUCTION ALMOST PULLED IT OUT OF PLAINTIFF'S
HAND WHEN MCBRIDE COLLAPSED. MCBRIDE WAS
NOT BREATHING & APPEARED DEAD. BAKER KICKED
MCBRIDE IN THE GROIN & HE DID NOT TWITCH,
GASP, OR MOVE WHATSOEVER.

AFTER PLAINTIFF GAVE HIS STATEMENT TO THE
FRESNO COUNTY SHERIFF OFFICER AT THE SCENE,
THE OFFICER STATED TO PLAINTIFF "YOU KNOW HE
DIED, RIGHT?" PLAINTIFF WAS DISTRAUGHT, THINKING
THE OFFICER WAS REFERRING TO NEELY, BUT THE
OFFICER STATED "NO, I MEAN THE GUY YOU HIT.",
SPECIFICALLY REFERRING TO MCBRIDE.

WHEN MCBRIDE ARRIVED AT THE HOSPITAL,
HIS INJURIES WERE EXAMINED & PHOTO GRAPHED.
ALTHOUGH THE PHOTOGRAPHS SHOW THAT PLAINTIFF
STRUCK MCBRIDE'S SKULL DIRECTLY, NOT GLANCINGLY,
WITH THE BLADE OF THE HATCHET; HARD ENOUGH TO
FRACTURE MCBRIDE'S SKULL: MCBRIDE'S SKULL WAS
NO LONGER FRACTURED.

THE SMASH, SMASH, SMASH INTERVIEWS

4.) PLAINTIFF HAS A DOCUMENTED HISTORY OF POST TRAUMATIC STRESS DISORDER, WHICH WAS FIRST DISCOVERED & REPORTED AFTER HE WAS RAPED WHEN HE WAS 17 YEARS OLD, & WHICH CONTINUES TO THE PRESENT DAY. ONE OF THE SYMPTOMS OF PTSD IS DISSOCIATION, OR THE FEELING OF BEING OUTSIDE ONESELF. THIS CAN RESULT IN AFFECT THAT IS INCONGRUENT WITH THE SITUATION. ANOTHER SYMPTOM IS ANXIETY. THE EVENTS DESCRIBED IN "2" & "3" TRIGGERED PLAINTIFF'S PTSD, & HE BEGAN SELF-MEDICATING WITH ALCOHOL & MARIJUANA TO COPE WITH HIS SYMPTOMS.

5.) PLAINTIFF WAS A TRAVELING TROUBADOR & STREET PERFORMER AT THE TIME OF THE FEBRUARY 1, 2013 INCIDENT. HE EARNED HIS LIVING BY BUSKING; THAT IS, BY CREATING & PERFORMING MUSICAL & DRAMATIC WORKS FOR COMPENSATION BY HIS AUDIENCE, & ALSO CHOREOGRAPHY & PANTOMIME

6.) IMMEDIATELY AFTER THE EVENTS DESCRIBED IN "2"; AS SOON AS PLAINTIFF WAS CLEARED OF ANY WRONGDOING & RELEASED; HE WAS APPROACHED BY TERRY WOODS & JESSOB REISBECK, WHO WERE BOTH EMPLOYEES OF KMPH FOX NEWS. JESSOB REISBECK HELD A MICROPHONE & TERRY WOODS HELD A VIDEO CAMERA, BOTH WITH "KMPH FOX NEWS" LABELS CLEARLY

19

DISPLAYED ON THEM. JESSOB REISBECK ATTEMPTED TO DIRECT THE PRODUCTION OF A MOTION PICTURE WORK; BY ASKING PLAINTIFF "WHAT HAPPENED HERE"; BUT PLAINTIFF TOOK CONTROL OF DIRECTION & INSTEAD OF SUBMITTING TO JESSOB'S DIRECTION; BEGAN TO CREATE & PERFORM A DRAMATIC WORK DESCRIBING & RE-ENACTING EVENTS. PLAINTIFF WAS THE SOLE AUTHOR & INVENTIVE MIND OF HIS PERFORMANCE; & WAS THE DIRECTOR & CREATIVE SPARK OF THE DERIVATIVE MOTION PICTURE WORK, TO WHOM THE WORK OWES ITS EXISTENCE. FROM THE MOMENT PLAINTIFF BEGAN HIS TROUBADOR PERFORMANCE, PLAINTIFF SUPERINTENDED THE WORK BY EXERCISING CONTROL. HE ACTUALLY FORMED THE PICTURE BY PUTTING THE PERSONS IN POSITION & ARRANGING THE PLACE WHERE PEOPLE WOULD BE WITH HIS GESTURES, EXPRESSIONS, & BODY LANGUAGE, CREATING & GIVING EFFECT TO HIS PERFORMANCE.

7.) OWNERSHIP OF THE COPYRIGHT TO PLAINTIFF'S DRAMATIC WORK IS VESTED SOLELY IN HIMSELF

8.) OWNERSHIP OF THE DERIVATIVE MOTION PICTURE WORK VESTED IN PLAINTIFF AS DIRECTOR & AUTHOR

9.) JESSOB REISBECK & TERRY WOODS TURNED OVER THE VIDEO FOOTAGE DESCRIBED IN "6" TO THEIR

20

EMPLOYER, KMPH FOX NEWS (KMPH). KMPH THEN
REGISTERED THE COPYRIGHT TO THE MOTION PICTURE
IN CONSTRUCTIVE TRUST FOR PLAINTIFF; WHO IS
THE AUTHOR & RIGHTFUL OWNER OF THE COPYRIGHT,
& CESTUI QUI TRUST OF THE RESULTING TRUST FROM
HIS STREET PERFORMANCE. PLAINTIFF HAS NEVER
TRANSFERRED TITLE TO EITHER OF HIS PERFORMANCE
OR MOTION PICTURE COPYRIGHTS; NOR WAS HE
TENDERED ANY CONSIDERATION BY KMPH. SAME WITH "11"
10.) PLAINTIFF IS ENTITLED TO EQUITABLE ACCOUNTING
FROM KMPH FOR ANY USE OR RESULTING REVENUE
OR APPRECIATION OF THE COPYRIGHTS OF WHICH
KMPH IS THE TRUSTEE & PLAINTIFF IS CESTUI QUI
TRUST, SPECIFICALLY THE MOTION PICTURE WORKS
11.) ON OR ABOUT FEBRUARY 5, 2013, ALEX AGUIRRE
& JESSOB REISBECK MET WITH PLAINTIFF IN STOCKTON,
CALIFORNIA, JESSOB REISBECK HELD A MICROPHONE
& ALEX AGUIRRE HELD A VIDEO CAMERA, BOTH
EMBLAZONED WITH THE "KMPH FOX NEWS" LOGO.
PLAINTIFF SUPERINTENDED THE PRODUCTION OF A
MOTION PICTURE BY EXERCISING CONTROL; ACTUALLY
FORMING THE PICTURE BY PUTTING THE PERSONS IN
POSITION & ARRANGING THE PLACE WHERE PEOPLE
WOULD BE. WHEN THE CREATION OF THE MOTION

PICTURE BEGAN, JESSOB REISBECK ATTEMPTED TO
DIRECT THE PRODUCTION OF THE WORK; BUT
PLAINTIFF TOOK CONTROL OF DIRECTION INSTEAD OF
SUBMITTING, & BEGAN TO CREATE & PERFORM A
DRAMATIC WORK DESCRIBING & RE-ENACTING
EVENTS. FROM THE MOMENT PLAINTIFF BEGAN HIS
TROUBADOR PERFORMANCE, HE WAS THE DIRECTOR
& CREATIVE SPARK OF THE DERIVATIVE MOTION
PICTURE WORK, TO WHOM THE WORK OWES ITS
EXISTENCE. PLAINTIFF IS THE SOLE AUTHOR OF
THE DRAMATIC WORK UNDERLYING THE MOTION
PICTURE. PLAINTIFF PROCEEDED TO PERFORM
A MUSICAL COMPOSITION WHICH HE IS THE
SOLE AUTHOR OF; & A WORK OF CHOREOGRAPHY
OF WHICH HE IS THE SOLE AUTHOR OF, CONSISTING
OF A SEQUENCE OF MOVES INVOLVING A
SKATEBOARD. AGUIRRE & REISBECK ADMIT
THAT PLAINTIFF DIRECTED THE FILMING OF
HIS PERFORMANCES.
12.) AT NO POINT IN TIME HAS PLAINTIFF EVER
ASSIGNED OR TRANSFERRED TITLE TO HIS COPYRIGHTS
IN THE MOTION PICTURE, DRAMATIC WORK, MUSICAL
COMPOSITION, NOR CHOREOGRAPHICAL WORKS IN
"11"; NOR DID KMPH TENDER ANY CONSIDERATION THEREFOR

22

13.) PLAINTIFF HAS NEVER GRANTED ANY LICENSE TO KMPH To MAKE ANY DERIVATIVE WORKS FROM HIS DRAMATIC WORKS, CHOREOGRAPHY, & MUSICAL COMPOSITION DESCRIBED IN "6" & "11" EXCEPT FOR THE MOTION PICTURES DESCRIBED IN "6" & "11" WHICH PLAINTIFF AUTHORED BY DIRECTING; & THE LICENSE FOR THOSE WAS SPECIFICALLY LIMITED To BROADCAST ON KMPH FOX NEWS, FOR NEWS REPORTING PURPOSES & NOT FOR COMMERCIAL USE

<u>THE JIMMY KIMMEL EXPERIENCE</u>

14.) ON OR ABOUT 02/05/13, BUNIM MURRAY PRODUCTIONS ("BUNIM MURRAY") THROUGH THEIR AGENTS JENSEN RUFE ("JR") & LASA SAMSKY ("SAMSKY") (COLLECTIVELY, "BM"); CONFERRED WITH EACH OTHER & HAD A MEETING OF THE MINDS & AGREED WITH SHARED INTENT To MISREPRESENT THEMSELVES To PLAINTIFF AS AGENTS OF JIMMY KIMMEL HIMSELF OVER TRANSMISSION BY WIRE VIA TELEPHONE, KNOWING THE FALSITY THEREOF, INTENDING To INDUCE PLAINTIFF To RELY ON SAID MISREPRESENTATIONS To SIGN A CONTRACT, PERFORM SERVICES, FORM A FIDUCIARY RELATIONSHIP, & CONVEY CONFIDENTIAL INFORMATION

15.) ON OR ABOUT 02/05/13, IN FURTHERANCE OF THEIR SCHEME IN "14"; BM CONTACTED JIMMY KIMMEL LIVE! THROUGH ITS AGENT BRAD MULCAHY

(COLLECTIVELY, "JKL"). BM & JKL CONFERRED WITH
EACH OTHER & HAD A MEETING OF THE MINDS
WITH THE COMMON SHARED INTENT TO TRANSPORT
PLAINTIFF; WHO THEY EACH & ALL KNEW HAD ENTERED, COME
TO, & REMAINED IN THE U.S. IN VIOLATION OF LAW; IN VIOLATION
OF 8 USC 1324; & TO DISTRIBUTE MARIJUANA
TO HIM; & TO OBTAIN SERVICES, MOTION PICTURES,
RECORDINGS, & INFORMATION & DOCUMENTS FROM HIM THROUGH
FRAUD; & TO COMMIT MONETARY TRANSACTIONS INVOLVING
PROPERTY DERIVED FROM UNLAWFUL ACTIVITY. TO
THIS END, BM & JKL ESTABLISHED AN ENTERPRISE
("BMJKL")

16.) ON OR ABOUT 02/09/13, IN FURTHERANCE OF
THE CONSPIRACIES IN "14" & "15"; LISA SAMSKY SENT
A MESSAGE TO PLAINTIFF ON FACEBOOK VIA TRANSMISSION
BY WIRE, MISREPRESENTING TO PLAINTIFF THAT
SHE WAS AN AGENT FOR JIMMY KIMMEL HIMSELF,
KNOWING THE FALSITY OF HER MISREPRESENTATION &
INTENDING TO INDUCE PLAINTIFF'S RELIANCE ON SAME.
IN THIS MESSAGE, SAMSKY OFFERED PLAINTIFF A
LIMOUSINE FULL OF MARIJUANA IF PLAINTIFF WOULD
PERSONALLY PERFORM FOR JIMMY KIMMEL IN LOS
ANGELES. PLAINTIFF JUSTIFIABLY RELIED ON BM'S,
THROUGH SAMSKY, REPRESENTATION THAT THEY WERE, IN FACT,

24

AGENTS OF JIMMY KIMMEL HIMSELF; AS MISREPRESENTED
BY SAMSKY AS AGENT OF BM IN THE FACEBOOK MESSAGE
& IN ADDITIONAL TRANSMISSIONS BY WIRE VIA TELEPHONE;
EACH OCCURING AT OR AROUND 1:00PM, 1:15PM, 3:00PM, 5:30PM, &
6:00PM FROM SAMSKY'S LOCATIONS EN ROUTE FROM LOS ANGELES
TO PLAINTIFF'S LOCATION IN SANTA ROSA

17.) WHILE PLAINTIFF WAS WAITING FOR BM, WHOM HE
BELIEVED REASONABLY TO BE JIMMY KIMMEL'S AGENT, TO
PICK HIM UP NEAR THE SANTA ROSA PUBLIC LIBRARY; FANS
OF PLAINTIFF'S RECOGNIZED HIM & BOUGHT HIM NUMEROUS
ALCOHOLIC DRINKS, WHICH HE DRANK WITH GUSTO, AT
SOME POINT A FAN OFFERED TO SMOKE A 3 GRAM
JOINT WITH PLAINTIFF. AFTER PLAINTIFF TOOK A HIT
OF THE JOINT, THE PERSON PULLED OUT AN EYEDROPPER
FILLED WITH WHAT APPEARED TO BE CANDY SYRUP; &
SAID "TRY THIS FOR FLAVOR, HERE, OPEN YOUR MOUTH,"
WHEN PLAINTIFF DID SO, THINKING IT WAS A CANDY
PRODUCT, THE PERSON SQUIRTED THE CONTENTS OF THE
EYEDROPPER INTO PLAINTIFF'S MOUTH, THE PERSON THEN
SAID TO PLAINTIFF "THAT'S FOUR QUADS OF THE BEST ACID
YOU'LL EVER DO. YOU'RE GOING TO HAVE A GREAT TRIP."
HE THEN STARTED SAYING CONFUSING THINGS &
REPEATEDLY TOLD PLAINTIFF TO "GO TO SLEEP."

18.) AT OR AROUND 6PM 02/09/13, BM ARRIVED AT

THE SANTA ROSA PUBLIC LIBRARY TO PICK UP PLAINTIFF,
BM HAD KNOWLEDGE OF PLAINTIFF'S EXTREME
INTOXICATION; & WERE AWARE THAT PLAINTIFF HAD
RECENTLY EXPERIENCED A HARROWING & TRAUMATIC
EXPERIENCE. BECAUSE OF PLAINTIFF'S OBVIOUS &
CLEAR MENTAL INCAPACITY DUE TO HIS EXTREME
INTOXICATION & PTSD SYMPTOMS, BM VOLUNTARILY
ASSUMED THE ROLE OF "BABYSITTER", WHICH TERM
CONNOTES GUARDIANSHIP, OF WHICH PLAINTIFF WAS
THE WARD. IN THIS FIDUCIARY RELATIONSHIP, PLAINTIFF
CONVEYED CONFIDENTIAL & NOVEL INFORMATION TO BM
VERBALLY & THROUGH CONDUCT; WHICH BM VIDEO
RECORDED. BM HAS PUBLICLY ADMITTED TO GUARDIAN-
SHIP AS "BABYSITTER" OF PLAINTIFF; WHICH PLACED THEM
IN A POSITION OF CONFIDENCE TO PLAINTIFF; AS BM
ADMITS TO KNOWLEDGE OF, PLAINTIFF & DEFENDANTS
HAD AN UNDERSTANDING OF THIS GUARDIANSHIP RELATION-
SHIP, WHICH IMPLIED THAT CONFIDENCE BE MAINTAINED
FOR ANY INFORMATION CONVEYED TO THEM BY PLAINTIFF,
VERBALLY OR BY CONDUCT. ANY VIDEO RECORDINGS MADE
DURING THIS PERIOD OF PLAINTIFF WERE PRODUCED AS
A RESULT OF THE FRAUD IN "16" AGAINST PLAINTIFF IN
BREACH OF FIDUCIARY DUTY, & IS HELD BY BM IN RESULTING
TRUST FOR PLAINTIFF OR IN THE ALTERNATIVE IN CONVERSION

AFFECTING PLAINTIFF'S RIGHT TO POSSESS SAME, WHERE BM
IS IN ADVERSE POSSESSION OF THE RES & PLAINTIFF IS
ENTITLED TO REPLIEVIN OF SAME

19.) DURING THE PERIOD FROM FEBRUARY 9, 2013 AT
OR AROUND 6PM UNTIL FEBRUARY 11, 2013 AT OR
AROUND 12PM, BM KEPT PLAINTIFF IN A STATE OF
CONSTANT INTOXICATION FROM ALCOHOL & MARIJUANA.
IN FURTHERANCE OF THE CONSPIRACIES IN "14" & "15",
BM DISTRIBUTED MARIJUANA TO PLAINTIFF, KNOWING
THAT HE HAD NO MEDICAL LICENSE TO POSSESS OR
USE SAME.

20.) BM TRANSPORTED PLAINTIFF, IN FURTHERANCE
OF THE SCHEMES IN "14" & "15", KNOWING THAT HE
HAD ENTERED, COME TO, & REMAINED IN THE UNITED
STATES IN VIOLATION OF LAW; FROM SANTA ROSA TO
SAN FRANCISCO, HARBORING HIM THERE OVERNIGHT; THEN
FROM SAN FRANCISCO TO HOLLYWOOD; FROM HOLLYWOOD TO
BEVERLY HILLS; FROM BEVERLY HILLS TO HERMOSA BEACH;
& FROM HERMOSA BEACH TO HOLLYWOOD; THEN JKL
IN FURTHERANCE OF THE SCHEMES IN "14" & "15"
TRANSPORTED PLAINTIFF FROM HOLLYWOOD TO ARCATA.

21.) ON OR ABOUT 02/10/13, LISA SAMSKY & BM TRANS-
FERRED GUARDIANSHIP OF THE PTSD-AFFLICTED &
EXTREMELY INTOXICATED PLAINTIFF TO BRAD MULCAHY &

27

JUL. MULCAHY & JUL ADMITTEDLY ACCEPTED BM'S ROLE AS GUARDIAN OVER WARD PLAINTIFF. PLAINTIFF, WHO HAD JUST BEEN TRANSPORTED NONSTOP FOR HOURS AFTER CONSUMING COFFEE & COPIOUS LIQUOR, DESPERATELY HAD TO URINATE. HE CONVEYED THIS NOVEL & CONFIDENTIAL INFORMATION FIRST VERBALLY TO JUL, WHO TOLD HIM THERE WAS NO BATHROOM; THEN THROUGH CONDUCT BY URINATING ON JULIO IGLESIA'S STAR ON THE WALK OF FAME. MULCAHY KNEW THAT SAMSKY HAD TRANSFERRED HER ROLE TO HIM. THERE WAS AN UNDERSTANDING BETWEEN PLAINTIFF & MULCAHY, ACKNOWLEDGED BY HIS ACCEPTANCE OF SAMSKY'S ROLE, THAT CONFIDENCE BE MAINTAINED.

22.) AT SOME POINT AFTER 6PM ON 02/09/13, BM HANDED THE EXTREMELY INTOXICATED PLAINTIFF, TO WHOM THEY HAD VOLUNTARILY ASSUMED A GUARDIANSHIP ROLE, A CONTRACT. PLAINTIFF WAS TOO INTOXICATED ON LSD, MARIJUANA, ALCOHOL, & WHATEVER ELSE WAS IN THE JOINT; TO READ OR UNDERSTAND THE DOCUMENT; NOR EVEN TO SPELL HIS OWN NAME. PLAINTIFF DREW HIEROGLYPHICS ON THE PAGE IN THE HONEST BELIEF THAT JIMMY KIMMEL WANTED PLAINTIFF TO DESIGN A TATTOO FOR HIM.

23.) PLAINTIFF JUSTIFIABLY RELIED ON BM'S MISREPR-ESENTATION IN "16" TO PERFORM ON A DIRECT VIDEO FOOTAGE OF HIMSELF WHILE EXTREMELY INTOX-ICATED. PLAINTIFF IS THE CREATOR OF THE RESULTING MOTION PICTURE & UNDERLYING PERFORMANCES; WHICH BM OBTAINED FROM HIM BY FRAUD & UNDUE INFLUENCE; & WHICH CONTAIN FACTS WHICH ARE PRIVATE DUE TO BM'S FIDUCIARY RELATIONSHIP TO PLAINTIFF AT THE TIME THEY WERE MADE.

24.) ON 02/11/13 & 02/12/13 JKL OBTAINED VIDEO OF PLAINTIFF RESULTING FROM THE SCHEME IN "15"; WHICH PLAINTIFF DIRECTED & WAS THE AUTHOR OF; & WHICH MOTION PICTURES ARE A DERIVATIVE WORK OF PLAINTIFF'S UNDERLYING DRAMATIC WORK WHICH HE CREATED & PERFORMED IN HIS PROFESSION AS TROUBADOR & STREET PERFORMER. AT NO POINT IN TIME HAS PLAINTIFF EVER TRANSFERRED OR ASSIGNED TITLE TO HIS COPYRIGHTS IN THE MOTION PICTURE OR DRAMATIC WORKS. THIS VIDEO WAS RECORDED AT EL CAPITAN STUDIOS.

25.) PLAINTIFF HAS NEVER AUTHORIZED BM NOR JKL TO DISCLOSE ANY INFORMATION DISCLOSED TO THEM VERBALLY OR THROUGH CONDUCT BY PLAINTIFF WHILE HE WAS UNDER THEIR GUARDIANSHIP, EXCEPT FOR BROADCAST OF THE MOTION PICTURES IN "24" EXCLUSIVELY ON JIMMY KIMMEL LIVE!

26.) PLAINTIFF HAS NEVER GRANTED ANY LICENSE TO JKL TO MAKE ANY DERIVATIVE WORKS FROM HIS DRAMATIC WORKS DESCRIBED IN "24"; EXCEPT FOR THE MOTION PICTURES DESCRIBED IN "24" WHICH PLAINTIFF CO-AUTHORED; & THE LICENSE FOR THOSE WAS SPECIFICALLY LIMITED TO BROADCAST ON JIMMY KIMMEL LIVE!, FOR THE EPISODES ON WHICH THEY ORIGINALLY APPEARED. PLAINTIFF IS THE SOLE AUTHOR OF HIS DRAMATIC WORKS DESCRIBED IN "24".

27.) JIMMY KIMMEL GAVE PLAINTIFF AN ENVELOPE FULL OF $600 IN EXCHANGE FOR A PIECE OF ARTWORK BY PLAINTIFF; WHICH EXCHANGE WAS CAPTURED ON PHOTOGRAPH. JIMMY KIMMEL ALSO GRATUITOUSLY GAVE PLAINTIFF ITEMS INCLUDING CRAFTY FOOD, GUINESS BEER, A SURFBOARD & A WETSUIT. THE ONLY CONSIDERATION GIVEN TO PLAINTIFF FOR LIMITED LICENSE TO BROADCAST HIS DRAMATIC WORK ON JIMMY KIMMEL LIVE! WAS A LIMOUSINE FULL OF MARIJUANA.

<u>JOHN & JANE DOE RECORDINGS</u>

28.) ON OR ABOUT AUGUST 20, 2012, PLAINTIFF PERFORMED HIS MUSICAL COMPOSITION & DIRECTED JOHN DOE'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF THE MUSICAL COMPOSITION & DERIVATIVE MOTION PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE ANY DERIVATIVE

WORKS OF HIS MUSICAL COMPOSITION EXCEPT FOR THIS MOTION
PICTURE & THE MOTION PICTURE DESCRIBED IN "11"

29.) ON OR ABOUT AUGUST 25, 2012, PLAINTIFF PERFORMED
A MUSICAL COMPOSITION ON THE UKELELE TRANSFORMING
THE SONG "WAGON WHEEL" & DIRECTED JOHN DOE 2's
VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR
OF HIS PERFORMANCE & DERIVATIVE MOTION PICTURE WORK;
& HAS NEVER GRANTED ANY LICENSE TO CREATE ANY
DERIVATIVE WORKS OF HIS PERFORMANCE EXCEPT FOR
THIS MOTION PICTURE

30.) ON OR ABOUT 02/04/13, PLAINTIFF PERFORMED
A DRAMATIC WORK DESCRIBING HOW THERE WERE
"400,000 MORE OF ME" & DIRECTED JOHN DOE 3's
VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR
OF HIS DRAMATIC WORK & DERIVATIVE MOTION PICTURE WORK;
& HAS NEVER GRANTED ANY LICENSE TO CREATE ANY
DERIVATIVE WORKS OF HIS DRAMATIC WORK EXCEPT
FOR THIS MOTION PICTURE.

31.) ON OR ABOUT 01/15/13, PLAINTIFF CREATED
& PERFORMED A DRAMATIC WORK ON VENICE BEACH
TELLING PEOPLE " YOU'RE LOVEABLE"; & DIRECTED JOHN
DOE 4's VIDEO RECORDING THEREOF. PLAINTIFF IS THE
AUTHOR OF HIS DRAMATIC WORK & DERIVATIVE MOTION
PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE

31

TO CREATE ANY DERIVATIVE WORKS OF HIS DRAMATIC
WORK EXCEPT FOR THIS MOTION PICTURE

32.) ON OR ABOUT 12/05/12, PLAINTIFF CREATED &
DESIGNED & PERFORMED A DRAMATIC WORK IN
WHICH HE DONNED A KAMIKAZE HEADBAND & ATE
A HANDFUL OF WASABI SAUCE; & DIRECTED JANE
DOE 1'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE
AUTHOR OF HIS DRAMATIC WORK & DERIVATIVE MOTION
PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO
CREATE ANY DERIVATIVE WORKS OF HIS DRAMATIC WORK
EXCEPT FOR THIS MOTION PICTURE.

33.) ON OR ABOUT 02/22/13, PLAINTIFF CREATED
& PERFORMED DRAMATIC WORKS & MUSICAL COMPOS-
ITIONS IN FRESNO CALIFORNIA IN WHICH HE "HAND HUGS"
A WOMAN & PLAYS GUITAR; & DIRECTED JANE DOE 2'S
VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR
OF HIS DRAMATIC WORKS & MUSICAL COMPOSITIONS &
DERIVATIVE MOTION PICTURE WORKS; & HAS NEVER
GRANTED ANY LICENSE TO CREATE ANY DERIVATIVE
WORKS OF HIS DRAMATIC WORKS OR MUSICAL COMPOSITIONS
EXCEPT FOR THIS MOTION PICTURE.

34.) ON OR ABOUT 02/28/13, PLAINTIFF CREATED &
PERFORMED A CHOREOGRAPHY & MUSICAL COMPOSITION
AT HUMBOLDT STATE UNIVERSITY IN WHICH HE BEATBOXED

32

NEXT TO A MAN WITH LONG HAIR, GLASSES, & A BEANIE; & DIRECTED JANE DOE 3'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS CHOREOGRAPHY & MUSICAL COMPOSITION; & HAS NEVER GRANTED ANY LICENSE TO CREATE ANY DERIVATIVE WORKS OF HIS CHOREOGRAPHY OR MUSICAL COMPOSITION EXCEPT FOR THIS MOTION PICTURE.

35.) ON OR ABOUT 03/03/13, PLAINTIFF CREATED & PERFORMED A DRAMATIC WORK INVOLVING A HANDMADE DOLL RESEMBLING HIMSELF; & DIRECTED JOHN DOE 5'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS DRAMATIC WORK & DERIVATIVE MOTION PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE DERIVATIVE WORKS OF HIS DRAMATIC WORK EXCEPT FOR THIS MOTION PICTURE.

36.) ON OR ABOUT 03/05/13, PLAINTIFF CREATED & PERFORMED A DRAMATIC WORK IN WHICH HE SPUN HIS DUFFEL BAG & "SMASHED" IT, & PANTOMIMED SLAPPING A GASLIGHTER IN FRUSTRATION; & DIRECTED JOHN DOE 6'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS DRAMATIC WORK & DERIVATIVE MOTION PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE DERIVATIVE WORKS OF HIS DRAMATIC WORK EXCEPT FOR THIS MOTION PICTURE.

37.) ON OR ABOUT 03/07/13, PLAINTIFF CREATED & PERFORMED A MUSICAL COMPOSITION & CHOREO-GRAPHY IN WHICH HE BEATBOXED WHILE WAVING A POOL CUE; & DIRECTED JOHN DOE 7'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS MUSICAL COMPOSITION, CHOREOGRAPHY, & DERIVATIVE MOTION PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE DERIVATIVE WORKS OF HIS CHOREOGRAPHY &/OR MUSICAL COMPOSITION EXCEPT FOR THIS MOTION PICTURE.

38.) ON OR ABOUT 02/13/13, JANE DOE 4 SURREPTITIOUSLY RECORDED PLAINTIFF WITHOUT HIS KNOWLEDGE OR CONSENT; WHILE PLAINTIFF WAS IN A CORDONED-OFF SECTION OF A RESTAURANT WITH A REASONABLE EXPECTATION OF PRIVACY; AS PLAINTIFF WAS DESCRIBING URINATING ON THE WALL OF FAME. JANE DOE 4 MISREPRESENTED TO PLAINTIFF THAT THE CONVERSATION WAS CONFIDENTIAL & NOT BEING RECORDED, KNOWING THE FALSITY OF THE MISREPRESENTATION & INTENDING TO INDUCE PLAINTIFF'S RELIANCE THEREON, PLAINTIFF JUSTIFIABLY RELIED ON JANE DOE 4'S MISREPRESENTATION TO CONVEY NOVEL & CONFIDENTIAL INFORMATION TO JANE DOE 4, WHICH SHE FRAUDULENTLY OBTAINED VIDEO

FOOTAGE OF

39.) ON OR ABOUT 12/24/10, PLAINTIFF CREATED & PERFORMED DRAMATIC WORKS & MUSICAL COMPOSITIONS IN WHICH HE TALKS ABOUT HAVING DARK EYES, PLAYS GUITAR, & SINGS ABOUT TRYING TO BURN HIS PARENTS' HOUSE DOWN WHEN HE WAS 4 YEARS OF AGE; & FILMED HIMSELF TO CREATE A DERIVATIVE MOTION PICTURE WORK. PLAINTIFF IS THE AUTHOR OF HIS DRAMATIC WORKS, MUSICAL COMPOSITIONS, & DERIVATIVE MOTION PICTURE WORKS; & HAS NEVER GRANTED ANY LICENSE TO MAKE ANY DERIVATIVE WORKS OF HIS DRAMATIC WORKS, OR MUSICAL COMPOSITIONS, EXCEPT FOR THIS MOTION PICTURE WORK.

40.) DURING THE PERIOD FROM ON OR ABOUT 09/10/11 UNTIL ON OR ABOUT 05/10/13; PLAINTIFF AUTHORED NUMEROUS PHOTOGRAPHS & LITERARY WORKS & VIDEOS, & PUBLISHED THEM ON HIS FACEBOOK PAGE "CALEB KAI LAWRENCE YODHEHWAWHEH." HE HAS NEVER GRANTED ANY LICENSE TO MAKE ANY DERIVATIVE WORKS OF HIS PHOTOGRAPHS, VIDEOS, OR LITERARY WORKS EXCEPT FOR THIS FACEBOOK PAGE.

## EBAUMSWORLD SURFING ADVENTURE

41.) ON OR ABOUT 03/28/13, EBAUMSWORLD & ITS AGENTS CARTER HARRIS ("MAC DREIDEL" OR "DREIDEL") & JOHN DOE 8 (COLLECTIVELY, "EBW") CONFERRED WITH EACH OTHER & HAD A MEETING OF THE MINDS & AGREED WITH SHARED INTENT TO DISTRIBUTE MARIJUANA TO PLAINTIFF; TRANSPORT & HARBOR PLAINTIFF KNOWING HE HAD ENTERED, COME TO, & REMAINED IN THE UNITED STATES IN VIOLATION OF LAW; & THEREBY OBTAIN PERFORMING SERVICES & MOTION PICTURES OF PLAINTIFF DERIVED FROM SUCH CRIMINAL ACTIVITY & THENCEFORTH TO ENGAGE IN MONETARY TRANSACTIONS INVOLVING SAID MOTION PICTURE WORK & PROPERTY EMBODIED THEREIN. ON THIS DATE, EBW FORMED AN ENTERPRISE TO THAT END ("EBW")

42.) IN FURTHERANCE OF THE SCHEME IN "41"; EBW ENLISTED JANE DOE 5 TO CONTACT PLAINTIFF WITH EBW'S OFFER OF MARIJUANA FOR PLAINTIFF'S CREATION & PERFORMANCE OF HIS CHOREOGRAPHY & DRAMATIC WORKS, & DIRECTION OF PRODUCTION OF MOTION PICTURE WORKS. JANE DOE 5 DID, IN FACT, CONTACT PLAINTIFF WITH THIS OFFER, ON 03/28/13 OR ABOUT VIA FACEBOOK & TELEPHONE, WHICH PLAINTIFF ACCEPTED ON SPECIFIC TERMS THAT HE RETAIN & RESERVE ALL HIS RIGHTS. PLAINTIFF TRAVELLED TO MEET JANE DOE 5 & HARRIS; & THE 3 WENT DRINKING TOGETHER. AFTER DRINKS, THE 3 WENT TO HARRIS'S HOUSE, WHERE HE HARBORED PLAINTIFF OVERNIGHT,

43.) ON 03/29/13, EBW DISTRIBUTED THE MARIJUANA
TO PLAINTIFF & COMMENCED FILMING THEIR VIOLATION
OF 8 USC 1324; & PLAINTIFF'S CHOREOGRAPHY &
DRAMATIC WORKS WHICH HE CREATED & PERFORMED,
INCLUDING DANCE MOVES, FIREWORKS DISPLAYED, CROWD
TOKING, ACROBATIC LEDGE-JUMPING, SURFING, &
LONG BOARD DANCE-MOVES. EBW TRANSPORTED
PLAINTIFF FROM ~~MODELS~~ HARRIS'S HOUSE TO OCEAN BEACH; FROM
OCEAN BEACH TO FORT POINT; & FROM FORT POINT
TO THE OFFICE HEADQUARTERS OF EBAUMSWORLD IN
SAN FRANCISCO; HARBORING PLAINTIFF IN EACH PLACE.
PLAINTIFF IS THE AUTHOR OF HIS DRAMATIC WORKS &
CHOREOGRAPHY, & DIRECTED THE DERIVATIVE MOTION
PICTURE WORK THEREOF. PLAINTIFF WAS THE INVENTIVE
MASTERMIND & CREATIVE GENIUS OF THE MOTION
PICTURE WORK, TO WHOM THE WORK OWES ITS EXIST-
ENCE. FROM THE MOMENT THE CAMERA STARTED
FILMING, PLAINTIFF SUPERINTENDED THE WORK BY
EXERCISING CONTROL; HE ACTUALLY FORMED THE PICTURE
BY PUTTING PERSONS, INCLUDING THE CAMERAMAN, IN
POSITION & ARRANGING THE PLACES WHERE PEOPLE
WOULD BE; THEREBY CREATING & GIVING EFFECT TO
HIS IDEAS.

44.) PLAINTIFF HAS NEVER ASSIGNED OR TRANSFERRED TITLE TO HIS COPYRIGHTS IN HIS CHOREOGRAPHY, DRAMATIC WORKS, OR DERIVATIVE MOTION PICTURE WORKS DESCRIBED IN "43". EBW HAS REGISTERED THE COPYRIGHT TO THE DERIVATIVE MOTION PICTURE IN CONSTRUCTIVE TRUST FOR PLAINTIFF; WHO IS THE AUTHOR & RIGHTFUL OWNER OF THE COPYRIGHT & CESTUI QUI TRUST THEREOF. PLAINTIFF HAS NEVER GRANTED ANY LICENSE TO CREATE ANY DERIVATIVE WORKS OF HIS CHOREOGRAPHY OR DRAMATIC WORKS IN "43" EXCEPT FOR THE DERIVATIVE MOTION PICTURE WORKS DESCRIBED IN "43".

FULTON 55'S FRAUD & SLANDER

45.) ON OR ABOUT APRIL 4, 2013, TONY MARTIN, INDIVID-UALLY & AS EXECUTIVE OFFICER OF FULTON 55, & GABRIEL SANCHEZ (HEREINAFTER, "GABRIEL FRANCISCO" OR "FRANCISCO") (COLLECTIVELY, "F55"); CONFERRED WITH EACH OTHER, HAD A MEETING OF THE MINDS WITH SHARED INTENT, & AGREED TO DEFRAUD PLAINTIFF OF HIS PERFORMING SERVICES AS A MUSICIAN & DRAMATIC PERFORMER; BY MISREPRESENTING TO HIM OVER TRANSMISSION BY WIRE THAT HE WOULD BE PAID FOR PERFORMING & DIRECTING AT FULTON 55; WHERE IN FACT THEY HAD NO INTENTION OF PAYING HIM. THEY ALSO AGREED

TO DERIVE VIDEO FOOTAGE & INTELLECTUAL PROPERTY
THROUGH SAID WIRE FRAUD BY CONNING PLAINTIFF
INTO DIRECTING THE VIDEO RECORDING OF HIS
PERFORMANCE & THEREAFTER CLAIMING SUCH AS
THEIR OWN. THEY ALSO AGREED TO "KILL" HIS
BUSINESS & PROFESSIONAL REPUTATION IN AN EFFORT
TO "GET" PLAINTIFF'S "CROWD"; IN A CAMPAIGN OF
DEFAMATION & COMMERCIAL DISPARAGEMENT
SPECIFICALLY DESIGNED TO INTERFERE WITH
PLAINTIFF'S ECONOMIC ADVANTAGE & BUSINESS.
46.) IN FURTHERANCE OF THIS CONSPIRACY, F55 ALSO
CONFERRED WITH EACH OTHER, HAD A MEETING
OF THE MINDS, & AGREED TO ENGAGE IN MONETARY
TRANSACTIONS INVOLVING PROPERTY DERIVED FROM
THE ENTERPRISE DESCRIBED IN "45" & THE
CRIMINAL ACTS ENGAGED IN BY SAME
47.) IN FURTHERANCE OF THE CONSPIRACIES IN
"45" & "46"; GABRIEL FRANCISCO CONTACTED PLAINTIFF
BY TELEPHONE & MISREPRESENTED TO PLAINTIFF THAT
PLAINTIFF WOULD BE PAID $400 & A FAIR PORTION
OF LIQUOR & TICKET SALES, SPECIFICALLY HALF OF
20% OR 10% OF EACH, TO PERFORM AT FULTON 55
IN FRESNO, CA ON OR ABOUT APRIL 5, 2013. FRANCISCO KNEW
THE FALSITY OF HIS MISREPRESENTATION & INTENDED

39

TO INDUCE PLAINTIFF'S RELIANCE THEREON.

48.) HOMELESS PLAINTIFF JUSTIFIABLY RELIED ON F55'S MISREPRESENTATION & AGREED TO THE PURPORTED OFFER, HONESTLY BELIEVING THAT A CONTRACT HAD BEEN FORMED, IN RELIANCE THEREON, PLAINTIFF HITCHHIKED TO FULTON 55 & PERFORMED CHOREOGRAPHY & MUSICAL COMPOSITIONS THERE ON OR ABOUT APRIL 5, 2013

49.) ON OR ABOUT APRIL 5, 2013, PRIOR TO PERFORMING AT SOUNDCHECK, PLAINTIFF ASKED TONY MARTIN FOR A BEER; TO BE COUNTED AGAINST HIS REMUNERATION AFTER THE SHOW. TONY MARTIN REFUSED, & STATED TO PLAINTIFF "YOU'LL GET YOURS AFTER THE SHOW." PLAINTIFF WALKED OUTSIDE & ASKED A CROWD "WHO WANTS TO BUY ME A BEER?" THEN RETURNED WITH A HALF DOZEN FANS OFFERING TO BUY BEERS FOR HIM. IN RETURN, PLAINTIFF PROVIDED A FULL DRAMATIC RE-ENACTMENT OF THE SMASH, SMASH, SMASH INCIDENT. DURING THIS PERFORMANCE, PLAINTIFF SPECIFICALLY STATED IN RESPONSE TO FRANCISCO'S QUESTION "WHAT WAS IN THE JOINT?"; THAT "THERE WAS NOTHING BUT REALLY LOW GRADE WEED IN THE JOINT, THE COPS EVEN TESTED IT."

50.) ON OR ABOUT APRIL 5, 2013, PLAINTIFF CREATED & PERFORMED A CHOREOGRAPHICAL WORK, & DIRECTED F55'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS CHOREOGRAPHY & DERIVATIVE MOTION PICTURE WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE DERIVATIVE WORKS OF HIS CHOREOGRAPHY EXCEPT FOR THIS MOTION PICTURE WORK

51.) ALSO ON OR ABOUT APRIL 5, 2013, PLAINTIFF CREATED & PERFORMED A MUSICAL COMPOSITION & DRAMATIC WORK ON STAGE AT FULTON 55, LEADING & DIRECTING A MUSICAL BAND & DIRECTING F55'S VIDEO RECORDING THEREOF. PLAINTIFF IS THE AUTHOR OF HIS MUSICAL COMPOSITION & DRAMATIC WORK; & HAS NEVER GRANTED ANY LICENSE TO CREATE DERIVATIVE WORKS OF HIS MUSICAL COMPOSITIONS OR DRAMATIC WORK EXCEPT FOR THIS MOTION PICTURE WORK.

52.) ON OR ABOUT APRIL 5, 2013, AFTER HIS PERFORMANCE AT FULTON 55, PLAINTIFF WENT OUTSIDE FOR A CIGARETTE & ASKED TONY MARTIN FOR HIS PORTION OF THE LIQUOR & TICKET SALES & HIS PERFORMANCE FEE. IN RESPONSE, TONY MARTIN STATED, "I KNOW YOU'RE AN ILLEGAL, & IF I CALL THE COPS THEY'RE GONNA DEPORT YOU. YOU AIN'T GETTING A FUCKING THING. YOU BETTER GET THE FUCK OUTTA HERE OR YOU'RE GOING BACK TO CANADA."

53.) UNBEKNOWNST TO PLAINTIFF, F55 THEN CONTACTED OTHER VENUE OWNERS IN THE FRESNO AREA TO DEFAME & DISPARAGE PLAINTIFF BY PUBLISHING TO THEM STATEMENTS CLAIMING THAT HE WAS A BAD BUSINESS PARTNER; & MALIGNING HIS CHARACTER, BUSINESS, QUALITY OF PERFORMANCE, & RIGHT OF PUBLICITY; WHICH IS REFERRED TO AS "BURN"-ING PLAINTIFF.

54.) AS A RESULT OF THE FRAUD IN "45"-"52" PERPETRATED AGAINST PLAINTIFF, HE WAS DEPRIVED OF, & DEFENDANTS F55 WERE UNJUSTLY ENRICHED BY; THE AGREED UPON REMUNERATION FOR PLAINTIFF'S PERFORMANCE, THE VIDEO FOOTAGE OF PLAINTIFF'S PERFORMANCE, & PLAINTIFF'S BENEFICIAL INTEREST IN THE COPYRIGHT IN SUCH PERFORMANCE & MOTION PICTURE WORK. F55 HELD THESE ITEMS & MONIES IN CONSTRUCTIVE TRUST FOR PLAINTIFF, & BREACHED THEIR FIDUCIARY DUTY AS TRUSTEE TO PLAINTIFF CESTUI QUI TRUST THROUGH THEIR FRAUD.

55.) AS A RESULT OF F55'S DEFAMATION & DISPARAGE-MENT AGAINST PLAINTIFF, AT LEAST A DOZEN REQUESTS FOR PLAINTIFF TO PERFORM AT VENUES IN THE FRESNO AREA WERE CANCELLED, & PLAINTIFF NEVER AGAIN WAS INVITED NOR REQUESTED TO PERFORM AT VENUES IN THE FRESNO AREA AGAIN. PLAINTIFF WOULD OTHER-

WISE HAVE BEEN ABLE TO PLAY AT LEAST 3 SHOWS A WEEK; BUT INSTEAD HE WAS DEPRIVED OF, & F55 WERE UNJUSTLY ENRICHED BY, LICENSING & PERFORMANCE OF SERVICES & FEES, LIQUOR SALES, & TICKET/MERCH SALES FROM FUTURE SHOWS TO PLAINTIFF'S "CROWD" IN FRESNO; WHICH NUMBERED IN THE TENS IF NOT HUNDREDS OF THOUSANDS. BECAUSE BENEFIT OF THE BARGAIN DAMAGES ARE CALCULATED AT THE TIME OF THE FRAUD IS DISCOVERED, IN THIS CASE JANUARY 10, 2023; PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES OF $400 & 20% OF LIQUOR & TICKET SALES, OR AN ESTIMATED $1000 TOTAL PER SHOW, 3 SHOWS PER WEEK, FOR THE PERIOD OF APRIL 5, 2013 TO JANUARY 10, 2023, OR $1,314,000.00 PLUS INTEREST.

CONFIDENTIAL NEGOTIATIONS

56.) ON MAY 7, 2020, BECKY RENDALL, AN AGENT OF OCTOBER FILMS, CONTACTED PLAINTIFF VIA JPAY TO INITIATE NEGOTIATIONS FOR A CONTRACT TO PRODUCE A DOCUMENTARY FILM ABOUT PLAINTIFF'S LIFE STORY IN WHICH PLAINTIFF WOULD APPEAR.

57.) ON JUNE 29, 2020, ZACHARY FRANK, AN AGENT OF CREAM PRODUCTIONS, CONTACTED PLAINTIFF VIA JPAY TO INITIATE NEGOTIATIONS FOR A CONTRACT TO PRODUCE A DOCUMENTARY FILM ABOUT PLAINTIFF'S

LIFE STORY IN WHICH PLAINTIFF WOULD APPEAR.

58.) ON OR ABOUT AUGUST 1, 2020, RAWTV CONTACTED PLAINTIFF VIA THE LAW OFFICE OF SANDRA H. BIGNAULT (HEREINAFTER, "SHB"); & INITIATED NEGOTIATIONS FOR A CONTRACT TO PRODUCE A DOCUMENTARY FILM ABOUT PLAINTIFF IN WHICH PLAINTIFF WOULD APPEAR.

59.) PURSUANT TO THE NEGOTIATIONS IN "58", A TELECONFERENCE BETWEEN PLAINTIFF, SHB, & RAWTV WAS CONVENED ON OR ABOUT AUGUST 2, 2020. DURING THIS TELECONFERENCE, PLAINTIFF CLEARLY COMMUNICATED TO RAWTV THAT HIS COMMUNICATIONS & ANY INFORMATION CONVEYED BY PLAINTIFF TO RAWTV WERE CONFIDENTIAL & PRIVILEGED; & WERE NOT TO BE USED FOR DEVELOPMENT OR PRODUCTION OF ANY PROJECT OR FILM, BUT WERE CONVEYED ONLY FOR THE SPECIFIC PURPOSE OF ASSESSING THE VIABILITY OF A BUSINESS PARTNERSHIP BETWEEN PLAINTIFF & RAWTV. PLAINTIFF CLEARLY & EXPLICITLY STATED, "I EXPECT COMPENSATION FOR THE USE OF ANY INFORMATION OR MATERIAL I PROVIDE"; & RAWTV EXPRESSED AN UNDERSTANDING OF THE CONFIDENTIAL NATURE OF THE NEGOTIATIONS. RAWTV THEN MISREPRESENTED TO PLAINTIFF THAT "RAWTV WILL NOT MAKE ANY FILM ABOUT YOU OR USE ANY OF YOUR MATERIAL UNLESS & UNTIL YOU CONSENT TO US DOING SO IN WRITING." PLAINTIFF

CLEARLY EXPRESSED THAT HIS SENDING OF INFORMATION
& MATERIAL FOR ASSESSMENT DID NOT CONSTITUTE
CONSENT, & RAW TV EXPRESSED AN UNDERSTANDING OF
THIS. RAW TV THEN ASKED PLAINTIFF FOR INFORMATION
CONCERNING VIDEOS OF HIMSELF PERFORMING. PLAINTIFF
GAVE RAW TV THE REQUESTED INFORMATION BY REFERRING
THEM TO HIS PERFORMANCES & DERIVATIVE MOTION
PICTURES DESCRIBED IN "6", "11", "24", "28"-"37", "39", "43",
"50"-"51". RAW TV THEN ASKED PLAINTIFF TO PROVIDE
CONTACT INFORMATION FOR ANY PEOPLE WHO MIGHT
APPEAR IN A FILM ABOUT HIM, & TOLD HIM THEY
WOULD SEND HIM A LIST OF QUESTIONS PURSUANT TO
THESE SAME CONFIDENTIAL NEGOTIATIONS.
60.) ON OR ABOUT AUGUST 20, 2020, RAW TV SENT
THE OFFICE OF SHB THE QUESTIONS VIA EMAIL TO
ADB. SHBNJ@ATT.NET ("SHBEMAIL"). SHB SENT THE
QUESTIONS TO PLAINTIFF VIA JPAY ON AUGUST 21, 2020.
OVER THE COURSE OF SEVERAL DAYS FROM AUGUST 26,
2020 TO AUGUST 29, 2020, ON OR ABOUT, PLAINTIFF
RECORDED HIS ANSWERS TO THE QUESTIONS VIA TELE-
PHONE TO SHB. THE LIST OF QUESTIONS & AUDIO RECORDING
ARE INCORPORATED BY REFERENCE HEREIN. PLAINTIFF SENT
THE AUDIO RECORDING TO RAW TV VIA SHB VIA SHBEMAIL
ON OR ABOUT AUGUST 29, 2020, CLEARLY & EXPLICITLY

45

INDICATING THAT HE RESERVED ALL HIS RIGHTS; THAT THE INFORMATION & MATERIAL WAS CONFIDENTIAL; & THAT IT WAS NOT TO BE USED IN WHOLE OR IN PART FOR DEVELOPMENT OF ANY PROJECTS, FILM OR OTHERWISE, WITHOUT PLAINTIFF'S PRIOR APPROVAL & COMPENSATION.

## RAW TV & NETFLIX'S CONSPIRACY

61.) ON OR ABOUT JULY 31, 2020, NETFLIX & RAW TV, WITH THEIR AGENTS ROB MILLER & SALLY BRINDLE, CONFERRED WITH EACH OTHER, HAD A MEETING OF THE MINDS, & AGREED TO ATTEMPT &, IF POSSIBLE, CARRY OUT A SCHEME TO DEFRAUD PLAINTIFF OVER TRANSMISSION BY WIRE; ENGAGE IN MONETARY TRANSACTIONS INVOLVING CRIMINALLY-DERIVED PROPERTY; INTERFERE WITH INTERSTATE OR FOREIGN COMMERCE; EXERCISE AN ILLEGAL MONOPOLY OR COMBINATION IN RESTRAINT OF COMMERCE; DEFAME PLAINTIFF; PORTRAY PLAINTIFF IN A FALSE LIGHT; & INTERFERE WITH PLAINTIFF'S CONTRACTUAL RELATIONS &/OR PROSPECTIVE ECONOMIC ADVANTAGE.

62.) IN FURTHERANCE OF THE CONSPIRACY IN "61", RAW TV MADE THE MISREPRESENTATION IN "59" KNOWING ITS FALSITY & INTENDING TO INDUCE PLAINTIFF'S RELIANCE THEREON. PLAINTIFF PROVIDED SERVICES IN JUSTIFIABLE RELIANCE AS DESCRIBED IN "59" - "60"; FOR WHICH HE

EXPECTED COMPENSATION OF AT LEAST 20% GROSS REVENUE
OF THE FILM, OF WHICH BENEFIT HE WAS DEPRIVED OF
BY NETFLIX, RAWTV, SALLY BRINDLE & ROB MILLER ACTING
IN CONCERT & WITH SHARED INTENT (COLLECTIVELY, "NRSR").
63.) ON JANUARY 29, 2021, CREAM PRODUCTIONS SENT
PLAINTIFF A CONTRACT FOR WHICH PLAINTIFF WOULD
RECEIVE SIGNIFICANT CONSIDERATION INCLUDING MUSIC
LICENSING RIGHTS & PROMOTION OF 5 MINUTES OF
HIS ORIGINAL MUSIC WITH ATTENDANT ECONOMIC
ADVANTAGE ARISING THEREFROM.
64.) ON FEBRUARY 7, 2021, ROB MILLER MESSAGED
PLAINTIFF VIA JPAY TO TELL HIM THAT NETFLIX ARE
READY TO GREEN LIGHT A FEATURE LENGTH DOCUMENTARY."
MILLER CONTINUED, "WHILST IT IS FEASIBLE TO MAKE
A FILM WITHOUT THE CENTRAL CHARACTER, I REALLY
WANT TO INVOLVE YOU AS MUCH AS POSSIBLE, FOLLOWING
UP ON YOUR SUGGESTIONS FOR PEOPLE TO CONTACT &,
CRUCIALLY, GIVING YOU AN OPPORTUNITY TO TELL YOUR
STORY IN YOUR OWN WORDS ... I AM HOPING THAT YOU
WILL SEE THIS AS THE REAL BENEFIT OF WORKING
WITH US ON THIS FILM BECAUSE WHAT WE ARE STILL
UNABLE TO DO IS OFFER YOU A FEE IN RETURN FOR
YOUR CONTRIBUTION ... THIS IS THE POSITION OF BOTH
RAW & NETFLIX ... PLEASE TAKE SOME TIME TO

CONSIDER MY PROPOSAL & LET ME KNOW IF YOU HAVE ANY QUESTIONS."

65.) ON FEBRUARY 8, 2021 OR ABOUT, PLAINTIFF HAD NOT YET RECEIVED THE MESSAGE IN "64"; & SENT A COPY OF THE CONTRACT IN "63" TO RAWTV WITH THE OFFER THAT IF RAWTV COULD MATCH IT, PLAINTIFF WOULD WORK WITH THEM.

66.) ON FEBRUARY 10, 2021, PLAINTIFF RECEIVED THE LETTER IN "64" & IMMEDIATELY REPLIED WITH THE QUESTION "ARE YOU SAYING THAT YOU'RE GOING TO MAKE IT WHETHER OR NOT I'M INVOLVED?, I'M KINDA CONFUSED BY THAT PART, PLEASE LET ME KNOW WHAT YOU MEANT BY THAT." PLAINTIFF AGAIN ASKED MILLER THE SAME QUESTION ON 02/16/21 & ON 02/23/21; BUT MILLER DID NOT ANSEWR THE QUESTION IMMEDIATELY. ON 2/24/21 MILLER ANSWERED: "YES, WE WOULD MAKE THE DOCUMENTARY WITHOUT YOU IF NECESSARY BUT OUR STRONG PREFERENCE WOULD BE TO INCLUDE YOUR CONTRIBUTION IF WE CAN ... WE WOULD STILL LIKE TO TALK TO THE PEOPLE YOU SUGGESTED WHO COULD TELL US ABOUT THE KAI THEY KNOW."

67.) ON OR ABOUT MARCH 8, 2021, NRSR CONTACTED CREAM PRODUCTIONS VIA TELEPHONE & TOLD THEM

To "BACK OFF"; IN FURTHERANCE OF THE CONSPIRACY IN
"61" KNOWINGLY EXERCISING A MONOPOLY POWER
TO FIX PRICES FOR PLAINTIFF'S PARTICIPATION IN A
FILM AT $0 & TO EXCLUDE COMPETITION THEREFOR
IN RESTRAINT OF TRADE OR COMMERCE.

68.) ON OR ABOUT 03/09/21, PLAINTIFF CALLED FRANK
VIA SHB VIA TELECONFERENCE. FRANK STATED THAT
RAWTV HAD CALLED HIS "HIGHER UPS" AT CREAM
& TOLD THEM TO "BACK OFF"; & THAT AS A RESULT,
THE CONTRACT OFFER WAS RESCINDED.

69.) ON OR ABOUT 04/02/21, PLAINTIFF AGAIN
CALLED FRANK VIA SHB, & FRANK INDICATED THAT CREAM
PRODUCTIONS OFFERED HIM 12% GROSS REVENUE & 5 MINUTES ORIGINAL
MUSIC DISTRIBUTION IN A FILM FAVORABLE TO HIM. AT THIS
POINT, PLAINTIFF ENTERED INTO AN ORAL CONTRACT
WITH CREAM TO PRODUCE A DOCUMENTARY FILM
FAVORABLE TO HIMSELF, WITH CONSIDERATION &
PERFORMANCE TO BE EXECUTED WITHIN A YEAR.

70.) ON 04/05/21, PLAINTIFF CALLED SALLY BRINDLE
VIA SHB & RECORDED THE CALL, INCORPORATED BY
REFERENCE HEREIN. PLAINTIFF STATED, "THIS CALL
MAY BE RECORDED OR MONITORED"; TO WHICH BRINDLE
REPLIED, "OKAY." SALLY BRINDLE, IN FURTHERANCE
OF THE CONSPIRACY IN "61" ATTEMPTED TO COMMIT
WIRE FRAUD AGAINST PLAINTIFF DURING THIS CALL:

49

PLAINTIFF SPECIFICALLY STATED TO BRINDLE THAT "THIS CALL MAY BE RECORDED OR MONITORED", LETTING HER KNOW THAT, UNLIKE THE OTHER CONVERSATIONS OR NEGOTIATIONS, THIS PHONECALL WAS NOT CONFIDENTIAL. BRINDLE SPECIFICALLY INDICATED AN UNDERSTANDING OF THIS BY STATING "OKAY" IN RESPONSE TO THIS. PLAINTIFF ASKED BRINDLE, "SO YOU RECEIVED THE INFORMATION I SENT AS PART OF OUR CONFIDENTIAL NEGOTIATIONS? THE SOUND RECORDINGS, THE INTERVIEWS, MY LEGAL WORK, MY LIFE STORY NARRATIVE? YOU REVIEWED ALL THAT?" TO WHICH BRINDLE REPLIED, "YEAH, I'VE HAD ABSOLUTELY EVERYTHING, & I'VE READ THROUGH EVERYTHING, & WE'VE BEEN REPLYING TO YOU THROUGH ASHLEY." PLAINTIFF ASKED BRINDLE, "WILL THEY BE PASSING OFF THE FILM AS BEING ABOUT ME BUT FEATURING SOMEONE ELSE?" TO WHICH BRINDLE MISREPRESENTED TO PLAINTIFF THAT "THERE'S NO ACTORS IN IT ... THERE ARE NO ACTORS. NO ONE'S PORTRAYING YOU AT ANY STAGE." BRINDLE KNEW THE FALSITY OF THIS MISREPRESENTATION AT THE TIME IT WAS MADE; INTENDING TO INDUCE RELIANCE BY PLAINTIFF TO HIS LEGAL DETRIMENT IN SIGNING A RELEASE; WHICH FRAUD WAS ATTEMPTED VIA TRANSMISSION BY WIRE. PLAINTIFF THEN ASKED BRINDLE, "SO THIS FILM IS GOING

TO BE MARKETED AS BEING ABOUT KAI THE HITCHHIKER?
IT'S GOING TO BE LIKED, PEOPLE ARE GOING TO WATCH
THIS, BECAUSE IT'S ABOUT ME, RIGHT?" TO WHICH
BRINDLE REPLIED, "YES." PLAINTIFF THEN ASKED, "YOU
KNOW THAT I SENT YOU THE COPY OF THE CONTRACT THAT
I'VE BEEN OFFERED: A PERCENTAGE OF THE FIXED
PRODUCTION BUDGET, & A PERCENTAGE OF THE REVENUES
OF THE FILM, RIGHT?" TO WHICH BRINDLE REPLIED, "YES,
& WE REPLIED A COUPLE OF TIMES TO THAT, BECAUSE
THAT LAW DOESN'T ALLOW THAT TO HAPPEN." BRINDLE
KNEW THE FALSITY OF THE MISREPRESENTATION "THAT
LAW DOESN'T ALLOW THAT TO HAPPEN" AT THE TIME IT
WAS MADE: INTENDING TO EXTORT PLAINTIFF INTO
SIGNING A RELEASE, & OBTAINING BENEFITS THEREFROM,
THROUGH FEAR OF LEGAL ACTION; IN INTERFERENCE
WITH INTERSTATE OR FOREIGN COMMERCE; & INTENDING
TO INDUCE RELIANCE BY PLAINTIFF ON SAID MISREPRES-
ENTATION TO HIS LEGAL DETRIMENT IN SIGNING A
RELEASE; WHICH FRAUD WAS ATTEMPTED VIA TRANSMIS-
SION BY WIRE. PLAINTIFF THEN ASKED, "IF I WERE
TO SAY, 'NO, ABSOLUTELY NOT. THIS IS ALL SUPPOSED
TO BE A NEGOTIATION. I DON'T WANT A FILM MADE
ABOUT ME THAT'S GOING TO COMPETE WITH MY OTHER
STORY'; YOU'RE STILL GOING TO MAKE A FILM,

EVEN WITHOUT ME?" TO WHICH BRINDLE REPLIED, "YES. WE DON'T NEED PERMISSION FROM YOU TO MAKE THE DOCUMENTARY. THAT'S CORRECT." THE CALL WAS UNINTENTIONALLY ENDED, SO PLAINTIFF CALLED BACK & AGAIN STATED CLEARLY, "THIS CALL WILL BE RECORDED & MONITORED." TO WHICH BRINDLE REPLIED, "OKAY." BRINDLE STATED TO PLAINTIFF, "I'VE READ EVERYTHING THAT YOU'VE SENT US & IT'S INCREDIBLY USEFUL BACKGROUND INFORMATION." TO WHICH, AMONG OTHER STATEMENTS, PLAINTIFF REPLIED, "WELL, OF COURSE, YOU KNOW THAT THAT'S ALL CONFIDENTIAL, LIKE, EVERYTHING YOU'RE TALKING ABOUT. THE DOCUMENTS, ANY OF THE INTERVIEWS, ANY OF THE RECORDINGS, THAT'S ALL CONFIDENTIAL AS FAR AS OUR NEGOTIATION." PLAINTIFF THEN STATED, "I SAID TO YOU AS PART OF THESE NEGOT- IATIONS, 'HEY, IF YOU COULD MATCH THIS CONTRACT, I WOULD CONSIDER WORKING WITH YOU.' DO YOU REMEMBER THAT ONE?" TO WHICH BRINDLE REPLIED, "I WASN'T ON BOARD, BUT I HAVE SEEN THIS & I DO REMEMBER THAT, YES." PLAINTIFF ASKED, "AND SO PART OF THE ADVERTISEMENT FOR THIS FILM ... WELL, THE BIGGEST SELLING POINT OF THIS FILM, LIKE, WHEN PEOPLE HEAR ABOUT THIS FILM, THEY'LL KNOW

IT'S GOING TO BE ABOUT ME", LIKE, THAT IS WHY PEOPLE
WILL WATCH THIS, CORRECT?." TO WHICH BRINDLE
REPLIED, "YEAH, EXACTLY." PLAINTIFF THEN STATED,
"I JUST WANT TO LET YOU KNOW, IT'S ACTUALLY NOT
ILLEGAL FOR ME AS A CANADIAN CITIZEN TO BE PAID
FOR MY INTELLECTUAL PROPERTY. & EVEN IN NEW JERSEY,
THERE'S NO SON OF SAM LAW. SO I JUST WANTED TO
MAKE SURE THAT THAT'S VERY EXPLICITLY STATED &
THAT YOU HAVE AN UNDERSTANDING OF THAT." TO WHICH
BRINDLE REPLIED "YES, I DO HAVE AN UNDERSTANDING OF
THAT." PLAINTIFF THEN STATED, "THE NETFLIX PROJECT
IS INTERFERING WITH MY ABILITY TO MARKET MY LIFE
STORY... YOU GUYS KNOW ABOUT THE CONTRACT, YOU
KNOW THAT I'M BEING OFFERED MONEY FOR THE USE
OF MY LIFE STORY FOR SPECIFICALLY A DOCUMENTARY...
SO YOU WERE AWARE OF THAT?." TO WHICH BRINDLE
REPLIED, "YES, I KNEW THAT CREAM HAD PREVIOUSLY
APPROACHED YOU, I'VE LEARNED THAT HISTORY." PLAINTIFF
THEN ASKED, "IF I WERE TO APPEAR ON CAMERA, YOU'D ASK
ME TO SIGN A CONTRACT, AGREEING TO BE ON CAMERA,
CORRECT?." TO WHICH BRINDLE REPLIED "I MEAN, IT'S
CALLED A RELEASE FORM, BUT YEAH."
71.) ON 04/06/21, PLAINTIFF AGAIN CALLED BRINDLE
VIA SHB & RECORDED THE CALL, INCORPORATED BY

REFERENCE HEREIN. ONCE AGAIN, AT THE BEGINNING OF THE CALL, PLAINTIFF STATED "THIS CALL MAY BE RECORDED OR MONITORED"; TO WHICH BRINDLE REPLIED, "NO PROBLEM AT ALL." PLAINTIFF ASKED, "NETFLIX IS INDEED AWARE THAT YOU'RE MAKING THIS FILM?" TO WHICH BRINDLE REPLIED, "ABSOLUTELY. NETFLIX HAVE COMMISSIONED US TO MAKE IT. THAT IS TO SAY, IT WANTS US TO MAKE THE FILM & WE ARE MAKING IT FOR THEM." PLAINTIFF THEN ASKED, "DO YOU HAVE SOMEBODY THAT YOU REGULARLY CONTACT AT NETFLIX?" TO WHICH BRINDLE REPLIED, "WE HAVE PEOPLE THAT ARE REGULARLY UPDATED WITH OUR PROGRESS, BECAUSE THEY'RE PAYING FOR IT... WE HAVE REGULAR MEETINGS & EMAILS ARE EXCHANGED, ET CETERA." BRINDLE THEN STATED, "THEY COMMISSIONED THIS FILM ON THE BASIS OF IT BEING A DOCUMENTARY ABOUT YOU... BY DEFINITION, THEY WOULDN'T BRAND IT AS ANYTHING ELSE... IF IT'S PROMOTED, THE PROMOTION MATERIALS WILL MENTION YOU & YOUR STORY." PLAINTIFF THEN ASKED, "NETFLIX, THEY SELL A SUBSCRIPTION THAT'S REQUIRED TO VIEW THE FILM, RIGHT?" TO WHICH BRINDLE REPLIED, "THAT IS CORRECT. NETFLIX SELLS SUBSCRIPTIONS & THEN YOU CAN WATCH THINGS ON THEIR PLATFORM." PLAINTIFF THEN ASKED, "DOES NETFLIX KNOW THAT I HAVE BEEN OFFERED MONETARY & OTHER CONSIDERATIONS

BY OTHER PRODUCTION COMPANIES FOR THE EXCLUSIVE RIGHT
TO MAKE A DOCUMENTARY FILM ABOUT ME?" TO WHICH
BRINDLE REPLIED, "YES, I THINK THEY ARE AWARE THAT
YOU'VE HAD AN OFFER FROM CREAM... I KNOW WHO THEY ARE,
BECAUSE I'VE SPOKEN TO THEM ALL IN REGULAR MEETINGS,
BUT THEY HAVE HIRED RAW TELEVISION TO MAKE THE
DOCUMENTARY. WE ARE THE PEOPLE MAKING IT."
72.) ON 04/06/21, PLAINTIFF CALLED ROB MILLER VIA
SHB & RECORDED THE CALL, INCORPORATED BY REFERENCE
HEREIN. AT THE BEGINNING OF THE CALL, PLAINTIFF
CLEARLY STATED, "THIS CALL WILL BE RECORDED & MONIT-
ORED"; TO WHICH MILLER REPLIED, "OKAY. THAT'S FINE. I
COMPLETELY UNDERSTAND." PLAINTIFF ASKED MILLER IF
HE REMEMBERED THE CONTRACT PLAINTIFF SENT HIM, "THE
ONE FROM CREAM, DO YOU REMEMBER THAT CONTRACT?"
TO WHICH MILLER REPLIED, "YEAH, OF COURSE. YEAH, THE
ONE FROM CREAM. ABSOLUTELY, YEAH... I MEAN, I READ
THE CREAM CONTRACT, & I RESPONDED TO YOU BASED
ON MY FEELINGS ABOUT THE CREAM CONTRACT." PLAINTIFF
THEN ASKED, "HAVE YOU REVIEWED THE INFORMATION I SENT
AS PART OF OUR CONFIDENTIAL NEGOTIATIONS? THE SOUND
RECORDINGS, THE INTERVIEWS, MY LIFE STORY NARRATIVE;
HAVE YOU REVIEWED THAT?" TO WHICH MILLER REPLIED "YES.
VERY EARLY ON... SO, WHAT WOULD HAPPEN WITH THE

PEOPLE THAT... WE WANT PEOPLE WHO KNEW YOU BEFORE
THIS INCIDENT & BEFORE YOU WERE FAMOUS, WHO CAN
TALK ABOUT THE PERSON THAT SUPPLIED THE DATA.
THAT'S REALLY IMPORTANT FOR US, & SO ALL THE
PEOPLE THAT YOU'VE SPOKEN TO, THAT YOU SUGGESTED
THAT WE SPEAK TO, WE WILL SPEAK TO FOR RESEARCH
PURPOSES" TO WHICH PLAINTIFF EMPHATICALLY STATED,
" IF WE WERE TO SIGN A CONTRACT." PLAINTIFF THEN
ASKED, " IS NETFLIX AWARE THAT YOU'RE MAKING THIS FILM?"
TO WHICH MILLER REPLIED, "NETFLIX? THEY'VE COMMISSIONED
US TO MAKE THE FILM, YEAH... WE TALK TO ~~SOMEBODY~~
NETFLIX EVERY FEW WEEKS. I MEAN, RAW MAKES A
LOT OF THINGS FOR NETFLIX." PLAINTIFF THEN ASKED,
"THEY SELL A SUBSCRIPTION SERVICE WHERE YOU HAVE TO
BUY A SUBSCRIPTION IN ORDER TO WATCH THE FILM,
RIGHT?... AM I TO UNDERSTAND THAT YOU CANNOT
VIEW THE FILM UNLESS YOU PAY FOR A SUBSCRIPTION?"
TO WHICH MILLER REPLIED, "NETFLIX, YOU PAY FOR VIEW,
THAT'S THEIR BUSINESS MODEL. PEOPLE SUBSCRIBE TO
NETFLIX & THEN HAVE ACCESS TO THEIR CONTENT."
PLAINTIFF THEN SAID TO MILLER, "I'M LETTING YOU KNOW
THAT RIGHT NOW I HAVE ECONOMIC RELATIONS WITH A
CANADIAN CORPORATION THAT HAS OFFERED ME MONEY
FOR MY CANADIAN INTELLECTUAL PROPERTY. & RIGHT

NOW YOUR FILM IS INTERFERING WITH THAT." MILLER
THEN MISREPRESENTED TO PLAINTIFF VIA TRANSMISSION
BY WIRE THAT "ANY MONEY THAT WAS PAID TO YOU
WOULD BE INTERCEPTED BY THE AUTHORITIES & THEN
REDISTRIBUTED TO GALEY'S ESTATE". KNOWING THE
FALSITY OF THE MISREPRESENTATION AT THE TIME IT
WAS MADE; INTENDING TO INDUCE PLAINTIFF TO RELY ON
THE MISREPRESENTATION TO HIS LEGAL DETRIMENT IN
SIGNING A RELEASE: WHICH FRAUD WAS ATTEMPTED TO
EXTORT PLAINTIFF THROUGH FEAR OF THREATENED LEGAL
ACTION INTO SIGNING A RELEASE, & TO OBTAIN BENEFITS
& PROPERTY THEREBY, IN INTERFERENCE WITH INTERSTATE
OR FOREIGN COMMERCE. PLAINTIFF THEN STATED, "YOU
HAVE NO PERMISSION FROM ME, IMPLIED OR OTHERWISE,
TO USE MY PERSONALITY OR ANY OTHER PART OF MY
LIFE STORY"; SPECIFICALLY REFERRING TO THE LIFE STORY
MATERIAL & INFORMATION THEREOF CONVEYED TO
RAWTV DURING CONFIDENTIAL NEGOTIATIONS, DESCRIBED IN
"59" & "60" ABOVE.
73.) ON APRIL 6, 2021 AT 9:02AM EST, FRANK
MESSAGED PLAINTIFF VIA JPAY REGARDING THE ORAL
CONTRACT IN "69"; & STATED IN REFERENCE TO "69",
"THIS WOULDN'T CHANGE WHAT WE'VE ALREADY AGREED TO
IN THE PRODUCTION CONTRACT."

74.) ON APRIL 17, 2021, PLAINTIFF CALLED FRANK VIA SHB, & RECORDED THE CONVERSATION, INCORPORATED BY REFERENCE HEREIN. AT THE BEGINNING OF THE CALL, PLAINTIFF STATED, "THIS CALL IS RECORDED & MONITORED"; TO WHICH FRANK STATED "OKAY." PLAINTIFF THEN ASKED, "COULD I PROVIDE A RECORDING TO RAWTV THAT THEY USE IN THEIR FILM, AS LONG AS THEY ONLY USE IT IN DEVELOPMENT, & DON'T USE MY ACTUAL VOICE?" FRANK REPLIED, "I WOULDN'T, IF I WERE YOU, TO BE BLUNT." PLAINTIFF ASKED, "THAT WOULD VIOLATE EXCLUSIVITY?"; FRANK REPLIED, "YEAH ... BASICALLY, AS LONG AS YOU DON'T APPEAR IN THEIR FILM, WE'RE ON SOLID GROUND. AS LONG AS YOUR VOICE DOESN'T APPEAR IN THEIR FILM, WE'RE ON SOLID GROUND." PLAINTIFF THEN CLARIFIED THAT, "THIS IS SOMETHING WHERE MY LIFE STORY, UP UNTIL THAT POINT, WAS WORTH MONEY, & SO YOU'RE COMPENSATING ME FOR THAT, BUT ME RECOUNTING ANY OF THE EVENTS SURROUNDING THE INCIDENT THAT I WAS CHARGED FOR, I CAN'T BE COMPENSATED FOR THAT PART. SO I NEED FOR US TO SEPERATE THAT PART... & THAT IS THE UNDERSTANDING OF THE CONTRACT." TO WHICH FRANK REPLIED, "YEP." FRANK THEN STATED, "WE WORK WITH BROADCASTERS WHO, GENERALLY SPEAKING, HAVE INTERNATIONAL

REACH. SO I MEAN, WE'LL BE PITCHING THE PEACOCKS, WHICH IS OWNED BY NBC. WE'RE PITCHING THE SUNDANCE'S, WHICH HAS A DISTRIBUTION NETWORK AROUND THE WORLD. WE'LL BE PITCHING THE HULU'S, WHICH IS OWNED BY DISNEY, WHICH HAS A DISTRIBUTION AROUND THE WORLD. WE'LL BE PITCHING SHOWTIME, WHICH HAS VARIOUS WAYS OF DISTRIBUTING THROUGHOUT THE WORLD... WE'RE NOT JUST A CANADIAN BROADCASTER-CENTRIC COMPANY. WE'RE LOOKING FOR WORLDWIDE DISTRIBUTION."

75) PLAINTIFF SPENT A FULL WEEK DISCUSSING THE MATTER WITH HIS COUNSEL SHB & DELIBERATING. AS A RESULT OF THIS, BASED ON NRSR'S CONDUCT IN "59" - "62" & "70" - "72"; & HIS DELIBERATIONS THEREON IN LIGHT OF THE CONVERSATION IN "74"; PLAINTIFF MESSAGED FRANK VIA JPAY ON APRIL 24, 2021 AT 4:34 PM: "I REGRET TO INFORM YOU THAT A THIRD PARTY HAS MADE IT IMPOSSIBLE FOR ME TO PERFORM THE CONTRACT." FRANK MESSAGED BACK ON 04/25/21 AT 9:00 PM: "NO IDEA WHAT THIS MEANS? PLEASE EXPLAIN..." PLAINTIFF AGAIN MESSAGED FRANK ON 4/26/21 AT 4:38PM: "WHAT I MEAN IS, THERE IS A 3RD PARTY WHO IS MAKING IT IMPOSSIBLE FOR ME TO FULFILL MY END OF THE BARGAIN. I CAN'T PROVIDE MY HALF OF THE AGREEMENT, SO

WE CAN'T GO AHEAD WITH THIS." TO WHICH FRANK REPLIED ON 4/26/21 AT 5:56PM: "I SEE... WELL BEST OF LUCK THEN KAI..."

76.) IT IS BELIEVED, ON PLAINTIFF'S INFORMATION AS DESCRIBED IN "70"-"72", THAT ON OR ABOUT 02/04/21, IN FURTHERANCE OF THE CONSPIRACY & ENTERPRISE IN "61", NETFLIX SENT $1,000,000.⁰⁰ TO RAW TV TO MAINTAIN OR INVEST IN THE ENTERPRISE NRSR & THE ACTIVITIES THEREOF, WHICH ARE A PATTERN OF RACKETEERING ACTIVITIES.

<u>NETFLIX & RAW TV'S PROCUREMENTS BY FRAUD</u>

77.) ON OR ABOUT 09/05/21, IN FURTHERANCE OF THE ENTERPRISE IN "61", NRSR OBTAINED THROUGH INFORMATION GLEANED FROM PLAINTIFF THROUGH THE WIRE FRAUD OF NRSR DESCRIBED IN "59"; & IN BREACH OF CONFIDENCE &/OR IMPLIED-IN-FACT CONTRACT DESCRIBED IN "59" IN THE ALTERNATIVE; COPIES OF THE MOTION 39 PICTURE WORKS DESCRIBED IN "6", "11", "24" "28"-"37", "40" "42", & "43", & LITERARY WORKS, PHOTOGRAPHS, & VIDEOS IN "40"

78.) ON OR ABOUT 09/05/21, IN FURTHERANCE OF THE ENTERPRISE IN "61", NRSR ENGAGED IN MONETARY TRANSACTIONS INVOLVING THE CRIMINALLY-DERIVED PROPERTY DESCRIBED IN "23", "24", "38", "43", & "50"-"51". TO WIT: NRSR EXCHANGED MONEYS OR OTHER BENEFITS WHICH

AMOUNT & TYPE WILL BE MADE CERTAIN THROUGH DISCOVERY, TO BM, JKL, BMJKL, JANE DOE 4, EBW, & F55 FOR EACH TO TRANSFER OR OTHERWISE PROCURE MOTION PICTURE WORKS &/OR TITLES OR RIGHTS THERETO WHICH WERE DERIVED FROM UNLAWFUL ACTIVITY CONDUCTED IN FURTHERANCE OF EACH RESPECTIVE ENTERPRISE & CONSPIRACY AS DESCRIBED IN "14", "15", "38", "41", & "45"-"46". NRSB HAD KNOWLEDGE & WAS AWARE OF THE CRIMINALLY-DERIVED NATURE OF THE PROPERTY AT THE TIME IT WAS OBTAINED. BM, JKL, BMJKL, JANE DOE 4, EBW, & F55 EACH RECEIVED SAID MONEYS OR BENEFITS & TRANSFERRED OR OTHERWISE PROCURED SAID CRIMINALLY-DERIVED PROPERTY.

PRODUCTION OF THE HATCHET WIELDING HITCHHIKER

79.) ON OR ABOUT SEPTEMBER 5, 2021, NRSB BEGAN FILMING "THE HATCHET WIELDING HITCHHIKER" ("THWH"). ON THIS DATE, COLETTE CAMDEN CONFERRED WITH NRSB, HAD A MEETING OF THE MINDS & SHARED INTENT THEREWITH, & AGREED WITH NRSB TO ACT IN CONCERT WITH NRSB PURSUANT TO THE SCHEME IN "61", & TO BECOME PART OF NRSB'S ENTERPRISE (HEREINAFTER "NRSB" ALSO REFERS TO COLETTE CAMDEN).

80.) ON OR ABOUT SEPTEMBER 5, 2021, JESSOB STATED WHILE BEING FILMED, IN REGARDS TO PLAINTIFF WHEN

PLAINTIFF PERFORMED ON CAMERA AS DESCRIBED IN "11" THAT PLAINTIFF "PERFORMED WELL, SUNG WELL, THE GUITAR PLAYING WAS GREAT, YOU KNOW. HE EVEN LIKE, PERFORMS IT, YOU KNOW?." & ABOUT PLAINTIFF IN GENERAL, REGARDING PLAINTIFF'S PROFESSION AS DESCRIBED IN "5", THAT "HE'S A GREAT PERFORMER, & HE'S TALENTED AS HECK." IN SO STATING, JESSOB ADMITTED PLAINTIFF'S PERFORMANCE WAS A CREATIVE WORK WHICH PLAINTIFF WAS THE SOLE AUTHOR OF, & WHICH THE MOTION PICTURE WORK WAS DERIVATIVE OF, IN "6" & "11". PLAINTIFF CONCEDES THAT JESSOB HIMSELF IS INNOCENT OF ANY WRONGDOING.

81.) ON OR ABOUT SEPTEMBER 5, 2021 TERRY WOODS STATED WHILE BEING FILMED, THAT PLAINTIFF'S COMMERCIAL VALUE FOR ENDORSEMENTS BY HIS NAME, LIKENESS, VOICE, MARKS, & PERFORMANCE SERVICES WAS APPARENT IMMEDIATELY SUBSEQUENT TO "6": "KAI GOT RATINGS. IT EQUALED RATINGS BECAUSE HE WAS FRESH & INTERESTING. PEOPLE LIKED HIM, & RATINGS EQUAL MONEY. PLAINTIFF CONCEDES THAT TERRY HIMSELF IS INNOCENT OF ANY WRONGDOING.

82.) ON OR ABOUT SEPTEMBER 5, 2021, ALEX AGUIRRE STATED WHILE BEING FILMED, THAT PLAINTIFF EXERCISED ARTISTIC CONTROL, DIRECTION,

& SUPERINTENDENCE OVER THE MOTION PICTURE WORK
DESCRIBED IN "11"; "WE DID THE INTERVIEW FIRST,
& THEN WE DID WHAT'S CALLED 'B-ROLL': 'SO, WHAT
DO YOU THINK WOULD BE A GOOD SHOT OF YOU?' & HE
SAID 'THERE'S A MUSIC SHOP OVER HERE. I CAN
GRAB ONE OF THE GUITARS & PLAY A SONG.' WE
WERE LIKE, 'SWEET.'" AGUIRRE THEN ADMITTED
THAT PLAINTIFF'S NAME, LIKENESS, VOICE, MARKS, &
PERFORMANCE SERVICES HAD ACHIEVED WIDE-SPREAD
RECOGNITION IN COMMERCE; "KAI, HE'S TRYING TO
SAY YOU'RE FAMOUS NOW." AGUIRRE THEN DEFAMED
PLAINTIFF BY SAYING, "KNOWING WHO KAI WAS, PART
OF ME WONDERED WHAT ACTUALLY HAPPENED THAT
DAY IN FRESNO. WAS THAT ACTUALLY HIM SAVING
THE DAY? WAS THIS HIM BEING THE HERO, OR NOT?"
WHERE THE IMPLICATION IS A PROVABLY FALSE STATEMENT
OF FACT THAT AGUIRRE HAD KNOWLEDGE IMPUTING
CRIMINAL CONDUCT TO PLAINTIFF IN THE INCIDENT
ON 02/01/13; WHEREAS THE TRUTH OF THE MATTER
IS PLEADED IN "2" & "3"; & SHOWS THAT PLAINTIFF
WAS & IS INNOCENT IN THAT INCIDENT & JUSTIFIED IN
HIS USE OF FORCE TO DEFEND ANOTHER.
83.) ON OR ABOUT SEPTEMBER 5, 2021, LISA SAMSKY
STATED WHILE BEING FILMED THAT SHE FORMED THE

INTENT WAS TO ENTICE PLAINTIFF INTO PERFORMING ON CAMERA IN EXCHANGE FOR MARIJUANA: "MY FIRST MOVE WAS GOING ON TO FACEBOOK, & KAI HAD A PROFILE, SO I ADDED HIM & SENT HIM A MESSAGE THAT, YOU KNOW, I WANTED TO FIND HIM... I COULD TURN AROUND & THROW A DART & APPROACH ANYBODY & ENTICE THEM TO WANNA BE A REALITY STAR... JUST GO BACK TO HIM & TELL HIM WE'LL SEND HIM A WHOLE LIMO FILLED WITH WEED." SAMSKY THEN OPENLY ADMITTED ON CAMERA THAT SHE HAD ASSUMED A FIDUCIARY DUTY TOWARDS PLAINTIFF AS HIS GUARDIAN DURING HIS EXTREME & CONSTANT INTOXICATION: "I DON'T KNOW WHY I TOOK IT UPON MYSELF TO THINK 'I'M RESPONSIBLE FOR HIM. I'M HIS BABYSITTER & I NEED TO MAKE SURE THAT HE GETS ON THE KIMMEL SHOW.'"

84.) ON OR ABOUT SEPTEMBER 5, 2021, BRAD MULCAHY STATED WHILE BEING FILMED THAT HE CONSPIRED TO TRANSPORT PLAINTIFF IN VIOLATION OF 8 U.S.C. 1324: "SO SOMEBODY HAS TO PUT HANDS ON THIS GUY, THEN DRIVE HIM 500 MILES." MULCAHY THEN ADMITS TO ACCEPTING LISA SAMSKY'S TRANSFER OF FIDUCIARY DUTY: "IT'S 8 O'CLOCK & I'M STANDING OUTSIDE THE ROOSEVELT HOTEL ON HOLLYWOOD BOULEVARD. LISA PULLS UP WITH KAI, & I SEE

64

LISA FOR THE FIRST TIME, & I SEE KAI FOR THE
FIRST TIME, AND LISA LOOKS DOWN, & SHE SAYS,
"CAN YOU WATCH HIM FOR A MINUTE? I'M GONNA
GO VALET THE CAR." WHICH IS JUST STRAIGHT AROUND
THE CORNER. AND I SAY "NO PROBLEM," AND KAI,
HE GETS OUT OF THE CAR & IT'S ME & HIM ON
HOLLYWOOD BOULEVARD. AND AFTER ALL THESE
DAYS, PEOPLE ARE RECOGNIZING HIM ALMOST IMMED-
IATELY. PEOPLE ARE DRIVING BY, & THEY'RE SAYING
'SMASH, SMASH, SMASH!' SO I'M JUST STANDING THERE.
I'M NOT WATCHING HIM. HE'S AN ADULT. LISA COMES
BACK AROUND THE CORNER, & I COULD SEE HER, AND
SHE LOOKS AT ME & SHE STOPS. AND HE'S URINATING
ON JULIO IGLESIAS'S STAR. AND HER FACE WAS LIKE,
'I WAS JUST WITH THIS GUY FOR 26 HOURS, YOU
COULDN'T DO 5 MINUTES?'" MULCAHY THEN DEFAMED
PLAINTIFF BY SAYING "HITTING SOMEONE IN THE HEAD
WITH A HATCHET 3 TIMES, BLUNT SIDE OR NOT, IS
VIOLENT. AND YET, BECAUSE OF HIS DEMEANOR, FOR
ME, IT GOT CLOUDED. AND ALL I SAW WAS THE KIND
KAI. THE VIOLENT KAI, WHO SHOWED HIMSELF TO ME
RIGHT THERE, I DIDN'T SEE IT."; IN SPECIFIC REGARDS
TO PLAINTIFF'S ACTIONS IN THE INCIDENT ON 02/01/13
IN FRESNO; WHERE THE IMPLICATION WAS THE PROVABLY

65

FALSE STATEMENT OF FACT THAT PLAINTIFF WAS CRIMINALLY CULPABLE IN THE INCIDENT, COMMITTING A VIOLENT ACT WITH "UNKIND" INTENT OR MENS REA & "HITTING SOMEONE IN THE HEAD WITH A HATCHET 3 TIMES" AS AN ACT OF PURE VIOLENCE WITHOUT JUSTIFICATION. WHEREAS, THE TRUTH OF THE MATTER IS PLEADED IN "2" & "3"; SHOWING THAT PLAINTIFF USED JUSTIFIED FORCE TO STOP AN ACT OF VIOLENCE, & WAS MOTIVATED BY KIND, NOT VIOLENT, INTENT! DEFENSE OF ANOTHER AGAINST AN ACT THAT WAS VIOLENT AS A MATTER OF RECORD.

85.) ON OR ABOUT SEPTEMBER 5, 2021, JOHN DOE AKA "JR" STATED WHILE BEING FILMED THAT HE KNOWINGLY INDUCED PLAINTIFF TO SIGN A CONTRACT HE COULDN'T UNDERSTAND; WHILE HE WAS TOO INTOXICATED TO SPELL HIS OWN NAME; THINKING HE WAS ON A "ONE-OFF" "THING" FOR JIMMY KIMMEL HIMSELF; "MY INITIAL IMPRESSION WAS 'OH MY GOD, HE SMELLED OF ALCOHOL. THIS GUY WAS IN-TOX-I-CATED.~ KIMMEL'S GONNA DO THIS THING, THAT'LL JUST BE A ONE-OFF. WHAT WE NEED TO MAKE SURE THAT WE DO IS, BEFORE ANYBODY ELSE IN HOLLYWOOD CAN GET THEIR GRUBBY HANDS ON HIM, HERE'S THE CONTRACT, SIGN HERE. AND I REMEMBER THAT HE SIGNED IT IN HIEROGLYPHICS. IT TOOK HIM TEN MINUTES JUST TO SIGN HIS NAME, & IT WAS JUST GIBBERISH.

66

THAT WAS HIS SIGNATURE AGREEING TO BE ON THE SHOW,
SO THEORETICALLY, I GUESS WE HAD 'OUR DEAL'. MISSION
ACCOMPLISHED." JR THEN CAST PLAINTIFF IN A FALSE
LIGHT, FALSELY STATING THAT PLAINTIFF BRANDISHED A
DEADLY WEAPON ON A PUBLIC SIDEWALK: "WE WERE
OUT ON THE SIDEWALK, & HE TOOK OFF RUNNING
AHEAD OF US, & HE PULLED OUT A HUGE KNIFE, & TRIED
TO THROW IT INTO THE GROUND." WHEREAS THE TRUTH
OF THE MATTER IS THAT PLAINTIFF PULLED HIS HARMONICA,
WHICH WASN'T EVEN ALL THAT BIG, & THREW IT ONTO
THE WALK OF FAME SIDEWALK; BECAUSE HE WAS DRUNK
& HIGH ON LSD & MARIJUANA. JR ALSO DEFAMED
PLAINTIFF BY SAYING, "HE ALSO JUST MADE THE NEWS
FOR BLUDGEONING SOMEBODY OVER THE HEAD WITH A
DEADLY WEAPON"; IMPLYING THE PROVABLY FALSE STATE-
MENT OF FACT THAT PLAINTIFF WAS CULPABLE OF THE
CRIMINAL ACT OF ASSAULT WITH A DEADLY WEAPON;
WHEREAS THE TRUTH OF THE MATTER IS PLEADED IN "2" & "3",
SHOWING THAT PLAINTIFF USED JUSTIFIED FORCE IN DEFENSE
OF ANOTHER, FOR WHICH HE WAS INNOCENT OF ANY WRONGDOING.
86.) ON OR ABOUT SEPTEMBER 8, 2021 GABRIEL
FRANCISCO STATED WHILE BEING FILMED THAT HE
CONSPIRED WITH TONY MARTIN TO "KILL" PLAINTIFF'S REPUT-
ATION BECAUSE HE "WANTED KAI'S CROWD.": "I WAS ASKED,

'DO YOU WANT TO DO A SHOW WITH KAI?"... WE SAID 'YES' BECAUSE WE WANTED KAI'S CROWD. WE WANTED WHO WAS GOING TO COME OUT TO SEE KAI, & THEN WE WANTED TO KILL IT & WIN THEM OVER. I MEAN, THAT'S WHAT YOU DO. IT'S LIKE ROCK BAND: 'YOU MADE 20 FANS TONIGHT, YOU MADE 50 FANS.'" FRANCISCO THEN DEFAMED PLAINTIFF BY STATING, "WE WERE DOING SOUNDCHECK & HE WAS TALKING ABOUT THAT DAY. THE DAY THAT HE HIT THE MAN ON THE HEAD WITH A HATCHET. AND IN KAI'S WORDS, HE'S BRAGGING, HE SAYS 'OH MAN, YOU KNOW, THIS GUY PICKS ME UP & I OFFER HIM A JOINT, BUT WHAT HE DIDN'T KNOW WAS THAT IT WAS LACED, MAN! AND IT WAS,... HE STARTED LISTING ALL THESE DRUGS & I DON'T EVEN KNOW WHAT THEY ARE. BUT WHAT KAI EXPLICITLY TOLD ME IS THAT HE HANDED THIS MAN A LACED JOINT, & THEN KAI PROCEEDS TO TELL ME, "THEN HE STARTS FLIPPING OUT OVER NOTHING CAUSE HE CAN'T EVEN HANDLE HIS SHIT! AND HE'S LAUGHING, & I'M HORRIFIED, & HE'S TELLING A GROUP OF PEOPLE & THEY'RE ALL LAUGHING. NO ONE'S REALLY LISTENING TO WHAT HE'S SAYING. AND I'M STANDING THERE, & I'M THINKING, 'OH MY GOD, KAI JUST CONFESSED SOMETHING HUGE, HE DRUGGED THIS GUY.' THAT'S LIKE STARTING A FIRE, & THEN PUTTING THE FIRE OUT & BEING CALLED A HERO.

So I UNDERSTAND THAT THE POLICE HAVE TESTED THE MARIJUANA, & THEY DID TOXICOLOGY ON THE DRIVER. BUT HONESTLY, IF YOU THINK ABOUT THIS, WHAT IF THERE'S SOMETHING THAT JUST DIDN'T SHOW UP ON THE TEST. AND THEN HE WAS TALKING ABOUT LIFE & HAVING A POSITIVE ATTITUDE, & 'YOU JUST GOTTA GO THROUGH, MAN!' AND IT'S VERY HIPPIE. AND THEN, OUT OF NOWHERE, HE SAID, 'UNLESS SOME OLD MAN FUCKS YOU IN THE ASS, & YOU HAVE TO KEEP IT REAL & TAKE HIM OUT!' AND IT WAS SO BIZARRE. AND THEN HE, LIKE A SWITCH, WENT BACK TO 'EVERYTHING'S FINE'; & EVERYBODY JUST KINDA ACCEPTED THAT. AND THAT WAS ANOTHER ONE OF THOSE THINGS WHERE I THOUGHT, 'WHAT JUST HAPPENED?' AND I ~~DO..~~ WENT INSIDE & I WAS KIND OF SHAKEN & GOING, "I HAVE TO PLAY THIS SHOW NOW WITH THIS KNOWLEDGE.' & OUR DRUMMER'S MOM, WHO'S A PHOTOGRAPHER, SAYS 'GABE, GET NEXT TO KAI! COME TAKE A PICTURE.' & I THOUGHT, 'OH MY GOD. I DON'T WANT TO BE SEEN WITH THIS MAN WHEN ALL OF THIS COMES OUT,' CAUSE I WAS THINKING 'THIS IS GONNA COME OUT, PEOPLE ARE GONNA... THIS IS GONNA BE HUGE.' & IT NEVER DID." WHERE THE IMPLICATIONS ARE THE PROVABLY FALSE STATEMENTS THAT MCBRIDE, AN "OLD MAN", "FUCK[ED PLAINTIFF] IN THE

ASS" & FOR THAT REASON PLAINTIFF OFFERED MCBRIDE A
"LACED JOINT" THAT HAD NUMEROUS DRUGS OTHER THAN
MARIJUANA SURREPTITIOUSLY PLACED THEREIN, DELIBERATELY
TO INCITE MCBRIDE'S CRIMINAL ACT, & THEREAFTER
TO COMMIT A VIOLENT CRIMINAL ACT AGAINST MCBRIDE,
WHEREAS THE TRUTH OF THE EXPLICIT SLANDER, NAMELY
ACCUSING PLAINTIFF OF SAYING ANY SUCH THINGS AT ALL TO
FRANCISCO, IS THAT FRANCISCO FABRICATED HIS CLAIMS ABOUT
A LACED JOINT & ABOUT "SOME OLD MAN FUCKS YOU IN THE
ASS"; PLAINTIFF NEVER SAID ANY SUCH THING. THE ONLY THING
PLAINTIFF SAID TO THE CROWD OF PEOPLE, WHO WOULD SURELY HAVE
BLOWN UP THE INTERNET IF PLAINTIFF HAD ACTUALLY SAID THOSE
THINGS, WAS TRUTHFULLY PLEADED IN "49" ABOVE. THE TRUTH
OF THE AFORE DESCRIBED IMPLICATIONS ARE PLEADED IN
"2" & "3" ABOVE, & THAT IT IS A MATTER OF UNDISPUTED
FACT IN PEOPLE V. MCBRIDE, SUPRA, THAT THERE WAS
NEVER ANY SEXUAL CONTACT WHATSOEVER BETWEEN PLAIN-
TIFF & MCBRIDE; & THAT THERE WAS NOTHING BUT
THC, THE ACTIVE INGREDIENT IN MARIJUANA, IN EITHER
THE JOINT OR MCBRIDE'S BLOOD STREAM IMMEDIATELY
AFTER MCBRIDE ATTACKED PEOPLE; & THAT MCBRIDE HAD
BEEN FLORIDLY PSYCHOTIC FOR DAYS PRIOR TO EVER
MEETING PLAINTIFF, & WITHOUT ANY DRUGS, FRANCISCO
ALSO IMPLIES THAT PLAINTIFF COMMITTED PERJURY AT

MCBRIDE'S ARRAIGNMENT, WHICH IS PROVEN FALSE BY
TOXICOLOGY REPORTS, LABORATORY ANALYSIS OF THE PLANT
MATERIAL IN THE JOINT, & FACTS STIPULATED TO BY
BOTH PARTIES THAT THERE WAS NEVER ANY SEXUAL
CONTACT WHATSOEVER BETWEEN PLAINTIFF & MCBRIDE.
87.) ON OR ABOUT SEPTEMBER 8, 2021, JEFF STRICKER
STATED WHILE BEING FILMED THE PROVABLY FALSE
DEFAMATION THAT PLAINTIFF HAD CONSPIRED WITH &
DELIBERATELY INCITED MCBRIDE TO COMMIT A VIOLENT
CRIMINAL ACT, & WAS GUILTY AS A COCONSPIRATOR
FOR THE VIOLENT CRIMINAL ACTS ACTUALLY COMMITTED
BY MCBRIDE: "KAI WAS ASKED IF HE ROLLED A JOINT
WITH JETT MCBRIDE. KAI SAID HE DID, & IN MY
INTERVIEW WITH JETT, HE WAS SUGGESTING THAT KAI
MADE THE ASSUMPTION THAT THEY WERE BOTH GHOSTS
AFTER THEY WERE SMOKING THEIR MARIJUANA. AND
KAI SAID, 'I BET WE COULD DRIVE RIGHT THROUGH THAT
TRUCK RIGHT NOW, & NOBODY WOULD EVEN SEE US.' HE'S
NOT PERFECTLY CLEAN IN THIS INCIDENT, HE'S BEEN MADE
OUT TO BE A HERO, UM, WHAT HE DID TO STOP HIM
FROM ATTACKING TONYA WAS COMMENDABLE; BUT HE
DOES HAVE SOME CULPABILITY IN THIS"; & "HE WAS IN
THE CAR WHEN THEY CRASHED & INJURED RAYSHAWN NEELY,"
WHEREAS THE TRUTH OF THE MATTER IS THAT PLAINTIFF

71

NEVER SAID THE QUOTE STRICHER ATTRIBUTED TO HIM,
EITHER VERBATIM OR IN ANY OTHER FORM. THE TRUTH
IS PLEADED IN "2"; & SHOWS THAT BOTH STRICHER &
MCBRIDE TESTIFIED THAT MCBRIDE ADMITTED TO
INTENTIONALLY TRYING TO KILL RAYSHAWN BECAUSE HE
WAS "ILLUMINATI"; & MCBRIDE TESTIFIED TO HAVING
HIS FLORIDLY PSYCHOTIC "ILLUMINATI" DELUSIONS LONG
BEFORE EVER MEETING PLAINTIFF; & 4 EYEWITNESSES
TESTIFIED THAT, PRIOR TO BEING STRUCK IN THE HEAD,
MCBRIDE CONTINUED HIS VIOLENT ASSAULT ON RAYSHAWN
WHILE LOUDLY STATING HIS INTENTION WAS TO 'KILL ALL
NIGGERS.' MCBRIDE CONTINUED TO EXPRESS HIS DESIRE
TO KILL LOUDLY IN THE PRESENCE OF EYEWITNESSES,
NEVER ONCE EXPRESSING A BELIEF THAT THEY WERE
'GHOSTS'; BUT RATHER YELLING WHITE SUPREMACIST SLOGANS
& SCREAMING ~~I'LL KILL YOU A~~ 'I DID IT. GET OFF OF ME.
I'LL KILL YOU ALL.'
88.) ON OR ABOUT SEPTEMBER 8, 2021, TONY MARTIN
STATED WHILE BEING FILMED; THAT HE ADMITTEDLY
DIDN'T PAY PLAINTIFF FOR HIS PERFORMANCE AT FULTON 55,
WHILE ALSO MAKING FALSE LIGHT STATEMENTS OR DEFAMATORY
STATEMENTS ABOUT PLAINTIFF; " HE COMES IN FOR SOUNDCHECK,
& I FEEL LIKE I'M A GOOD JUDGE OF CHARACTER, I WAS
JUST PUT OFF BY HIM PRETTY QUICKLY. JUST THE WAY

HE TALKED, INTERACTED, & TREATED MY STAFF. HE'D WALK UP TO THE BAR ALMOST DEMANDING, LIKE, A FREE BEER! BECAUSE OF WHO HE WAS. AND IT'S LIKE, 'YEAH, YOU KNOW, WE DON'T DO THAT HERE.' BUT THEN HE WOULD GO OUT & GET SOMEBODY TO BUY HIS DRINKS FOR HIM... I ENDED UP KICKING HIM OUT AFTER HIS PERFORMANCE FOR URINATING ON ONE OF OUR BUSHES, IT'S LIKE, 'YEAH, YOU DON'T COME OUT & DISRESPECT OUR PLACE LIKE THIS.' HE BURNED BRIDGES." THE TRUTH OF THE MATTER IS PLEADED IN "45" - "52", & SHOWS THAT PEOPLE WHO PLAINTIFF INTERACTED WITH, INCLUDING FULTON 55 STAFF, WERE SO FOND OF HIM THAT THEY GLADLY BOUGHT HIM DRINKS AS A RESULT OF HIS INTERACTIONS WITH THEM. THE TRUTH OF THE MATTER IS ALSO THAT PLAINTIFF NEVER URINATED ON ANY BUSHES IN OR AROUND FULTON 55, NOR ANY PLACE IN OR AROUND FULTON 55 EXCEPT IN THE DESIGNATED URINALS IN THE BATHROOM THEREIN. TONY MARTIN MADE UP THAT FALSE CLAIM AS A RESULT OF PRESS COVERAGE OF PLAINTIFF URINATING ON JULIO IGLESIAS'S STAR ON THE WALK OF FAME WHILE TRIPPING ON LSD. MARTIN ALSO ADMITTED TO THE DEFAMATION CAMPAIGN OF F55 DESCRIBED IN "45" & "53" - "55"; "IT'S A BIG CITY, BUT IT HAS A SMALL-TOWN FEEL. IF YOU GET BURNED IN THIS TOWN, WORD SPREADS.

MY LAST WORDS WERE, 'GET THE FUCK OUTTA HERE.'
MARTIN ADMITS TO BEING MANAGER OF FULTON 55.
89.) IT IS BELIEVED ON PLAINTIFF'S INFORMATION FROM
JESSOB THAT THE FILMING IN "80" - "85" WAS PERFORMED &
PRODUCED BY NRSR AT OR AROUND LOS ANGELES, CA; &
THAT THE FILMING IN "86" - "88" WAS PERFORMED &
PRODUCED BY NRSR AT OR AROUND FRESNO, CA.
90.) IT IS BELIEVED ON PLAINTIFF'S INFORMATION FROM
JESSOB THAT RAWTV, IN FURTHERANCE OF NRSR,
ENGAGED IN MONETARY TRANSACTIONS BY TRANSFERRING
MONEYS TO OBTAIN THE CRIMINALLY-DERIVED
PROPERTY DESCRIBED IN: "18" FROM BM; "23" FROM BM;
"24" FROM BMJWL; "38" FROM JANE DOE 4; "43" FROM EBW;
& "50" & "51" FROM F55. NRSR WAS AWARE, & HAD KNOW-
LEDGE, OF THE CRIMINALLY-DERIVED NATURE OF THE
PROPERTY AT THE TIME THE TRANSACTIONS WERE MADE.
BM, BMJWL, JANE DOE 4, EBW, & F55 EACH ENGAGED IN
MONETARY TRANSACTIONS INVOLVING CRIMINALLY DERIVED
PROPERTY BY RECEIVING MONEYS FROM NRSR FOR THE
HERETOFORE SPECIFIED PROPERTY. THE TRANSFERRING &
RECEIVING WERE EACH DISTINCT VIOLATIONS OF 18 USC 1957.
THESE TRANSACTIONS ARE EACH & ALL BELIEVED TO
HAVE OCCURRED ON OR ABOUT 09/05/21; IN THE COURSE
OF INTERSTATE OR FOREIGN COMMERCE.

RAWTV'S PUBLICATION & TRANSFERS TO NETFLIX

91.) ON OR ABOUT JULY 9, 2021; PLAINTIFF MADE A LAST-DITCH EFFORT TO RE-INITIATE CONFIDENTIAL NEGOTIATIONS WITH RAWTV; BECAUSE OF HIS DESPERATE NEED TO HIRE A LAWYER FOR HIS CRIMINAL APPEAL. TO THIS END, HE SENT AN EMAIL VIA HIS FRIEND "GAGE REYNOLDS" TO SALLY BRINDLE, TO WHICH HE ATTACHED TWO MOTION PICTURE WORKS WHICH HE IS THE SOLE AUTHOR & COPYRIGHT OWNER OF. HE CLEARLY INDICATED THAT THE EMAIL & MOTION PICTURE WORKS WERE CONFIDENTIAL & THAT HE EXPECTED COMPENSATION FOR ANY USE THEREOF. THE TEXT OF THE EMAIL READ:

"SALLY,

IT'S ME, KAI. MY FRIEND IS HELPING ME GET YOU THESE VIDEOGRAMS, SINCE JPAY WON'T ALLOW THEM. IT'S NOT TOO LATE TO OFFER TO HELP ME PAY FOR MY LAWYER... WE COULD STILL WORK TOGETHER IF YOU DID. PLEASE LMK WHAT YOUR THOUGHTS ARE ABOUT MY VIDEO MESSAGES,

KIND REGARDS,

KAI

ENCL:

*NOTICE: THIS CONFIDENTIAL EMAIL & ITS ATTACHMENTS ARE PART OF NEGOTIATIONS BETWEEN THE SENDER & INTENDED RECIPIENT"

ON JULY 2, 2021 AT 5:29AM EST, SALLY BRINDLE HAD

75

SOLICITED THE MESSAGE & MOTION PICTURE WORKS, KNOWING
THAT PLAINTIFF EXPECTED COMPENSATION FOR ANY USE
THEREOF; UNDER TERMS HE CLEARLY SPECIFIED:
"DEAR KAI,
ALEX REPLIED TO YOU — & HE HAS BEEN CHECKING HIS
INBOX FOR THE VIDEOGRAM. NOTHING SO FAR.
ARE YOU ABLE TO RE-SEND IT TO HIM — & ME — PLEASE?
THANK YOU,
SALLY"

92.) ON OR ABOUT AUGUST 16, 2021, PLAINTIFF SENT LEGAL
NOTICES TO LISA SAMSKY & BUNIM-MURRAY, AS REPRES-
ENTED BY COUNSEL DEANNA NEWELL & CHRISTINA NICOLE PAEZ
& DANYA WASSEL. THESE NOTICES ARE INCORPORATED
BY REFERENCE HEREIN, & ATTACHED AS EXHIBIT A HERETO

93.) ON OR ABOUT AUGUST 16, 2021, PLAINTIFF SENT NOTICES
TO PRESERVE EVIDENCE FOR THIS LEGAL ACTION TO
RAW TV, ZACHARY FRANK, CREAM PRODUCTIONS, NETFLIX,
SALLY BRINDLE, ROBERT MILLER, & ALEXANDER MARENGO.
THESE NOTICES ARE INCORPORATED BY REFERENCE HEREIN,
& ATTACHED AS EXHIBIT B HERETO.

94.) ON OR ABOUT SEPTEMBER 7, 2021, PLAINTIFF SENT
NOTICES OF RESERVATIONS OF HIS RIGHTS & CLEAR &
EXPLICIT DECLINATIONS TO USE OF HIS CONFIDENTIAL INFORM-
ATION & MATERIALS, TO ROB MILLER, ALEX MARENGO, RAW TV,

NETFLIX, & SALLY BRINDLE. THESE NOTICES ARE INCORPORATED BY REFERENCE HEREIN, & ATTACHED AS EXHIBIT C HERETO.

95.) PLAINTIFF SENT THE NOTICES IN "92'-'94" BY WAY OF THE PRISON MAILING SYSTEM, VIA USPS REGULAR POST WITH FIRST-CLASS POSTAGE PREPAID. PLAINTIFF FILLED OUT POSTAGE REMITS, WHICH ARE KEPT ON FILE, AT THE NJ STATE PRISON. THE OUTGOING MAIL WAS LOGGED IN THE OFFICER'S LOGBOOK ON 6 RIGHT WING, WEST COMPOUND, NJSP, TRENTON, NJ. ON 08/26/21 AT 1:53PM EST, SALLY BRINDLE STATED TO PLAINTIFF VIA JPAY "WE HAVE RECEIVED YOUR LETTERS." NEITHER USPS NOR BRITISH MAIL REPORTED ANY DISRUPTIONS IN SERVICE DURING AUGUST NOR SEPTEMBER OF 2021.

96.) ON OR ABOUT MAY 5, 2022, RAWTV PUBLISHED "THE HATCHET WIELDING HITCHHIKER" To NETFLIX. IN DOING SO, RAWTV REPUBLISHED ALL DEFAMATORY, FALSE LIGHT, & MATERIALS PLEADED IN "82'-"88" ABOVE. RAWTV ALSO REPUBLISHED DEFAMATORY, OR IN THE ALTERNATIVE, FALSE LIGHT STATEMENTS ABOUT PLAINTIFF ACCUSING HIM OF ARSON WHEN HE WAS 13 YEARS OF AGE, FOR WHICH CANADIAN LAW WOULD CHARGE HIM WITH FELONY AS AN ADULT, BUT WHICH ACCUSATION IS PROVABLY FALSE: AS A PICTURE OF PLAINTIFF AT 13 YEARS OF AGE IS VISUALLY DEPICTED, JEREMY AUDIBLY

NARRATES; "THIS ONE TIME, HE TRIED TO START A FIRE IN HIS HOUSE. AND THEN, NOT LONG AFTER, HIS MOM DECIDED THAT SHE COULDN'T COPE WITH HIM ANYMORE. HE WAS 13. WHEN HE WENT TO BOSCO HOMES, WHICH IS A PLACE WHERE THEY TAKE TROUBLED TEENS, I GUESS, THAT, UM, GOT IN TROUBLE IN THEIR YOUTH & HAD NO HOME. OR JUST COME FROM FAMILIES THAT DIDN'T WANT THEM, I GUESS." WHEREAS, THE TRUTH OF THE MATTER IS THAT PLAINTIFF ATTEMPTED TO COMMIT SUICIDE AT 4 YEARS OF AGE; BY DRINKING A BOTTLE OF COUGH SYRUP, & LIGHTING A SLEEPING BAG ON FIRE: BECAUSE HIS PARENTS TOLD HIM HE "HAD A DEMON" & DESERVED TO "BURN IN HELL." THE TRUTH IS THAT PLAINTIFF WAS NEVER CULPABLE FOR ANY ACTS OF ARSON, MUCH LESS FELONY ARSON WHICH IS CHARGEABLE AS AN ADULT. THE TRUTH IS THAT PLAINTIFF WAS SADISTICALLY ABUSED AS A TODDLER & THOUGHT HELL WOULD BE A BETTER ALTERNATIVE; & THAT JEREMY HIMSELF TOLD HIM REGARDING THE COUGH SYRUP "DON'T DRINK THAT OR YOU'LL GO TO SLEEP & NEVER WAKE UP." AS PART OF RAWTV PUBLISHING THWH TO NETFLIX, RAW TV ENGAGED IN MONETARY TRANSACT-IONS INVOLVING CRIMINALLY-DERIVED PROPERTY DESCRIBED IN "23", "24", "38", "43", "50"-"51", & "77"; WHICH

PROPERTY RAWTV TRANSFERRED TO NETFLIX, & WHICH
NETFLIX THEREBY OBTAINED, IN EXCHANGE FOR NETFLIX
TRANSFERRING OF MONEY TO RAWTV; EACH OF WHICH
ACTS OF OBTAINING PROPERTY & RECEIVING MONEY WERE
DISTINCT ACTS CONSTITUTING VIOLATIONS OF 18 U.S.C.
1957 IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF
THE ENTERPRISE NRSR IN "61" & "79". AS PART OF RAWTV
PUBLISHING THWH TO NETFLIX, RAWTV ALSO MADE
THE VIDEOS DESCRIBED AS "MOTION PICTURE WORKS"
IN "91" INTO DERIVATIVE WORKS, COPIED & PUBLISHED
SAID VIDEOS WITHOUT PLAINTIFF'S CONSENT & WITHOUT
COMPENSATING PLAINTIFF PURSUANT TO THE EXPECTATION
IN "91".

97.) IT IS CUSTOMARY IN THE FILM INDUSTRY FOR A
PRODUCER OF CONTENT OR ARTIST TO SEND VIDEOS,
RECORDINGS, LITERARY WORKS, PHOTOGRAPHS, OR DEPICTIONS
OF PERFORMANCES SUCH AS MUSICAL COMPOSITIONS,
CHOREOGRAPHY, OR DRAMATIC WORKS; TO FILM
PRODUCTION COMPANIES OR OTHER MEDIA BUSINESSES
FOR APPRAISAL OR NEGOTIATIONS REGARDING SUCH WORKS,
IN THE EXPECTATION THAT THE PRODUCER OF CONTENT
OR ARTIST BE PAID COMMENSURATE WITH PUBLIC-RECOG-
NITION OF HIMSELF IF SUCH WORKS ARE USED IN A FILM,
ADVERTISEMENT, OR PRODUCTION OR BROADCAST OF ANY SORT,

98.) AS PART OF THE FILM DESCRIBED IN "96", NRSR HIRED AN ACTOR TO PORTRAY PLAINTIFF IN A FALSE LIGHT, JOHN DOE 10. THIS ACTOR WAS SPECIFICALLY DIRECTED BY NRSR TO ACT OUT A SCENE IN WHICH A HOTEL ROOM AT THE HOLLYWOOD ROOSEVELT HOTEL IS DESTROYED; WITH BROKEN LIGHT FIXTURES & THE SOUND OF BREAKING GLASS; & A VISUAL DEPICTION OF WHAT PURPORTS TO BE PLAINTIFF JUMPING ON & DAMAGING FURNITURE. THE IMPLICATION OF THIS SCENE IS THAT PLAINTIFF ENGAGED IN EXTENSIVE PROPERTY DAMAGE AGAINST THE HOLLYWOOD ROOSE- VELT HOTEL CONSTITUTING CRIMINAL VANDALISM OR DESTRUCTION OF PROPERTY. WHEREAS THE TRUTH IS THAT PLAINTIFF DID NOT ENGAGE IN ANY PROPERTY DAMAGE OR VANDALISM OF OR AT THE HOLLYWOOD ROOSEVELT HOTEL WHATSOEVER; & THE HOTEL ROOM HE WAS IN WAS LEFT UNSCATHED. ON PLAINTIFF'S INFORMATION & BELIEF, BOTH JOHN DOE 10 & NRSR HAD KNOWLEDGE OF THE FALSITY OF THIS IMPLIED STATEMENT OF FACT; OR A RECKLESS DISREGARD FOR THE TRUTH OF THE IMPLIED STATEMENT OF FACT; CONNOTED BY THIS SCENE AT THE TIME IT WAS MADE. JOHN DOE 10 ALSO PORTRAYED PLAINTIFF THROUGHOUT THWH WITHOUT PLAINTIFF'S CONSENT, MAKING A LIAR OUT OF BRINDLE IN "70".

## ADVERTISEMENTS BY NETFLIX

99.) ON OR ABOUT MAY 5, 2022, IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE ENTERPRISE NRSA IN "61"; NETFLIX BEGAN PRODUCING THE TRAILER FOR THWH. PRODUCTION WAS COMPLETED ON OR ABOUT DECEMBER 8, 2022, BASED ON PLAINTIFF'S INFORMATION & BELIEF.

100.) ON OR ABOUT DECEMBER 13, 2022, NETFLIX BEGAN DISPLAYING ADS DEPICTING PLAINTIFF'S FACE & LIKENESS; TOGETHER WITH THE WORDS "WATCH THE HATCHET WIELDING HITCHHIKER" IN HYPERLINK, WHICH WHEN CLICKED DIRECT WEB USERS TO THE NETFLIX SUBSCRIPTION SIGN-UP PAGE TO PURCHASE A SUBSCRIPTION FOR THE STREAMING SERVICE.

101.) ON OR ABOUT DECEMBER 13, 2022, NETFLIX BEGAN BROADCASTING A MOTION PICTURE WORK DERIVATIVE OF THWH & THE WORKS FROM WHICH THWH IS DERIVED ("THE TRAILER"). THE TRAILER BEGINS BY INTRODUCING PLAINTIFF AS "THE HERO" WHO SAVED A CROWD OF PEOPLE FROM A DOMESTIC TERRORIST ATTACK. THE NARRATIVE CLEARLY REFERS TO PLAINTIFF, USING HIS MONIKERS "KAI" & "THE HATCHET WIELDING HITCHHIKER" IN CONJUNCTION WITH PLAINTIFF'S IMAGE & VOICE. THE NARRATIVE INITIALLY FOCUSES ON PLAINTIFF'S ACTIONS IN SAVING A CROWD OF PEOPLE

81

DURING THE INCIDENT ON 02/01/13 IN FRESNO, CA.
ALEX AGUIRRE'S DEFAMATION OF PLAINTIFF DESCRIBED
IN "82" IS REPUBLISHED IN THE TRAILER IN CONJUNCTION
OF A VIDEO OF PLAINTIFF SHAKING HIS HEAD & LOOKING
DOWN AS AGUIRRE ASKS THE QUESTION "WHAT ACTUALLY
HAPPENED THAT DAY IN FRESNO? WAS THIS HIM BEING
THE HERO, OR NOT?" THE PHRASE "WHAT ACTUALLY
HAPPENED" WITH EMPHASIS ON "ACTUALLY" IMPLIES THAT
THE COURT RECORD OF WHAT HAPPENED & PLAINTIFF'S
ACCOUNT THEREOF IS FALSE. THE PHRASE "A PART OF
ME WONDERS" IS SUPERFLUOUS & HAS NO BEARING ON
THE UNDERLYING IMPLICATION OF A STATEMENT OF FACT.
TAKEN AS A WHOLE, AGUIRRE'S DEFAMATION & THE
ACCOMPANYING VISUAL DEPICTION OF INCONGRUENT BODY
LANGUAGE BY PLAINTIFF, CREATES THE FALSE INNUENDO
THAT PLAINTIFF WAS CULPABLE OF CRIMINAL ACTS IN
THE INCIDENT & COMMITTED PERJURY DURING THE
ARRAIGNMENT OF MCBRIDE. WHEREAS THE TRUTH OF
THE MATTER IS PLEADED IN "2" & "3", SHOWING THAT
PLAINTIFF WAS INNOCENT OF ANY WRONGDOING IN THE
INCIDENT; & THAT PLAINTIFF TRUTHFULLY ANSWERED ALL
QUESTIONS & TESTIFIED TRUTHFULLY DURING THE ARRAIGNMENT
OF MCBRIDE. BRAD MULCAHY'S DEFAMATION OF PLAINTIFF
DESCRIBED IN "84" IS REPUBLISHED IN THE TRAILER IN

82

CONJUNCTION WITH VISUAL DEPICTIONS OF PLAINTIFF
PANTOMIMING HIS USE OF FORCE, THEN SITTING
HANDCUFFED BEHIND VISIBLE CRIME SCENE TAPE;
AS MULCAHY NARRATES BEFOREHAND, "HITTING SOMEBODY
IN THE HEAD WITH A HATCHET 3 TIMES, ONE SIDE OR
NOT, IS VIOLENT." TAKEN AS A WHOLE, MULCAHY'S
DEFAMATION; & THE ACCOMPANYING VISUAL SEQUENCE
OF PLAINTIFF USING FORCE, THEN HANDCUFFED & UNDER
ARREST BEHIND CRIME SCENE TAPE; CREATES THE FALSE
INNUENDO THAT PLAINTIFF COMMITTED A VIOLENT
CRIMINAL ACT AGAINST MCBRIDE DURING THE INCIDENT.
WHEREAS THE TRUTH OF THE MATTER IS PLEADED IN
"2" & "3", SHOWING THAT PLAINTIFF WAS FULLY JUSTIFIED
IN HIS USE OF FORCE IN DEFENSE OF ANOTHER; & THAT
PLAINTIFF WAS INNOCENT OF ANY WRONGDOING IN THE
INCIDENT.

102.) NETFLIX'S CONDUCT IN "99" & "100" WAS IN FURTHERANCE
OF THE CONSPIRACY & ENTERPRISE NRSR IN "61" & "79"

THE HATCHET WIELDING HITCHHIKER FILM

103.) ON OR ABOUT JANUARY 10, 2023, NETFLIX, IN
FURTHERANCE OF THE CONSPIRACY & ENTERPRISE NRSR
IN "61" & "79", REPUBLISHED THE FILM "THE HATCHET
WIELDING HITCHHIKER" DESCRIBED IN "96" & BROADCAST
IT ON WWW.NETFLIX.COM & ALL OF NETFLIX'S PLATFORMS

AROUND THE WORLD. IN DOING SO, NETFLIX REPUBLISHED ALL DEFAMATORY, FALSE LIGHT, & OTHER MATERIALS PLEADED IN "82"-"88" & "96" ABOVE; & THE MOTION PICTURE WORKS OWNED BY PLAINTIFF DESCRIBED IN "91" & "96" WITHOUT PLAINTIFF'S PERMISSION NOR COMPENSATING PLAINTIFF. NETFLIX ALSO ENGAGED IN MONETARY TRANSACTIONS INVOLVING CRIMINALLY-DERIVED PROPERTY WITH CONCEDEDLY INNOCENT & UNKNOWING SUBSCRIBERS, WHO PAID NETFLIX A FEE FOR ITS STREAMING VIDEO SERVICE & TRANSFERRED MONEY TO NETFLIX IN EXCHANGE FOR NETFLIX TRANSFERRING THE RIGHT TO USE & DISPLAY THWH WHICH WAS DERIVED FROM THE CRIMINALLY-DERIVED PROPERTY DESCRIBED IN "23", "24", "38", "43", "50", "51", "77", & "78".

## LEGAL CLAIMS
### AGENCY

104.) DURING THE EVENTS OF "6"-"11", JESSOB REISBECK, TERRY WOODS, & ALEX AGUIRRE WERE EMPLOYEES & AGENTS OF KMPH FOX NEWS; ALTHOUGH PLAINTIFF CONCEDES THAT JESSOB & TERRY ARE INNOCENT OF ANY TORTIOUS CONDUCT.

105.) DURING THE EVENTS OF "14"-"27"; BOTH LISA SAMSKY & JENSEN RUFE WERE EMPLOYEES & AGENTS OF BUNIM MURRAY PRODUCTIONS; OR IN THE ALTERNATIVE, WERE ACTING UNDER THE APPARENT AUTHORITY OF BUNIM MURRAY PRODUCTIONS &/OR JIMMY KIMMEL

106.) DURING THE EVENTS OF "15"-"27"; BRAD MULCAHY WAS AN EMPLOYEE & AGENT OF JIMMY KIMMEL LIVE!.; OR IN THE ALTERNATIVE, WAS ACTING UNDER THE APPARENT AUTHORITY OF JIMMY KIMMEL LIVE!

107.) DURING THE EVENTS OF "41"-"44"; CARTER HARRIS WAS AN EMPLOYEE & AGENT OF EBAUMSWORLD; OR IN THE ALTERNATIVE, WAS UNDER THE APPARENT AUTHORITY ACTING OF EBAUMSWORLD

108.) DURING THE EVENTS OF "45"-"55", TONY MARTIN WAS AN EMPLOYEE & AGENT OF FULTON 55; OR IN THE ALTERNATIVE, WAS AN OFFICER & AGENT OF FULTON 55; OR IN THE ALTERNATIVE, WAS ACTING UNDER THE APPARENT AUTHORITY OF FULTON 55.

109.) DURING THE EVENTS OF "58"-"96"; SALLY BRINDLE, ROB MILLER, & COLETTE CAMDEN WERE EACH EMPLOYEES & AGENTS OF RAWTV; OR IN THE ALTERNATIVE, WERE ACTING UNDER THE APPARENT AUTHORITY OF RAWTV; & RAWTV, IN TURN, WAS AN EMPLOYEE & AGENT OF NETFLIX; OR IN THE ALTERNATIVE, WAS ACTING UNDER THE APPARENT AUTHORITY OF NETFLIX: & THUS, THROUGH CHAIN OF COMMAND, SALLY BRINDLE, ROB MILLER, & COLETTE CAMDEN WERE EACH EMPLOYEES & AGENTS OF NETFLIX; OR IN THE ALTER-NATIVE, WERE ACTING UNDER THE APPARENT AUTHORITY OF NETFLIX; AS BRINDLE ADMITS IN "71" ABOVE.

110.) THE ACTOR DESCRIBED IN "98" WAS AN EMPLOYEE &
AGENT OF RAWTV AT THE TIME OF HIS PERFORMANCE
IN THWH; & RAWTV WAS AN EMPLOYEE & AGENT
OF NETFLIX AT THE TIME OF HIS PERFORMANCE; OR
IN THE ALTERNATIVE, RAWTV WAS ACTING UNDER
THE APPARENT AUTHORITY OF NETFLIX AT THE TIME
OF HIS PERFORMANCE; & THUS, THROUGH CHAIN OF
COMMAND, THE ACTOR WAS AN EMPLOYEE & AGENT
OF NETFLIX; OR IN THE ALTERNATIVE, WAS ACTING
UNDER THE APPARENT AUTHORITY OF NETFLIX: AT
THE TIME OF HIS PERFORMANCE IN THWH.
111.) THE PRINCIPALS DESCRIBED IN "104"-"110" ARE BOUND
BY & LIABLE FOR THE CONDUCT OF THEIR AGENTS
AS DESCRIBED IN "104"-"110". PLAINTIFF CONCEDES THAT
JESSOB REISBECK & TERRY WOODS ARE INNOCENT OF
ANY TORTIOUS CONDUCT.

## BREACH OF CONFIDENCE

112.) LISA SAMSKY ADMITS IN "83" TO VOLUNTARILY
ASSUMING THE ROLE OF GUARDIAN OVER PLAINTIFF AS
PLEADED IN "18". THIS ROLE CREATED A FIDUCIARY
DUTY OF SAMSKY TO PLAINTIFF, IN WHICH SAMSKY OWED
PLAINTIFF A DUTY OF CONFIDENCE, WHICH WAS BILATERAL-
LY EXPECTED & UNDERSTOOD BY PLAINTIFF & SAMSKY AS
SAMSKY ADMITS IN "83". THE NOVEL & CONFIDENTIAL
INFORMATION CONVEYED BY PLAINTIFF TO BM, & SAMSKY
AS AGENT THEREOF, VERBALLY & THROUGH CONDUCT AS
DESCRIBED IN "18"-"20" & "22"-"23"; WAS EXPRESSLY
PROHIBITED FROM DISCLOSURE BY PLAINTIFF'S NOTICE TO BM
DESCRIBED IN "92"; BUT WAS NONETHELESS DISCLOSED
PUBLICLY BY SAMSKY & JR AS PLEADED IN "83" & "85"
WHICH VIOLATED THE UNDERSTANDING IN "18" EXPLICATED
IN "92" THAT THE INFORMATION BE KEPT CONFIDENTIAL.
113.) BRAD MULCAHY ADMITS IN "84" TO
VOLUNTARILY ACCEPTING TRANSFER OF SAMSKY & BM'S
FIDUCIARY DUTY TO PLAINTIFF THROUGH GUARDIANSHIP.
THROUGH THIS FIDUCIARY RELATIONSHIP, MULCAHY,
AS AGENT OF JKL, OWED PLAINTIFF A DUTY OF CONFIDENCE;
WHICH BILATERAL EXPECTATION & UNDERSTANDING
THEREOF BETWEEN SAMSKY & PLAINTIFF WAS TRANSFER-
RED TO MULCAHY THROUGH HIS ACT OF ASSENT DESCRIBED
IN "21" & EXPLICITLY ADMITTED TO IN "84". THE NOVEL

& CONFIDENTIAL INFORMATION CONVEYED TO JHL, &
MULCAHY AS AN AGENT THEREOF, VERBALLY & THROUGH
CONDUCT AS DESCRIBED IN "21"; WAS DISCLOSED
BY MULCAHY IN "84" WITHOUT PLAINTIFF'S CONSENT &
IN VIOLATION OF THE UNDERSTANDING THAT CONFIDENCE
BE MAINTAINED,

114) PLAINTIFF WAS DAMAGED IN HIS REPUTATION; THROUGH
INFLICTION OF EMOTIONAL DISTRESS & MENTAL ANGUISH;
THROUGH LOSS OF FUTURE EARNINGS FROM WAGES, FEES,
ENDORSEMENTS FOR HIS PERFORMING SERVICES. BY SAMSKY
& JR'S BREACH OF CONFIDENCE IN "112" & MULCAHY'S BREACH
OF CONFIDENCE IN "113". SAMSKY, JR, & MULCAHY
WERE UNJUSTLY ENRICHED BY THEIR BREACHES OF
CONFIDENCE; & NRSB, KNOWING OF THE NATURE OF
THE BREACHES OF CONFIDENCE DESCRIBED IN "112" &
"113" & HAVING CONFERRED WITH, & HAD A MEETING OF
THE MINDS & SHARED INTENT WITH, SAMSKY, JR, &
MULCAHY, & AGREED WITH SAME TO COMMIT THE
BREACHES OF CONFIDENCE DESCRIBED IN "83"-"85" &
"112"-"113"; AIDED IN THE COMMISSION OF SAME AS CONDUCT
IN FURTHERANCE OF THE ENTERPRISE & CONSPIRACY IN "61"
UNJUSTLY ENRICHING NRSB WHILST DEPRIVING PLAINTIFF OF
THE MONEYS OF THE GROSS REVENUE OF THWH.

115.) AS PLEADED IN "58"-"60" & "91"; PLAINTIFF CONVEYED
NOVEL & CONFIDENTIAL INFORMATION TO NRSR; WHICH
NRSR VOLUNTARILY ACCEPTED KNOWING THAT THE
INFORMATION WAS BEING DISCLOSED IN CONFIDENCE,
WITH THE UNDERSTANDING BETWEEN NRSR & PLAINTIFF
THAT THE CONFIDENCE BE MAINTAINED, WHERE PLAINTIFF
WAS UNAWARE OF SALLY BRINDLE & ROB MILLER'S
CONSPIRACY IN "61" BUT UNDERSTOOD THE CONFIDENCE
AS BEING BETWEEN HIMSELF & BRINDLE & MILLER AS
AGENTS OF RAWTV, AS ADMITTED BY BRINDLE IN "70"
& "71" & BY MILLER IN "59" & "72". RAWTV, AS A
PRINCIPAL & IN CONDUCT IN FURTHERANCE OF THE ENTER-
PRISE & CONSPIRACY NRSR IN "61", MADE DISCLOSURES
IN VIOLATION OF THIS UNDERSTANDING, DESCRIBED IN
"61", "62", "64", "70", "72", "77", & "96"; WHICH RESULTED IN
RAWTV'S UNJUST ENRICHMENT & DEPRIVATION OF PLAINT-
IFF'S RIGHT TO MONEYS DESCRIBED IN "76". NETFLIX,
IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE
ENTERPRISE NRSR IN "61"; DID CONFER WITH RAWTV,
HAVE A MEETING OF THE MINDS & SHARED INTENT
THEREWITH, & AGREED THEREWITH TO AID IN THE
COMMISSION OF RAWTV'S BREACH OF CONFIDENCE; RESULT-
ING IN NETFLIX'S UNJUST ENRICHMENT & DEPRIVATION OF PLAIN-
TIFF'S RIGHT TO MONEYS IN THE GROSS REVENUE OF THWH.

116.) AS PLEADED IN "38", PLAINTIFF CONVEYED NOVEL
& CONFIDENTIAL INFORMATION TO JANE DOE 4; WHO
KNEW THAT THE INFORMATION WAS BEING DISCLOSED
IN CONFIDENCE. THERE WAS AN UNDERSTANDING
BETWEEN THE DEFENDANT JANE DOE 4 & THE
PLAINTIFF, NO MATTER HOW INTOXICATED HE EVIDENTLY WAS,
THAT THE CONFIDENCE BE MAINTAINED. THIS UNDERST-
ANDING IS EVIDENCED BY THE SURREPTITIOUS
NATURE OF THE RECORDING IN "38"; WHICH ALSO
CONSTITUTES AN INTRUSION INTO THE REASONABLE
EXPECTATION OF PRIVACY PLAINTIFF HAD IN HIS
PRIVATE & CONFIDENTIAL CONVERSATION IN THE
CORDONED-OFF SECTION OF THE RESTAURANT.
JANE DOE 4 MADE THE DISCLOSURE IN "78" TO
NRSR IN VIOLATION OF THE UNDERSTANDING, &
NRSR THEN PUBLISHED THE PRIVATE FACTS CONTAIN-
ED IN THE CONFIDENTIAL CONVERSATION FROM RAWTV
TO NETFLIX IN "96", & FROM NETFLIX TO ITS GLOBAL
AUDIENCE IN "103". PLAINTIFF WAS DAMAGED IN HIS REPUTATION;
THROUGH BEING EXPOSED TO HATRED, CONTEMPT, RIDICULE, OR
OBLOQUY & LOSS THEREFROM OF GOODWILL & ATTENDANT
BUSINESS OPPORTUNITIES & FEES FOR PERFORMING SERVICES &
ENDORSEMENTS BY JANE DOE 4'S BREACH OF CONFIDENCE & NRSR'S
INTRUSION & PUBLIC DISCLOSURE OF PRIVATE FACT.

## CALIFORNIA RIGHT OF PUBLICITY

117.) PLAINTIFF REPLEADS "100"

118.) IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE ENTERPRISE NRSR IN "61", BEGINNING ON OR ABOUT DECEMBER 13, 2022 & CONTINUING TO THE PRESENT DAY, NETFLIX HAS DISPLAYED ADVERTISEMENTS DEPICTING PLAINTIFF'S FACE & LIKENESS TOGETHER WITH THE WORDS "WATCH THE HATCHET WIELDING HITCHHIKER" ON GOOGLE, YAHOO, MSN, BING, YOUTUBE, NETFLIX.COM, & A HOST OF OTHER PLACES ONLINE.

119.) PLAINTIFF IS WELL KNOWN AS "THE HATCHET WIELDING HITCHHIKER"; & IT IS COMMON KNOWLEDGE, JUDICIALLY NOTICEABLE IN CALIFORNIA & ELSEWHERE, THAT THE PHRASE "THE HATCHET WIELDING HITCHHIKER" SPECIFICALLY REFERS TO PLAINTIFF.

120.) THE COMBINATION OF PLAINTIFF'S WIDELY-RECOGNIZED FACE & LIKENESS WITH THE NETFLIX LOGO & THE PROMISE THAT POTENTIAL CONSUMERS WILL BE ABLE TO "WATCH THE HATCHET WIELDING HITCHHIKER" BY CLICKING A LINK HYPERLINKED FROM THOSE EXACT WORDS, WHICH LINK REDIRECTS THE CONSUMER TO THE NETFLIX SUBSCRIPTION SIGN-UP PAGE WHICH SOLICITS PAYMENT FOR SERVICES OF STREAMING VIDEO BY NETFLIX, IS AN EXPLICIT & FALSE MISLEADING STATEMENT

THAT PLAINTIFF ENDORSES THE SUBSCRIPTION SERVICE &
THAT PLAINTIFF PERSONALLY PERFORMS THERE ON.
121.) THE UNDERLYING FILM IS NOT AVAILABLE FOR
VIEWING BY NONSUBSCRIBERS, NOR IS THE FILM
ITSELF DIRECTLY PROMOTED BY THE ADVERTISEMENTS,
BUT THE CUSTOMERS ARE INSTEAD DIRECTED BY
THE LINK IN "119" TO THE NETFLIX SUBSCRIPTION SIGN UP
PAGE, WHICH HAS NO DIRECT RELATION TO THE UNDER-
LYING FILM, TO PURCHASE A SUBSCRIPTION TO NETFLIX'S
SERVICE. THE SERVICE ADVERTISED IS VALUED AT
$14.99 PER MONTH. THERE IS A HIGH PROBABILITY &
LIKELIHOOD THAT CONSUMERS OF STREAMING VIDEO
SUBSCRIPTION SERVICES ARE & WILL BE CONFUSED
ABOUT THE SOURCE OF THE ADVERTISEMENT, & WILL
THINK THAT PLAINTIFF HIMSELF IS PERFORMING IN
&/OR ENDORSING THE SUBSCRIPTION SERVICE.
122.) NETFLIX HAS DIGITALLY ALTERED IMAGES OF PLAINTIFF
USED FOR ITS ADVERTISEMENTS IN "116" - "120" TO REMOVE
THE FEDERALLY REGISTERED TRADEMARKS OF "FOX
NEWS" & "FOX RACING, INC."; WHICH ADMITS BY
CONDUCT TO COMMERCIAL USE OF THE IMAGES IN
INTERSTATE & FOREIGN COMMERCE WHICH WOULD
CONSTITUTE TRADEMARK INFRINGEMENT AGAINST FOX
NEWS & FOX RACING, INC. IF THEIR MARKS WERE

DISPLAYED IN THE IMAGES. NETFLIX IS THEREFORE
EQUITABLY ESTOPPED FROM DISCLAIMING COMMERCIAL
USE OR EXPLICIT STATEMENT OF ENDORSEMENT
BY USE OF PLAINTIFF'S NAME, IMAGE, FACE, &
LIKENESS IN THE ADVERTISEMENTS,

123.) PLAINTIFF DID NOT CONSENT TO THE COMMERCIAL
USE OF HIS NAME, IMAGE, FACE OR LIKENESS BY
NETFLIX; & IN FACT SPECIFICALLY PROHIBITED NETFLIX,
IN WRITING, FROM DOING SO; AS PLEADED IN "94"

124.) EVERY PERSON WHO HAS OR WILL VIEW "THE
HATCHET WIELDING HITCHHIKER" WAS REQUIRED FIRST
TO PURCHASE A SUBSCRIPTION. IT IS BELIEVED THAT
ALL SUBSCRIPTIONS PURCHASED IN ORDER TO WATCH
THWH WERE PURCHASED AS A RESULT OF THE
ADVERTISEMENTS IN "116"-"122". UNDER CAL. CIV. CODE
3344, PLAINTIFF IS ENTITLED TO THE GROSS REVENUE
RESULTING FROM THE ADVERTISEMENTS, & THE BURDEN
IS ON NETFLIX TO PROVE COSTS. THE "GROSS REVENUE"
IN THIS CONTEXT IS THE SUM OF ALL SUBSCRIPTION
PURCHASES FROM ALL VIEWERS WHO WATCHED THWH,
THE "COSTS" IN THIS CONTEXT ARE SUBSCRIBERS WHO
WERE NOT INDUCED TO PURCHASE SUBSCRIPTIONS BECAUSE
OF THE ADS. THE BURDEN IS THEREFORE ON NETFLIX TO
PROVE WHICH SUBSCRIBERS WERE NOT INDUCED TO PURCHASE

THEIR SUBSCRIPTIONS BECAUSE OF THE AD IN "116" - "122".
IN THE ALTERNATIVE, IT IS BELIEVED THAT EVEN IF THWH
WAS WATCHED BY CONSUMERS WHO HAD PREVIOUSLY
PURCHASED A SUBSCRIPTION, THAT THOSE CONSUMERS
ONLY RENEWED THEIR SUBSCRIPTIONS BECAUSE OF
THE ADS IN "116" - "122"; & THE BURDEN IS ON NETFLIX
TO PROVE WHICH SUBSCRIBERS WERE NOT INDUCED TO
PURCHASE A RENEWAL OF THEIR SUBSCRIPTIONS AS A
RESULT OF THE ADS IN "116" - "122", AS SUCH MEAN "COST"
IN THIS CONTEXT PURSUANT TO CAL. CIV. CODE 3344, IN
THE ALTERNATIVE, PLAINTIFF PLEADS "116" - "122" & THIS
PARAGRAPH AS VIOLATION OF HIS COMMON LAW RIGHT
OF PUBLICITY, WITH NETFLIX'S UNJUST ENRICHMENT OF
SUBSCRIPTION PURCHASES AS PLEADED IN THIS CHAPTER
AS DAMAGES, WHICH MUST BE DISGORGED TO PLAINTIFF

124.) PLAINTIFF ALLEGES "100", "116" - "118", & "121" - "122" AS
SHOWING NETFLIX'S KNOWING USE OF PLAINTIFF'S NAME &
LIKENESS, WHICH IS DIRECTLY CONNECTED TO THE COMMERCIAL
PURPOSES SPECIFICALLY ALLEGED IN "119" - "120" & "123".

## COMMERCIAL DISPARAGEMENT

125.) PLAINTIFF REPLEADS "45" AS SHOWING THE INTENTION
OF F55, GABRIEL FRANCISCO, & TONY MARTIN TO DISPARAGE
THE QUALITY OF PLAINTIFF'S PROPERTY INTERESTS IN HIS RIGHT
OF PUBLICITY UNDER CAL. CIV. CODE 3344, HIS COPYRIGHTABLE

COMPOSITIONS, CHOREOGRAPHY, & DRAMATIC WORKS; & IN HIS LANHAM ACT-DERIVED ENDORSEMENT & COMMERCIAL MARK RIGHTS. GABRIEL FRANCISCO ADMITS TO THIS INTENTION IN "86" WHEN HE SAID "WE WANTED TO KILL IT"; AS DESCRIBED IN "86"; IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF ENTERPRISE F55 IN "45"

127.) PLAINTIFF REPLEADS "53" AS SHOWING THAT F55 DID PUBLISH MATTER DEROGATORY TO PLAINTIFF'S TITLE TO THE PROPERTY DESCRIBED IN "125", TO ITS QUALITY, & TO HIS BUSINESS IN GENERAL: TO OTHER VENUE OWNERS IN THE FRESNO AREA. PLAINTIFF REPLEADS "55" AS SHOWING THE PUBLICATION PLAYED A MATERIAL & SUBSTANTIAL PART INDUCING OTHERS NOT TO DEAL WITH PLAINTIFF, & AS SPECIFICALLY STATING SPECIAL DAMAGES IN THE AMOUNT OF $1,314,000.⁰⁰. TONY MARTIN ADMITS TO HAVING PUBLISHED SAID DEROGATORY MATTER, & ALSO TO IT HAVING A MATERIAL & SUBSTANTIAL PART INDUCING OTHERS NOT TO DEAL WITH PLAINTIFF, IN "88"; IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF ENTERPRISE F55 IN "45".

## CONSTRUCTIVE TRUST

128.) PLAINTIFF REPLEADS "6" AS SHOWING THE RES MOTION PICTURE WORK & COPYRIGHT ATTENDANT THEREON OWNED BY PLAINTIFF AS CLAIMED IN "8"; WHICH UMPH REGISTERED THE COPYRIGHT TO BUT IS NOT ENTITLED TO SOLE OWNERSHIP BECAUSE OF PLAINTIFF'S

AUTHORSHIP; & SO THE IMPOSITION OF A CONSTRUCTIVE TRUST
ON THE MOTION PICTURE WORK & TITLE TO COPYRIGHT THEREOF
IS EQUITABLE AS PLEADED IN "9"; & PLAINTIFF IS ENTITLED TO
EQUITABLE ACCOUNTING & DISGORGEMENT THEREOF. PLAINTIFF
CONCEDES THAT JESSOB REISBECH HIMSELF & TERRY WOODS
HIMSELF ARE INNOCENT OF ANY WRONGDOING.

128.) PLAINTIFF REPLEADS "11" AS SHOWING THE RES MOTION PICTURE
WORK & COPYRIGHT ATTENDANT THEREON OWNED BY PLAINTIFF
AS CLAIMED IN "12". ON OR ABOUT FEBRUARY 5, 2013,
JESSOB REISBECH & ALEX AGUIRRE TURNED OVER THE
MOTION PICTURE WORK/VIDEO FOOTAGE IN "11" TO THEIR
EMPLOYER, KMPH. KMPH THEN REGISTERED THE MOTION
PICTURE WORK; BUT IS NOT ENTITLED TO SOLE OWNERSHIP
BECAUSE OF PLAINTIFF'S AUTHORSHIP; & SO THE IMPOSITION OF
A CONSTRUCTIVE TRUST ON THE MOTION PICTURE WORK &
TITLE TO THE COPYRIGHT THEREOF IS EQUITABLE; & PLAINTIFF
IS ENTITLED TO EQUITABLE ACCOUNTING & DISGORGEMENT
THEREOF. PLAINTIFF CONCEDES THAT JESSOB REISBECH
HIMSELF IS INNOCENT OF ANY WRONGDOING.

129.) PLAINTIFF REPLEADS "19" & "23" AS SHOWING THE RES
MOTION PICTURE WORKS & COPYRIGHTS ATTENDANT THEREON
OWNED BY PLAINTIFF AS PLEADED IN "23"; WHICH WERE
PROCURED BY BM THROUGH ACTS OF FRAUD AS PLEADED IN
"14"-"16", UNDUE INFLUENCE AS PLEADED IN "18"-"19" & "21"-"23",
& THE VIOLATION OF A FIDUCIARY TRUST AS PLEADED IN

"18" & "21" - "23", ~~BY~~ EQUITABLE PRINCIPLES MILITATE FOR A CONSTRUCTIVE TRUST TO BE IMPOSED ON THE RES, & FOR IT TO BE DISGORGED TO PLAINTIFF. IN THE ALTER- NATIVE, BM IS IN ADVERSE POSSESSION OF THE RES & HAS UNLAWFULLY CONVERTED THE RES TO ITS OWN USE IN DEROGATION OF PLAINTIFF'S LAWFUL TITLE THERETO, & PLAINTIFF IS ENTITLED TO REPLEVIN OF THE RES.

131.) ~~BM~~ PLAINTIFF REPLEADS "24" AS SHOWING THE RES MOTION PICTURE WORKS & COPYRIGHTS ATTENDANT THEREON; WHICH PLAINTIFF IS THE RIGHTFUL OWNER OF BY REASON OF HIS AUTHORSHIP. JIMMY KIMMEL LIVE! HAS REGISTERED THE MOTION PICTURE WORK WITH THE COPYRIGHT OFFICE; BUT IS NOT ENTITLED TO SOLE OWNERSHIP BECAUSE OF PLAINTIFF'S AUTHORSHIP, & SO THE IMPOSITION OF A CONSTRUCTIVE TRUST ON THE MOTION PICTURE WORK & TITLE TO THE COPYRIGHT THEREOF IS EQUITABLE; & PLAINTIFF IS ENTITLED TO EQUITABLE ACCOUNTING & DISGORGEMENT THEREOF. JIMMY KIMMEL LIVE!'S REGISTRATION OF THE WORK IS A MATTER BELIEVED BY PLAINTIFF ON INFORMATION.

132.) ~~BM~~ PLAINTIFF REPLEADS "130" SUBSTITUTING "28" FOR "24" & "JOHN DOE 1" FOR "JIMMY KIMMEL LIVE!."

133.) ~~BM~~ PLAINTIFF REPLEADS "130" SUBSTITUTING "29" FOR "24" & "JOHN DOE 2" FOR "JIMMY KIMMEL LIVE!."

134.) ~~BM~~ PLAINTIFF REPLEADS "130" SUBSTITUTING "30" FOR "24" &

"JOHN DOE 3" FOR "JIMMY KIMMEL LIVE!"

135.) PLAINTIFF REPLEADS "130" SUBSTITUTING "31" FOR "24" &
"JOHN DOE 4" FOR "JIMMY KIMMEL LIVE!"

136.) PLAINTIFF REPLEADS "130" SUBSTITUTING "32" FOR "24" &
"JANE DOE 1" FOR "JIMMY KIMMEL LIVE!"

137.) PLAINTIFF REPLEADS "130" SUBSTITUTING "33" FOR "24" &
"JANE DOE 2" FOR "JIMMY KIMMEL LIVE!"

138.) PLAINTIFF REPLEADS "130" SUBSTITUTING "34" FOR "24" &
"JANE DOE 3" FOR "JIMMY KIMMEL LIVE!"

139.) PLAINTIFF REPLEADS "130" SUBSTITUTING "35" FOR "24" &
"JOHN DOE 5" FOR "JIMMY KIMMEL LIVE!"

140.) PLAINTIFF REPLEADS "130" SUBSTITUTING "36" FOR "24" &
"JOHN DOE 6" FOR "JIMMY KIMMEL LIVE!"

141.) PLAINTIFF REPLEADS "130" SUBSTITUTING "37" FOR "24" &
"JOHN DOE 7" FOR "JIMMY KIMMEL LIVE!"

142.) PLAINTIFF REPLEADS "38" AS SHOWING THE RES MOTION
PICTURE WORK & COPYRIGHT ATTENDANT THEREON WHICH
WERE PROCURED & OBTAINED THROUGH JANE DOE 4'S ACT
OF FRAUD INDUCING PLAINTIFF'S PERFORMANCE & CREATION
OF THE DRAMATIC WORK FROM WHICH THE MOTION PICTURE
IS DERIVED. EQUITABLE PRINCIPLES MILITATE FOR A
CONSTRUCTIVE TRUST TO BE IMPOSED ON THE RES, &
FOR IT TO BE DISGORGED TO PLAINTIFF. IN THE ALTERNATIVE,
JANE DOE 4 & HER ASSIGNS OR LICENSEES ARE IN

ADVERSE POSSESSION OF THE RES & HAVE UNLAWFULLY
CONVERTED THE RES TO THEIR OWN USE IN DEROGATION
OF PLAINTIFF'S LAWFUL TITLE THERETO AS AUTHOR & OWNER
OF THE UNDERLYING DRAMATIC WORK & EXCLUSIVE RIGHT TO
MAKE DERIVATIVE WORKS THEREFROM; & PLAINTIFF IS
ENTITLED TO REPLIEVIN OF THE RES.

143.) PLAINTIFF REPLEADS "130" SUBSTITUTING "43" FOR "24" &
"EBAUMSWORLD & EBW" FOR "JIMMY KIMMEL LIVE!"

144.) PLAINTIFF REPLEADS "50" & "51" AS EACH SHOWING A
RES MOTION PICTURE WORK & COPYRIGHT ATTENDANT THEREON,
OWNED BY PLAINTIFF BY REASON OF HIS AUTHORSHIP, WHICH
WERE PROCURED & OBTAINED BY F55 THROUGH ACTS OF
FRAUD AS PLEADED IN "45"-"48", "52", & "54"; & IN VIOLATION
OF THE FIDUCIARY TRUST PLEADED IN "54". EQUITABLE
PRINCIPLES MILITATE FOR A CONSTRUCTIVE TRUST TO BE
IMPOSED ON THE RES & FOR IT TO BE DISGORGED TO
PLAINTIFF. IN THE ALTERNATIVE, F55 ~~AND~~ & THEIR
~~ASSIGNEES~~ ASSIGNS OR LICENSEES ARE IN ADVERSE POSSESSION
OF THE RES & HAVE UNLAWFULLY CONVERTED THE RES TO
THEIR OWN USE, & PLAINTIFF IS ENTITLED TO REPLIEVIN OF
THE RES.

145.) PLAINTIFF REPLEADS "47", "48", & "54" AS SHOWING THE
RES OF $400 & HALF OF 20% OF LIQUOR SALES & TICKET
SALES AT FULTON 55 THE NIGHT ON OR ABOUT APRIL 5, 2013

WHICH PLAINTIFF WAS ENTITLED TO FOR PERFORMANCE OF HIS
SERVICES AS A MUSICIAN & CHOREOGRAPHER & DRAMATIST;
WHICH WAS WRONGFULLY DETAINED OR GAINED BY F55
THROUGH THE FRAUD IN "45", "46", "47", "48", & "54". EQUITABLE
PRINCIPLES MILITATE FOR AN IMPOSITION OF A CONSTRUCTIVE
TRUST TO BE IMPOSED UPON THIS RES; & FOR AN EQUITABLE
ACCOUNTING THEREON & DISGORGEMENT OF THE RES, WITH
INTEREST THEREON, TO PLAINTIFF.

## DEFAMATION / FALSE LIGHT

### FULTON 55 & THE RED SHIRTS CONSPIRACY

145.) PLAINTIFF REPLEADS "45" AS SHOWING A CONSPIRACY
AMONG FULTON 55, TONY MARTIN, & GABRIEL FRANCISCO
TO AID EACH OTHER IN THE COMMISSION OF TORTIOUS
DEFAMATION, WHICH FRANCISCO ADMITS TO IN "86", OR FALSE LIGHT

147.) PLAINTIFF REPLEADS "53" AS PUBLICATION OF
PROVABLY FALSE CLAIMS ABOUT PLAINTIFF WHICH EXPOSED
HIM TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY; CAUSED
HIM TO BE SHUNNED OR AVOIDED; OR HAD A TENDENCY
TO INJURE HIM IN HIS OCCUPATION : & WHICH RESULTED
IN DAMAGES PROXIMATELY CAUSED BY SAID DEFAMATION
AS PLEADED IN "55" & ADMITTED TO BY MARTIN IN
"88". IN THE ALTERNATIVE, PLAINTIFF REPLEADS "53" AS
F55'S DISCLOSURE TO ONE OR MORE PERSONS OF FALSE
INFORMATION ABOUT PLAINTIFF PRESENTED AS TRUE OR FACTUAL

THAT WAS HIGHLY OFFENSIVE & WOULD & DID INJURE
PLAINTIFF'S REPUTATION CAUSING DAMAGE AS PLEADED
IN "55" & ADMITTED TO BY MARTIN IN "88"
148.) F55 & EACH MEMBER THEREOF KNEW THE FALSITY
OF THEIR DEFAMATORY OR FALSE LIGHT STATEMENTS
IN "53", OR HAD A RECKLESS DISREGARD FOR THE
VERACITY THEREOF, AT THE TIME THEY WERE MADE.

<u>CONTRIBUTORS TO THWH PRODUCTION</u>

149.) PLAINTIFF REPLEADS "82" AS ALEX AGUIRRE'S
PUBLICATION OF PROVABLY FALSE CLAIMS ABOUT PLAINTIFF
BY IMPLICATION, THE TRUTH OF THE MATTER ALSO PLEADED
IN "2", "3", & "82"; WHICH DEFAMATION EXPOSED PLAINTIFF
TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY THEREBY
RESULTING IN EMOTIONAL DISTRESS & MENTAL ANGUISH;
& WHICH DAMAGE CAUSED PLAINTIFF TO BE SHUNNED OR
AVOIDED, OR WHICH INJURED HIM IN HIS OCCUPATION AS
A PERFORMING ARTIST; RESULTING IN DAMAGE TO THE
VALUE OF PLAINTIFF'S COPYRIGHTS, UNREGISTERED MARKS IN
COMMERCE, & RIGHT OF PUBLICITY; & IN LOSS OF
BUSINESS OPPORTUNITIES, ENDORSEMENT & LICENSING FEES,
& PAYMENTS FOR SERVICES: DUE TO THE FALSE STATEMENT
OF FACT ALLEGING CRIMINAL CONDUCT BY PLAINTIFF IN
THE INCIDENT ON 02/01/13 IN FRESNO, CA, THE TRUTH OF WHICH
IN "2" & "3" IS THE BASIS UPON WHICH PLAINTIFF IS WIDELY UNKNOWN

& "JEFF STRICKER" FOR "ALEX AGUIRRE" WHEREVER THE

& SOUGHT AFTER FOR BUSINESS PARTNERSHIP, ENDORSEMENT & LICENSING FEES, & PAYMENTS FOR SERVICES, BECAUSE EVERYONE LOVES & WANTS TO DEAL WITH A HERO WHO SAVED PEOPLE'S LIVES. WEBSITE, SOCIAL MEDIA, & YOUTUBE COMMENTS FROM VIEWERS OF THWH SHOW THAT ALEX AGUIRRE'S STATEMENTS WERE REASONABLY UNDERSTOOD TO IMPLY THE DEFAMATORY STATEMENT PLEADED WITH SPECIFICITY IN "82". ALEX AGUIRRE KNEW THE FALSITY OF HIS DEFAMATORY STATEMENT IN "82", OR HAD A RECKLESS DISREGARD FOR THE TRUTH OF THE MATTER PLEADED IN "2", "3"; AT THE TIME THE STATEMENT WAS MADE.

149.) PLAINTIFF REPLEADS "148" SUBSTITUTING "84" FOR "82" & "BRAD MULCAHY" FOR "ALEX AGUIRRE" WHEREVER THE WORDS APPEAR.

150.) PLAINTIFF REPLEADS "148" SUBSTITUTING "85" FOR "82" & "JOHN DOE AKA "JR"" FOR "ALEX AGUIRRE" WHEREVER THE WORDS APPEAR

151.) PLAINTIFF REPLEADS "148" SUBSTITUTING "86" FOR "82" & "GABRIEL FRANCISCO" FOR "ALEX AGUIRRE" WHEREVER THE WORDS APPEAR

153.) PLAINTIFF REPLEADS "148" SUBSTITUTING "87" FOR "82" & "JEFF STRICKER" FOR "ALEX AGUIRRE" WHEREVER THE WORDS APPEAR. PLAINTIFF ALSO AVERS THAT STRICKER

WORE A FRESNO COUNTY SHERIFF'S OFFICE OFFICIAL POLICE
UNIFORM DURING HIS STATEMENTS DESPITE NOT HAVING
ACTUAL AUTHORIZATION FROM THE FRESNO COUNTY SHERIFF'S
OFFICE TO MAKE THE DEFAMATORY STATEMENTS ON
BEHALF OF SAID OFFICE. STRICKER'S USE OF THE POLICE
UNIFORM WHILE MAKING THE STATEMENT IN "87" THAT
PLAINTIFF IS "CULPABLE" CREATES THE IMPLICATION THAT
THE OFFICE ITSELF HAD FOUND CRIMINAL CULPABILITY OF
PLAINTIFF; WHICH IMPLIED STATEMENT OF FACT WAS FALSE,
THE TRUTH OF THE MATTER PLEADED IN "2", "3". THE USE
OF THE POLICE UNIFORM BY STRICKER WAS REASONABLY
UNDERSTOOD BY VIEWERS OF THWH TO IMPLY SAID DEFAM-
ATORY STATEMENT, AS IS SHOWN BY NUMEROUS COMMENTS
ON WEBSITES, SOCIAL MEDIA, & YOUTUBE BY SAID VIEWERS.
STRICKER MADE THE STATEMENTS KNOWING THE FALSITY
OF THE STATEMENT IMPLIED BY HIS USE OF THE POLICE
UNIFORM IN "87", OR WITH RECKLESS DISREGARD OF
THE TRUTH OF "2", "3" & WHAT USE OF THE POLICE
UNIFORM IMPLIED THERETO. PLAINTIFF REPLEADS THE DAMAGES
DESCRIBED IN "148" AS RESULTING PROXIMATELY CAUSED
BY STRICKER'S DEFAMATORY STATEMENTS,
159.) PLAINTIFF REPLEADS "148" SUBSTITUTING "88" FOR "82"
& "TONY MARTIN" FOR "ALEX AGUIRRE" WHEREVER THE
WORDS APPEAR.

## RAWTV'S PUBLICATION TO NETFLIX

155.) PLAINTIFF REPLEADS "96"; & AVERS THAT ON MAY 5, 2022, RAWTV REPUBLISHED "148" - "153" TO NETFLIX; KNOWING THE FALSITY OF THE DEFAMATORY STATEMENTS, OR WITH RECKLESS DISREGARD OF THE OBVIOUS REASONS TO DOUBT THE TRUTHFULNESS OF THE ORIGINAL SPEAKER, OR THE ACCURACY OF THEIR STATEMENTS, THE OBVIOUS REASONS BEING SPECIFICALLY PLEADED IN "2" & "3", AS MATTERS OF THE COURT RECORD IN PEOPLE V. MCBRIDE. THESE DEFAMATORY STATEMENTS EXPOSED PLAINTIFF TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY, THEREBY RESULTING IN EMOTIONAL DISTRESS & MENTAL ANGUISH. THEY ALSO CAUSED PLAINTIFF TO BE SHUNNED OR AVOIDED, & TO BE INJURED IN HIS OCCUPATION AS A PERFORMING ARTIST; RESULTING IN DAMAGE TO THE VALUE OF PLAINTIFF'S COPYRIGHTS, UNREGISTERED MARKS IN COMMERCE, & RIGHT OF PUBLICITY; & IN LOSS OF BUSINESS OPPORT-UNITIES, ENDORSEMENTS & LICENSING FEES, & PAYMENTS FOR SERVICES; DUE TO THE FALSE STATEMENTS OF FACT ALLEGING CRIMINAL CONDUCT BY PLAINTIFF IN THE INCIDENT ON 02/01/13 IN FRESNO, CA, THE TRUTH OF WHICH IN "2" & "3" IS THE BASIS UPON WHICH PLAINTIFF IS WIDELY KNOWN & SOUGHT AFTER FOR BUSINESS PARTNERSHIP, ENDORS-EMENT & LICENSING FEES, & PAYMENTS FOR SERVICES, BECAUSE EVERYONE LOVES & WANTS TO DEAL WITH A HERO

WHO SAVED PEOPLES LIVES. PLAINTIFF ALSO AVERS THAT
RAW TV REPUBLISHED THE STATEMENTS IMPLIED IN
"96" FALSELY PORTRAYING HIM AS HAVING COMMITTED
FELONY ARSON FOR WHICH HE COULD HAVE BEEN CHARGED
AS AN ADULT, THE TRUTH OF THE MATTER ALSO
PLEADED IN "96"; & RAW TV HAVING MADE SUCH FALSE LIGHT
STATEMENTS WITH KNOWLEDGE OF THEIR FALSITY OR
A RECKLESS DISREGARD OF THE TRUTH, AS SHOWN BY
THEIR KNOWING & UNAUTHORIZED USE OF PLAINTIFF'S
MUSICAL COMPOSITION IN THWH, WHICH DESCRIBES THE
TRUTH OF THE MATTER, AS DESCRIBED IN "39", RAW TV
ALSO PUBLISHED JOHN DOE 10'S FALSE PORTRAYAL OF
PLAINTIFF DESCRIBED IN "98" TO NETFLIX. THESE
PUBLIC PORTRAYALS OF PLAINTIFF IN A FALSE LIGHT
WOULD BE HIGHLY OFFENSIVE TO A REASONABLE PERSON, &
IT IS EGREGIOUS & OUTRAGEOUS TO SUCH A DEGREE AS
TO BE INTOLERABLE IN A CIVILIZED SOCIETY FOR AN
INNOCENT PERSON TO BE PORTRAYED AS AN ARSONIST, &
A VANDAL, & PLAINTIFF SHOULD BE FREE FROM THE
ATTAINDER THIS WOULD WORK ON HIM, AS IT IS, WITH
THE INTENTION & MALICE OF RAW TV, INFLICTING EMOTIONAL
DISTRESS UPON HIM SO SEVERE NO PERSON COULD ENDURE IT,
AS PLAINTIFF HAS SOUGHT MENTAL HEALTH ASSISTANCE FOR
AFTER DISCOVERING SAME, YET CONTINUES TO SUFFER ANGUISH,

NETFLIX'S PUBLICATION OF THE TRAILER

156.) PLAINTIFF REPLEADS "101" AS PUBLICATION BY NETFLIX, IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE ENTERPRISE NRSR IN "61", OF PROVABLY FALSE STATEMENTS OF FACT ABOUT PLAINTIFF, TO WIT: REPUBLISHING OF THE IMPLICIT DEFAMATION ABOUT PLAINTIFF AS DESCRIBED IN "82", "84", & "101" WITH ATTENDANT VISUAL SEQUENCES AS DESCRIBED IN "101", WHICH IMPLY THE PROVABLY FALSE STATEMENT THAT PLAINTIFF WAS CULPABLE OR VIOLENT CRIMINAL ACTS DURING THE INCIDENT ON FEBRUARY 1, 2013 IN FRESNO, CA & OF PERJURY DURING THE ARRAIGNMENT OF MCBRIDE. WHEREAS THE TRUTH OF THE MATTER IS PLEADED IN "2" & "3", SHOWING THAT PLAINTIFF WAS INNOCENT OF ANY WRONGDOING IN THE INCIDENT & TESTIFIED TRUTHFULLY AT THE ARRAIGNMENT, AS IS ALSO PLEADED IN "82" & "84". NETFLIX KNEW THE FALSITY OF SAID IMPLICATION, OR MADE IT WITH RECKLESS DISREGARD OF THE TRUTH IN "2" & "3", AT THE TIME IT WAS MADE; & THE TRAILER WAS REASONABLY UNDERSTOOD TO IMPLY SAID DEFAMATORY STATEMENTS, AS SHOWN BY COMMENTS ON WEBSITES & SOCIAL MEDIA & YOUTUBE BY VIEWERS OF THE TRAILER. THESE DEFAMATORY STATEMENTS EXPOSED PLAINTIFF TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY; CAUSED HIM TO BE SHUNNED OR AVOIDED; INTENTIONALLY CAUSING HIM EMOTIONAL DISTRESS AS PERSON

SHOULD BE EXPECTED TO ENDURE FROM THE EGREGIOUS &
OUTRAGEOUS CONDUCT BY NETFLIX & NRSR OF PUBLICLY
SHAMING HIM FOR SOMETHING HE DIDN'T DO & ACCUSING HIM
OF CRIMINAL ACTS HE DIDN'T COMMIT; & HAD A TENDENCY
TO INJURE PLAINTIFF IN HIS OCCUPATION AS A PERFORMER.
PLAINTIFF, AS A RESULT OF THE DEFAMATORY STATEMENTS,
LOST BUSINESS OPPORTUNITIES, ENDORSEMENT & LICENSING
FEES, & PAYMENTS FOR SERVICES; DUE TO THE STATEMENTS'
EFFECT OF UNDERCUTTING THE BASIS OF PUBLIC GOODWILL
TOWARDS HIM FOR HIS ACTIONS DURING THE INCIDENT, FOR
WHICH HE IS WIDELY KNOWN & SOUGHT AFTER FOR BUSINESS
PARTNERSHIP, ENDORSEMENT, & LICENSING OF HIS INTELLECTUAL
PROPERTY & PERFORMANCE FOR SERVICES, BECAUSE
EVERYONE LOVES & WANTS TO DEAL WITH A HERO, WHO
SAVED PEOPLES' LIVES.

## NETFLIX'S PUBLICATION OF THWH

157.) PLAINTIFF REPLEADS "103" AS PUBLICATION BY
NETFLIX, IN FURTHERANCE OF THE CONSPIRACY & CONDUCT
OF THE ENTERPRISE NRSR IN "61", OF PROVABLY FALSE
STATEMENTS OF FACT ABOUT PLAINTIFF, TO WIT; REPUBL-
ISHING OF THE IMPLICIT & EXPLICIT DEFAMATION ABOUT
PLAINTIFF AS DESCRIBED IN "82"-"88" & "96"; & THE FALSE
LIGHT PORTRAYALS OF PLAINTIFF DESCRIBED IN "85", "86", "88"
"96", & "98"; WHICH FALSELY ACCUSE PLAINTIFF OF FELONIOUS

107

ON WEBSITES, SOCIAL MEDIA, & YOUTUBE. NETFLIX KNEW

ARSON, VANDALISM OF THE HOLLYWOOD ROOSEVELT HOTEL, BRANDISHING A DEADLY WEAPON ON A PUBLIC SIDEWALK IN HOLLYWOOD, PUBLIC URINATION ON BUSHES IN FRONT OF FULTON 55, CONSPIRACY & CONDUCT IN FURTHERANCE OF VIOLENT CRIMINAL ACTS COMMITTED BY MCBRIDE DURING THE INCIDENT, SURREPTITIOUS ADMINISTRATION OF DRUGS CAUSING SERIOUS BODILY HARM TO OTHERS, VIOLENT CRIMINAL ACTS AGAINST MCBRIDE HIMSELF, & PERJURY AT THE ARRAIGNMENT OF MCBRIDE. THE TRUTH OF THE MATTER IS PLEADED IN "2", "3", "82" - "88", "96" & "98", WHICH IS THAT PLAINTIFF HAS NEVER COMMITTED ANY ARSON, VANDALISM, BRANDISHING OF A DEADLY WEAPON, SURREPTITIOUS ADMINIST-RATION OF DRUGS, NOR PERJURY; NEITHER DID HE EVER ENGAGE IN CONSPIRACY NOR CONDUCT IN FURTHERANCE OF MCBRIDE'S VIOLENT CRIMINAL ACTS; NOR VIOLENT CRIMINAL ACTS AGAINST MCBRIDE HIMSELF; NOR DID HE URINATE ON ANY BUSHES AT OR NEAR FULTON 55. THE IMPLICATIONS OF THE SCENES, STATEMENTS, & MOVIE AS A WHOLE WERE REASONABLY UNDERSTOOD BY VIEWERS OF THWH AS SUCH, AS IS EVIDENCED BY THEIR COMMENTS ON WEBSITES, SOCIAL MEDIA, & YOUTUBE. NETFLIX KNEW OF THE FALSITY OF SAID STATEMENTS, OR HAD RECKLESS DISREGARD FOR THE PLEADED TRUTH OF THE MATTER, AT THE TIME SUCH STATEMENTS WERE PUBLISHED: OBVIOUS

REASONS TO DOUBT THE ORIGINAL SPEAKERS, OR THE
ACCURACY OF THEIR STATEMENTS, ARE PLEADED IN "2", "3",
"82-88", "96", & "98"; WHICH, IN SHORT, SHOWS COURT
RECORDS & THE PUBLIC RECORD OF PLAINTIFF'S ARRESTS
THAT CONTRADICT & PROVE FALSE THE DEFAMATORY
STATEMENTS. THESE DEFAMATORY STATEMENTS EXPOSED
PLAINTIFF TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY;
& CAUSED HIM TO BE SHUNNED OR AVOIDED; THEREBY
INTENTIONALLY INFLICTING EMOTIONAL DISTRESS ON PLAINTIFF
SO SEVERE THAT NO PERSON SHOULD BE EXPECTED TO
ENDURE IT, RESULTING FROM PROVABLY FALSE STATEMENTS
OF PLAINTIFF BEING AN ARSONIST, VANDAL, BRANDISHER,
URINATOR UPON FULTON 55'S BUSHES, CONSPIRATOR WITH MCBRIDE,
ASSAULTOR OF MCBRIDE, POISONER, & PERJURIST, MAKING
SUCH FALSE ACCUSATIONS BROADCAST TO TENS OF MILLIONS OF
PEOPLE IS EGREGIOUS & OUTRAGEOUS CONDUCT INTOLERABLE
IN A CIVILIZED SOCIETY WHEREIN DUE PROCESS OF LAW
IS A VIRTUE & RIGHT. THESE DEFAMATORY STATEMENTS
ALSO HAD A TENDENCY TO INJURE PLAINTIFF IN HIS
OCCUPATION AS A PERFORMER; WHO AS A RESULT THEREOF
LOST BUSINESS OPPORTUNITIES, ENDORSEMENT & LICENSING FEES,
& PAYMENTS FOR SERVICES: DUE TO THE STATEMENTS'
EFFECT OF UNDERCUTTING THE BASIS OF PUBLIC GOODWILL
TOWARDS HIM FOR HIS ACTIONS DURING THE INCIDENT, FOR

WHICH HE IS WIDELY KNOWN & SOUGHT AFTER FOR BUSINESS PARTNERSHIP, ENDORSEMENT, LICENSING OF HIS INTELLECTUAL PROPERTY, & PERFORMANCE FOR SERVICES; BECAUSE EVERYONE LOVES & WANTS TO DEAL WITH A HERO WHO SAVED PEOPLES' LIVES.

<u>GABRIEL FRANCISCO'S STATEMENTS TO THE TAB</u>

158.) ON OR ABOUT JANUARY 10, 2023 GABRIEL FRANCISCO PUBLISHED THE DEFAMATORY STATEMENT TO THE BRITISH TABLOID, "THE TAB", THAT "HE TOLD ME WHAT HE DID & I FEEL RESPONSIBLE, BECAUSE I WASN'T ALLOWED TO SAY ANYTHING (AT THE TIME). IF SIMMONS-MCBRIDE WAS UNSTABLE & SLIPPED SOMETHING, A BAD TRIP SOUNDS VERY FEASIBLE." THE EXPLICIT SLANDER OR LIBEL THAT PLAINTIFF TOLD FRANCISCO HE "SLIPPED SOMETHING" TO MCBRIDE, IS PROVEN FALSE BY THE TOXICOLOGY REPORTS & LAB ANALYSIS PLEADED AS THE TRUTH OF THE MATTER IN "2.) e.)" & "2.) f.)". THE IMPLICATION OF THE STATEMENT "I WASN'T ALLOWED TO SAY ANYTHING (AT THE TIME)" IS REASONABLY UNDERSTOOD, AS EVIDENCED BY READERS' COMMENTS, TO IMPLY THAT PLAINTIFF ENGAGED IN A CONSPIRACY TO TAMPER WITH WITNESS FRANCISCO IN THE CASE <u>PEOPLE V. MCBRIDE</u>, SUPRA. WHEREAS THE TRUTH OF THE MATTER IS THAT FRANCISCO RECENTLY FABRICATED HIS STORY

ABOUT PLAINTIFF AS DESCRIBED IN "86"; & PLAINTIFF
COULD NOT HAVE POSSIBLY ENGAGED IN A CONSPIRACY TO
TAMPER WITH FRANCISCO BECAUSE MCBRIDE'S CONVICTION
BECAME FINAL IN 2017 & FRANCISCO DIDN'T MAKE
UP HIS STORY UNTIL 2020 AT THE VERY EARLIEST,
WHICH DATE IS BELIEVED TO BE THE EARLIEST ON
INFORMATION THAT RAWTV MAY HAVE CONTACTED
FRANCISCO AS PART OF RESEARCH AFTER VIEWING PLAINTIFF'S
PHOTOGRAPHS DESCRIBED IN "40"; BUT WILL BE
ASCERTAINED THROUGH DISCOVERY. FRANCISCO'S FALSE
STATEMENTS OF FACT THAT PLAINTIFF "SLIPPED SOMETHING"
TO MCBRIDE & THEREAFTER DISALLOWED FRANCISCO
"TO SAY ANYTHING ABOUT IT (AT THE TIME)" EXPOSED
PLAINTIFF TO HATRED, CONTEMPT, RIDICULE, OR OBLOQUY; &
CAUSED PLAINTIFF TO BE SHUNNED OR AVOIDED; THEREBY
INTENTIONALLY INFLICTING EMOTIONAL DISTRESS UPON
PLAINTIFF SO SEVERE THAT NO PERSON SHOULD BE EXPECTED
TO ENDURE IT, RESULTING FROM THE EGREGIOUS &
OUTRAGEOUS CONDUCT OF FALSELY ACCUSING PLAINTIFF
OF POISONING MCBRIDE & THEREAFTER TAMPERING
WITH A WITNESS, WHICH FALSE ACCUSATIONS OF CRIMINAL
ACTS ARE INTOLERABLE IN A SOCIETY THAT VALUES DUE
PROCESS OF LAW. THESE DEFAMATORY STATEMENTS ALSO
HAD A TENDENCY TO INJURE PLAINTIFF IN HIS OCCUPATION

AS A PERFORMER; WHO AS A RESULT THEREOF LOST
BUSINESS OPPORTUNITIES, ENDORSEMENT & LICENSING FEES,
& PAYMENT FOR SERVICES; DUE TO THE STATEMENT'S
EFFECT OF UNDERCUTTING THE BASIS OF PUBLIC GOODWILL
TOWARDS HIM FOR HIS ACTIONS DURING THE INCIDENT, FOR
WHICH HE IS WIDELY KNOWN & SOUGHT AFTER FOR
BUSINESS PARTNERSHIP, ENDORSEMENT, LICENSING OF HIS
INTELLECTUAL PROPERTY, & PERFORMANCE OF SERVICES;
BECAUSE EVERYONE LOVES & WANTS TO DEAL WITH A
HERO WHO SAVED PEOPLES' LIVES. FRANCISCO KNEW
THE FALSITY OF HIS DEFAMATORY STATEMENTS, OR MADE
THEM WITH A RECKLESS DISREGARD OF THE TRUTH
PLEADED IN "2" & "3"; AS HE HAS ADMITTED IN "86";
AT THE TIME HE MADE THEM. HE MADE THE STATEMENTS
IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE
ENTERPRISE F55 DESCRIBED IN "45" & "46".

## EQUITABLE ESTOPPEL

159.) PLAINTIFF HAS ENGAGED IN LICENSING OF THE
MOTION PICTURE WORK IN "6" TO THE GREGORY BROTHERS
UNDER QUALITY CONTROL LICENSE SINCE FEBRUARY 2013,
KMPH FOX NEWS HAD KNOWLEDGE OF PLAINTIFF EXERCISING
HIS RIGHTS THEREBY AS OWNER OF THE COPYRIGHT TO MAKE
& PUBLISH DERIVATIVE WORKS; & KMPH'S CONDUCT IN ACQUIESCENCE
ESTOPS KMPH FROM DISPUTING PLAINTIFF'S OWNERSHIP THEREOF

IMPLIED IN FACT CONTRACT

**CONFIDENTIAL NEGOTIATIONS PRE-COMMISSION**

160.) PLAINTIFF REPLEADS "58" - "60" AS SHOWING
THAT PLAINTIFF WAS SOLICITED BY RAWTV, IN ITS
FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE
ENTERPRISE NRSR IN "61" & "62" TO PREPARE INFORMATION
& MATERIALS, & INFORMATION ABOUT MATERIALS;
WHICH PLAINTIFF DID INDEED PREPARE & CREATE.
PLAINTIFF DISCLOSED SAID INFORMATION & MATERIAL
TO RAWTV & NRSR WITH THE EXPRESS CONDITION THAT
IT WAS NOT TO BE USED UNLESS PLAINTIFF WAS COMPENS-
ATED THEREFOR IN THE MANNER HE AGREED TO, IF
HE SHOULD SO AGREE. RAWTV & NRSR ACCEPTED THE
DISCLOSURE KNOWING THE CONDITIONS ON WHICH IT
WAS TENDERED & PLAINTIFF'S STIPULATED VALUATION
OF IT, TO WIT: 20% OF GROSS REVENUE & 5 MINUTES
OF HIS ORIGINAL MUSIC BROADCAST IN A MOVIE FAVORABLE
TO HIM IN WHICH HE IS NOT DEFAMED; WHICH VALUE
WAS REASONABLE. RAWTV FURTHER ADMITTED TO VOLUNTARY
ACCEPTANCE OF THE INFORMATION & MATERIALS; & TO
THEIR USE THEREOF; & TO THEIR KNOWLEDGE OF
PLAINTIFF'S CONDITIONS TO USE, IN "70" & "72", & TO
NETFLIX & NRSR'S KNOWLEDGE THEREOF, IN "71" & "72".
PLAINTIFF REASONABLY INTERPRETED RAWTV'S MESSAGE IN
"64" AS A COUNTEROFFER & EXERCISED DUE DILIGENCE

AS PLEADED IN "66" TO DISCOVER THE BREACH OF IMPLIED-IN-FACT CONTRACT ON FEBRUARY 24, 2021 AS PLEADED IN "66". RAWTV WAS THEN UNJUSTLY ENRICHED BY THE USE OF PLAINTIFF'S MATERIALS & INFORMATION AS PLEADED IN "76"; & NETFLIX AS PART OF NRSR WAS ALSO UNJUSTLY ENRICHED PURSUANT TO THE CONSPIRACY IN "61" BY THE AMOUNT OF THE GROSS REVENUE OF THWH; TO THE DETRIMENT OF PLAINTIFF IN THE UNCOMPENSATED USE OF HIS INFORMATION & MATERIALS IN A MOVIE UNFAVORABLE TO HIM. PLAINTIFF REPLEADS "97" AS SHOWING HIS EXPECTATION OF COMPENSATION WAS CUSTOMARY

XXX CONFIDENTIAL NEGOTIATIONS POST-COMMISSION

161.) PLAINTIFF REPLEADS "91" AS SHOWING THAT PLAINTIFF WAS SOLICITED BY RAWTV, IN FURTHERANCE OF THE CONSPIRACY & CONDUCT OF THE ENTERPRISE NRSR IN "61"; TO PREPARE OR CREATE MOTION PICTURE WORKS, UNDER CIRCUMSTANCES FROM WHICH IT COULD BE CONCLUDED THAT PLAINTIFF EXPECTED COMPENSATION IN THE SAME MANNER PLEADED IN "160" FOR ANY USE THEREOF; & THAT PLAINTIFF DISCLOSED SAID WORKS TO RAWTV & NRSR CONDITIONED ON PAYMENT, WHICH CONDITIONS WERE KNOWN TO THEM WHEN THEY VOLUNTARILY ACCEPTED THE WORKS; WHICH WORKS WERE USED IN THWH AS PLEADED IN "96" & "103" & WHICH PLAINTIFF CONTENDS

WERE VALUED AT 12% OF GROSS REVENUE & DISTRIBUTION
OF 5 MINUTES OF HIS ORIGINAL MUSIC IN A MOVIE
FAVORABLE TO HIM IN WHICH HE IS NOT DEFAMED TO
A COMPARABLE SIZED AUDIENCE TO THAT WHICH WATCHED
THWH; WHICH VALUATION WAS A REASONABLE TERM
OF THE CONTRACT OFFER.

## IMPLIED IN LAW CONTRACT

162.) PLAINTIFF REPLEADS "160", IN THE ALTERNATIVE, AS
AN IMPLIED IN LAW QUASI CONTRACT UNDER PRINCIPLES
OF QUANTUM MERUIT

163.) PLAINTIFF REPLEADS "161", IN THE ALTERNATIVE, AS
AN IMPLIED IN LAW QUASI CONTRACT UNDER PRINCIPLES
OF QUANTUM MERUIT

## INTENTIONAL FRAUD

164.) PLAINTIFF REPLEADS "14", "16"-"18", & "22"-"23" AS
SHOWING BM DEFRAUDING PLAINTIFF OF THE VALUE OF
HIS PERFORMING SERVICES & OF MOTION PICTURE WORKS
DERIVED THEREFROM & PROPERTY RIGHTS THEREIN; WHICH
PLAINTIFF WAS DEPRIVED OF THROUGH BM'S FRAUD &
WHICH BM WAS UNJUSTLY ENRICHED BY THROUGH DISCLOSURE
TO NRSR OF FRAUDULENTLY OBTAINED INFORMATION IN
BREACH OF FIDUCIARY CONFIDENCE AS PLEADED IN "83", "85",
"90", "112", & "18",

115

165.) PLAINTIFF REPLEADS "38" AS SHOWING THAT JANE DOE 4 DEFRAUDED PLAINTIFF OF THE VALUE OF HIS PERFORMANCE IN A MOTION PICTURE WORK BY MISREPRESENTING TO HIM THAT THE CONVERSATION & PERFORMANCE WAS CONFIDENTIAL & BY IMPLICATION NOT RECORDED. THE MOTION PICTURE WAS OBTAINED BY FRAUDULENTLY INDUCING PLAINTIFF'S PERFORMANCE THEREON ~~RECORDED~~ THROUGH HIS JUSTIFIABLE RELIANCE ON SAID MISREPRESENTATION; & PLAINTIFF WAS DEPRIVED OF THE MOTION PICTURE WORK & HIS PROPERTY RIGHTS THEREIN & IN HIS PERFORMANCE FROM WHICH IT WAS DERIVED; & JANE DOE 4 WAS UNJUSTLY ENRICHED THEREBY; AS PLEADED IN "38" & "78"

166.) PLAINTIFF REPLEADS "45" - "52" AS SHOWING F55 DEFRAUDED HIM OF THE VALUE OF HIS PERFORMANCES ON STAGE AT FULTON 55 & IN MOTION PICTURES DESCRIBED IN "50" & "51"; & TO OBTAIN MOTION PICTURES WHICH PLAINTIFF IS THE DIRECTOR & AUTHOR OF & PROPERTY RIGHTS THEREIN AS DESCRIBED IN "50" & "51"; & THE ENDORSEMENT VALUES & PERFORMANCE VALUES OF PLAINTIFF'S SERVICES AS PLEADED IN "47", "54", & "55"; WHICH ENDORSEMENT VALUES AS PLAINTIFF'S "CROWD" ARE PLEADED IN "55" AS BENEFIT OF THE BARGAIN DAMAGES & ADMITTED TO BY FRANCISCO IN "86" & MARTIN IN "88", F55

WAS FURTHER UNJUSTLY ENRICHED BY THE FRAUDULENT
OBTAINING OF THE VIDEO FOOTAGE IN "50" & "51" AS
DESCRIBED IN "78"; & PLAINTIFF WAS DEPRIVED OF
MONEYS OR OTHER BENEFITS TO WHICH HE IS ENTITLED
AS THE RIGHTFUL OWNER OF THE COPYRIGHTS TO THE
MOTION PICTURES IN "50" & "51" & THE MUSICAL COMPOSITIONS,
CHOREOGRAPHY, & DRAMATIC WORKS ON WHICH THEY
WERE DERIVED.

167.) PLAINTIFF REPLEADS "59" - "62" AS SHOWING THAT
NRSR DEFRAUDED PLAINTIFF OF THE VALUE OF HIS
SERVICES DESCRIBED IN "59" - "60"; WHICH VALUE WAS
THE 20% OF GROSS REVENUE OF THWH STIPULATED AS
CONDITION TO USE & DERIVATIVE USE OF SAID SERVICES
AS PLEADED IN "62"

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

168.) PLAINTIFF REPLEADS "14" - "22" & "83" - "85" AS SHOWING
THE FOLLOWING: (1) BM & BMJKL KNEW THAT PLAINTIFF
HAD RECENTLY ENDURED A TRAUMATIC INCIDENT LIKELY
TO INDUCE PTSD EVEN IN SOMEONE WITHOUT A PRIOR HISTORY
OF PTSD; & THAT PLAINTIFF WAS EXTREMELY INTOXICATED
UPON MEETING BM; (2) BM & BMJKL EGREGIOUSLY &
OUTRAGEOUSLY GOT PLAINTIFF EVEN MORE INTOXICATED FOR
THE PURPOSE OF FILMING & OBSERVING HIM IN EMBARASS-
ING CIRCUMSTANCES TO EXPLOIT HIS PTSD RESPONSE

TO THE TRAUMATIC INCIDENT; (3) EVEN MORE EGREGIOUSLY, BM & BMJKL DID THIS AFTER VOLUNTARILY ASSUMING A GUARDIANSHIP OVER PLAINTIFF, & IN THE COURSE OF THAT FIDUCIARY RELATIONSHIP; (4) BM & BMJKL DID THIS WITH THE ACTUATING MOTIVE OF SADISTIC PLEASURE IN CAUSING, & INTENDING TO CAUSE, PLAINTIFF EMOTIONAL DISTRESS FROM HAVING EMBARASSING PTSD - TRIGGERED INTOXICATED BEHAVIOR DESCRIBED &/OR BROADCAST PUBLICLY; (5) BM, BMJKL, & NRSR CONFERRED WITH EACH OTHER, HAD A MEETING OF THE MINDS & SHARED INTENT, & AGREED TO INTENTIONALLY INFLICT EMOTIONAL DISTRESS ON PLAINTIFF BY PUBLICLY BROADCASTING DESCRIPTIONS & PORTRAYALS OF SAID BEHAVIOR, OR DEFAMATORY STATEMENTS ASSOCIATED THEREWITH WHICH WERE IN FACT PROVABLY FALSE (6) BM, BMJKL, & NRSR DID INDEED PUBLICLY BROADCAST SAME AS PLEADED IN "96" & "103." PLAINTIFF HAS EXPERIENCED SEVERE OR EXTREME EMOTIONAL DISTRESS SINCE THE BROADCAST; WHICH HAS BEEN DOCUMENTED BY A PSYCHOLOGIST, & WAS ACTUALLY & PROXIMATELY CAUSED BY BM, BMJKL, & NRSR'S OUTRAGEOUS CONDUCT HERETOFORE DESCRIBED.

169.) PLAINTIFF REPLEADS "45" - "55", "86", & "88" AS SHOWING THE FOLLOWING; (1) F55 EGREGIOUSLY & OUTRAGEOUSLY INDUCED PLAINTIFF, WHO WAS HOMELESS, TO HITCHHIKE TO A MUSIC SHOW & PERFORM

SERVICES BY THEIR FALSE PROMISE TO PAY HIM, (2) & INSTEAD OF
PAYING HIM THEY THREATENED HIM WITH DEPORTATION &
MALICIOUSLY DEFAMED HIM TO DESTROY HIS BUSINESS (3) THEY
CONSPIRED WITH EACH OTHER TO MAKE UP STORIES ABOUT
PLAINTIFF ACCUSING HIM OF CRIMINAL ACTS & CONFERRED WITH,
HAD A MEETING OF THE MINDS & SHARED INTENT, & AGREED WITH
NRSR TO PUBLISH PROVABLY FALSE STATEMENTS OF FACTS
ACCUSING PLAINTIFF OF CRIMINAL ACTS (4) WITH SHARED INTENTION
OF CAUSING, OR RECKLESS DISREGARD OF THE PROBABILITY OF
CAUSING, EMOTIONAL DISTRESS TO PLAINTIFF (5) F55 & NRSR DID
INDEED PUBLICLY BROADCAST SAME, AS PLEADED IN "96" & "103",
PLAINTIFF HAS EXPERIENCED SEVERE OR EXTREME EMOTIONAL
DISTRESS SINCE THE BROADCAST; WHICH HAS BEEN DOCU-
MENTED BY A PSYCHOLOGIST, & WAS ACTUALLY & PROXIMATELY
CAUSED BY F55 & NRSR'S OUTRAGEOUS CONDUCT HERETOFORE
DESCRIBED

170.) PLAINTIFF REPLEADS "2.)g.)", "2.)h.)", & "87" AS SHOWING
THAT JEFF STRICKER DONNED AN OFFICIAL POLICE UNIFORM
WITHOUT PRIOR AUTHORIZATION OF THE STATEMENTS HE
MADE WHILE GARBED THEREIN, AS PLEADED IN "153" (1) TO
COMMIT THE EGREGIOUS & OUTRAGEOUS CONDUCT OF
CONTRADICTING HIS OWN SWORN STATEMENTS & THE
STATEMENTS OF OTHERS AT THE SCENE OF THE INCIDENT
WHO WERE ACTUALLY THERE; TO FALSELY ACCUSE PLAINTIFF

WITH PROVABLY FALSE STATEMENTS OF FACT THAT PLAINTIFF WAS CULPABLE OF THE MULTIPLE CRIMINAL ACTS OF VIOLENCE COMMITTED BY MCBRIDE DURING THE INCIDENT [3]; WHILE STRICHER EGREGIOUSLY & OUTRAGEOUSLY HELD HIMSELF OUT AS SPEAKING IN THE OFFICE OF FRESNO COUNTY SHERIFF [4] INTENDING TO CAUSE, OR WITH RECKLESS DISREGARD OF CAUSING, EMOTIONAL DISTRESS TO PLAINTIFF BY BROADCASTING SUCH EGREGIOUS CONDUCT [5] HAVING CONFERRED WITH, HAVING MEETING OF THE MINDS & SHARED INTENT WITH, & AGREEING WITH NRSR TO BROADCAST SAME. NRSR & STRICHER DID INDEED PUBLISH & BROADCAST SAME AS PLEADED IN "96" & "103"; & AS A RESULT ACTUALLY & PROXIMATELY CAUSED BY SAID CONDUCT, PLAINTIFF SUFFERED SEVERE OR EXTREME EMOTIONAL DISTRESS; WHICH HAS BEEN DOCUMENTED BY A PSYCHOLOGIST.

171.) PLAINTIFF REPLEAD "58" - "103" AS SHOWING THAT NRSR ENGAGED IN A PATTERN OF EGREGIOUS & OUTRAGEOUS CONDUCT INTENDED TO CAUSE, OR WITH RECKLESS DISREGARD OF THE PROBABILITY OF CAUSING, PLAINTIFF EMOTIONAL DISTRESS; (1) FRAUDULENTLY OBTAINING INFORMATION & MATERIALS FROM PLAINTIFF UNDER PRETENSE OF NEGOTIATIONS; (2) INTERFERING WITH PLAINTIFF'S BUSINESS; (3) AIDING IN THE COMMISSIONS OF BREACH OF CONFIDENCE, FALSE LIGHT PORTRAYALS, DEFAMATION, INTRUSION, PUBLIC DISCLOSURE OF PRIVATE FACT, & FRAUD AGAINST PLAINTIFF (4) PUBLISHING & BROADCASTING SAID COMMISSIONS

& DERIVATIVE MOTION PICTURE WORKS THEREOF IN THWH, A
SMEAR PIECE MAKING FALSE STATEMENTS OF FACT THAT
PLAINTIFF IS GUILTY OF CRIMINAL VIOLENT ACTS ON THE
INCIDENT IN FRESNO ON 02/01/13, DESPITE KNOWLEDGE OF
THE PLEADED TRUTH IN "2" & "3". AS A RESULT ACTUALLY
& PROXIMATELY CAUSED BY SAID CONDUCT, PLAINTIFF
SUFFERED SEVERE OR EXTREME EMOTIONAL DISTRESS; WHICH
HAS BEEN DOCUMENTED BY A PSYCHOLOGIST.

<u>INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS/</u>
<u>INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC</u>
<u>ADVANTAGE</u>

172.) PLAINTIFF REPLEADS "57" & "63" AS SHOWING A VALID
CONTRACT, OR IN THE ALTERNATIVE AN ECONOMIC RELATIONSHIP
THAT CONTAINED THE PROBABILITY OF FUTURE ECONOMIC
BENEFIT TO PLAINTIFF; REPLEADS "65" - "68" AS SHOWING
NRSR KNEW OF THE CONTRACT OR RELATIONSHIP; "58" - "62"
& "66" - "67" AS INTENTIONALLY WRONGFUL FRAUD, SHERMAN
ACT VIOLATIONS, &/OR HOBBS ACT VIOLATIONS BY NRSR
DESIGNED TO DISRUPT OR BREACH THE CONTRACT OR RELATION-
SHIP; "68" AS ACTUAL DISRUPTION OF THE RELATIONSHIP; &
"62" AS RESULTING DAMAGES OF 20% OF GROSS REVENUE
OF A DOCUMENTARY FILM ABOUT PLAINTIFF PROXIMATELY
CAUSED BY NRSR'S ACTIONS, WHICH PLAINTIFF PLEADS AS
20% OF THE GROSS REVENUE OF THWH.

173.) PLAINTIFF REPLEADS "69" AS AN ORAL CONTRACT, OR IN THE ALTERNATIVE AN ECONOMIC RELATIONSHIP THAT CONTAINS THE PROBABILITY OF FUTURE ECONOMIC BENEFIT TO PLAINTIFF, FOR 12% OF THE GROSS REVENUE OF THE DOCUMENTARY FILM ABOUT PLAINTIFF; "73" AS CONFIRMATION BY CREAM OF THE EXISTENCE OF THE CONTRACT IN "69" BETWEEN PLAINTIFF & CREAM; "70" - "72" AS SHOWING NRSR's INTENTIONALLY WRONGFUL ATTEMPTED & ACTUAL FRAUD, SHERMAN ACT VIOLATIONS, &/OR HOBBS ACT VIOLATIONS AS SHOWN INTENTIONAL BY "58" - "62"; WHICH ACTS WERE DESIGNED TO DISRUPT THE RELATIONSHIP OR CONTRACT AS SHOWN BY "61" - "62"; "70" - "72" AS SHOWING KNOWLEDGE BY NRSR OF THE EXISTENCE OF THE CONTRACT OR RELATIONSHIP AT THE TIME OF THE INTENTIONALLY WRONGFUL ACTS; "74" & "75" AS SHOWING ACTUAL DISRUPTION OR BREACH OF THE CONTRACT OR RELATIONSHIP AS A RESULT OF SAID ACTS; & PLAINTIFF PLEADS 12% OF THE GROSS REVENUE OF THWH & THE FAIR MARKET VALUE OF DISTRIBUTION OF 5 MINUTES OF PLAINTIFF'S ORIGINAL MUSIC IN A FILM THAT IS FAVORABLE TO HIM & IN WHICH HE IS NOT DEFAMED; WHICH AMOUNT IS EQUIVALENT TO THE COST OF PRODUCTION & DISTRIBUTION OF THWH.

174.) PLAINTIFF REPLEADS "55" AS SHOWING THAT HE HAD AT LEAST A DOZEN CONTEMPORANEOUS, & MANY MORE

ANTICIPATED, ECONOMIC RELATIONSHIPS WHICH CONTAINED
THE PROBABILITY OF ECONOMIC BENEFIT TO PLAINTIFF;
& "45" - "49" & "86", "88" AS SHOWING F55'S KNOWLEDGE
OF SAID RELATIONSHIPS & INTENTION TO DISRUPT SAME
BY WRONGFUL FRAUD & DEFAMATION &/OR DISPARAGEMENT;
WHICH F55 DID INDEED DISRUPT AS SHOWN IN "53" & "55"; &
ADMITTED TO BY F55 IN "86" & "88" AS RESULTING IN
DAMAGE TO PLAINTIFF, WHICH IS PLEADED WITH SPECIFICITY
IN "55".

## LANHAM ACT VIOLATIONS 15 USC 1125

175.) PLAINTIFF IS & HAS BEEN SEARCHING FOR OPPORTUNITIES
TO COMMERCIALIZE HIS IDENTITY, IMAGE, VOICE, NAME,
LIKENESS, & MARKS "THE HATCHET WIELDING HITCHHIKER" &
"SMASH, SMASH, SMASH!"; THROUGH LICENSING HIS MARKS
& ENDORSEMENTS TO FILM PRODUCTION COMPANIES, &
THROUGH MONETIZING HIS YOUTUBE CHANNEL & SOCIAL
MEDIA PLATFORM. PLAINTIFF IS CURRENTLY LICENSING USE
OF HIS VOICE, NAME, LIKENESS & MARKS TO YOUTUBERS
"THE GREGORY BROS" & "WAVY WEB SURF" UNDER
QUALITY - CONTROLLED LICENSE AGREEMENTS.
176) IN FEBRUARY OF 2013, PLAINTIFF GRANTED "THE
GREGORY BROS" A QUALITY - CONTROLLED LICENSE TO
USE HIS NAME, VOICE, LIKENESS, & MARKS TO MARKET
THEIR AUTO - TUNED SONG DERIVATIVE OF PLAINTIFF'S DRAMATIC

WORK & MOTION PICTURE WORK DESCRIBED IN "6"; ON YOUTUBE & ITUNES; AT WHICH POINT THE PLAINTIFF AGREED TO VISIT & INSPECT THE SITE OF PRODUCTION. IN APRIL OF 2013, AT THE SOONEST PRACTICABLE TIME PURSUANT TO THIS AGREEMENT, PLAINTIFF INSPECTED THE SITE OF PRODUCTION IN WILLIAMSBURG, NY; & ASCERTAINED THAT THE PRODUCT WAS MANUFACTURED WITH SUPERB QUALITY. PLAINTIFF ROUTINELY INSPECTS THE PRODUCT ON YOUTUBE & ITUNES, ONLY TO DISCOVER THAT ITS ORIGINAL EXCELLENT QUALITY REMAINS UNCHANGED. PLAINTIFF HAS RECEIVED, & CONTINUES TO RECEIVE, LICENSING FEES FOR THE USE OF HIS MARKS, NAME, VOICE & LIKENESS; SINCE THE MOMENT OF INITIAL PRODUCTION TO THE PRESENT; & WILL CONTINUE TO DO SO FOR THE FORESEEABLE FUTURE. THIS HAS BENEFITTED PLAINTIFF APPROXIMATELY $14,000 SO FAR.

177.) IN OCTOBER OF 2018, PLAINTIFF GRANTED "WAVY WEB SURF" A QUALITY-CONTROLLED LICENSE TO USE HIS NAME, VOICE, LIKENESS & MARKS TO MARKET HIS YOUTUBE CHANNEL. IN LIEU OF INSPECTING THE SITE OF PRODUCTION, DUE TO IMPOSSIBILITY BECAUSE OF PLAINTIFF'S INCARCERAT-ION, PLAINTIFF INSPECTED THE SCRIPT OF THE VIDEO & APPROVED IT FOR PRODUCTION. IN CONSIDERATION OF THIS, WAVY WEB SURF PAID PLAINTIFF THE INITIAL FEE OF

$2700 & INCLUDED ADVERTISEMENT ON HIS CHANNEL OF A LINK TO PLAINTIFF'S TOKEN CROWDFUNDING PLATFORM SINCE THE MOMENT OF INITIAL BROADCAST TO THE PRESENT; WHICH ADVERTISING CONSIDERATION WILL CONTINUE FOR THE FORESEEABLE FUTURE, & HAS RAISED APPROXIMATELY $11,300 FOR PLAINTIFF TO DATE.

178.) PLAINTIFF IS FAMOUS & WIDELY RECOGNIZED FOR HIS NAME, VOICE, LIKENESS, & UNREGISTERED MARKS "KAI THE HITCHHIKER"; "KAI THE HATCHET WIELDING HITCHHIKER"; "THE HATCHET WIELDING HITCHHIKER"; & "SMASH, SMASH, SMASH!"; & FOR HIS DISTINGUISHING DEVICES OF HAIRSTYLE, GARB, PERFORMANCE, & BODY APPEARANCE IN THE DRAMATIC WORK & DERIVATIVE MOTION PICTURE THEREOF DESCRIBED IN "6"; & FOR HIS PROFESSION AS PLEADED IN "5".

179.) FROM THE FACTS PLEADED IN "175" – "178"; PLAINTIFF HAS SHOWN COMMERCIAL USE OF HIS. MARKS, NAME, VOICE, & LIKENESS; & THAT THE FAIR MARKET VALUE OF PLAINTIFF'S ENDORSEMENT OF A YOUTUBE VIDEO WITH HIS NAME, VOICE, LIKENESS, OR MARKS; IS CURRENTLY $14,000, PER PUBLISHED YOUTUBE VIDEO.

180.) PLAINTIFF ALSO USES HIS MARKS, NAME, VOICE, LIKENESS IN COMMERCE THROUGH HIS MONETIZED YOUTUBE CHANNEL, & HIS FACEBOOK, INSTAGRAM, & TIKTOK ACCOUNTS; WHICH ARE ALL & EACH IN COMPETITION WITH THE CAPTIONED

DEFENDANTS', FOR THE SAME TYPES OF SERVICES, PRODUCTS, & CUSTOMERS

181.) PLAINTIFF REPLEADS "69" AS SHOWING THAT PLAINTIFF'S FAIR MARKET VALUE OF HIS ENDORSEMENT OF A DOCUMENTARY FILM WAS 12% OF THE FILM'S GROSS REVENUE & DISTRIBUTION OF 5 MINUTES OF PLAINTIFF'S ORIGINAL MUSIC IN A FILM THAT IS FAVORABLE TO HIM & IN WHICH HE IS NOT DEFAMED.

F55'S COMMERCIAL DISPARAGEMENT

182.) PLAINTIFF REPLEADS "45"-"55", "86", "88", "146", & "147" AS SHOWING F55'S COMMERCIAL DISPARAGEMENT OF PLAINTIFF'S MARKS IN COMMERCE PLEADED IN "176"-"181", IN VIOLATION OF 15 USC 1125, IN THE ALTERNATIVE TO "126"-"127", ~~182.) PLAINTIFF REPLEADS "99"-"102" & "117"-"125"~~ & DAMAGES

FALSE ADVERTISING / FALSE DESIGNATION OF ORIGIN BY NRSR

183.) PLAINTIFF REPLEADS "99"-"102" & "117"-"125", IN ADDITION TO OR IN THE ALTERNATIVE TO CALIFORNIA STATE LAW RIGHT OF PUBLICITY CLAIMS; AS SHOWING FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT; OR IN THE ALTERNATIVE, FALSE DESIGNATION OF ORIGIN IN VIOLATION OF THE LANHAM ACT; OF NETFLIX'S SUBSCRIPTION SERVICE USING PLAINTIFF'S MARKS, NAME, VOICE, OR LIKENESS; WITH UNJUST ENRICHMENT OF NRSR AS PLEADED IN "124"; WHICH PLAINTIFF IS ENTITLED

TO DISGORGEMENT OF THE PROFITS OF.

## PUBLIC DISCLOSURE OF PRIVATE FACT

184.) PLAINTIFF REPLEADS "83" - "85", & "96", "103", & "112" - "114" AS SHOWING BM, BMJKL, & NRSR'S PUBLIC DISCLOSURE BY BROADCAST ON NETFLIX; OF FACTS THAT ARE PRIVATE DUE TO FIDUCIARY CONFIDENCE BETWEEN PLAINTIFF & BM & BMJKL AT THE TIME; WHICH WOULD BE OFFENSIVE & OBJECTIONABLE TO THE REASONABLE PERSON; & WHICH ARE NOT OF LEGITIMATE PUBLIC CONCERN

185.) PLAINTIFF REPLEADS "38", "78", "96", "103", & "116" AS SHOWING JANE DOE 4 & NRSR'S PUBLIC DISCLOSURE BY BROADCAST ON NETFLIX; OF FACTS THAT ARE PRIVATE DUE TO PURPORTED CONFIDENCE BETWEEN PLAINTIFF & JANE DOE 4 AT THE TIME, WHICH SHE INDUCED BY FRAUD; WHICH WOULD BE OFFENSIVE & OBJECTIONABLE TO THE REASONABLE PERSON, TO WIT: STATEMENTS BY PLAINTIFF THAT HE "PEED ON THE WALK OF FAME"; WHICH ARE NOT OF LEGITIMATE PUBLIC CONCERN.

## FEDERAL CIVIL RICO

[36a1] F55'S ILLEGAL ENTERPRISE

186.) PLAINTIFF REPLEADS "45" & "46" AS ESTABLISHMENT OF AN ENTERPRISE & FORMING OF A CONSPIRACY AS DEFINED BY 18 USC 1961, 1962(d) THE ENTERPRISE & CONSPIRACY "F55"

187.) PLAINTIFF REPLEADS "47", "55", "86", & "88 AS CONDUCT IN ~~187.) PLAINTIFF REPLEADS "47", "55", "86", "88 AS CONDUCT IN~~ FURTHERANCE OF THE ENTERPRISE F55, IN WHICH PLAINTIFF WAS DEPRIVED OF MONEYS BY F55'S ACTS OF WIRE FRAUD VIOLATING 18 USC 1343 IN "47" & "48", & "52"; & WAS DEPRIVED OF POSSESSION & TITLE OF HIS MOTION PICTURE WORKS BY SEPERATE & DISTINCT ACTS OF 18 USC 1343 BY F55 OBTAINING SAID PROPERTY IN "50" & "51"; & WAS FURTHER DAMAGED IN HIS BUSINESS AS DESCRIBED IN "53" - "55" AS A RESULT OF F55'S VIOLATIONS OF 18 USC 1343 AFFECTING PLAINTIFF'S ECONOMIC RELATIONS & PROPERTY RIGHTS IN HIS NAME, VOICE, LIKENESS & MARKS' VALUES CREATED UNDER CAL CIV. CODE 3344 & THE LANHAM ACT BY F55'S MISREPRESENTATIONS OVER TRANSMISSIONS BY WIRE TO OTHER VENUES PLEADED IN "53" & ADMITTED TO BY F55 IN "86", "88". THIS SHOWS CLOSE-ENDED CONTINUITY OF PROHIBITED ACTIVITY UNDER 18 USC 1962(c) WHICH HAS CONTINUED & THREATENS TO CONTINUE IN THE FORM OF VIOLATIONS OF 18 USC 1957 DESCRIBED IN "78"; NAMELY, MONETARY TRANSACTIONS INVOLVING THE CRIMINALLY-DERIVED PROPERTY DERIVED FROM THE VIOLATIONS OF 18 USC 1343 DESCRIBED IN "47" & DESCRIBED IN "50" & "51", PLAINTIFF IS ENTITLED TO TREBLE BENEFIT OF THE BARGAIN DAMAGES SPECIFIED IN "55" & "166" UNDER 18 USC 1964

BECAUSE HE WAS DAMAGED BY F55'S PATTERN OF RACKETEERING ACTIVITY.

188.) F55'S OPEN-ENDED CONTINUITY OF CONDUCT BY VIOLATING 18 USC 1957 IN FURTHERANCE OF THE ENTERPRISE AS PLEADED IN "187" DEPRIVES PLAINTIFF OF HIS PROPERTY INTERESTS IN REVENUES FROM, & EXERCISE OF USE, OF THE MOTION PICTURE WORKS & ATTENDANT COPYRIGHTS DESCRIBED IN "50" & "51"

<u>(RAW) EBW'S ILLEGAL ENTERPRISE</u>

189.) PLAINTIFF REPLEADS "41" AS ESTABLISHING OF AN ENTERPRISE "EBW" & FORMING OF A CONSPIRACY AS DEFINED BY 18 USC 1961, 1962(d)

190.) PLAINTIFF REPLEADS "42"-"44" AS CONDUCT BY EBW IN FURTHERANCE OF THE ENTERPRISE EBW; IN WHICH THE MOTION PICTURE WORKS DESCRIBED IN "43" WAS DERIVED FROM DISTRIBUTION OF A SUBSTANCE NAMED IN 27 USC 801 IN VIOLATION OF STATE LAW; & FROM 7 DISTINCT ACTS OF 8 USC 1324 VIOLATIONS. PLAINTIFF REPLEADS "78" AS AN ACT OF MONETARY TRANSACTIONS INVOLVING THE 8 USC 1324 & 21 USC 801 VIOLATION CRIMINALLY DERIVED PROPERTY, IN VIOLATION OF 18 USC 1957, AS CONDUCT IN FURTHERANCE OF ENTERPRISE EBW WHICH HAS CONTINUITY & IS LIKELY TO RECUR; & HAS DAMAGED PLAINTIFF IN HIS BUSINESS OR PROPERTY BY DEPRIVING HIM OF HIS PROPERTY & BUSINESS INTERESTS IN REVENUES FROM, & EXERCISE OF USE OF RIGHTS IN,

USE OF THE MOTION PICTURE WORKS & ATTENDANT
COPYRIGHTS DESCRIBED IN "43". BECAUSE PLAINTIFF
WAS SO DAMAGED BY EBW'S PATTERN OF RACKETEERING
ACTIVITY, HE IS ENTITLED TO TREBLE DAMAGES FROM
EBW THROUGH ITS UNAUTHORIZED DERIVATION OF
PLAINTIFF'S UNDERLYING DRAMATIC WORKS & CHOREOGRAPHY
IN "43" DIRECTLY CAUSED BY ITS VIOLATIONS OF 18 USC
1957 HERETOFORE DESCRIBED AS CONDUCT IN FURTHERANCE
OF ENTERPRISE EBW; & EBW'S UNJUST ENRICHMENT BY,
& PLAINTIFF'S DEPRIVATION OF, REVENUES & EXERCISE
OF RIGHT TO CONTRACT & FORM ECONOMIC RELATIONS
THEREFROM & THEREWITH; AS SPECIFIED IN "78";
UNDER 18 USC 1964.

BMJKL'S ILLEGAL ENTERPRISE
191.) PLAINTIFF REPLEADS "14-15," AS ESTABLISHMENT
OF AN ENTERPRISE "BMJKL" & FORMING A CONSPIRACY
AS DEFINED BY 18 USC 1961, 1962(d)
192.) PLAINTIFF REPLEADS "16" - "26" AS CONDUCT IN
FURTHERANCE OF THE ENTERPRISE BMJKL; IN WHICH
THE MOTION PICTURES WORKS DESCRIBED IN "24" WERE
BOTH DERIVED FROM; AS WERE MOTION PICTURES DESCRIBED
IN "18" & "23" DERIVED FROM; BM JKL'S DISTRIBUTION OF
A SUBSTANCE NAMED IN 21 USC 802 IN VIOLATION OF
STATE LAW DESCRIBED IN "16","19","27"; BM'S VIOLATIONS OF

130

18 USC 1343 DESCRIBED IN "16" & "22"-"23"; & THE 7 DISTINCT VIOLATIONS OF 8 USC 1324 DESCRIBED IN "20", WHICH BMJKL ADMITS TO IN "83"-"85". PLAINTIFF REPLEADS "78" AS TWO DISTINCT ACTS OF MONETARY TRANSACTIONS INVOLVING THE 27 USC 801 VIOLATION/ 18 USC 1343 VIOLATION-/8 USC 1324 VIOLATION-DERIVED MOTION PICTURES DESCRIBED IN "24"-"25", IN VIOLATION OF 18 USC 1957, AS CONDUCT IN FURTHERANCE OF ENTERPRISES BM & BMJKL WHICH HAS CONTINUITY & IS LIKELY TO RECUR; & HAS DAMAGED PLAINTIFF IN HIS BUSINESS OR PROPERTY BY DEPRIVING HIM OF HIS PROPERTY & BUSINESS INTERESTS ~~FROM IN~~ IN REVENUES FROM, & EXERCISE OF USE OF RIGHTS IN, USE OF THE MOTION PICTURE WORKS & ATTENDANT COPYRIGHTS DESCRIBED IN "24"-"25". BECAUSE PLAINTIFF WAS THUSLY DAMAGED BY BMJKL'S PATTERN OF RACKETEERING ACTIVITY, HE IS ENTITLED TO TREBLE DAMAGES FROM BMJKL CAUSED BY ITS VIOLATIONS OF 18 USC 1957 HERETOFORE DESCRIBED THROUGH SUCH VIOLATIONS DIRECTLY CAUSING UNAUTHORIZED DERIVATIONS OF PLAINTIFF'S UNDERLYING DRAMATIC WORKS & CHOREOGRAPHY IN CONDUCT OF THE ENTERPRISE BMJKL IN "78"; & BMJKL'S UNJUST ENRICHMENT BY, & DEPRIVATION OF PLAINTIFF'S, REVENUES & EXERCISE OF RIGHT TO CONTRACT & FORM

ECONOMIC RELATIONS THEREFROM & THEREWITH; AS
SPECIFIED IN "78"; UNDER 18 USC 1964.

## NRSR'S ILLEGAL ENTERPRISE

193) PLAINTIFF REPLEADS "61" & "79" AS ESTABLISHMENT
OF AN ENTERPRISE "NRSR" & FORMING OF A CONSPIRACY
AS DEFINED BY 18 USC 1961, 1962(d)

194.) PLAINTIFF REPLEADS "58"-"60", & "62" AS CONDUCT
BY NRSR IN FURTHERANCE OF THE ENTERPRISE NRSR;
IN WHICH PLAINTIFF WAS DEPRIVED OF CONSIDERATION UPON
WHICH HE CONDITIONED THE DISCLOSURE OF THE MATERIALS
& INFORMATION DESCRIBED THEREIN BY NRSR'S VIOLATIONS
OF 18 USC 1343 PLEADED IN "59"-"60" & "62"; WHICH
CONSIDERATION WAS A PROPERTY &/OR BUSINESS
INTEREST IN 20% OF THE GROSS REVENUE OF A
DOCUMENTARY FILM IN WHICH PLAINTIFF'S COPYRIGHT
PROTECTED PERFORMANCES INCLUDING; BUT NOT LIMITED
TO, THOSE LISTED IN "59" APPEAR; WHICH VALUE WAS
PLAINTIFF'S VESTED RIGHT AS AUTHOR OF SAID PERFORMANCES
TO FIX THE FEE FOR TO MAKE DERIVATIVE WORKS OF; &
WHICH NRSR'S CONDUCT DAMAGED; WHICH VIOLATES 18 USC 1962(c)

195.) PLAINTIFF REPLEADS "76" AS SHOWING RAWTV RECEIVED
INCOME OF $1,000,000 FROM NETFLIX THROUGH THE
PATTERN OF RACKETEERING ACTIVITY DESCRIBED IN "58-"62" &
"193'-"194"; & USED THE INCOME TO MAINTAIN NRSR

AS PLEADED IN "63" - "98"; IN VIOLATION OF 18 USC 1964(b), 195. PLAINTIFF WAS DEPRIVED OF HIS PROPERTY & BUSINESS INTERESTS & OF MONEYS / IN THE DISCLOSURE SERVICES HE MADE IN "59" & "60" & RAWTV WAS UNJUSTLY ENRICHED BY PLAINTIFF'S DEPRIVATION THROUGH THIS ACT IN FURTHERANCE OF NRSR

196.) PLAINTIFF REPLEADS "63" - "68" AS CONDUCT THROUGH VIOLATION OF 18 USC 1951 BY NRSR IN FURTHERANCE OF NRSR IN WHICH NRSR ATTEMPTED TO EXTORT PLAINTIFF THROUGH FEAR OF BEING DEPRIVED OF "AN OPPORTUNITY TO TELL YOUR OWN STORY IN YOUR OWN WORDS" TO OBTAIN A "RELEASE" CONTRACT FROM PLAINTIFF TO THE DETRIMENT OF PLAINTIFF & BENEFIT OF NRSR; IN INTERFERENCE WITH INTERSTATE OR FOREIGN COMMERCE AS PLEADED IN "67"; WHICH CAUSED PLAINTIFF TO BE DEPRIVED OF HIS PROSPECTIVE ECONOMIC BENEFIT FROM THE CONTRACT PLEADED IN "63" BY THE RECISSION IN "68" CAUSED BY NRSR'S CONDUCT IN FURTHERANCE OF ITS SCHEME TO EXTORT PLAINTIFF; WHICH IS A VIOLATION OF 18 USC 1962(c)

197.) PLAINTIFF REPLEADS "69 - "75" AS CONDUCT BY NRSR IN FURTHERANCE OF THE ENTERPRISE NRSR; IN WHICH PLAINTIFF WAS DEPRIVED OF PROSPECTIVE ECONOMIC ADVANTAGE IN THE FORM OF 12% OF THE GROSS REVENUE OF A DOCUMENTARY FILM ABOUT HIM & 5 MINUTES DISTRIBUTION OF HIS ORIGINAL MUSIC IN A FILM THAT WAS FAVORABLE TO HIM, & IN WHICH HE

WAS NOT DEFAMED WHICH WERE HIS CONSIDERATION DUE FROM
THE ORAL CONTRACT IN "69" BY NRSR'S VIOLATIONS OF
18 USC 1343 IN "59", "60", "62", & ATTEMPTED FRAUDS ALSO
VIOLATING 18 USC 1343 PLEADED IN "70" - "72"; &
ATTEMPTED EXTORTIONS OF PLAINTIFF PLEADED IN "70" & "72"
WHICH VIOLATE 18 USC 1951 WHICH CUMULATIVELY RESULTED
IN NRSR OBTAINING BY FRAUD MATERIALS & INFORMATION
FROM PLAINTIFF & USING SUCH IN BREACH OF CONFIDENCE TO
DISRUPT PLAINTIFF'S ORAL CONTRACT WITH CREAM AS
PLEADED IN "74" - "75"; IN VIOLATION OF 18 USC 1962(c); THIS
DAMAGE IS DISTINGUISHED FROM "194" AS BEING CONSIDERATION
FROM CREAM, WHEREAS "194" WAS CONSIDERATION DUE
FROM RAWTV/NETFLIX/NRSR.
198.) PLAINTIFF REPLEADS "59" & "77" AS CONDUCT BY NRSR
IN FURTHERANCE OF THE ENTERPRISE NRSR & CONSPIRACY
IN "61" & "62"; IN WHICH NRSR OBTAINED INFORMATION &
THEREFROM MOTION PICTURE WORKS DESCRIBED IN "6", "11", "24",
"28" - "37", "39", & "43", & LITERARY WORKS, PHOTOGRAPHS, &
VIDEOS DESCRIBED IN "40" BY MEANS OF THE FRAUD VIA
TRANSMISSION BY WIRE IN "59" - "62", WHICH AMOUNTS TO
16 DISTINCT ACTS IN VIOLATION OF 18 USC 1343; WHICH
DEPRIVED PLAINTIFF OF HIS BUSINESS & PROPERTY RIGHTS IN HIS
EXCLUSIVE RIGHTS IN HIS COPYRIGHT-PROTECTED UNDERLYING
DRAMATIC WORKS, CHOREOGRAPHY, MUSICAL COMPOSITIONS, & IN

THE MOTION PICTURE, LITERARY, & PHOTOGRAPHIC WORKS THEMSELVES
& OF THE MONEYS FROM REVENUES THEREFROM OBTAINED
ALSO THROUGH NRSR'S FRAUD UPON PLAINTIFF, WHICH
PLAINTIFF IS ENTITLED TO BY VESTED RIGHT AS AUTHOR TO
FIX FEES FOR LICENSE OF HIS EXCLUSIVE RIGHTS; & WHICH
HE HAD FIXED IN "62" AS 20% GROSS REVENUE OF ANY
RESULTING DERIVATIVE WORK, SPECIFIED IN "59","60", & "62" AS
REFERRING TO A DOCUMENTARY FILM; IN VIOLATION OF 18 USC
1964(c)

199.) PLAINTIFF REPLEADS "14"-"26", "41"-"44", "45"-"55", "83'-"86"%
"88","103",186,"90","192" WITH "78" AS SHOWING CONDUCT OF NRSR
IN FURTHERANCE OF THE NRSR ENTERPRISE; IN WHICH
NRSR ENGAGED IN MONETARY TRANSACTIONS INVOLVING
CRIMINALLY-DERIVED MOTION PICTURE WORKS & COPYRIGHTS
ATTENDANT THEREON IN VIOLATION OF 18 USC 1957 AS
DESCRIBED AS 8 SEPERATE ACTS IN "78"; WHICH DAMAGED
PLAINTIFF IN HIS PROPERTY INTEREST IN THE UNDERLYING
DRAMATIC WORKS, MUSICAL COMPOSITIONS, & CHOREOGRAPHY
TO EXERCISE HIS EXCLUSIVE RIGHTS INCLUDING, BUT NOT LIMITED
TO, HIS RIGHT TO PUBLISH OR MAKE DERIVATIVE WORKS; & TO
FIX FEES FOR ANY LICENSE TO DO SO.

200.) PLAINTIFF REPLEADS "100" & "118"-"125" AS CONDUCT OF
NRSR IN FURTHERANCE OF NRSR; IN WHICH NRSR SENT
TRANSMISSIONS VIA WIRE TO MILLIONS OF POTENTIAL

SUBSCRIBERS MISREPRESENTATIONS THAT THE WOULD BE
DIRECTED TO WATCH PLAINTIFF PERFORM BY CLICKING
THE TEXT "WATCH THE HATCHET WIELDING HITCHHIKER";
KNOWING THE FALSITY OF SUCH MISREPRESENTATION &
INTENDING TO INDUCE RELIANCE THEREON TO OBTAIN A
SUBSCRIPTION FEE; UPON WHICH MILLIONS OF POTENTIAL
SUBSCRIBERS DID RELY, BUT INSTEAD OF BEING DIRECTED
TO WATCH PLAINTIFF PERFORMING, THEY WERE DIRECTED
TO NETFLIX'S SUBSCRIPTION SIGN UP PAGE WHEREUPON
THEY COULD NOT IMMEDIATELY WATCH PLAINTIFF; & NRSR
THEREBY OBTAINED SUBSCRIPTION FEES FROM MILLIONS
OF VIOLATIONS OF 18 USC 1343; WHICH PLAINTIFF WAS
DAMAGED IN HIS PROPERTY INTEREST CREATED BY
CAL. CIV. CODE 3344 WHICH ENTITLES HIM TO THE
GROSS REVENUE OF SAID FALSE ADVERTISEMENTS &
MISREPRESENTATIONS AS PLEADED IN "121", "124"; IN VIOLATION
OF 18 USC 1962 (d)
201.) EACH OF "193" - "200" CONSTITUTES A TOTAL OF 8
CAUSES OF ACTION UNDER 18 USC 1964 FOR EACH OF WHICH
PLAINTIFF IS ENTITLED TO TREBLE DAMAGES. THESE
SHOW A PATTERN OF RACKETEERING ACTIVITY WHICH IS
CONTINUOUS & LIKELY TO RECUR IN THE FORM OF SEQUELS
OR SUBSEQUENT FILM PROJECTS INVOLVING SIMILAR RACKETEERING
ACTIVITY AS DEFINED BY 18 USC 1961 & WHICH INCLUDES

VIOLATIONS OF 18 USC 1343, 1951, & 1957. LIKEWISE, THE PATTERN OF VIOLATIONS OF 18 USC 1957 BY EACH ENTERPRISE BM, BMJUL, JANE DOE 4, EBW, & #55 IS LIKELY TO RECUR EACH TIME SUCH SEQUEL OR SUBSEQUENT FILM PROJECT IS MADE.

## SHERMAN ACT

202.) PLAINTIFF REPLEADS "61" AS SHOWING A CONTRACT, COMBINATION, OR CONSPIRACY IN RESTRAINT OF TRADE AFFECTING INTERSTATE COMMERCE BY NRSR

203.) PLAINTIFF REPLEADS "61" - "76" AS SHOWING THAT RAWTV & NETFLIX & NRSR COMBINED OR CONSPIRED WITH EACH OTHER TO MONOPOLIZE & DID ATTEMPT TO MONOPOLIZE THE PART OF THE FILM INDUSTRY TRADE HAVING TO DO WITH A DOCUMENTARY FILM ABOUT PLAINTIFF OR COMMERCE TO DO THEREWITH; & TO FIX PRICES OF SERVICES ASSOCIATED THEREWITH, & LIMIT PRODUCTION OF SUCH FILMS; & DID EXCLUDE COMPETITION FROM TRADE OR COMMERCE AMONG THE SEVERAL STATES OR WITH FOREIGN NATIONS WITH BOTH CAPACITY & INTENT TO MONOPOLIZE; & NETFLIX & NRSR WILFULLY ACQUIRED, POSSESSED, MAINTAINED, & USED THE POWER TO EXCLUDE CREAM PRODUCTIONS FROM THE MARKET FOR A DOCUMENTARY FILM ABOUT PLAINTIFF.

204.) PLAINTIFF WAS DAMAGED BY NRSR'S CONSPIRACY IN "61", "202", AS HE'S DESCRIBED IN "172" - "173" & "117" - "125"; WHICH ENTITLES

HIM TO RELIEF UNDER 15 USC 15

205.) PLAINTIFF WAS DAMAGED BY NRSR'S MONOPOLY IN "61" - "76" & "203" AS HE'S DESCRIBED IN "172" - "173" & "117" - "125"; WHICH ENTITLES HIM TO RELIEF UNDER 15 USC 15

## EQUITABLE TOLLING

206.) PLAINTIFF COULD NOT HAVE DISCOVERED THROUGH ANY REASONABLE DILIGENCE THE CAUSES OF ACTIONS AND ALL THEIR ELEMENTS DESCRIBED IN "14" - "55", WHICH ARE ENUMERATED UNDER THEIR RESPECTIVE ELEMENTS IN "104" - "114", "116", "126" - "155", "157", "164" - "166", "168" - "170", "174", "182", & "184" - "192"; UNTIL THE MATERIALS DESCRIBED IN "77" - "78", "98" & "91" - "95" & ADMISSIONS AGAINST PARTY INTEREST DESCRIBED IN "82" - "88", & HONEST, GOOD-NATURED WIT DESCRIBED IN "80", "81"; WERE PUBLICLY BROADCAST ON JANUARY 10, 2023 AS DESCRIBED IN "103". PLAINTIFF HAD NO REASON TO DISCOVER THESE CAUSES OF ACTION UNTIL DEFENDANTS ADMITTED TO THEM, OR EVIDENCE THEREOF WAS BROADCAST, ON JANUARY 10, 2023; & HE CANNOT EXERCISE DILIGENCE TO DISCOVER SOMETHING UNTIL HE IS AWARE OF ITS EXISTENCE. EQUITABLE TOLLING SHOULD THEREFORE APPLY TO THESE CLAIMS.

207.) PLAINTIFF COULD NOT HAVE DISCOVERED THE CAUSES OF ACTION DESCRIBED IN "58" - "62", "115", "160", "162", "167", "171", "172", & "194" THROUGH ANY REASONABLE DILIGENCE UNTIL FEBRUARY 24, 2021; WHEN NRSR THROUGH ITS AGENT & COCONSPIRATOR ROB MILLER CLEARLY & UNAMBIGUOUSLY

138

STATED ITS INTENTION TO BREACH & DEFRAUD. PLAINTIFF
HAD INDEED EXERCISED REASONABLE DILIGENCE IMMEDIA-
TELY ON FEBRUARY 10, 2021 UPON RECEIVING A CRYPTIC,
AMBIGUOUS, & NON-COMMITTAL "PROPOSAL" BY MILLER/NRSR
AS PLEADED IN "64", "66"; BY MESSAGING MILLER ASKING
FOR CLARIFICATION ABOUT MILLER/NRSR'S "PROPOSAL"
REPEATEDLY. NRSR DID NOT ANSWER PLAINTIFF'S REQUESTS
FOR DISCOVERY UNTIL FEBRUARY 24, 2021 WHEN THE
"PROPOSAL" REASONABLY BELIEVED TO BE A COUNTER OFFER
WAS DISCOVERED TO BE, IN FACT, "AN OFFER YOU CAN'T REFUSE".
EQUITABLE PRINCIPLES MILITATE AGAINST ALLOWING NRSR
TO BENEFIT FROM THEIR FRAUD IN "59", "62" & FROM THEIR
CONDUCT IN DELAYING RESPONSE TO PLAINTIFF'S REQUEST FOR
DISCOVERY, & SO NRSR'S CLEAR & UNAMBIGUOUS ANSWER ON
FEBRUARY 24, 2021 SHOULD ESTOP THEM FROM CLAIMING
THE COMMUNICATION RECEIVED BY PLAINTIFF ON FEBRUARY
10, 2021 CONTAINED NOTICE OF BREACH. EQUITABLE TOLLING
SHOULD THEREFORE APPLY TO THESE CLAIMS.
208.) PLAINTIFF COULD NOT HAVE DISCOVERED THE CAUSES OF
ACTION DESCRIBED IN "63" - "76", IN ALL THEIR ELEMENTS,
~~UNTIL AS~~ AS DESCRIBED IN "161", "163", "59" - "62", "171",
"172" - "173", "195" - "198", & "202" - "205"; UNTIL APRIL 17,
2021 AS PLEADED IN "74"; THROUGH REASONABLE DILIGENCE,
& PLAINTIFF INDEED EXERCISED REASONABLE DILIGENCE BY

CALLING PARTIES HE MIGHT REASONABLY DISCOVER INFORMATION FROM, AS PLEADED IN "70" - "74"; & DID IN FACT DISCOVER THESE CAUSES OF ACTION THROUGH HIS EXERCISE OF DILIGENCE WITHIN A REASONABLE TIME AFTER BEING INFORMED OF THE POSSIBILITY OF SUCH CAUSES OF ACTION AS PLEADED IN "68". EQUITABLE TOLLING SHOULD THEREFORE APPLY TO THESE CLAIMS.

209.) PLAINTIFF COULD NOT HAVE DISCOVERED THROUGH REASONABLE DILIGENCE THE CAUSES OF ACTION DESCRIBED IN "82", "99" - "102"; WHICH ARE ENUMERATED IN THEIR RESPECTIVE ELEMENTS IN "117' - "125", "149", "156", "175" - "181", "183", "200" - "201"; THROUGH REASONABLE DILIGENCE UNTIL DECEMBER 13, 2022, AT WHICH POINT THE TRAILER WAS BROADCAST. UP UNTIL THAT POINT, PLAINTIFF WAS UNAWARE OF THE EXISTENCE OF SAID CAUSES OF ACTION & COULD NOT HAVE MADE EARLIER DISCOVERY BECAUSE HE HAD NO REASON TO REQUEST OR OTHERWISE MAKE DISCOVERY UNTIL THE TRAILER & ADVERTISEMENTS PUBLISHING & BROADCAST ON DECEMBER 13, 2022.

## PUNITIVE DAMAGES

210.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY ALL ELEMENTS OF FRAUD AGAINST BM IN "14" - "25"; ALL ELEMENTS OF OPPRESSION AGAINST BM IN "18" - "19" & "22"; & ALL ELEMENTS OF CONSTITUTIONAL MALICE AGAINST BM IN "83' - "85"; & ALL OF FRAUD, OPPRESSION, & MALICE OF BM

AS PART OF TORTS PLEADED IN "112", "114", "151", "164", "168", "184", "191" - "192"; & IN "83" - "85"; PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AGAINST BM FOR THE SAKE OF EXAMPLE, OR BY WAY OF PUNISHING BM, JOINTLY & SEVERALLY

211.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY ALL ELEMENTS OF BMJKL'S FRAUD IN "14" - "25"; ALL ELEMENTS OF OPPRESSION AGAINST BMJKL IN "18" - "22"; & ALL ELEMENTS OF CONSTITUTIONAL MALICE AGAINST BMJKL IN "83-85"; & ALL OF FRAUD, OPPRESSION, & MALICE OF BMJKL AS PART OF TORTS PLEADED IN "112" - "114", "150" - "151", "168", "184", "191" - "192"; & IN "83" - "85"; PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AGAINST BMJKL FOR THE SAKE OF EXAMPLE, OR BY WAY OF PUNISHING BMJKL, JOINTLY & SEVERALLY

212.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY ALL ELEMENTS OF JANE DOE 4'S FRAUD IN "38", & "78"; AS PART OF TORTS PLEADED IN "116", "142", "165", "185" & "199"; PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AGAINST JANE DOE 4 FOR THE SAKE OF EXAMPLE, OR BY WAY OF PUNISHING JANE DOE 4

213.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY ALL ELEMENTS OF F55'S FRAUD IN "45" - "55"; & MALICE IN "86" & "88"; AS PART OF TORTS PLEADED IN "78", "86", "88", "126" - "127", "145" - "148", "152", "154", "158", "166",

"169", "174", "182", "186" - "187": PLAINTIFF IS ENTITLED TO RECOVER PUNITIVE DAMAGES AGAINST F55 FOR THE SAKE OF EXAMPLE, OR BY WAY OF PUNISHING F55, JOINTLY & SEVERALLY.

214.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY DEFAMATION SOUNDING IN FRAUD & CONSTITUTIONAL MALICE AGAINST JEFF STRICKER IN "87"; AS PART OF TORTS PLEADED IN "153", &"170": PLAINTIFF IS ENTITLED TO RECOVER PUNITIVE DAMAGES AGAINST JEFF STRICKER FOR THE SAKE OF EXAMPLE, OR BY WAY OF PUNISHING JEFF STRICKER. PLAINTIFF AVERS THAT THE STRONGEST EXAMPLE MUST BE MADE OF JEFF STRICKER, AS A DETERRENT TO OTHERS WHO MIGHT DON THE GARB OF A PUBLIC OFFICIAL TO SPREAD UNAUTHORIZED PROVABLY FALSE STATEMENTS OF FACT WHICH UNDERMINE THE LEGITIMACY OF, & CAST ASPERSIONS ON, THE DECORUM & DIGNITY OF THE CALIFORNIA JUDICIAL PROCESS.

215.) BECAUSE PLAINTIFF HAS PLEADED WITH SPECIFICITY ALL ELEMENTS OF NRSR'S FRAUD IN "58" - "62", "70", "72", "77", "96", "98", "101"; & OPPRESSION IN "67" - "68", &"70"-"72"; & MALICE IN "96" & "98"; AS PART OF TORTS PLEADED IN "115", "117" - "125", "155" - "157", "167" - "173", "175" - "181", "183" - "185", "193" - "205" ~~xxxxxxxxxxxxxxxxx~~. PLAINTIFF IS ENTITLED TO RECOVER PUNITIVE DAMAGES

IV. PRAYER FOR RELIEF

WHEREFORE PLAINTIFF RESPECTFULLY PRAYS THAT
THIS COURT ENTER JUDGMENT:

216.) GRANTING PLAINTIFF A DECLARATION THAT THE
WRONGFUL ACTS OF DEFENDANTS DESCRIBED HEREIN
ARE UNLAWFUL & TORTIOUS;

217.) GRANTING PLAINTIFF A DECLARATION THAT HE IS THE
SOLE AUTHORS OF THE UNDERLYING PERFORMANCES, MUSICAL
COMPOSITIONS, DRAMATIC WORKS, CHOREOGRAPHY, & PANTO-
MIME DESCRIBED IN "6", "11", "18", "23", "24", "28" - "39", "43",
"50", "51", & "91"; & THE RIGHTFUL OWNER OF THE COPYRIGHTS THERETO;

218.) GRANTING PLAINTIFF A DECLARATION THAT HE IS THE
DIRECTOR & THEREFORE SOLE AUTHOR OF THE MOTION PICTURE
WORKS DESCRIBED IN "6", "11", "18", "23", "24", "28" - "38", "43", "50",
& "51". OR IN THE ALTERNATIVE, THAT HE IS THE CO-AUTHOR
OF "6", "11", "24", "28" - "37", & "43", & THAT "18", "23", "38", "50", & "51"
WERE OBTAINED THROUGH FRAUD &/OR BREACH OF CONFIDENCE,
& FOR THAT REASON A RESULTING TRUST MUST BE IMPOSED
THEREON & ALL RESULTING MOTION PICTURE WORKS, RIGHTS, &
TITLES BE DISGORGED TO PLAINTIFF ALONG WITH ANY REVENUES
UPON ACCOUNTING, WHICH ALSO MUST BE IMPOSED UPON

219.) GRANTING PLAINTIFF A DECLARATION THAT HE IS THE OWNER
OF THE EXCLUSIVE RIGHT TO MAKE DERIVATIVE WORKS OF HIS
PERFORMANCES, MUSICAL WORKS, DRAMATIC WORKS, CHOREOGRAPHY,
& PANTOMIME DESCRIBED IN "6", "11", "18", "23", "24", "28" - "39", "43",

"50", "51", & "91"; & THAT THE MOTION PICTURE WORKS DESCRIBED
THEREIN ARE DERIVATIVE WORKS OF SAID WORKS; & THAT
THE MOTION PICTURE WORKS DESCRIBED IN "96", "101", & "103"
ARE UNAUTHORIZED DERIVATIVE WORKS WHICH INFRINGE UPON
PLAINTIFF'S COPYRIGHTS TO HIS PERFORMANCES, MUSICAL
WORKS, DRAMATIC WORKS, CHOREOGRAPHY, & PANTOMIME
DESCRIBED IN "6", "11", "18", "23", "24", "28" - "39", "43", "50", "51", & "91",
220.) GRANTING PLAINTIFF A DECLARATION THAT HE IS THE
SOLE AUTHOR & OWNER OF COPYRIGHT OF THE MOTION PICTURE
WORKS DESCRIBED IN "39", "40", & "91"; & OF THE LITERARY
WORKS & PHOTOGRAPHS IN "40"; & THAT THE MOTION PICTURE
WORK DESCRIBED IN "96" & "103" IS A DERIVATIVE WORK
THEREOF UNAUTHORIZED BY PLAINTIFF; THE DISPLAY
COPYING, & BROADCAST OF WHICH ALSO INFRINGE
UPON HIS COPYRIGHTS THEREIN.
221.) A PRELIMINARY & PERMANENT INJUNCTION ORDERING
NETFLIX TO REMOVE THWH & ALL IMAGES OF PLAINTIFF &
THE TRAILER FROM ALL ITS PLATFORMS; & TO CEASE
USING PLAINTIFF'S MARKS, VOICE, NAME, OR LIKENESS TO
MARKET ITS PRODUCTS OR SERVICES ON ANY PLATFORM
222.) A PRELIMINARY & PERMANENT INJUNCTION AGAINST
BUNIM MURRAY PRODUCTIONS, LISA SAMSKY, JENSEN RUFE, BRAD
MULCAHY, JIMMY KIMMEL LIVE!, BM & BMJKL ORDERING
THEM TO CEASE, & ENJOINING THEM FROM, DISCLOSING

CONFIDENTIAL INFORMATION OF ANY FORM, VERBAL, OR THROUGH CONDUCT, CONVEYED TO THEM BY PLAINTIFF DURING THE COURSE OF THEIR GUARDIANSHIP OF, & PENDANT FIDUCIARY DUTY TO, PLAINTIFF.

223.) EQUITABLY IMPOSING A CONSTRUCTIVE TRUST ON EACH OF THE MOTION PICTURE WORKS DESCRIBED IN "6", "11", "18", "23", "24", "28" - "39", "43", "50", "51" & "91"; & ANY REVENUES THEREFROM; IN PLAINTIFF'S FAVOR, ORDERING AN EQUITABLE ACCOUNTING, DISGORGING ALL TITLES, RIGHTS, & REVENUES THERETO & THERE-FROM TO PLAINTIFF; & ORDERING REPLIEVIN OF PHYSICAL COPIES OF SAID WORKS TO PLAINTIFF

224.) A PRELIMINARY & PERMANENT INJUNCTION AGAINST ~~BUBM M MURRAY OSA~~ JANE DOE 4 ORDERING HER TO CEASE & ENJOINING HER FROM DISCLOSING CONFIDENTIAL INFORMATION OF ANY FORM, VERBAL OR THROUGH CONDUCT, CONVEYED TO HER BY PLAINTIFF DURING THE COURSE OF THE CONFIDENCE SHE INDUCED BY FRAUD WITH PLAINTIFF.

225.) EQUITABLY IMPOSING A CONSTRUCTIVE TRUST ON THE $400 & HALF OF 20% OF LIQUOR & TICKET SALES AT FULTON 55 THE NIGHT ON OR ABOUT APRIL 5, 2013 HELD BY F55, ~~OF~~ WHICH WAS DUE TO PLAINTIFF FOR HIS PERFORMING SERVICES, ORDERING AN EQUITABLE ACCOUNTING & DISGORGING THE MONEYS WITH INTEREST TO PLAINTIFF

226.) IMPOSING A CONSTRUCTIVE TRUST ON THE AMOUNT TRANSFERRED FROM NETFLIX TO RAWTV IN "76", BELIEVED TO BE $1,000,000, FOR PRODUCTION OF THWH BASED UPON MATERIALS & INFORMATION FRAUDULENTLY OBTAINED FROM PLAINTIFF BY NRSR IN "58"-"62"; REQUIRING DISGORGEMENT OF THE FULL AMOUNT, WITH INTEREST, TO PLAINTIFF.

227.) IMPOSING A CONSTRUCTIVE TRUST ON THE REVENUES OF THE ADVERTISEMENTS IN "100" & "117"-"125"; WHICH RESULTED FROM NRSR'S FALSE CLAIM OF ENDORSEMENT BY PLAINTIFF; & REQUIRING DISGORGEMENT OF THE FULL AMOUNT OF GROSS REVENUES FROM SALES OF SUBSCRIPTION SERVICES OBTAINED IN THIS WAY, WITH INTEREST, TO PLAINTIFF

228.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000,000.00 AGAINST BM, JOINTLY & SEVERALLY

229.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000,000.00 AGAINST BMJKL, JOINTLY & SEVERALLY

230.) GRANTING PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $1,000,000.00 AGAINST JANE DOE 4

231.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000,000.00 AGAINST EBW, JOINTLY & SEVERALLY

232.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $1,314,000.00   AGAINST F55, JOINTLY & SEVERALLY, FOR THE DEFAMATION & INTERFERENCE WITH ECONOMIC ADVANTAGE IN "45"-"55, OR ANY OTHER WRONGS OR LEGAL THEORIES THEREON

233.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF $10,000,000.00 . AGAINST F55, JOINTLY & SEVERALLY, FOR THE DEFAMATION IN "86", "88", & "158"

234.) GRANTING PLAINTIFF COMPENSATORY DAMAGES IN THE AMOUNT OF $1,314,000.00   AGAINST JEFF STRICKLER

235.) GRANTING PLAINTIFF COMPENSATORY DAMAGES &/OR RESTITUTION IN THE AMOUNT OF $1,000,000.00   AGAINST JOHN DOE 10

236.) GRANTING PLAINTIFF COMPENSATORY DAMAGES &/OR RESTITUTION IN THE AMOUNT OF $1,000,000.00   AGAINST NRSR FOR "76", JOINTLY & SEVERALLY

237.) GRANTING PLAINTIFF COMPENSATORY DAMAGES &/OR RESTITUTION IN THE AMOUNT OF 20% OF THE GROSS REVENUE OF THWH FOR "58"-"62" AGAINST NRSR, JOINTLY & SEVERALLY

238.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY DAMAGES IN THE AMOUNT OF 12% OF THE GROSS REVENUE OF THWH & THE ACTUAL COST OF PRODUCTION & DISTRIBUTION

OF A DOCUMENTARY FILM THE SAME LENGTH & PRODUCTION
QUALITY AS THWH, BUT WHICH IS FAVORABLE TO PLAINTIFF
& IN WHICH HE IS NOT DEFAMED, FEATURING 5 MINUTES
OF PLAINTIFF'S ORIGINAL MUSIC ; AGAINST NRSR, JOINTLY
~~& & SEVERALLY, FOR "63" - "75"

239.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY
DAMAGES IN THE AMOUNT OF THE ENTIRE GROSS REVENUE
OF ALL SUBSCRIPTION SERVICE FEES PAID BY ALL OF THE VIEWERS OF
~~OF~~ THWH FOR "100" & "117" - 125" AGAINST NRSR, JOINTLY
OR SEVERALLY, WHICH ARE GROSS REVENUES OF THE ADS IN "100"

240.) GRANTING PLAINTIFF RESTITUTION &/OR COMPENSATORY
DAMAGES IN THE AMOUNT OF THE ENTIRE GROSS REVENUE
OF ALL SUBSCRIPTION SERVICE FEES PAID BY ALL OF THE
VIEWERS OF THWH FOR "101" - "103", "115", "155" - "157", "168" -
"171", "184 - 185", & "193" - "205"; AGAINST NRSR, JOINTLY
& & SEVERALLY

241.) GRANTING PLAINTIFF BENEFIT OF THE BARGAIN DAMAGES
AGAINST ALL DEFENDANTS WHOSE FRAUD HAS BEEN
PLEADED WITH SPECIFICITY

242.) GRANTING PLAINTIFF TREBLE DAMAGES AGAINST ALL
DEFENDANTS WHOSE 18 USC 1964 VIOLATIONS HAVE
BEEN PLEADED

243.) GRANTING PLAINTIFF PUNITIVE DAMAGES AGAINST
ALL DEFENDANTS AS DESCRIBED IN "210" - "215" IN THE
AMOUNT OF $350,000 EACH OR 5 TIMES COMPENSATORY

DAMAGES EACH, WHICHEVER IS GREATER, JOINTLY ~~AND~~ &
SEVERALLY

244.) WHERE PLAINTIFF HAS PLEADED IN THE ALTERNATIVE
TORT & CONTRACT DAMAGES FOR THE SAME WRONG,
PLAINTIFF ELECTS TO RECOVER TORT & PUNITIVE DAMAGES
WHERE SUCH AMOUNT IS GREATER THAN THE AMOUNT
FOR WHICH CONTRACT DAMAGES WOULD ALLOW

245.) WHEREVER PLAINTIFF HAS PLEADED DIFFERENT LEGAL
THEORIES IN THE ALTERNATIVE TO RECOVER DAMAGES OR
REMEDIES FOR THE SAME WRONG, PLAINTIFF ELECTS TO
RECOVER ON THE THEORY OR THEORIES THAT CONFER
GREATEST BENEFIT TO HIMSELF IN HIS RIGHTS & AMOUNT
OF DAMAGES

246.) PLAINTIFF ALSO ASKS FOR ANY OTHER RELIEF THIS
COURT DEEMS JUST, PROPER, & EQUITABLE.

247.) GRANTING PLAINTIFF COMPENSATORY DAMAGES
AGAINST ALEX AGUIRRE IN THE AMOUNT OF
$1,314,000.00

AGAINST NRSR FOR THE SAKE OF EXAMPLE, OR BY
WAY OF PUNISHING NRSR, JOINTLY & SEVERALLY.

## CATCH - ALL - CLAUSE

PLAINTIFF INCORPORATES BY REFERENCE ALL
MATERIALS & EVIDENCE HERETOFORE DESCRIBED OR
REFERRED TO HEREIN. IF ANY PARAGRAPH OF THIS
COMPLAINT PLEADED AS AN ELEMENT OF ONE
CLAIM, WHEN LIBERALLY CONSTRUED IN THE
FAVOR OF THE PRO SE PLAINTIFF, SUBSTANTIATES
OR BOLSTERS ANY OTHER CAUSE OF ACTION; WHETHER
SUCH CAUSE OF ACTION IS SPECIFICALLY ENUMERATED
HEREIN OR IN THE BREADTH & DEPTH OF KNOWLEDGE
OF THE COURT; THEN, SUBJECT TO PLAINTIFF'S ELECTION
OF REMEDIES PLEADED IN "244" & "245" BELOW,
PLAINTIFF ADOPTS SUCH PARAGRAPHS BY REFERENCE
& PLEADS THEM IN SUPPORT OF WHAT CAUSES OF
ACTION THE KEN OF THE COURT CONSTRUES.

I DECLARE UNDER PENALTY OF PERJURY THAT ALL THE
DOCUMENTS ATTACHED HERETO ARE TRUE & ACCURATE
COPIES OF THE ORIGINALS

I DECLARE UNDER PENALTY OF PERJURY PURSUANT
TO 28 USC 1746 THAT THE FOREGOING STATEMENTS
ARE TRUE & ACCURATE TO THE BEST OF MY BELIEF
& KNOWLEDGE.

EXECUTED THIS 7TH DAY OF FEBRUARY , 2023

                    RESPECTFULLY SUBMITTED,

                    CALEB L. MCGILLVARY, PRO SE
                    #1222665/SBI #1023174
                    NEW JERSEY STATE PRISON
                    PO BOX 861 TRENTON, NJ
                    08625-0861

151

## CERTIFICATION OF PRO SE LITIGANT

I, CALEB L. MCGILLVARY, HEREBY CERTIFY THAT I AM REPRESENTING MYSELF IN THIS ACTION. I CERTIFY THIS PLEADING IS NOT BEING PRESENTED FOR ANY IMPROPER PURPOSE, SUCH AS TO HARASS, CAUSE UNNECESSARY DELAY, OR NEEDLESSLY INCREASE THE COST OF LITIGATION; THE CLAIMS, DEFENSES, & OTHER LEGAL CONTENTIONS ARE WARRANTED BY EXISTING LAW OR BY A NONFRIVOLOUS ARGUMENT FOR EXTENDING, MODIFYING, OR REVERSING EXISTING LAW OR FOR ESTABLISHING NEW LAW; THE FACTUAL CONTENTIONS HAVE EVIDENTIARY SUPPORT OR, IF SPECIFICALLY SO IDENTIFIED, WILL LIKELY HAVE EVIDENTIARY SUPPORT AFTER A REASONABLE OPPORTUNITY FOR FURTHER INVESTIGATION OR DISCOVERY; & THE DENIALS OF FACTUAL CONTENTIONS ARE WARRANTED ON THE EVIDENCE OR, IF SPECIFICALLY SO IDENTIFIED, ARE REASONABLY BASED ON BELIEF OR A LACK OF INFORMATION.

DATE: 2/7/23

_____
CALEB L. MCGILLVARY

## PROOF OF SERVICE

I, CALEB L. MCGILLVARY, THE UNDERSIGNED HEREBY INVOKE THE PRISON MAILBOX RULE & DECLARE PURSUANT TO 28 USC 1746 THAT ON TODAY'S DATE I PLACED THE ORIGINAL & 3 COPIES OF MY INITIAL COMPLAINT, CIVIL COVER SHEET, & APPLICATION TO PROCEED IN FORMA PAUPERIS INTO THE HANDS OF CORRECTIONAL OFFICERS HERE AT NEW JERSEY STATE PRISON WHERE I AM INCARCERATED AT THIRD & FEDERAL STREETS, TRENTON, NJ 08625 WITH FIRST CLASS POSTAGE PREPAID TO BE SENT VIA USPS REGULAR MAIL TO THE CLERK OF THE DISTRICT COURT FOR FILING IN THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AT 255 EAST TEMPLE ST. ROOM 180 LOS ANGELES, CA 90012; & ALSO SUMMONS I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS ARE TRUE & ACCURATE, EXECUTED THIS 7TH DAY OF FEBRUARY , 2023

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI #1023176
NJSP PO BOX 861
TRENTON, NJ 08625

EXHIBIT A

Caleb L. McGillivary
New Jersey State Prison
~~SN. 422665~~/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861


AUGUST 16, 2021

To: LISA SAMSKY
1704 SEBRING HILLS DRIVE
HENDERSON, NC
89052

Re: LEGAL NOTICE TO BUNIM-MURRAY, ET AL
OF DISAVOWAL OF VOIDABLE CONTRACT

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT I, Caleb Lawrence McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); do hereby disavow, render noll and void, any and all agreements, contracts, permissions, releases, assignments, licenses and any other instrument whatsoever, explicit or implied, whatever orally or in writing or electronically made; any derivative licenses, assignments, transfers, permission, release, agreements, contracts, and instruments whatsoever, however made: between myself and Bunim-Murray, tv reality, Lisa Samsky, any of their agents or associates or other individuals or entities or their agents that were in contract with me during the period of February 1, 2013 and May 16, 2013.

I assert that during my entire time with Lisa Samsky, I

JUST SURVIVED A TRAUMATIC EVENT & WAS IN

was intoxicated on a variety of drugs and alcohol; had emotional turmoil therefrom; was suffering from PTSD and related mental conditions; was overborne by multiple parties; was without legal advisors; was in a condition of poverty and in transport by multiple parties at high speed to an unknown location in unfamiliar territory.

I also assert that any purported contract was discussed at an inappropriate time; consummated in an unusual place with insistent demands by multiple persuaders with emphasis of the untoward consequence of being abandoned in a strange location, in the complete absence of third party advisor, and that statements were made, implicitly or explicitly, that there was no time to consult financial advisors or attorneys.

As such, undue influence was used upon me, and any purported contract or agreement heretofore described is unconscionable, voidable, and hereby void.

Also the possibility of being abandoned in a strange location while poverty stricken put me at risk of harm, vagrancy charges and deportation; which meant that I was in a state of duress, economic or otherwise.

I hereby forbid you from distributing, broadcasting, publishing, or in any way disseminating; or licensing, assigning, permitting, or in or directly [INDIRECTLY] causing such or any use of: my face, my face [PERSONALITY], name, voice, likeness, image, or any identifiable characteristic of myself or my personalty; whether in print,

2

video footage, still images, sound recording, or any other media in any form currently existing or in the future created.

I disavow, render null and void any agreements or contracts whatsoever as heretofore described, between myself and the parties heretofore named, for reasons heretofore asserted.

I reserve all of my rights.

You are hereby under notice that any violations of any of my rights of publicity, privacy, endorsement, personality, or any of my rights whatsoever; whether directly or indirectly by you or your agents, associates, assigns, or anyone; is actionable, and will be litigated as such.

Your attention to this matter is appreciated

Very Truly,

Caleb L. McGillivary
New Jersey State Prison
No.: ~~122665~~/102317G
P.O. Box 861
Trenton, N.J. 08625-0861

Date: AUGUST 16, 2021

3

Caleb L. McGillivary
New Jersey State Prison
~~SN. 122665~~/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: CHRISTINA NICOLE PAEZ
909 MIRA VALLE STREET
MONTEREY PARK, CA
91754

Re: LEGAL NOTICE TO BUNIM-MURRAY, ET AL
OF DISAVOWAL OF VOIDABLE CONTRACT

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT I, Caleb Lawrence McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); do hereby disavow, render noll and void, any and all agreements, contracts, permissions, releases, assignments, licenses and any other instrument whatsoever, explicit or implied, whatever orally or in writing or electronically made; any derivative licenses, assignments, transfers, permission, release, agreements, contracts, and instruments whatsoever, however made: between myself and Bunim-Murray, tv reality, Lisa Samsky, any of their agents or associates or other individuals or entities or their agents that were in contract with me during the period of February 1, 2013 and May 16, 2013.

I assert that during my entire time with Lisa Samsky, I

JUST SURVIVED A TRAUMATIC EVENT & WAS IN

was intoxicated on a variety of drugs and alcohol; had emotional turmoil therefrom; was suffering from PTSD and related mental conditions; was overborne by multiple parties; was without legal advisors; was in a condition of poverty and in transport by multiple parties at high speed to an unknown location in unfamiliar territory.

I also assert that any purported contract was discussed at an inappropriate time; consummated in an unusual place with insistent demands by multiple persuaders with emphasis of the untoward consequence of being abandoned in a strange location, in the complete absence of third party advisor, and that statements were made, implicitly or explicitly, that there was no time to consult financial advisors or attorneys.

As such, undue influence was used upon me, and any purported contract or agreement heretofore described is unconscionable, voidable, and hereby void.

Also the possibility of being abandoned in a strange location while poverty stricken put me at risk of harm, vagrancy charges and deportation; which meant that I was in a state of duress, economic or otherwise.

I hereby forbid you from distributing, broadcasting, publishing, or in any way disseminating; or licensing, assigning, permitting, or ~~in~~ INDIRECTLY or directly causing such or any use of: my face, my ~~face~~ PERSONALITY, name, voice, likeness, image, or any identifiable characteristic of myself or my personalty; whether in print,

2

video footage, still images, sound recording, or any other media in any form currently existing or in the future created.

I disavow, render null and void any agreements or contracts whatsoever as heretofore described, between myself and the parties heretofore named, for reasons heretofore asserted.

I reserve all of my rights.

You are hereby under notice that any violations of any of my rights of publicity, privacy, endorsement, personality, or any of my rights whatsoever; whether directly or indirectly by you or your agents, associates, assigns, or anyone; is actionable, and will be litigated as such.

Your attention to this matter is appreciated

Very Truly,

Caleb L. McGillivary
New Jersey State Prison
No.: ~~122665~~/102317G
P.O. Box 861
Trenton, N.J. 08625-0861

Date: AUGUST 16, 2021

3

Caleb L. McGillivary
New Jersey State Prison
~~SN. 422665~~/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: DANYA WASSEL
468 DUSTIN DRIVE
LOS ANGELES, CA
90065

Re: LEGAL NOTICE TO BUNIM-MURRAY, ET AL
OF DISAVOWAL OF VOIDABLE CONTRACT

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT I, Caleb Lawrence McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); do hereby disavow, render noll and void, any and all agreements, contracts, permissions, releases, assignments, licenses and any other instrument whatsoever, explicit or implied, whatever orally or in writing or electronically made; any derivative licenses, assignments, transfers, permission, release, agreements, contracts, and instruments whatsoever, however made: between myself and Bunim-Murray, tv reality, Lisa Samsky, any of their agents or associates or other individuals or entities or their agents that were in contract with me during the period of February 1, 2013 and May 16, 2013.

I assert that during my entire time with Lisa Samsky, I

JUST SURVIVED A TRAUMATC EVENT & WAS IN

was intoxicated on a variety of drugs and alcohol; had emotional
turmoil therefrom; was suffering from PTSD and related mental
conditions; was overborne by multiple parties; was without legal
advisors; was in a condition of poverty and in transport by
multiple parties at high speed to an unknown location in
unfamiliar territory.

I also assert that any purported contract was discussed
at an inappropriate time; consummated in an unusual place with
insistent demands by multiple persuaders with emphasis of the
untoward consequence of being abandoned in a strange location,
in the complete absence of third party advisor, and that
statements were made, implicitly or explicitly, that there
was no time to consult financial advisors or attorneys.

As such, undue influence was used upon me, and any purported
contract or agreement heretofore described is unconscionable,
voidable, and hereby void.

Also the possibility of being abandoned in a strange
location while poverty stricken put me at risk of harm, vagrancy
charges and deportation; which meant that I was in a state of
duress, economic or otherwise.

I hereby forbid you from distributing, broadcasting,
publishing, or in any way disseminating; or licensing, assigning,
permitting, or ~~in~~ INDIRECTLY or directly causing such or any use of: my
face, my ~~face~~ PERSONALITY, name, voice, likeness, image, or any identifiable
characteristic of myself or my personalty; whether in print,

2

video footage, still images, sound recording, or any other media in any form currently existing or in the future created.

I disavow, render null and void any agreements or contracts whatsoever as heretofore described, between myself and the parties heretofore named, for reasons heretofore asserted.

I reserve all of my rights.

You are hereby under notice that any violations of any of my rights of publicity, privacy, endorsement, personality, or any of my rights whatsoever; whether directly or indirectly by you or your agents, associates, assigns, or anyone; is actionable, and will be litigated as such.

Your attention to this matter is appreciated

Very Truly,

Caleb L. McGillivary
New Jersey State Prison
No.: ~~122665~~/102317G
P.O. Box 861
Trenton, N.J. 08625-0861

Date: AUGUST 16, 2021

3

Caleb L. McGillivary
New Jersey State Prison
~~SN. 422665~~/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: BUNIM-MURRAY PRODUCTIONS, INC.
C/O DEANNA NEWELL
4445 COMMONWEALTH AVENUE
CULVER CITY, CA
90230

Re: LEGAL NOTICE TO BUNIM-MURRAY, ET AL
OF DISAVOWAL OF VOIDABLE CONTRACT

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT I, Caleb Lawrence McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); do hereby disavow, render noll and void, any and all agreements, contracts, permissions, releases, assignments, licenses and any other instrument whatsoever, explicit or implied, whatever orally or in writing or electronically made; any derivative licenses, assignments, transfers, permission, release, agreements, contracts, and instruments whatsoever, however made: between myself and Bunim-Murray, tv reality, Lisa Samsky, any of their agents or associates or other individuals or entities or their agents that were in contract with me during the period of February 1, 2013 and May 16, 2013.

I assert that during my entire time with Lisa Samsky, I

was intoxicated on a variety of drugs and alcohol; had [JUST SURVIVED A TRAUMATIC EVENT & WAS IN] emotional turmoil therefrom; was suffering from PTSD and related mental conditions; was overborne by multiple parties; was without legal advisors; was in a condition of poverty and in transport by multiple parties at high speed to an unknown location in unfamiliar territory.

I also assert that any purported contract was discussed at an inappropriate time; consummated in an unusual place with insistent demands by multiple persuaders with emphasis of the untoward consequence of being abandoned in a strange location, in the complete absence of third party advisor, and that statements were made, implicitly or explicitly, that there was no time to consult financial advisors or attorneys.

As such, undue influence was used upon me, and any purported contract or agreement heretofore described is unconscionable, voidable, and hereby void.

Also the possibility of being abandoned in a strange location while poverty stricken put me at risk of harm, vagrancy charges and deportation; which meant that I was in a state of duress, economic or otherwise.

I hereby forbid you from distributing, broadcasting, publishing, or in any way disseminating; or licensing, assigning, permitting, or ~~in~~ INDIRECTLY or directly causing such or any use of: my face, my ~~face~~ PERSONALITY, name, voice, likeness, image, or any identifiable characteristic of myself or my personalty; whether in print,

2

video footage, still images, sound recording, or any other media in any form currently existing or in the future created.

I disavow, render null and void any agreements or contracts whatsoever as heretofore described, between myself and the parties heretofore named, for reasons heretofore asserted.

I reserve all of my rights.

You are hereby under notice that any violations of any of my rights of publicity, privacy, endorsement, personality, or any of my rights whatsoever; whether directly or indirectly by you or your agents, associates, assigns, or anyone; is actionable, and will be litigated as such.

Your attention to this matter is appreciated

Very Truly,

Caleb L. McGillivary
New Jersey State Prison
No.: ~~122665~~/102317G
P.O. Box 861
Trenton, N.J. 08625-0861

Date: AUGUST 16, 2021

3

Caleb L. McGillivary
New Jersey State Prison
~~SN. 122665~~/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

_AUGUST 16_ , 2021

To: DEANNA NEWELL
4445 COMMONWEALTH AVENUE
CULVER CITY, CA
90230

Re: LEGAL NOTICE TO BUNIM-MURRAY, ET AL
OF DISAVOWAL OF VOIDABLE CONTRACT

Dear Sir/Madam:

PLEASE TAKE NOTICE THAT I, Caleb Lawrence McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); do hereby disavow, render noll and void, any and all agreements, contracts, permissions, releases, assignments, licenses and any other instrument whatsoever, explicit or implied, whatever orally or in writing or electronically made; any derivative licenses, assignments, transfers, permission, release, agreements, contracts, and instruments whatsoever, however made: between myself and Bunim-Murray, tv reality, Lisa Samsky, any of their agents or associates or other individuals or entities or their agents that were in contract with me during the period of February 1, 2013 and May 16, 2013.

I assert that during my entire time with Lisa Samsky, I

JUST SURVIVED A TRAUMATIC EVENT & WAS IN

was intoxicated on a variety of drugs and alcohol; had ↑emotional turmoil therefrom; was suffering from PTSD and related mental conditions; was overborne by multiple parties; was without legal advisors; was in a condition of poverty and in transport by multiple parties at high speed to an unknown location in unfamiliar territory.

I also assert that any purported contract was discussed at an inappropriate time; consummated in an unusual place with insistent demands by multiple persuaders with emphasis of the untoward consequence of being abandoned in a strange location, in the complete absence of third party advisor, and that statements were made, implicitly or explicitly, that there was no time to consult financial advisors or attorneys.

As such, undue influence was used upon me, and any purported contract or agreement heretofore described is unconscionable, voidable, and hereby void.

Also the possibility of being abandoned in a strange location while poverty stricken put me at risk of harm, vagrancy charges and deportation; which meant that I was in a state of duress, economic or otherwise.

I hereby forbid you from distributing,broadcasting, publishing, or in any way disseminating; or licensing, assigning, permitting, or ~~in~~ INDIRECTLY or directly causing such or any use of: my face, my ~~face~~ PERSONALITY, name, voice, likeness, image, or any identifiable characteristic of myself or my personalty; whether in print,

2

video footage, still images, sound recording, or any other media in any form currently existing or in the future created.

I disavow, render null and void any agreements or contracts whatsoever as heretofore described, between myself and the parties heretofore named, for reasons heretofore asserted.

I reserve all of my rights.

You are hereby under notice that any violations of any of my rights of publicity, privacy, endorsement, personality, or any of my rights whatsoever; whether directly or indirectly by you or your agents, associates, assigns, or anyone; is actionable, and will be litigated as such.

Your attention to this matter is appreciated

Very Truly,

Caleb L. McGillivary
New Jersey State Prison
No.: ~~122665~~/102317G
P.O. Box 861
Trenton, N.J. 08625-0861

Date: AUGUST 16, 2021

3

EXHIBIT B

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: ALEXANDER MARENGO
c/o RAWTV
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: RAW TV, INC.
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

TO: ZACHARY FRANK
c/o CREAM PRODUCTIONS
380 ADELADE ST. WEST, 3RD FLOOR
TORONTO, ON M5V 1R7
CANADA

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are <u>HEREBY</u> under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

TO: CREAM PRODUCTIONS, INC.
380 ADELAIDE ST. WEST, 3RD FLOOR
TORONTO, ON M5V 1R7
CANADA

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: NETFLIX, INC.
100 WINCHESTER CIRCLE
LOS GATOS, CA
95032-1815

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

To: SALLY BRINDLE
C/o RAW TV
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

Caleb L. McGillvary

2

Caleb L. McGillivary
New Jersey State Prison
SN. 1222665/SBI. 102317G
P.O. Box 861
Trenton, New Jersey, 08625-0861

AUGUST 16, 2021

TO: ROBERT MILLER
c/o RAW TV
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: NOTICE TO PRESERVE LEGAL ACTION INVOLVING
FILM & NEGOTIATION ABOUT CALEB McGILLIVARY

Dear Sir/Madam:

Please be advised that, you are **HEREBY NOTIFIED** that you are under a legal duty to maintain, preserve, retain, protect and not destroy any and all data both electronically and hard copy, that may be relevant to any film produced or contemplated about Caleb L. McGillivary (a/k/a "Caleb McGillivary" a/k/a "Kai the Hatchet Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any parties, individuals or entities; because a legal action involving such is forthcoming.

The failure to preserve and retain the electronic data and evidence outlined in this notice, or that you may otherwise be in possession of, may constitute spoliation of evidence and/or fraudulent concealment; which will subject you to legal claims for damages, evidentiary and/or monetary sanctions and adverse presumptions should spoliation occur.

For the purpose of this notice, electronic data or electronic evidence shall include, but not be limited to, all

text files (including word processing documents), spreadsheets, E-mail files and information concerning E-mail files (including logs) of E-mail history usage, header information, deleted files, video files, images, audio files, graphical files in any format, database, calendars & scheduling information, task list, voice mail, in any format, telephone logs, contact managers, computers system activity logs, and all file fragments, offline storage or information stored on removable media or storage media, information stored on removable media or storage, information stored on laptop, or other portable devices, network access information and back up files containing electronic evidence.

Specifically, you are instructed not to destroy, disable, erase, encrypt, alter, or otherwise make unavailable any electronic data and/or evidence relevant to any film produced or contemplated about Caleb L. McGillvary (a/k/a Caleb McGillivary; "Kai The Hatchet-Wielding Hitchhiker"); or to any negotiations, research, or agreement associated therewith between any party, individuals or entities.

You are HEREBY under notice that documentary films are considered commercial use; and as such, no work product, research, or data or evidence whatsoever associated therewith is protected by Newsperson's privilege in any relevant jurisdiction.

AUGUST 16, 2021

Sincerely,

~~KAI~~

Caleb L. McGillvary

2

EXHIBIT C

Caleb L. McGillivary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

September 7, 2021

To: ROB MILLER
    C/O RAWTV
    21 CURTAIN RD.
    LONDON EC2A 3LT
    U.K.

      Re: Documentary Film about Caleb L. McGillivary ("Kai the Hatchet-wielding Hitchhiker")

      Dear Sir/Madam;

      Let this letter serve as notice that I, the undersigned, do hereby reserve all of my rights: including, but not limited to, my right to publicity; my intellectual property rights; my right to market my personality and common law trademarks; and any and all rights which are mine or which accrue to me.

      None of my actions or inactions constitute, have constituted, nor should be construed as; permissions, consents, nor agreements; implied nor implicit, constructive nor substantive, nor in any form or permutation whatsoever: to make a film or work about me or my life story, in whole or in part.

      Any messages or contents thereof; including, but not limited to, video, pictures, writings, or soundfiles; which I, or any acting on my behalf or behest, have sent or send to you or any of your affiliates or agents: have sent in confidence, as

part of confidential negotiations. No permission or license for the use thereof; whether directly, derivatively, or otherwise: has ever been granted. I retain all of my copyrights.

None of my actions or inactions do or have ever or will ever constitute nor should be construed as participation in your film or work in any way.

None of my actions or inactions constitute nor should be construed as a waiver of any of my rights; including, but not limited to, my right to sue for damages for defamation or slander, whether directly by you or your agents or affiliates; or by your publishing of slanderous or defamatory remarks about me by any party.

I assert that documentary films such as what you are purporting to make are commercial use, and do not fall under any fair use exceptions to any rule, law, or use.

I reserve all of my rights.

Your attention to this matter is appreciated.

Sincerely,

Caleb L. McGillvary
#1222665
NJSP Po Box 861
Trenton, NJ 08625-0861

Date: 9/7/21

CC:

Caleb L. McGillivary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

September 7, 2021

To: ALEX MARENGO
C/O RAWTV
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: Documentary Film about Caleb L. McGillivary ("Kai the Hatchet-wielding Hitchhiker")

Dear Sir/Madam;

Let this letter serve as notice that I, the undersigned, do hereby reserve all of my rights: including, but not limited to, my right to publicity; my intellectual property rights; my right to market my personality and common law trademarks; and any and all rights which are mine or which accrue to me.

None of my actions or inactions constitute, have constituted, nor should be construed as; permissions, consents, nor agreements; implied nor implicit, constructive nor substantive, nor in any form or permutation whatsoever: to make a film or work about me or my life story, in whole or in part.

Any messages or contents thereof; including, but not limited to, video, pictures, writings, or soundfiles; which I, or any acting on my behalf or behest, have sent or send to you or any of your affiliates or agents: have sent in confidence, as

part of confidential negotiations. No permission or license for the use thereof; whether directly, derivatively, or otherwise: has ever been granted. I retain all of my copyrights.

None of my actions or inactions do or have ever or will ever constitute nor should be construed as participation in your film or work in any way.

None of my actions or inactions constitute nor should be construed as a waiver of any of my rights; including, but not limited to, my right to sue for damages for defamation or slander, whether directly by you or your agents or affiliates; or by your publishing of slanderous or defamatory remarks about me by any party.

I assert that documentary films such as what you are purporting to make are commercial use, and do not fall under any fair use exceptions to any rule, law, or use.

I reserve all of my rights.

Your attention to this matter is appreciated.

Sincerely,

Date: 9/7/24

Caleb L. McGillvary
#1222665
NJSP Po Box 861
Trenton, NJ 08625-0861

CC:

Caleb L. McGillivary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

September 7, 2021

To: RAW TV, INC.
    21 CURTAIN RD.
    LONDON EC2A 3LT
    U.K.

    Re: Documentary Film about Caleb L. McGillivary ("Kai the Hatchet-wielding Hitchhiker")

Dear Sir/Madam;

    Let this letter serve as notice that I, the undersigned, do hereby reserve all of my rights: including, but not limited to, my right to publicity; my intellectual property rights; my right to market my personality and common law trademarks; and any and all rights which are mine or which accrue to me.

    None of my actions or inactions constitute, have constituted, nor should be construed as; permissions, consents, nor agreements; implied nor implicit, constructive nor substantive, nor in any form or permutation whatsoever: to make a film or work about me or my life story, in whole or in part.

    Any messages or contents thereof; including, but not limited to, video, pictures, writings, or soundfiles; which I, or any acting on my behalf or behest, have sent or send to you or any of your affiliates or agents: have sent in confidence, as

part of confidential negotiations. No permission or license for the use thereof; whether directly, derivatively, or otherwise: has ever been granted. I retain all of my copyrights.

None of my actions or inactions do or have ever or will ever constitute nor should be construed as participation in your film or work in any way.

None of my actions or inactions constitute nor should be construed as a waiver of any of my rights; including, but not limited to, my right to sue for damages for defamation or slander, whether directly by you or your agents or affiliates; or by your publishing of slanderous or defamatory remarks about me by any party.

I assert that documentary films such as what you are purporting to make are commercial use, and do not fall under any fair use exceptions to any rule, law, or use.

I reserve all of my rights.

Your attention to this matter is appreciated.

Sincerely,

Date: 9/7/4

Caleb L. McGillvary
#1222665
NJSP Po Box 861
Trenton, NJ 08625-0861

CC:

Caleb L. McGillivary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

September 7, 2021

To: SALLY BRINDLE
C/o RAW TV
21 CURTAIN RD.
LONDON EC2A 3LT
U.K.

Re: Documentary Film about Caleb L. McGillivary ("Kai the Hatchet-wielding Hitchhiker")

Dear Sir/Madam;

Let this letter serve as notice that I, the undersigned, do hereby reserve all of my rights: including, but not limited to, my right to publicity; my intellectual property rights; my right to market my personality and common law trademarks; and any and all rights which are mine or which accrue to me.

None of my actions or inactions constitute, have constituted, nor should be construed as; permissions, consents, nor agreements; implied nor implicit, constructive nor substantive, nor in any form or permutation whatsoever: to make a film or work about me or my life story, in whole or in part.

Any messages or contents thereof; including, but not limited to, video, pictures, writings, or soundfiles; which I, or any acting on my behalf or behest, have sent or send to you or any of your affiliates or agents: have sent in confidence, as

part of confidential negotiations. No permission or license for the use thereof; whether directly, derivatively, or otherwise: has ever been granted. I retain all of my copyrights.

None of my actions or inactions do or have ever or will ever constitute nor should be construed as participation in your film or work in any way.

None of my actions or inactions constitute nor should be construed as a waiver of any of my rights; including, but not limited to, my right to sue for damages for defamation or slander, whether directly by you or your agents or affiliates; or by your publishing of slanderous or defamatory remarks about me by any party.

I assert that documentary films such as what you are purporting to make are commercial use, and do not fall under any fair use exceptions to any rule, law, or use.

I reserve all of my rights.

Your attention to this matter is appreciated.

Sincerely,

Date: 9/7/21

Caleb L. McGillvary
#1222665
NJSP Po Box 861
Trenton, NJ 08625-0861

CC:

Caleb L. McGillivary
#1222665/SBI#102317G
New Jersey State Prison
Po Box 861
Trenton, New Jersey
08625-0861

September 7, 2021

To: NETFLIX, INC.
100 WINCHESTER CIRCLE
LOS GATOS, CA
95032 - 1815

    Re: Documentary Film about Caleb L. McGillivary ("Kai the Hatchet-wielding Hitchhiker")

    Dear Sir/Madam;

    Let this letter serve as notice that I, the undersigned, do hereby reserve all of my rights: including, but not limited to, my right to publicity; my intellectual property rights; my right to market my personality and common law trademarks; and any and all rights which are mine or which accrue to me.

    None of my actions or inactions constitute, have constituted, nor should be construed as; permissions, consents, nor agreements; implied nor implicit, constructive nor substantive, nor in any form or permutation whatsoever: to make a film or work about me or my life story, in whole or in part.

    Any messages or contents thereof; including, but not limited to, video, pictures, writings, or soundfiles; which I, or any acting on my behalf or behest, have sent or send to you or any of your affiliates or agents: have sent in confidence, as

part of confidential negotiations. No permission or license for the use thereof; whether directly, derivatively, or otherwise: has ever been granted. I retain all of my copyrights.

None of my actions or inactions do or have ever or will ever constitute nor should be construed as participation in your film or work in any way.

None of my actions or inactions constitute nor should be construed as a waiver of any of my rights; including, but not limited to, my right to sue for damages for defamation or slander, whether directly by you or your agents or affiliates; or by your publishing of slanderous or defamatory remarks about me by any party.

I assert that documentary films such as what you are purporting to make are commercial use, and do not fall under any fair use exceptions to any rule, law, or use.

I reserve all of my rights.

Your attention to this matter is appreciated.

Sincerely,

Date: 9/7/21

Caleb L. McGillvary
#1222665
NJSP Po Box 861
Trenton, NJ 08625-0861

CC:

