James C. Eschen
Cal. Bar No. 117010
55 River Street, Suite 100
Santa Cruz, CA 95060-4567
(831) 458-0502 x129

Attorney for Defendants Fulton 55, LLC
and Tony Martin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Caleb L. McGillvary,<br><br> *Plaintiff,*<br><br> *v.*<br><br>NETFLIX, Inc., et al.,<br><br> *Defendants.* | No. 2:23-cv-01195-JLS-SK<br><br>**Defendants Fulton 55, LLC and Tony Martin's Notice of Motion and Motion to Dismiss Complaint; Memorandum of Points and Authorities**<br><br>Date: March 29, 2024<br>Time: 10:30 a.m.<br>Dep't: Courtroom 8A |

To Plaintiff Caleb L. McGillvary:

Take note that on March 29, 2024, at 10:30 a.m. or as soon thereafter the matter may be heard, in Courtroom 8A of the United States District Court for the Central District of California, 350 West First Street, Los Angeles, California 9012, defendants Fulton 55, LLC and Tony Martin will move this court under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims against them in the First Amended Complaint. Defendants make the motion on the following specific grounds:

- The statute of limitations bars Plaintiff's claim that Defendants fraudulently promised to pay him;

- Plaintiff has not pleaded with sufficient specificity his claim that Defendants fraudulently deprived him of copyrights;

1  • Plaintiff cannot recover for slander in 2021 because nothing Martin said
2      about him could possibly injure his reputation.

3  •  Plaintiff has not pleaded with sufficient specificity his claim that
4      Defendants slandered him in 2013;

5  • Plaintiff has not plausibly pleaded that the 2013 slander occurred;

6  • Plaintiff can show no damages from that slander, whether pleaded as
7      defamation or as trade libel, because he could not lawfully work in 2013;

8  • The statute of limitations on any claim for the intentional infliction of
9      emotional distress has expired.

10 • Plaintiff has not alleged a pattern of racketeering activity.

11     Defendants base the motion on this notice, the attached memorandum of

12 points and authorities, and all the records on file in this action.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1. Plaintiff's fame in 2013 and ten years later. . . . . . . . . . . . . . . . . . . . . . 1

    2.  The allegations about Tony Martin and Fulton 55. . . . . . . . . . . . . . . . 2

        a.  Martin's alleged fraudulent promises to pay Plaintiff. . . . . . . . . 3

        b.  Fulton 55 allegedly defrauds plaintiff out of his copyrights. . . . . 3

        c.  Fulton 55's alleged slander. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.  Plaintiff's claims against Fulton 55 and Martin. . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    1.  Plaintiff cannot recover for Fulton 55 and Martin's alleged fraud.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        a.  The statute of limitations has expired on Martin's alleged
promissory fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        b.  Plaintiff has not alleged the fraudulent deprivation of his
copyrights with sufficient specificity. . . . . . . . . . . . . . . . . . . . . 7

    2.  Plaintiff states no slander claim based on Martin's 2021 interview.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.  Plaintiff has not plausibly pleaded slander in 2013. . . . . . . . . . . . . 10

    4.  Without being able to plead slander, plaintiff cannot plead the
intentional interference with economic relationships. . . . . . . . . . . . 12

    5.  The statute of limitations has expired on Plaintiff's claim for
Intentional Infliction of Emotional Distress. . . . . . . . . . . . . . . . . . 12

    6.  Plaintiff has not alleged a pattern of racketeering activities under the
RICO statute. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

**Federal Statutes:**

18 United States Code § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 United States Code § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 United States Code § 1962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 United States Code § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

8 United States Code § 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 9(b). Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . 7, 8

**Federal Cases:**

*Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 84 F.4th 844 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Conkle v. Jeong*, 73 F.3d 909 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979 (9th Cir. 2002) . . . . . . . . . . 8

*CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099 (9th Cir. 2007) . . . . . 12

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Gallagher v. Philipps*, 563 F. Supp. 3d 1048 (S.D. Cal. 2021) . . . . . . . . . . . . . . . 10

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . 8

*Lieberman v. Fieger*, 338 F.3d 1076 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . 9

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) . . . . . . 6, 7

*Sloatman v. Housewright*, No. 2:21-cv-08235-WLH (MAA), 2023 U.S. Dist. LEXIS 228924 (C.D. Cal. Nov. 17, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . 8

**Federal Rule:**

Federal Rule of Civil Procedure 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**State Statutes:**

California Civil Code § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Code of Civil Procedure § 335.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California Code of Civil Procedure § 338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**State Cases:**

*Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214 (2023)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kline v. Turner*, 87 Cal. App. 4th 1369 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 6

*NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222 (2014)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999). . . . . . . . . . . . . . . . . . . . . . . . . 6

*Pedro v. City of Los Angeles*, 229 Cal. App. 4th 87 (2014). . . . . . . . . . . . . . . 6

*Regalia v. The Nethercutt Collection*, 172 Cal. App. 4th 361 (2009) . . . . . . . . . 9, 10

*Smith v. Maldonado*, 72 Cal. App. 4th 637 (1999). . . . . . . . . . . . . . . . . . . . . . 8

*State v. McGillvary*, 2021 N.J. Super. Unpub. LEXIS 1651 (App. Div., August 4, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Wassman v. South Orange County Community College Dist.*, 24 Cal. App. 5th 825 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Williams v. Kaufman*, 275 S.W.3d 637 (Tex. App. 2009) . . . . . . . . . . . . . . . . . 7

**Other Authorities**

dictionary.cambridge.org . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

urbandictionary.com . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Fulton 55, LLC and Tony Martin bear no legal responsibility for plaintiff Caleb McGillvary's hard life. With one exception, Plaintiff has pleaded no claim against them. His assertion that Fulton 55 and Martin fraudulently deprived him of a copyright states none of the elements of fraud, leaving uncertain just how they could even do such a thing. His assertion that they slandered him to music bookers in the Fresno area does not state the substance of the slander. His description of how he learned of the supposed slander leaves substantial doubt it ever happened. He also can plead no damages: he admits being in the United States unlawfully, so his inability to get a gig in Fresno does not matter. Finally, Martin's supposed slander of him in 2021 caused him no injury: the allegedly false statement that Plaintiff had urinated on Fulton 55's bushes could not have damaged his reputation further, given his present incarceration following his murder conviction.

## STATEMENT OF FACTS

### 1. Plaintiff's fame in 2013 and ten years later.

Plaintiff rocketed to fame as a hero on February 1, 2013; three and a half months later, he was arrested for a murder for which he was later convicted and sentenced to 57 years imprisonment. First Amended Complaint (CEF 18), ¶¶ 1, 2, pp. 8, 9; *State v. McGillvary*, 2021 N.J. Super. Unpub. LEXIS 1651, *1, 6 (App. Div., August 4, 2021). On the former date, Plaintiff was riding in a car in Fresno with Jett Simmons McBride when McBride crashed his car into a crowd of power-lien workers. FAC, ¶ 2.a., p. 9. McBride shouted that he was Jesus to one of the workers, that he was going to kill the workers, and used racial slurs. *Id.*, ¶ 2.b., p. 10. He then grabbed a woman and yelled he was going to kill everyone despite Plaintiff's warning that he stop. *Id.*, ¶ 2.c. To stop McBride, Plaintiff struck him twice with the blunt side of his camping hatchet and once with the blade. *Id.*, ¶¶

2.c., 3, pp. 10–11.

The police determined that Plaintiff had used justifiable force and released him. FAC, ¶ 2.i., p. 10. KMPH Fox News immediately asked for an interview, and Plaintiff described the events to its reporters. *Id.*, ¶¶ 7, 8, p. 12. Four days later, they again interviewed him, and he sang a song he wrote and did a dance with a skateboard. *Id.*, ¶ 12, p. 13. On February 11 and 12, 2013, he taped an appearance on the Jimmy Kimmel show. *Id.*, ¶ 30, p. 19.

In July 2020, Netflix and RawTV discussed producing a film about Plaintiff called "The Hatchet Wielding Hitchhiker." FAC ¶¶ 70, 71, p. 30. Actual production began in September 2021. *Id.*, ¶ 88, p. 39. The filmmakers interviewed people, including defendant Martin, connected with the February 2013 events. *Id.*, ¶¶ 89–97, pp. 39–45. Netflix released the film January 10, 2023. *Id.*, ¶ 111, p. 50.

## 2.   The allegations about Tony Martin and Fulton 55.

On March 27, 2013, defendants Martin and Gabriel Sanchez plotted to defraud plaintiff of his services as a "choreographer, musician, and dramatic artist ... ." FAC ¶ 51, p. 25. They agreed to promise to pay him to perform at Fulton 55 but then not pay him. *Id.*. They also agreed to defraud him "of motion picture works and intellectual property derived therefrom through said wire fraud by conning [him] into directing the production of motion pictures of his performance, and thereafter claiming such as their own." *Id.* Finally, they agreed to "'Kill' his reputation in an effort to 'get plaintiff's crowd' in a campaign of false and defamatory statements about plaintiff." *Id.* He alleges that they agreed to "contact[] other venue owners to 'burn' plaintiff by defaming and disparaging him, claiming that he was a bad business partner and maligning his ability in his profession as a musician, and maligning his character, business, quality of performance, marks in use in commerce, and right of publicity." *Id.*, ¶ 60, p. 27.

### a.   Martin's alleged fraudulent promises to pay Plaintiff.

Later on March 27, 2013, Martin telephoned Plaintiff and misrepresented to him that Fulton 55 would pay him $400 and a "fair portion" of liquor and ticket sales to perform at Fulton 55 the next night. FAC, ¶ 53, p. 25. Relying on that promise, Plaintiff sang and danced for four hours on March 28. *Id.*, ¶ 54. Before performing, he asked Martin for a beer as an advance on his pay for the night. *Id.*, ¶ 55, p. 26. Martin told him, "'You'll get yours after the show.'" *Id.* Plaintiff walked outside, asked the crowd who wanted to buy him a beer, and returned with half a dozen fans offering to buy for him. *Id.*.

After ending his performance at Fulton 55, he asked Martin for the promised pay. FAC, ¶ 58, p. 26. Martin replied,

"I know you're an illegal, and if I call the cops they're gonna deport you. You ain't getting a fucking thing. You better get the fuck outta here or you're going back to Canada."

*Id.* (The complaint repeatedly states that Plaintiff was in the country unlawfully, so that those who transported him to appear with Jimmy Kimmel had violated section 274 of the Immigration and Nationality Act (8 U.S.C. § 1324(a)(ii)). *Id.*, ¶¶ 17, 27, 50, 93, 94, 212, 214, 216, pp. 15, 18, 24, 40, 41, 84, 85.) Plaintiff alleges he did not discover that Martin intended to defraud him until January 10, 2023, when he watched the Netflix documentary. *Id.*, ¶ 61, p. 27.

### b.   Fulton 55 allegedly defrauds plaintiff out of his copyrights.

At around 10:30 on March 28, Plaintiff did a dance and directed Fulton 55's recording of it. FAC, ¶¶ 56, 57, p. 26. He alleges he "is the author of the choreography and derivative motion picture work; and has never granted any license to create any derivative works of his choreography except for this specific motion picture work, which was fraudulently obtained by [Fulton 55] Defendants." *Id.* He did another dance at 11:00; he makes identical allegations

about directing Fulton 55's recording of it and about Fulton 55 fraudulently obtaining it. *Id..*, ¶ 57.

### c.   Fulton 55's alleged slander.

Plaintiff bases his allegations that Fulton 55 slandered him on what Sanchez said during his interview for the Netflix documentary:

> "I was asked, do you want to do a show with Kai, and I thought, 'Like, *Kai Kai*? Like, the Hatchet Guy?' I thought, 'This guy's ridiculous.' But then I saw a video of him playing the acoustic guitar and I thought, 'It's not bad.' He has a nice voice and just sounds like he's a campfire guy with an acoustic guitar ... We said 'yes' because we wanted Kai's crowd. We wanted who was going to come out to see Kai, and then we wanted to kill it and win them over. I mean, that's what
> you do. It's like Rock Band. 'You made 20 fans tonight, you made 50 fans.'"

FAC ¶ 95, p. 42. From this statement, Plaintiff concludes that Sanchez and Martin conspired to "'kill' Plaintiff's reputation." *Id.*

Plaintiff alleges that Martin admitted to the defamation campaign when he told the documentary interviewer,

> "It's a big city, but it has a small-town feel. If you get burned in this town, word
> spreads. My last words were, 'Get the fuck outta here.'"

FAC,¶ 97. p. 45 .

Plaintiff also alleges that Martin slandered him in the documentary itself by telling the interviewer,

> "He comes in for a sound check, and I feel like I'm a good judge of character. I was just put off by him pretty quickly. Just the way he talked, interacted, and treated my staff. He'd walk up to the bar almost demanding, like, a free beer, because of who he was, and its like, "yeah, you know, we don't do that here."

1    But then he would go out and get somebody to buy his drinks for him ... I

2    ended up kicking him out after his performance for urinating on one of our

3    bushes."

4    FAC ¶ 97, p. 45. Plaintiff denies urinating on any bushes around Fulton 55. *Id.*

5        Plaintiff alleges that Fulton 55's fraud and slander deprived him of not just

6    the promised pay but compensation for "use of marks[ ] and market reputation as

7    well as the creation of motion picture works and resulting copyrights thereto; as

8    well as the lifetime value of the consumers brought in to Fulton 55 and Sanchez

9    due to Plaintiff's endorsement and performance." FAC, ¶ 62, p. 27. As a further

10   result of the fraud, Fulton 55 wrongfully obtained licensing and performance

11   fees, liquor sales, and ticket and merchandise sales. *Id.*, ¶ 63, pp. 27–28. Because

12   of the fraud, defamation and slander, at least a dozen of Plaintiff's shows were

13   cancelled, and he was never invited to play in Fresno again. *Id.*, ¶ 64, p. 28. Had

14   these shows not been cancelled, he probably would have stayed in Fresno rather

15   than being imprisoned in New Jersey. *Id.*

16

17   **3.  Plaintiff's claims against Fulton 55 and Martin.**

18       Plaintiff alleges that Sanchez and Martin's 2013 conduct shows their

19   intention to disparage his property interests and right of publicity, his

20   copyrightable musical compositions, choreography, and dramatic works, and

21   other business interests. FAC ¶ 134, pp. 56-57. He further alleges that Fulton

22   55's fraudulent deprivation of his copyrights either creates a constructive trust or

23   gives him the right of replevin. *Id.*, ¶¶ 152, 162, pp. 61, 62. Martin's fraudulent

24   promises and the fraudulent deprivation of the copyrights subject Fulton 55 to

25   damages for fraud. *Id.*, ¶ 188, p. 76. Martin's fraud and the conspiracy to

26   disparage him caused him severe emotional distress. *Id.*, ¶ 191, p. 77. That

27   conspiracy also interefered with his prospective economic advantage. *Id.*, ¶ 196, p.

28   80. Because Martin induced Plaintiff to come play at Fulton 55 in a telephone

call, he committed wire fraud, and Fulton 55's conduct subjects it to liability under the Racketeering and Corrupt Organizations Act. *Id.*, ¶ 208–210, pp. 83–84.

## ARGUMENT

**1. Plaintiff cannot recover for Fulton 55 and Martin's alleged fraud.**

    **a.  The statute of limitations has expired on Martin's alleged promissory fraud.**

The statute of limitations on a claim for fraud is three years from the discovery of the fraud. Cal. Code Civ. Proc. § 338(d). "Discovery" does not mean actual knowledge. *Pedro v. City of Los Angeles*, 229 Cal. App. 4th 87, 105 (2014). "'[T]he plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof—when, simply put, he at least suspects that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding.'" *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1057 (9th Cir. 2008), quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–398 (1999). The plaintiff discovers the cause of action not upon becoming aware of the specific wrong alleged but upon suspecting that an injury was caused by wrongdoing. *Id.*, quoting *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001).

The alleged fraud occurred more than a decade before Plaintiff brought this action. He cannot bring himself within the discovery rule because he has not pleaded facts showing his inability to discover his claim despite reasonable diligence. See *NBCUniversal Media, LLC v. Superior Court*, 225 Cal. App. 4th 1222, 1232 (2014). In fact, he states exactly when he discovered his injury caused by wrongdoing. See FAC ¶ 58, p. 26.

At 1:00 a.m. on March 28, 2013, right after his performance ended, Martin

refused to pay him, saying, "'You aren't getting a fucking thing.'" *Id.* At this point, Plaintiff knew that wrongdoing caused his injury. Whether he knew it was fraud is irrelevant. See *Platt Elec. Supply v. EOFF Elec.*, 522 F.3d at 1057. In fact, Martin's immediate refusal to pay could by itself demonstrate his fraudulent intent. See *Williams v. Kaufman*, 275 S.W.3d 637, 641 (Tex. App. 2009).

Plaintiff's assertions that he could not have discovered Martin's fraud earlier carry no weight. See FAC ¶ 61, p. 27. He alleges that "it's not reasonable to expect someone to admit to perpetrating a fraud on camera," but what is reasonable to expect on camera in 2021 has no bearing on what he knew in 2013. His knowledge that Martin refused to pay him what was promised started the statutory period.

### b.  Plaintiff has not alleged the fraudulent deprivation of his copyrights with sufficient specificity.

A party alleging fraud must state with particularity the circumstances constituting fraud. Fed. R. Civ. Pro. 9(b). Rule 9(b) requires that parties must particularly state the "'who, who, when where, and how of the misconduct charged.'" *Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). Fraud allegations "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 84 F.4th 844, 857 (9th Cir. 2023) (internal quotations omitted).

The elements of a claim for fraud by an intentional misrepresentation "'are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage.'" *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1245 (2023). Plaintiff asserts that Fulton 55 fraudulently deprived him of his copyrights in music videos, but he

pleads with particularity none of these elements. He pleads only that Fulton 55 "fraudulently obtained" video recordings of his choreography. FAC ¶¶ 55, 56, p. 26. He does not say who made a misrepresentation, what the misrepresentation was, how he relied, or why that reliance was justifiable or reasonable. He therefore cannot state a claim for fraud (FAC ¶¶ 62, 188, pp. 27, 76).

Plaintiff's failure to meet Rule 9(b)'s standards prevents him from stating any claim sounding in fraud, not just one for common-law fraud. Any allegation of fraud, even if not an essential element of a claim, must meet be pleaded with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009), citing *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1105 (9th Cir. 2003). If the plaintiff alleges a unified courts of fraudulent conduct and relies entirely on that conduct as the basis of a claim, the entire claim must meet the rule's requirements. *Vess v. Ciba-Geigy,*317 F.3d at 1103–1104. Plaintiff has therefore stated no claim that

- Fulton 55 and Martin unlawfully transferred or licensed the video's copyright to RawTV (FAC ¶ 87, p. 38);
- Plaintiff is entitled to a constructive trust over the video or its proceeds (*Id.*, ¶¶ 152, 162. pp. 61, 62);
- Fulton 55 and Martin violated the RICO Act (*Id.*, ¶¶ 208–210, pp. 83–84).

## 2. Plaintiff states no slander claim based on Martin's 2021 interview.

Defamation is the intentional unprivileged publication of a false statement of fact that has a natural tendency to injure or causes special damage. *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 826 (9th Cir. 2008), citing *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999). A defamation action protects the plaintiff's reputation, which the judgment vindicates. *Cort v. St. Paul Fire & Marine Ins. Cos.*, 311 F.3d 979, 986 (9th Cir. 2002). Slander is defamation orally published. Cal. Civ. Code § 46. California treats defamatory

1  statements on television broadcasts as slander. *Lieberman v. Fieger*, 338 F.3d 1076,

2  1079 (9th Cir. 2003).

3     Plaintiff alleges that Martin slandered him in two ways. First, Martin said that

4  he was "'put off'" by Plaintiff, including by the way he treated the Fulton 55 staff,

5  including by, "'almost demanding'" free beer. FAC ¶ 97, p. 45. When he could

6  not get the free beer, he went outside to find somebody to buy drinks for him. *Id.*

7  Martin then said that Plaintiff urinated on Fulton 55's bushes. None of this

8  statement is defamatory.

9     None of these statements are defamatory because they do not imply a

10  provably false assertion of fact. See *Conkle v. Jeong*, 73 F.3d 909, 917 (9th Cir.

11  1995). That Martin was put off by Plaintiff is not provably false. Martin said that

12  Plaintiff treated the staff badly by "'almost demanding'" free beer. In fact, Plaintiff

13  said that he did ask Martin for beer; whether he "almost demanded it" is a

14  statement of opinion. A statement of opinion will not support a claim for slander.

15  See *id.* The only possibly slanderous thing that Martin said is that Plaintiff

16  urinated on the bushes.

17     Nothing Martin said, including his statement about Plaintiff's urination,

18  constitutes slander because defendant has alleged no special damages. See *Regalia*

19  *v. The Nethercutt Collection*, 172 Cal. App. 4th 361, 367 (2009). California Civil

20  Code 46 identifies five types of slanderous statements:

21     1. [One that c]harges any person with crime, or with having been indicted,

22        convicted, or punished for crime;

23     2. [One that i]mputes in him the present existence of an infectious,

24        contagious, or loathsome disease;

25     3. [One that t]ends directly to injure him in respect to his office, profession,

26        trade or business, either by imputing to him general disqualification in

27        those respects which the office or other occupation peculiarly requires, or

28        by imputing something with reference to his office, profession, trade, or

1    business that has a natural tendency to lessen its profits;

2    4. [One that i]mputes to him impotence or a want of chastity; or

3    5. [One w]hich, by natural consequence, causes actual damage.

4  The first four types of slander is slander per se and requires no proof of actual

5  damages. *Regalia*, 172 Cal. App. 4th at 367. Other slanders are slander per quod,

6  and the plaintiff must show special damages for there to be any recovery. *Ibid.*

7    Martin's statements neither charge Plaintiff with a crime nor assert he was

8  prosecuted for one. They did not impute to him the existence of any disease, the

9  want of chastity, or impotence. Even if they perhaps at one time would have

10 injured Plaintiff in his business or trade, his incarceration has eliminated any

11 business or trade. Thus plaintiff must plead and prove special damages. He has

12 not done so.

13

14 **3.  Plaintiff has not plausibly pleaded slander in 2013.**

15   A complaint alleging slander must specifically identify the defamatory words,

16 if not plead them verbatim. *Sloatman v. Housewright*, No. 2:21-cv-08235-WLH

17 (MAA), 2023 U.S. Dist. LEXIS 228924, at *49 (C.D. Cal. Nov. 17, 2023).

18 Although it need not plead them verbatim, it must state allege their substance. *Id.*

19 Even in liberal federal pleading, general allegations of the defamatory statements

20 that do not identify their substance are insufficient. *Gallagher v. Philipps*, 563 F.

21 Supp. 3d 1048, 1079 (S.D. Cal. 2021).

22   Defendant has not stated anything close to the general substance of what

23 Martin and Sanchez may have said about him. All he pleads is that Martin and

24 Sanchez contacted other venue owners to disparage him, saying that he was a bad

25 business partner and maligning his musicianship, character, business, and quality

26 of performance. FAC 60, p. 27. None of these descriptions of the alleged slander

27 identify any substance of what Martin and Sanchez supposedly said.

28   More importantly, Plaintiff's allegations of a campaign to destroy him are

1   implausible. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must

2   state enough facts, accepted as true, to state a claim that is plausible on its face.

3   *Id.*. The claim is facially plausible when the facts alleged allows the court to

4   reasonably infer that the defendant is liable. *Id.*

5       Plaintiff's allegations cast grave doubt on whether the alleged slander

6   campaign ever happened. He bases it solely on Sanchez's statement that, when

7   asked if he wanted to play with Plaintiff, "said 'yes,' because we wanted Kai's

8   crowd. We wanted who was going to come out to see Kai, and then we wanted to

9   kill it and win them over."

10  FAC ¶ 95, at 42. Plaintiff asserts that the phrase "kill it" shows that Sanchez

11  wanted to destroy Plaintiff's reputation.

12      But Sanchez nowhere referred to Plaintiff's reputation. The only possible

13  antecedent of the pronoun *it* is Plaintiff's crowd, but Sanchez said that he wanted

14  to win it over. Killing it would be counterproductive.

15      Plaintiff does not understand what Sanchez meant by "kill it." To "kill it" is

16  an informal phrase meaning "to do something extremely well." dictionary.

17  cambridge.org/us/dictionary/english/kill-it (retrieved February 27, 2024). In

18  context, Sanchez wanted to win over Plaintiff's crowd by putting on a great show.

19  See urbandictionary.com/define.php?term=Kill%20It (retrieved February 27,

20  2024). It in no way suggests that Sanchez wanted to destroy him financially.

21      Nor does Martin's statement, "'If you get burned in this town, word spreads'"

22  confirm that such a campaign existed. See FAC ¶ 97, p. 45. He merely stated that

23  he felt burned by Plaintiff's treatment of the staff and of his urinating on the

24  plants, and that the community inevitably hears about it.

25      Again, plaintiff's inability to plead slander prevents him not just from

26  pleading the common-law claim but from pleading commercial disparagement

27  (FAC ¶¶ 134–135, pp. 57–58), disparagement of his trademark (*Id.*, ¶ 204, p.

28  82), and RICO (*Id.*, ¶¶ 208–210, pp. 83–84). He cannot, moreover, prove any

damages to his profession or business stemming from Martin's alleged conduct. He admits he was in the country unlawfully, so he should not have been in Fresno in the first place, much less playing music for money.

**4.   Without being able to plead slander, plaintiff cannot plead the intentional interference with economic relationships.**

Under California law, the tort of interference with prospective economic advantage requires the plaintiff to allege an act that is wrongful independent of the interference itself. *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1108 (9th Cir. 2007). Plaintiff alleges that he lost gigs in the Fresno area because of Fulton 55 and Martin's fraud and slander. FAC ¶ 196, p. 80. But the statute of limitations bars the only fraud he has pleaded, and he cannot plead slander. He therefore cannot plead a claim for intentional interference with his economic advantage.

**5.   The statute of limitations has expired on Plaintiff's claim for** Intentional Infliction of Emotional Distress.

A claim for the intentional infliction of emotional distress is subject to a two-year statute of limitations. *Wassman v. South Orange County Community College Dist.*, 24 Cal. App. 5th 825, 852–853 (2018), citing Cal. Code Civ. Proc. § 335.1. The statutory period begins to run when the plaintiff suffers severe emotional distress as a result of the defendant's misconduct. The only arguably outrageous misconduct that Plaintiff pleads occurred in 2013. He states no reason why he suffered emotionally distress no earlier than 2021.

Plaintiff bases his claim on Martin's inducement that he hitchhike to perform at Fulton 55, refusal to pay him, the conspiracy to ruin him, and then their public admission of their conspiracy in the Netflix documentary. FAC ¶ 191, pp. 77–78. But the first two events occured in 2013, and the second two he has not plausibly

pleaded happened at all. That events in 2013 would not cause him emotional distress until 2021 is not plausible.

**6.   Plaintiff has not alleged a pattern of racketeering activities under the RICO statute.**

The RICO statute allows a plaintiff suffering economic injury from its violation to recover treble damages. 18 U.S.C. § 1964(c). The act prohibits any person to be "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Id.*, § 1962(c). A "pattern of racketeering activities" requires two acts of racketeering activity within ten years. *Id.*, § 1961(5). Section 1961(1)(B) defines racketeering activity to include a host of violations of federal criminal statutes.

The only included crime that Plaintiff alleges that Fulton 55 and Martin committed is wire fraud. 18 U.S.C. § 1961(1)(B), citing 18 U.S.C. § 1343. But he only alleges one such instance, when Martin induced him to come play at Fulton 55. He has therefore not pleaded a pattern of racketeering activity.

**CONCLUSION**

The complaint shows that the statute of limitations bars any claims based on Martin's alleged fraudulent inducement to play at Fulton 55, including the claim for the intentional infliction of emotional distress, and the court should dismiss that claim with prejudice. The complaint also shows that Plaintiff could not have suffered any injury from Martin's alleged slander of him in the Netflix documentary, and the court should dismiss that claim with prejudice as well. Although courts ordinarily do not dismiss claims with prejudice just because they are pled poorly, the allegations of the alleged 2013 conspiracy to ruin Plaintiff

1  financially are so implausible that the court should do so anyway. The only

2  allegations that the court should dismiss without prejudice are those regarding

3  the 2013 fraudulent acquisition of copyright. The court should allow Plaintiff to

4  plead those claims specifically and plausibly.

5                                                Respectfully submitted,

6

7  February 27, 2024                           _James C. Eschen_

8                                               James C. Eschen
                                                Attorney for defendants Fulton 55,
9                                               LLC and Tony Martin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF COMPLIANCE

2   The undersigned, counsel of record for defendants Fulton 55, LLC and Tony

3   Martin, certifies that this brief contains 4,153 words, which complies with the

4   word limit of L.R. 11-6.1

5

6

7   Dated: February 27, 2024                    _James C. Eschen_____

8                                               James C. Eschen
                                                Attorney for defendants Fulton 55,
9                                               LLC and Tony Martin

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on February 16, 2024, a true copy of the foregoing was

3  served on Plaintiff via U.S. Mail to the address provided in his pleadings:

4          Caleb L. McGillvary
            #1222655/SBI#102317G

5          New Jersey State Prison
            P.O. Box 861

6          Trenton, NJ 08625

7       I further certify that I caused a true copy of the foregoing to be served on all

8  defendants' counsel of record via ECF.

9

10                                *James C. Eschen*

    Dated:

11                                  James C. Eschen

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28