

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | ) |
| Caleb L. McGillvary | ) CIVIL ACTION NO. |
|    PLAINTIFF | ) 2:23-cv-01195-JLS-SK |
| | ) Hon. Josephine L. Staton, USDJ |
| V. | ) Hon. Steve Kim, USMJ |
| | ) Motion Date: To be determined |
| Netflix et al | ) by the Court |
|    DEFENDANT | ) |
| | ) |

## BRIEF IN OPPOSITION TO NETFLIX'S MOTION TO DISMISS UNDER RULE 12(b)

# TABLE OF CONTENTS

INTRODUCTION ...1

REBUTTAL TO DEFENDANT'S PROPOSED FACTUAL BACKGROUND ...1

STANDARD OF REVIEW ...2

    A. PLAINTIFF IS PRO SE ...2

    B. FED. R. CIV. P. 8 ...2

    C. MOTION TO DISMISS UNDER RULE 12 ...2

LEGAL ARGUMENT ...2

POINT I: THE LIBEL-PROOF DOCTRINE IS TO BE SPARINGLY APPLIED, AND EVEN IF THE COURT WERE TO FIND PLAINTIFF LIBEL-PROOF FOR STATEMENTS OF KILLING RAPISTS, IT DOESN'T EXTEND TO LACING JOINTS, ARSON, VEHICULAR TERRORISM, HATE CRIMES, NOR TRASHING HOTEL ROOMS ...2

POINT II: PLAINTIFF HAS PROPERLY PLEADED DEFAMATION, FALSE LIGHT, PUBLIC DISCLOSURE OF PRIVATE FACTS, AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS THEORIES IN THE ALTERNATIVE FOR THE SAME SET OF FACTS ...4

    A. DEFAMATION ...4

        1. SLANDER CONCERNING THE FEBRUARY 1, 2023 INCIDENT ...5

            a. ALEX AGUIRRE'S STATEMENT ...7

ii

b. BRAD MULCAHY'S STATEMENT

...7

c. JEFF STRICKER'S STATEMENT

...7

d. GABRIEL SANCHEZ'S STATEMENT

...8

2. STATEMENT OF THROWING A KNIFE INTO THE GROUND

...9

3. STATEMENTS BY TONY MARTIN

...9

4. STATEMENTS IMPLYING FELONIOUS ARSON

...10

5. IMPLIED STATEMENTS OF CRIMINAL VANDALISM

...11

B. FALSE LIGHT

...11

C. PUBLIC DISCLOSURE OF PRIVATE FACTS

...12

POINT III: PLAINTIFF HAS PROPERLY PLEADED A CLAIM OF CALIFORNIA RIGHT OF PUBLICITY FOR THE BANNER ADVERTISEMENTS SELLING NETFLIX'S STREAMING SERVICE SUBSCRIPTIONS

...15

POINT IV: PLAINTIFF HAS PLEADED A LANHAM ACT FALSE ENDORSEMENT CLAIM FOR THE ADVERTISEMENTS

...18

POINT V: PLAINTIFF HAS PLEADED COPYRIGHT INFRINGEMENT AND FAIR USE DOES NOT APPLY

...21

A. THE COPYRIGHT OFFICE'S ACCEPTANCE OF PLAINTIFF'S CLAIM TO COPYRIGHT OWNERSHIP AND AUTHORSHIP OF THE WORKS AT ISSUE RESULTED IN THEIR REGISTRATION OF SAME IN PLAINTIFF'S NAME, WHICH IS PRESUMPTIVELY VALID

...21

B. PLAINTIFF HAS PLEADED AUTHORSHIP IN REMAINING WORKS, CONSTITUTING A COPYRIGHT OWNERSHIP CLAIM FOR WHICH HE HAS REQUESTED CONSTRUCTIVE TRUST AS A REMEDY

...22

C. PLAINTIFF HAS PLEADED INFRINGEMENT

...23

D. FAIR USE DOES NOT APPLY, WHERE DEFENDANT HAS ENGAGED IN COMMERCIAL USE AND USED THE HEART OF EACH COPYRIGHTED WORK WITHOUT ANY TRANSFORMATION

...24

1. THE DOCUMENTARY WAS A COMMERCIAL USE

...24

2. PLAINTIFF'S PUBLICATION OF HIS WORK IS INCONSEQUENTIAL

...26

3. DEFENDANT HAS USED THE HEART OF PLAINTIFF'S WORKS

...26

4. WIDESPREAD USE SUCH AS DEFENDANT'S WOULD DESTROY ANY MARKET FOR THE INFRINGED WORKS

...27

5. ON BALANCING OF THE FACTORS, DEFENDANT'S USE WAS NOT FAIR

...28

POINT VI: ACCORDING TO DEFENDANT, PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT. ACCORDING TO THE NINTH CIRCUIT, THEY'RE NOT

...28

A. IMPLIED-IN-FACT OR IN THE ALTERNATIVE QUANTUM MERUIT

...29

B. BREACH OF CONFIDENCE

...30

iv

C. PLAINTIFF HAS PLEADED DEFENDANTS' FRAUD WITH THE SPECIFICITY REQUIRED BY RULE 9(b); AND HAS CLEARLY ARTICULATED THE BENEFIT OF THE BARGAIN DAMAGES TO WHICH HE IS ENTITLED

...30

POINT VII: PLAINTIFF PLEADED TWO DISTINCT INTERFERENCE CLAIMS

...32

POINT VIII: DEFENDANT HAS PLED ALL THE ELEMENTS OF A RICO CLAIM AGAINST NETFLIX WHICH REQUIRES A RICO CASE ORDER TO ISSUE, NOT DISMISSAL.

...34

CONCLUSION

...37

CERTIFICATE OF COMPLIANCE

...38

## TABLE OF AUTHORITIES

**CASELAW**

Aliotti v. Dakin, 831 F.2d 898 (CA9 1987)
...14,30

Amalgamated Bank v. Facebook, Inc. 84 F.4th 844 (CA9 2023)
...31

Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 215 L.Ed.2d 473 (2023)
...24

Aton Ctr., Inc. v. United Healthcare Ins. Co., 93 Cal.App.5th 1214 (2023)
...31

Boyle v. United States, 556 U.S. 938 (2009)
...34

CALID, Inc. v. Apple, Inc. 85 F.4th 948 (CA9 2023)
...31

Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969 (CA9 2008)
...35,36

Cher v. Forum Int'l Inc., 692 F.2d 634 (CA9 1982)
...17

Corbello v. DeVito, 844 F.Supp.2d 1136 (D.NV 2012)
...22

Corbello v. DeVito, 777 F.3d 1058 (CA9 2015)
...22

Crowe v Cty. of San Diego, 608 F.3d 406 (CA9 2010)
...4

Downing v. Abercrombie & Fitch, 265 F.3d 994 (CA9 2001)
...16,19

Elvis Presley Enters. v. Passport Video, 349 F.3d 622 CA9 2003)
...25,28

Erickson v Pardus 551 U.S. 89 (2007)
...2

Fourth Estate Pub. Ben. Corp. v Wall-street.com, LLC, 203 L.Ed.2d 147 (2019)
...21

H.J. Inc. v. Nw. Bell Tel. Co., 492, U.S. 229 (1989)

...35

In re De Laurentiis Entm't Grp., Inc., 963 F.2d 1269 (CA9 1992)

...29

Jack Daniel's Props. v. VIP Prods., LLC, 2023 U.S. LEXIS 2422 (2023)

...18

Jordan-Benel v. Universal City Studios, Inc., 859 F.3d 1184 (CA9 2017)

...29

Karasek v. Regents of the Univ of Cal., 956 F.3d 1093 (CA9 2020)

...2

Laws v. Sony Music Ent., Inc., 448 F.3d 1134 (CA9 2006)

...16

Makaeff v. Trump Univ., LLC, 715 F.3d 254 (CA9 2013)

...6

Masson v New Yorker Magazine, Inc. 960 F.2d 896 (CA9 1992)

...3

Mattel, Inc. v. MGA Ent., Inc., 616 F.3d 904 (CA9 2010)

...22

McCafferty v. Gilbank, 249 Cal.App.2d 569 (1967)

...29

McGucken v. Pub. Ocean Ltd. 2022 U.S. App. LEXIS 21425 (CA9 2022)

...24,26,28

Mifflin v. Dutton 112 F. 1004 (CA1 1902) Aff'd 190 U.S. 265 (1903)

...2

Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 977 (CA9 2011)

...28

Newcombe v. Adolf Coors Co., 157 F.3d 686 (CA9 1998)

...12

Ortega v. County of Los Angeles, 2019 U.S. Dist LEXIS 146836 (C.D.CA 2019)

...8

Planet Aid, Inc. v. Reveal, 2022 U.S. App. LEXIS 22258 (CA9 2022)

...4

Reeves v. Hanlon, 33 Cal.4th 1140 (2004)

...33

Reves v. Ernst & Young, 507 U.S. 170 (1993)

...36

Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257 (2003)

...13

Rogers v. Grimaldi, 875 F.2d 994 (CA2 1989)

...18,19

Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc., 2 Cal.5th 505 (2017)

...33

Sarver v Chartier, 813 F.3d 891 (CA9 2016)

...11

Shelton v Bauer Pub. Co. L.P. 2016 U.S. Dist LEXIS 52484 (C.D. CA 2016)

...2,12

Shulman v. Grp. W. Prods., Inc., 18 Cal.4th 200 (1998)

...12

Taus v. Loftus, 40 Cal. 4th 683 (2007)

...4

Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980 (CA9 2017)

...23

United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't. AFL-CIO 770 F.3d 834 (CA9 2014)

...34

**STATUTES**

8 U.S.C. 1324

...34

15 U.S.C. 1125(a)

...18

17 U.S.C. 106

...23

17 U.S.C. 201

...36

17 U.S.C. 501

...36

17 U.S.C. 410(a)

...21

17 U.S.C. 410(b)

...21

18 U.S.C. 1343

...35

18 U.S.C. 1951

...35

18 U.S.C. 1957

...35

18 U.S.C. 1961(d)

...35

18 U.S.C. 1964

...34

27 U.S.C. 802

...34

Cal. Civ. Code 47(d)

...8

Cal. Civ. Code 3344(a)

...16,36

**COURT RULES**
Fed. R. Civ. P. 8

...2,4,7

Fed. R. Civ. P. 8(a)

...2

Fed. R. Civ. P. 9(b)

...31,32

Fed. R. Civ. P. 10(c)

...1

Fed. R. Civ. P. 12

...2,22

**OTHER AUTHORITIES**
2 M. Nimmer & D. Nimmer. Copyright
7.16[B][3][a], [b][ii] (2018)).

...21

## INTRODUCTION

Plaintiff's allegations are to be liberally construed and accepted as true, but Defendant has done the opposite: misconstruction and incredulity,

## REBUTTAL TO DEFENDANT'S PROPOSED FACTUAL BACKGROUND

Plaintiff adopts by reference his entire Second Amended Complaint ("SAC") and sets forth same herein in its entirety pursuant to Rule 10(c). Plaintiff avers that the liberal construction of that complaint as set forth in this memorandum is what is required by the Supreme Court, and the misconstruction given it by Defendant is specifically prohibited by the Federal policy of liberal construction of pro se pleadings.

1

## STANDARD OF REVIEW

### A. PLAINTIFF IS PRO SE

All documents filed by a pro se litigant are entitled to liberal construction. <u>Erickson v Pardus</u>, 551 U.S. 89 (2007)

### B. FED. R. CIV. P. 8

A party is only required to give notice of the facts constituting a claim, not to plead every nuance of the legal theories applicable to the claim. Fed. R. Civ. P. 8(a).

### C. MOTION TO DISMISS UNDER RULE 12

On a motion to dismiss, all of a Plaintiff's well-pleaded allegations of fact are accepted as true. See <u>Karasek v. Regents of the Univ of Cal.</u>, 956 F.3d 1093, 1104 (CA9 2020).

## LEGAL ARGUMENT

### POINT I: THE LIBEL-PROOF DOCTRINE IS TO BE SPARINGLY APPLIED, AND EVEN IF THE COURT WERE TO FIND PLAINTIFF LIBEL-PROOF FOR STATEMENTS OF KILLING RAPISTS, IT DOESN'T EXTEND TO LACING JOINTS, ARSON, VEHICULAR TERRORISM, HATE CRIMES, NOR TRASHING HOTEL ROOMS

This Court in <u>Shelton v Bauer Pub. Co. L.P.</u> 2016 U.S. Dist LEXIS 52484 at *19 n.6 (C.D. CA 2016) held that: "Courts have cautioned that

the libel-proof plaintiff doctrine is to be sparingly applied, as it is unlikely that many plaintiffs will have such tarnished reputations that their reputations cannot sustain further damage."

The 9th Circuit explained that: "The theory must be rejected because it rests upon the assumption that one's reputation is a monolith, which stands or falls in its entirety. The law, however, proceeds upon the optimistic premise that there is a little bit of good in all of us - or perhaps upon the pessimistic assumption that no matter how bad someone is, he can always be worse ... ('He was a liar and a thief, but for all that he was a good family man.')" <u>Masson v New Yorker Magazine, Inc.</u>, 960 F.2d 896, 898-99 (CA9 1992).

To put it in terms relevant to this case, even if Plaintiff is "libel proof" for killing a rapist, this does not mean defendants may make false assertions regarding vehicular terrorism, hate crimes, lacing joints, committing arson, nor trashing hotel rooms. Plaintiff has pleaded that he still has a strong and positive reputation; <u>ECF</u> 115, 228, 234; and the libel-proof doctrine does not apply.

## POINT II: PLAINTIFF HAS PROPERLY PLEADED DEFAMATION, FALSE LIGHT, PUBLIC DISCLOSURE OF PRIVATE FACTS, AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS THEORIES IN THE ALTERNATIVE FOR THE SAME SET OF FACTS

### A. DEFAMATION

Defamation is (1) a publication, (2) of a false assertion of fact, (3) that is defamatory, (4) and unprivileged, and (5) that has a natural tendency to injure or that causes special damage. <u>Taus v. Loftus</u>, 40 Cal. 4th 683, 720 (2007). Defamation that has a natural tendency to injure is slander per se. A statement is considered slander per se if it charges any person with a crime they didn't commit, or with a lack of chastity. <u>Crowe v Cty. of San Diego</u>, 608 F.3d 406, 422 (CA9 2010). Plaintiff has pleaded all of these elements in his SAC, at paragraphs 197-237 and in the paragraphs incorporated by reference therein. Although he has alleged the fact of constitutional malice as Fed. R. Civ. P. 8 requires, this is only required for claims regarding the Smash incident itself and his media appearances, because he is a limited purpose public figure for that incident and his media appearances only. Plaintiff is not an all-purpose public figure. See <u>Planet Aid, Inc. v. Reveal</u>, 2022 U.S. App. LEXIS 22258 at *14-15 (CA9 2022)("All-

4

purpose public figures must prove actual malice for virtually any subject of defamation. Limited-purpose public figures, who have assumed prominence on a limited range of issues, need only prove actual malice for speech touching upon those issues.")

"Actual malice is a subjective test; it means that the [defendant] must have published a statement with knowledge it was false or reckless disregard of whether it was false or not. Reckless disregard, in turn, means that the [defendant] in fact entertained serious doubts as to the truth of the statement in question." Id. at *24.

## 1. SLANDER CONCERNING THE FEBRUARY 1, 2023 INCIDENT

The Defendant correctly asserts that each statement must be viewed in the context of the documentary as a whole, yet fails thereafter to do so. Taken in the context of the documentary as a whole, each statement cumulatively states about the February 1, 2013 incident that McBride "fuck[ed Plaintiff] in the ass and [Plaintiff had] to keep it real and take him out"; so Plaintiff "handed him a laced joint]" in which here was "all these drugs"; after which Plaintiff "made the assumption they were both ghosts" and said "I bet we could drive through that truck right now and nobody would even see us"; after

5

which, Plaintiff "like starting a fire so you can put it out after", "bludgeon[ed] someone over the head with a deadly weapon" which was not justified force because "hitting someone in the head with a hatchet 3 times, blunt or not is violent"; and thereafter people who "know[] who kai was" give lay opinion that he perjured himself concerning "what actually happened in Fresno that day." Contrary to Defendant's assertion, that context makes each of those statements slanderous, even if any one of them viewed alone might otherwise not be. Certainly it makes the implication Defendant created by stringing them all together in the documentary false. These statements were known to be false at the time they were published, or at least the proceeding described in 2 of the SAC was known to Defendant and should have been an "obvious reason to doubt the accuracy of the third party's assertions". See Makaeff v. Trump Univ., LLC, 715 F.3d 254, 270-71 (CA9 2013)(Plaintiff needs to show "obvious reasons" to doubt the truthfulness of the original speaker, or the accuracy of his statements, to establish recklessness for republishing a third party's allegations).

Plaintiff is not required to prove constitutional malice for slander involving events outside the scope of the Smash incident or his media

6

appearances. Saying he committed arson, trashed a hotel room, or brandished a deadly weapon other than in justified defense of another and recklessly endangered passerby on a public sidewalk, constitute false statements of criminal acts, which is slander per se as pleaded. Plaintiff has alleged general and special damages resulting from this, which is all Rule 8 requires.

### a. ALEX AGUIRRE'S STATEMENT

Alex Aguirre's statement that he "Kn[ew] who Kai was" and for this reason "wondered what *actually* happened that day in Fresno"; implied the false assertion of fact that Alex Aguirre was in possession of knowledge which showed that Plaintiff's version of events was false; which implies that Plaintiff committed perjury and was culpable of criminal acts on February 1, 2023,

### b. BRAD MULCAHY'S STATEMENT

Mulcahy's statement implies that Plaintiff had committed an unjustified violent crime, as opposed to a justified heroic act, during the incident described in "2".

### c. JEFF STRICKER'S STATEMENT

Defendant's reliance on Cal. Civ. Code 47(d) is misplaced. The "fair and true report" privilege only applies if the substance of the statement is accurate. See Ortega v. County of Los Angeles, 2019 U.S. Dist LEXIS 146836 at *32 (C.D.CA 2019). Plaintiff was not "culpable" in the February 1, 2013 incident, and Stricker's statement to the contrary *contradicts* the judicial proceeding in which the "report" of the incident is purportedly based. Sharing a joint doesn't impute culpability, else dispensaries would be inundated with strict liability suits. Stricker's statement was a false assertion of fact, not an opinion, which was alleged to carry more weight because of his unauthorized use of an official uniform.

### d. GABRIEL SANCHEZ'S STATEMENT

In the context of the film as a whole, the end credits state "police toxicology tests on McBride found no narcotics other than marijuana in his system"; but Sanchez states, "But honestly, if you think about this, what if there's something that just didn't show up on the test?"; implying that the toxicology screenings "didn't show" a "list[ of] all these drugs and I don't even know what they are." This, and the implication that Plaintiff had failed to disclose that "an old man fucks

you in the ass and you have to keep it real and take him out" at the arraignment of McBride is an implication of perjury, of criminal conduct on February 1, 2013, and also of a lack of chastity.

## 2. STATEMENT OF THROWING A KNIFE INTO THE GROUND

Jensen Rufe's statement about him "throwing a knife into the ground" on a public sidewalk doesn't concern events for which Plaintiff is a limited-purpose public figure. The implications of dangerously throwing sharp objects onto hard surfaces where they could ricochet and injure bystanders, are not "substantially true." Even if Plaintiff was libel-proof for killing rapists, that doesn't make him libel-proof for reckless endangerment, or for brandishing deadly weapons without justification.

## 3. STATEMENTS BY TONY MARTIN

These statements do not concern any events for which Plaintiff was a limited-purpose public figure. The fact of Plaintiff urinating on the walk of fame does not make Plaintiff libel proof for false assertions of urinating on his neighbor's porch. And Tony Martin's statements of Plaintiff "go[ing] out and get[ting] somebody to buy his drinks for him" should be read in the context of his smear campaign described in 41-54

9

and the other statements pleaded in 87 of the SAC: Tony Martin was imputing as a "good judge of character" that Plaintiff "disrespected our place" by "the way he talked, interacted, and treated my staff"; which impugned Plaintiff's business as a musical and street performer by implying that he's incapable of engaging in good practices as a musical performer; which had a natural tendency to damage Plaintiff's reputation and business as a performer, which he intends to resume upon release from prison.

## 4. STATEMENTS IMPLYING FELONIOUS ARSON

Statements that Plaintiff lit a house on fire in circumstances that would constitute a felony, were false and the falsity was known to Defendant at the time the statements were made. A 4 year-old lighting a fire under duress is not the same as a 13 year-old purposely committing arson, which could be charged with a felony as an adult. It appears the narration was altered by Defendant to create the impression that Plaintiff was 13 when he started the fire, especially in conjunction with the picture of Plaintiff at 13 years of age displayed during the narration. Discovery will show for sure. Plaintiff at 13 years of age was a private person, not a limited-purpose public figure,

10

and false attributions of criminal arson to his 13 year-old self are slander per se.

## 5. IMPLIED STATEMENTS OF CRIMINAL VANDALISM

Defendant claims that it "understands the recreation [of vandalism] to be based on interviews more credible than Plaintiff's allegations"; yet the interviews with Samsky, Rufe, and Mulcahy do not disclose any acts of vandalism. Even if unpublished interviews guide Defendant's "understanding"; those are outside the allegations and the allegations must be accepted as true for this motion. Whether or not it changes the public's perception of Plaintiff killing a rapist, it changes the public perception of Plaintiff as never being convicted of vandalism or destruction of property.

## B. FALSE LIGHT

To prevail on the theory of false light invasion of privacy, a Plaintiff must show that the publication publicly portrayed him in a false light that would be highly offensive to a reasonable person. Sarver v Chartier, 813 F.3d 891, 897 n.1, 901 (CA9 2016). . Because a false light claim "stands or falls" on the underlying defamation claim, is the defamation claim proceeds, the false light claim should too. See

11

Shelton, 2016 U.S. Dist. LEXIS 52484 at *45 ("Having denied defendants' motion to strike as to plaintiff's libel claim, the Court need not undertake a separate analysis for the false light claim, and accordingly denies defendants' motion as to this claim as well.")(Citing Newcombe, 157 F.3d at 694)

## C. PUBLIC DISCLOSURE OF PRIVATE FACTS

To prove Public Disclosure of Private Fact ("PDPF"), Plaintiff must show "(1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern." Shulman v. Grp. W. Prods., Inc., 18 Cal.4th 200, 214 (1998).

But in the alternative, Plaintiff has pled each of these factual claims for relief under the alternate legal theory of Breach of Confidence resulting from Breach of Confidential   Relationship ("BOC") in the SAC. ECF 115, 117-124. Even if the Court finds the legal theory of PDPF to be deficient, the claim survives the motion to strike under the alternate theory of BOC. Breach of confidential relationship is established when: (1) one party is vulnerable to the other; (2) this vulnerability results in the empowerment of the stronger

12

party; (3) empowerment has been solicited or accepted by the stronger party; and (4)prevents the weaker party from effectively protecting itself. <u>Richelle L. v. Roman Catholic Archbishop</u>, 106 Cal. App. 4th 257, 272 (2003). "[V]ulnerability ... usually arises from ... lack of education, weakness of mind ... or some other incapacity." <u>Id.</u> at 273.

Plaintiff has alleged facts of his vulnerability due to weakness of mind through PTSD and incapacity due to intoxication. <u>ECF</u> 115, 4, 20. Defendant Rufe has made a coconspirator admission of knowing Plaintiff was incapacitated through intoxication. <u>Id.</u> at 84. Samsky has implied she "enticed" Plaintiff while he was so vulnerable. <u>Id.</u> at 82. Both of them and Mulcahy have admitted knowledge of Plaintiff recently surviving an incident likely to induce PTSD. <u>Id.</u> at 82-84. And Plaintiff has pled that those Defendants solicited, accepted, and thereafter ruthlessly exploited their empowerment over Plaintiff in his vulnerable state. <u>Id.</u> at 16-32. This empowerment prevented Plaintiff from protecting himself from conveying the information embodied by Rufe, Samsky, and Mulcahy's observations of his drunken behavior. Defendant has ratified these actions; <u>Id.</u> at 139-140; and aided in the commission of the breach; <u>Id.</u> at 117-124.

To establish a breach of confidence, Plaintiff must show that: (1) He conveyed confidential and novel information; (2) Defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the parties that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding. <u>Aliotti v. Dakin</u>, 831 F.2d 898, 903 (CA9 1987). The confidential relationship heretofore described resulted in Plaintiff conveying information about his drunken behaviors to Rufe, Mulcahy, and Samsky, which information was novel and which Defendants accepted knowing it was confidential because of the "babysitter" relationship they had solicited. Plaintiff sent Defendants and their counsel written notice that he expected the confidence to be maintained, SAC 91, yet notwithstanding this, Defendants disclosed the confidential information embodied by their observations of Plaintiff during the confidential relationship; and Plaintiff was thereby damaged. This has all been pled with specificity not required by Rule 8(a), and has stated a viable claim which must proceed. SAC, 16-31, 117-124.

Plaintiff has alleged civil conspiracy amongst the Defendant or its agent, and Rufe, Samsky, Mulcahy, and Bunim-Murray; for commission of the breach of confidence and for the PDPF; which Netflix ratified and aided. SAC, 139-140.

It is offensive and objectionable to the reasonable person for information known only through confidential relationship to be disclosed publicly. Netflix knew of this confidential relationship and aided in the commission of its breach, as evidenced by their publishing of statements by Samsky and Mulcahy that they considered themselves to be "babysitters" of Plaintiff, and Rufe's statements that Plaintiff was "IN-TOX-I-CATED."

Plaintiff likewise pled in his SAC, that Netflix publicly disclosed a surreptitiously recorded video of Plaintiff, constituting intrusion. ECF 115, 307-321. The facts so publicly disclosed were offensive and objectionable to the reasonable person, and Plaintiff was damaged thereby as pleaded. Ibid.

## POINT III: PLAINTIFF HAS PROPERLY PLEADED A CLAIM OF CALIFORNIA RIGHT OF PUBLICITY FOR THE BANNER ADVERTISEMENTS SELLING NETFLIX'S STREAMING SERVICE SUBSCRIPTIONS

"Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner ... for purposes of advertising ... without such person's prior consent ... shall be liable for any damages sustained by the person." Cal. Civ. Code 3344(a). "in Downing [v. Abercrombie & Fitch], 265 F.3d 994, [(CA9 2001)] we held that a claim based on the right of publicity was not preempted by the Copyright Act. ... We noted that the photograph itself was within the subject matter protected by the Copyright Act. But Abercrombie has not merely published the photograph. Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiff-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo. By doing so, it had suggested that the surfers had endorsed Abercrombie's t-shirts. Accordingly, we concluded that it is not the publication of the photograph itself, as a creative work of authorship, that is the basis for [plaintiff's] claims, but rather, it is the use of the [plaintiff's] likenesses and their names pictured in the published photographs." Laws v. Sony Music Ent., Inc., 448 F.3d 1134, 1141 (CA9 2006).

Laws's analysis is on all fours with this case. As pled in 125-134 of the SAC, and all the paragraphs incorporated by reference therein, Netflix used a photograph of Plaintiff together with Plaintiff's nickname "the hatchet wielding hitchhiker"; to advertise subscriptions to their streaming video service without Plaintiff's permission; making it appear that Plaintiff explicitly endorsed the streaming service when he, in fact, didn't; and plaintiff has pled statutory damages under 3344 of the gross revenue from subscriptions sold by such advertisements. Plaintiff didn't plead anything to do with the use of his likeness in the trailer nor the documentary itself as part of his right of publicity claim, as that would plainly have been preempted. See ECF 115, 99, 126. Although advertisements of expressive works are not actionable where the advertisements are "merely an adjunct of the protected work and promote only the protected work"; Cher v. Forum Int'l Inc., 692 F.2d 634, 639 (CA9 1982); the advertisements described in the SAC are not part of nor directly related to the documentary itself; as pleaded, the link advertised as "Watch the hatchet wielding hitchhiker on Netflix" leads not to the documentary, but to the subscription sign-up page, whereat the consumer can purchase the services of Netflix's streaming

17

platform. It's a bait-and-switch which capitalized off of Plaintiff's publicity, not an advertisement of the movie itself. Discovery will show this, as Plaintiff only needs to plead sufficient notice of the claim at this point to survive the motion to dismiss.

## POINT IV: PLAINTIFF HAS PLEADED A LANHAM ACT FALSE ENDORSEMENT CLAIM FOR THE ADVERTISEMENTS

The Lanham Act provides that: "Any person who, or in connection with any goods or services, uses any false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. 1125(a)(emphasis added). Commercial use of a "mark" is no longer subject to First Amendment analysis under the Rogers test. See Jack Daniel's Props. v. VIP Prods., LLC, 2023 U.S. LEXIS 2422 at *19 (2023)(Holding that the line of 9th Circuit cases applying the Rogers analysis were overruled)(citing Rogers v. Grimaldi, 875 F.2d 994, 999 (CA2 1989)). In defining the word "mark", the 9th Circuit has held

18

that, "In our celebrity cases ... we noted that the term 'mark' applies to the celebrity's persona, the 'strength' of the mark refers to the level of recognition that the celebrity has among the segment of the public to whom the advertisement is directed, and the term 'goods' concerns the reasons for or source of the celebrity's fame." <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1007. "The Lanham Act's likelihood of confusion standard is predominantly factual in nature. Thus, summary judgment is inappropriate when a jury could reasonably conclude that there is a likelihood of confusion." <u>Id.</u> at 1008. Plaintiff has pled the theory of a Lanham Act False endorsement claim on the same set of facts underlying the right of publicity claim.  Under the definition of "mark" given by Downing, Defendant used Plaintiff's widely-known name as a "mark" for subscription services, and Rogers does not apply. Plaintiff has alleged facts in his SAC showing all of the factors showing likelihood of confusion;  <u>ECF</u> 115, 282-304; and is entitled to develop evidence supporting his claim through discovery and ultimately to have the jury decide whether he has met the burden of production and persuasion with that evidence. See <u>Downing</u>, 265 F.3d at 1008 (Listing

19

8 factors for the jury to consider in determining likelihood of confusion).

## POINT V: PLAINTIFF HAS PLEADED COPYRIGHT INFRINGEMENT AND FAIR USE DOES NOT APPLY

### A. THE COPYRIGHT OFFICE'S ACCEPTANCE OF PLAINTIFF'S CLAIM TO COPYRIGHT OWNERSHIP AND AUTHORSHIP OF THE WORKS AT ISSUE RESULTED IN THEIR REGISTRATION OF SAME IN PLAINTIFF'S NAME, WHICH IS PRESUMPTIVELY VALID

"[I]f the Register [of Copyrights] determines that 'the material deposited constitutes copyrightable subject matter' and 'other legal and formal requirements ... [are] met, the Register shall register the claim and issue to the applicant a certificate of registration.' [17 U.S.C.] 410(a). But if the Register determines that the deposited material 'does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration.' 410(b)." Fourth Estate Pub. Ben. Corp. v Wall-street.com, LLC, 203 L.Ed.2d 147, 156 (2019)(emphasis added); See also id. at 158 ("prima facie presumption of validity depends on certificate of registration")(Citing 2 M. Nimmer & D. Nimmer. Copyright 7.16[B][3][a], [b][ii] (2018)).

Plaintiff has pleaded in 157-164 of his SAC, that he has registered his copyrighted works with the copyright office, and has attached the certificates of registration to his pleading. This means that the

Register has examined the works at issue and determined that they constitute copyrightable material, and that the claim is not invalid for any other reason. These registrations are not "fanciful"; they are presumed valid unless rebutted with evidence that would convert this Rule 12 motion into a motion for summary judgment.

## B. PLAINTIFF HAS PLEADED AUTHORSHIP IN REMAINING WORKS, CONSTITUTING A COPYRIGHT OWNERSHIP CLAIM FOR WHICH HE HAS REQUESTED CONSTRUCTIVE TRUST AS A REMEDY

A cestui qui trust of a copyright; which legal title is held in trust therefor; is the beneficial owner of the copyright. Mifflin v. Dutton 112 F. 1004 (CA1 1902) Aff'd 190 U.S. 265 (1903). "A constructive trust in intellectual property is permitted as a remedy governed by state law." Corbello v. DeVito, 844 F.Supp.2d 1136, 1162 (D.NV 2012), Aff'd Corbello v. DeVito, 777 F.3d 1058, 1066 (CA9 2015)(Citing Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 909 (CA9 2010)).

Plaintiff has pleaded circumstances constituting his authorship; ECF 115, 7, 12, 24, 30, 34-36, 39, and 46-47; has requested a constructive trust to be imposed on the copyright title; Id. at 141-154; and has requested declaratory relief that he is the owner of the

22

copyright, or in the alternative, the co-owner thereof; Id. at 419-421. These allegations are accepted as true.

## C. PLAINTIFF HAS PLEADED INFRINGEMENT

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work, and (2) copying of the protected elements of the work by the defendant." Unicolors, Inc. v. Urban Outfitters, Inc., 853 F.3d 980, 984 (CA9 2017).

As alleged in "A" and "B" above, Plaintiff has alleged ownership and registration, whether personal or as cestui qui trust, of the copyrighted works at issue. If the Court finds that some of the copyrights listed in "B" are held in constructive trust were fraudulently obtained, then they are fully Plaintiff's and he can sue for infringement thereon. If the Court finds they only state co-ownership, then Plaintiff is nonetheless entitled to an accounting thereon.

But the copyrights in "A" are presumptively valid, a certificate of registration having been issued to Plaintiff by the Register.

Plaintiff has clearly alleged that Defendant, both directly and through its agent, has copied his works, as defined by 17 U.S.C. 106, in

his SAC. ECF 115, 76-77, 95, 100, 101, 168-187. These allegations are accepted as true.

## D. FAIR USE DOES NOT APPLY, WHERE DEFENDANT HAS ENGAGED IN COMMERCIAL USE AND USED THE HEART OF EACH COPYRIGHTED WORK WITHOUT ANY TRANSFORMATION

The Court considers 4 factors "to determine whether a particular use is 'fair'[:] (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith, 215 L.Ed.2d 473, 493 (2023).

## 1. THE DOCUMENTARY WAS A COMMERCIAL USE

"If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use" Id. at 496-97. "For-profit news articles are generallyconsidered commercial uses." McGucken v. Pub. Ocean Ltd., 2022 U.S. App. LEXIS 21425 at *11 (CA9 2022).

"When a copyrighted work is used simply to illustrate what the work already depicts, the infringer adds no further purpose or different character. In that case, copyright law justly treats the infringer as freeriding on the inherent value of the original work." Id. at *12. "Voice-overs do not necessarily transform a work." Id. at *13 n.2. For example, in a documentary about Elvis Presley, "The documentary used clips from a series of Elvis performances. Each clip became part of the 'wider context' of Elvis's career that the entire documentary set forth. But even though the documentary presented countless details about Elvis beyond what the clips conveyed, we still concluded that many clips were not used in a transformative way. Crucially, that determination was not based on a blanket conclusion about the documentary as a whole ... Rather, we made a fine-grained analysis of each use ... That the clips were presented alongside 16 hours of further facts about Elvis played no role in our analysis.". Id. at 17-18 (citing Elvis Presley Enters. v. Passport Video, 349 F.3d 622 CA9 2003))

Plaintiff has alleged that Netflix, and its agent RawTV, each committed infringements for commercial purpose: RawTV for $1,000,000; ECF 115, 169; and Netflix for selling subscriptions; Id. at

179. The very heart of the works infringed were copied into the movie without any appreciable transformation, not even a snapchat filter; Id. at 157-165, 168, 178; See also Id. at 101 (The documentary itself, showing these works). Plaintiff has pleaded that he has "a monetized YouTube channel, Instagram Account, and Facebook account, which are in direct competition with Defendant for the same type of services, product, and customers"; Id. at 301. It's judicially noticeable that YouTube, Instagram, and Facebook provide video streaming services, and Plaintiff's works are therefore for the same purpose as they were used for in the film. The first fair use factor must weigh heavily against Defendant.

## 2. PLAINTIFF'S PUBLICATION OF HIS WORK IS INCONSEQUENTIAL

This factor "typically has not been terribly significant." McGucken 2022 U.S. App. LEXIS 21425 at *19. Here, as in McGucken, "Although they document a real event, [Plaintiff's works] are creative because they were the product of many technical and artistic decisions. While [Plaintiff's works] had been published on Instagram and in online articles, that does not weigh in favor of fair use." Id. at *20.

## 3. DEFENDANT HAS USED THE HEART OF PLAINTIFF'S WORKS

This factor weighs against fair use if the infringer publishes the heart of an individual copyrighted [work.]" Id. at 20-21. "The statute ... calls for a comparison of the portion used to the copyrighted work as a whole and not the infringing work." Id. at 21. Defendant's argument that Plaintiff's works were a small part of the infringing work falls flat in the face of this. The portion of Plaintiff's works used in the infringing work was the very essence of the copyrighted work, and this factor should weigh heavily against fair use.

## 4.   WIDESPREAD USE SUCH AS DEFENDANT'S WOULD DESTROY ANY MARKET FOR THE INFRINGED WORKS

"The proponent of the affirmative defense of fair use must bring forward favorable evidence about relevant markets." Id. at *23. Defendant has not done so. "To negate fair use, [Plaintiff] need only show that if the challenged use should become widespread, it would adversely affect the potential market for the copyrighted work." Ibid. Plaintiff has pleaded that Defendant, without the permission or consent of Plaintiff, has displayed and distributed Plaintiff's works and used them to create a derivative work; for Defendant's pecuniary gain. ECF 115, 168-170, 178-181. If this type of use became widespread, when Plaintiff got out of prison he would be unable to license or sell

any of his copyrighted works, because it would be a free-for-all. Defendant's infringing work is a ready market substitute for Plaintiff's videos, which "underscores the non-transformative nature of [Defendant's] use." McGucken, 2022 U.S. App. Lexis 21425 at *25-26

## 5. ON BALANCING OF THE FACTORS, DEFENDANT'S USE WAS NOT FAIR

Defendant's arguments for fair use have been squarely foreclosed by the 9th Circuit, who heard and rejected THE EXACT SAME argument in Elvis Presley Enters. v. Passport Video, 349 F.3d 622 CA9 2003).

## POINT VI: ACCORDING TO DEFENDANT, PLAINTIFF'S CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT. ACCORDING TO THE NINTH CIRCUIT, THEY'RE NOT

The 9th Circuit said it best: "We again hold that copyright law does not preempt a contract claim where plaintiff alleges a bilateral expectation that he would be compensated for use of the idea." Montz v. Pilgrim Films & Television, Inc., 649 F.3d 975, 977 (CA9 2011). The extension of this doctrine to fiduciary interests, such as confidences which may be breached, was addressed in the same case: "We see no meaningful difference between the conditioning of use on payment in

Grosso and conditioning use in this case on the granting of a partnership interest in the proceeds of the production." Id.

Plaintiff has alleged that, at all relevant times to the claims described in this Point, RawTV, Sally  Brindle, and Rob Miller (Collectively, "RAW"); were the co-conspirators of Netflix. ECF 115, 60, This makes Netflix liable under principles of agency and co-conspirator liability. See, e.g. McCafferty v. Gilbank, 249 Cal.App.2d 569, 576 (1967)(If the principal is a wrong-doer, the agent is a wrong-doer also).

## A. IMPLIED-IN-FACT OR IN THE ALTERNATIVE QUANTUM MERUIT

Plaintiff has pled three separate instances in which (1) he submitted information and/or materials to Defendant for sale, ECF 115, 58, 59, 90; (2) he conditioned use of the information and/or materials on payment; Ibid.; (3) The Defendant knew of the condition; Ibid.; (4) Defendant voluntarily accepted the information and/or materials; Ibid.; (5) Defendant used the materials; Id. at 65, 75-77, 95, 101; and (6) The information and/or materials had value; Id. at 75, 122, 169, 179. See Jordan-Benel v. Universal City Studios, Inc., 859 F.3d 1184, 1191 (CA9 2017)(Listing these factors for implied-in-fact contracts); See also In re De Laurentiis Entm't Grp., Inc., 963 F.2d 1269, 1272 (CA9

29

1992)("Quantum Meruit is not the same as a contract implied in fact").

Although pro se Plaintiff has pleaded the legal theory of these claims;

ECF 115, 250-255; he is not required to do so because the facts must be

liberally construed to state a claim.

## B. BREACH OF CONFIDENCE

Plaintiff has pleaded that (1) he conveyed novel and confidential

information to Defendant; Id. ay 58-59, 90; (2) the defendant knew the

information was being disclosed in confidence; Ibid. (3) There was an

understanding between the parties that the confidence be maintained;

Ibid.; and (4) there was a disclosure in violation of the understanding;

Id. at 60, 61, 63, 69, 71, 76, 95, 100, and 101; which resulted in

Netflix's unjust enrichment and damage to Plaintiff; Id. at 75, 122,

169, 179. See Aliotti v. R. Dakin & Co., 831 F.2d 898, 903 (CA9

1987)(Listing these elements for a claim of breach of confidence).

## C. PLAINTIFF HAS PLEADED DEFENDANTS' FRAUD WITH THE SPECIFICITY REQUIRED BY RULE 9(b); AND HAS CLEARLY ARTICULATED THE BENEFIT OF THE BARGAIN DAMAGES TO WHICH HE IS ENTITLED

The elements of fraud are: (1) a misrepresentation, (2) knowledge

of falsity, (3) intent to induce reliance, (4) actual and justifiable

reliance, and (5) resulting damage. Aton Ctr., Inc. v. United Healthcare Ins. Co., 93 Cal.App.5th 1214, 1245 (2023).

Plaintiff has pled the identity of the transmittor of the fraud, the date and means of transmission which will show the location of same upon discovery, and the tenor of the misrepresentation; ECF 115, 58-61, 69-71, 90; See also CALID, Inc. v. Apple, Inc., 85 F.4th 948, 958 (CA9 2023)(Rule 9(b) requires parties to state the who, when, where, and how of the misconduct alleged). This is enough information and detail to put Defendants on notice of the claims against them. See Amalgamated Bank v. Facebook, Inc., 84 F.4th 844, 857 (CA9 2023)(Fraud allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged). Plaintiff has pled that he relied on this misrepresentation to provide information for which he had expected compensation for the services of providing, as well as materials; Id. at 58-61. Reliance on an oral promise not to use the information or materials unless compensation was provided, is reasonable and justifiable; Ibid. As a result of this reliance, Defendants unjustly enriched themselves and derived a benefit of the bargain which

31

damaged Plaintiff by depriving him thereof in derogation of his rights. Id. at 69-71, 76, 95, 101. These allegations are as specific as required by Rule 9(b), and Defendants' claim to the contrary is plainly contradicted by the pleading itself: On or about August 2, 2020 at or around 9AM; Id. at 58; RawTV, through their agent Rob Miller; Id. at 57-58; who was a coconspirator acting in concert with Netflix; Id. at 60, 71, 139-140; Contacted Plaintiff by teleconference via the law office of Sandra H. Bignault; Id. at 57-58; and made the misrepresentation that "RawTV will not make any film about you or use any of your material unless and until you consent to us doing so in writing" and that RawTV understood the confidential nature of the information and materials and the expectation of compensation; Id. at 58; intending to induce Plaintiff's reliance thereon; Id. at 58, 60-61; upon which Plaintiff did rely; Id. at 58-61, 69-71; to Plaintiff's legal detriment; Id. at 58-61,74-76, 95, 101.

## POINT VII: PLAINTIFF PLEADED TWO DISTINCT INTERFERENCE CLAIMS

Plaintiff pleaded an intentional interference claim for the oral contract he had entered with Cream; ECF 115, 68, 72. The contract was not for a liquidated sum, and thus did not fall under the statute of

frauds. This valid contract was intentionally interfered with by RAW acting in concert with and as coconspirator of Defendant. See Id. at 278-279 (Collecting paragraphs alleging facts correlating to this legal theory); See also Reeves v. Hanlon, 33 Cal.4th 1140, 1148 (2004)(Listing all the elements of the legal theory corresponding to the alleged facts so collected in paragraphs adopted by reference within SAC, 278-279).

Plaintiff also pleaded the existence of a written prospective contract; Id. at 58, 62; which was imminent and would have been executed and provided economic benefit to Plaintiff, but for Defendant and RAW; See Id. at 276-277 (Collecting paragraphs alleging facts correlating to this legal theory); See also Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc., 2 Cal.5th 505, 512 (2017)(Listing all the elements of the legal theory corresponding to the alleged facts so collected in 276-277).

Defendant contends that, since Plaintiff told Cream he could not follow through on the contract, he cannot thereafter sue Defendant for interference. But Defendant neglects to mention that Plaintiff did not

so tell Cream until \*after\* he determined that RAW and Defendant had made fulfillment impossible; ECF 115, 74.

## POINT VIII: DEFENDANT HAS PLED ALL THE ELEMENTS OF A RICO CLAIM AGAINST NETFLIX WHICH REQUIRES A RICO CASE ORDER TO ISSUE, NOT DISMISSAL.

The elements of a civil RICO claim under 18 U.S.C. 1964 are: "(1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as 'predicate acts'), (5) causing injury to Plaintiff's business or property." United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't. AFL-CIO, 770 F.3d 834, 837 (CA9 2014).

Plaintiff has pleaded facts showing the formation of an associated-in-fact enterprise consisting of Netflix, RawTV, Sally Brindle, Rob Miller, and eventually Collette Camden (Collectively, "NRSR Defendants"; association-in-fact, "NRSR Enterprise"). ECF 115, 60, 78, 386; See Boyle v. United States, 556 U.S. 938, 948-49 (2009).

Plaintiff alleged that motion pictures Plaintiff directed were derived from, or were acquired through, wire fraud and violations of 8 U.S.C. 1324 and 27 U.S.C. 802-related state law; ECF 115 30, 39, 46, 47, 90; and that criminally derived property was transacted in

34

violation of 18 U.S.C. 1957 within ten years hence. SAC 77, 95, 101, 388 395-397. Plaintiff also alleged that Defendant engaged in attempts of wire fraud and extortion in violation of 18 U.S.C. 1343, 1951; ECF 115, 69-71, 393-394; see also Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (CA9 2008)(A pattern of racketeering activity requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. 1961(d), within a period of ten years). Plaintiff pleaded all the elements of fraud, as elaborated in POINT VI, "C" above, and has plausibly alleged that such fraud was perpetrated using the interstate wires. SAC 115, 58-60, 69-71, 90, 387, 394-395. Plaintiff has thus alleged a nexus with interstate commerce. Id. at 389. Likewise, the pattern of racketeering alleged; Id. at 398-402; threatens to continue in the form of repeated violations of 18 U.S.C. 1957; ECF 115, 397-398; See also H.J. Inc. v. Nw. Bell Tel. Co., 492, U.S. 229, 239 (1989)("the term pattern itself requires the showing of a relationship between the predicates, and the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern"). Plaintiff has alleged facts of concrete financial loss embodied by revenues he was deprived of, embodied by the transactions for license

of the fraudulently obtained motion pictures, fraudulent use of his name and likeness to misrepresent endorsement, interference with contractual relations and prospective economic advantage, and deprivation of revenues to his fraudulently-obtained copyrighted works; proximately caused by Defendants' pattern of predicate acts; ECF 115, 77, 95, 98-101,391-395; see also Canyon County, 519 F.3d at 976 (Wrongful deprivation of money is injury to property), Cal. Civ. Code 3344 (Plaintiff has property interest in right of publicity), 17 U.S.C. 201 (Plaintiff has property right in works he has authored), Id. at 501 (Plaintiff has property right to revenues from use of his works of authorship).

Defendants' paltry arguments cannot withstand these facts, and these facts merit development through the standard RICO Case Order and subsequent discovery.

## CONCLUSION

Pro se Plaintiff's pleading must be liberally construed, and all the allegations accepted as true for the purposes of this motion. For all the foregoing reasons, Defendant's motion should be denied.

Respectfully Submitted,

Date: 4/17/24

_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

## CERTIFICATE OF COMPLIANCE

The undersigned, pro se Plaintiff Caleb L. McGillvary, certifies that this brief contains 6,706 words, which complies with the word limit of L.R. 11-6.1

Date: 4/17/24

_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

#1222605/SBI#10C5714
VSSP PO Box 861.
TRENTON, NJ
08625


CERTIFIED MAIL


UNITED STATES POSTAGE
PITNEY BOWES
$ 026.10⁰
02 1P
0000931903    APR 23 2024
MAILED FROM ZIP CODE 08611

7004 1350 0004 0477 8967

CLERK
U.S. DIST. CT. - C.D. CA
OFFICE OF THE CLERK
255 E. TEMPLE ST. RM 180
LOS ANGELES, CA
90012

RECEIVED
CLERK, U.S. DISTRICT COURT
APR 25 2024
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

CSO ROXDL

X-RAYED

LEGAL MAIL

