James C. Eschen
California Bar No. 117010
55 River Street, Ste. 100
Santa Cruz, CA 95060-4567
Tel:     (831) 458-0502
Email:  Eschenlaw@cruzio.com

Attorney for defendants Fulton 55
and Tony Martin

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| Caleb L. McGillvary,<br><br>*Plaintiff,*<br><br>*v.*<br><br>Netflix, Inc., et al.,<br><br>*Defendants.* | No. 2:23-cv-01195-JLS-SK<br><br>**Defendants Fulton 55 and Tony Martin's Reply Memorandum of Points and Authorities in Support of Motion to Dismiss (ECF 147)**<br><br>Date:      May 10, 2024<br>Time:      10:30 a.m.<br>Dep't:     Courtroom 8A |

i

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.   Plaintiff cannot recover for any of the fraud he has pleaded. . . . . . . . . . 1

    a.   To the extent that the Fulton 55 defendants induced Plaintiff to perform by a different fraud then that by which they obtained his copyright, he has not sufficiently pleaded the latter. . . . . . . . . . . . . 1

    b.   The statute of limitations bars Plaintiff's claim of fraud inducing him to perform. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        i.   Plaintiff need not know of Martin's specific intent before the statute of limitations begins to run. . . . . . . . . . . . . . . . . . . . . . 3

        ii.   Plaintiff had no more knowledge of fraud in 2023 than he had in 2013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.   Plaintiff has failed to allege defamation. . . . . . . . . . . . . . . . . . . . . . . . . 4

    a.   Plaintiff fails to allege any slander, plausible or not, in 2013 . . . . . . 5

    b.   Plaintiff must allege special damages to state a claim arising out of the 2021 alleged slander. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    c.   Plaintiff's argument that he is not libel-proof responds to nothing in the Fulton 55 defendants' motion. . . . . . . . . . . . . . . . . . . . . . . . . . 7

3.   Plaintiff has failed to allege the intentional interference with prospective economic opportunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    a.   The alleged 2021 slander disrupted no economic relationships. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    b.   Plaintiff has pleaded no lawful business relationships that the alleged 2013 slander could have disrupted. . . . . . . . . . . . . . . . . . . . . . . . . 8

4.   Plaintiff has not plausibly alleged a RICO violation. . . . . . . . . . . . . . . 10

    a.   The alleged RICO enterprise is not plausible. . . . . . . . . . . . . . . . . 10

    b.   Plaintiff has not alleged an enterprise under RICO. . . . . . . . . . . . 11

    c.   Plaintiff alleges no loss no business or property for which RICO

provides a remedy. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    i.   Plaintiff's opportunity to perform at other venues was a mere expectancy, for which RICO provides no remedy. . . . . . . . . . . 13

    ii. RICO provides no remedy for loss of unlawful business or property.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fulton 55 Defendants' Reply ISO Motion to Dismiss

# TABLE OF AUTHORITIES

**Federal Statutes**

18 United States Code, § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Federal Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Boyle v. United States*, 556 U.S. 938 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083 (9th Cir. 2002) . . . . . . . . . . . . . . . . 13

*Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948 (9th Cir. 2023) . 10

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Doe v. Roe*, 958 F.2d 763 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Gallagher v. Philipps*, 563 F. Supp. 3d 1048 (S.D. Cal. 2021) . . . . . . . . . . . . . . . 5

*Gallagher v. Philipps*, 563 F. Supp. 3d 1048 (S.D. Cal. 2021) . . . . . . . . . . . . . . . 5

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229 (1989) . . . . . . . . . . . . . . . . . . . . . . . 12

*Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203 (9th Cir.2007) . . 3

*Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) . . . . . . . . . . . . . 9

*Johnson v. Heath*, 56 F.4th 851 (10th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . 2

*Odom v. Microsoft Corp.*, 486 F.3d 541 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . 11

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049 (9th Cir. 2008) . . . . 3, 4

*Price v. Pinnacle Brands, Inc.* 138 F.3d 602 (5th Cir. 1998) . . . . . . . . . . . . . . . . 13

*Resolution Tr. Corp. v. Stone*, 998 F.2d 1534 (10th Cir. 1993) . . . . . . . . . . . . . . 12

*Scivally v. Graney*, 1993 U.S. Dist. LEXIS 7826 (D. Mass. June 7, 1993) . . . . . . 14

*Shelton v Bauer Pub. Co.*, 2016 U.S. Dist LEXIS 52484 (C.D. Cal. April 18, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Steele v. Hosp. Corp. of Am.*, 36 F.3d 69 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . 13

*United States v. Cangina*, 697 F.2d 915 (11th Cir. 1983) . . . . . . . . . . . . . . . . . . 11

*United States v. Turkette*, 452 U.S. 576 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

*Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924 (C.D. Cal. 1982) . . . . . . . . . . . 7

**Federal Rules**

Federal Rule of Civil Procedure 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

**State Statutes**

California Civil Code § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

California Civil Code § 3339 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Code of Civil Procedure § 338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

California Government Code § 7285 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Government Code § 12940 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Health & Safety Code § 24000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Labor Code § 1171.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

California Labor Code § 3353 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

California Statutes 2002, chapter 1071 (Senate Bill 1818) . . . . . . . . . . . . . . 9, 10

**State Cases**

*Allen v. Hillman*, 29 Mass. 101 (1831) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Fitzsimons v. Cal. Emergency Physicians Med. Grp.*, 205 Cal. App. 4th 1423 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Forward v. Adams*, 7 Wend. 204 (N.Y. Sup. Ct. 1831) . . . . . . . . . . . . . . . . . . . 6

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) . . . . . . . . . . . . . . . . . 3

*George v. eBay, Inc.*, 71 Cal. App. 5th 620 (2021) . . . . . . . . . . . . . . . . . . . . . . . 8

*Jarman v. Rea*, 137 Cal. 339 (1902) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Kline v. Turner*, 87 Cal. App. 4th 1369 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Manuel v. Superior Court*, 82 Cal. App. 5th 719 (2022) . . . . . . . . . . . . . . . . . . . 9

v

*Norgart v. Upjohn Co.*, 21 Cal. 4th 383 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Regalia v. The Nethercutt Collection*, 172 Cal. App. 4th 361 (2009). . . . . . . . . . . . 6

*Roth v. Rhodes*, 25 Cal. App. 4th 530 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505 (2017) . . . . . . 7, 8

*Scott v. Harrison*, 2 S.E.2d 1 (N.C. 1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sistare-Meyer v. Young Men's Christian Assn.*, 58 Cal. App. 4th 10 (1997) . . . . 9, 10

*Snively v. Rec. Pub. Co.*, 185 Cal. 565 (1921). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507 (1996)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Other Authorities**

Merriam-Webster.com Dictionary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Prosser & Keeton on Torts (5th ed. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Plaintiff Caleb L. McGillvary's opposition (ECF 193) to the motion to dismiss (ECF 147, 180-1) filed by defendants Fulton 55 and Tony Martin (collectively, "the Fulton 55 defendants") fails to engage with the issues they raise. He objects to their argument that his undocumented status forecloses any legal economic injury, but the statutes he cites only protect employees, not independent contractors like him. He argues that he pleads fraud with the requisite specificity, but ignores that he pleaded no facts showing that the Fulton 55 defendants fraudulently obtained his copyright. The statute of limitations ran even before he allegedly discovered the alleged fraud's mental element in 2023, for the claim's accrual does not require discovery of the specific intent to defraud. He asserts he pleaded Martin's alleged 2013 slander with enough specificity, but he failed to plead anything at all. He argues that Martin's 2021 comments injured him in his trade, business or profession, but he was not in any trade, business or profession when Martin was interviewed for the Netflix documentary. Finally, he cannot plead that the Fulton 55 defendants are in any way liable to him under the RICO statute.

## ARGUMENT

**1.  Plaintiff cannot recover for any of the fraud he has pleaded.**

    **a.  To the extent that the Fulton 55 defendants induced Plaintiff to perform by a different fraud then that by which they obtained his copyright, he has not sufficiently pleaded the latter.**

Plaintiff does not make clear whether the Fulton 55 defendants allegedly committed one or two frauds against him. He alleges that Martin called him and misrepresented to him that Fulton 55 would pay him $400 and a "fair portion" of liquor and ticket sales if he performed at Fulton 55 the next night. Second Amended Complaint ("SAC," ECF 115-2), ¶ 43, p. 21. Relying on that promise plaintiff indeed performed, following which Martin refused to pay him anything.

1

*Id.*, ¶ 48, p. 22.  Martin did not intend to perform his promise. *Id.*, ¶ 41, 43, p. 21. Plaintiff's pleading of this fraud fulfills Federal Rule of Civil Procedure 9(b)'s particularity requirement.

But plaintiff' also pleads that the Fulton 55 defendants fraudulently acquired his copyright in his choreography and in a derivative video of it. SAC ¶¶ 46, 47, p. 22. He seeks a constructive trust over the copyright. *Id.*, ¶ 154, p. 59. These fraud allegations do not appear to comply with Rule 9(b).

Plaintiff does not make clear whether the Fulton 55 defendants obtained his copyright through a different fraud from the one by which they induced him to perform or by the same one. On the one hand, he has particularly pleaded that Martin promised him  $400 plus a share of the till if he performed. SAC, ¶ 43, p. 21. This promise says nothing about copyright.

Any separate fraud by which the Fulton 55 defendant obtained his copyright must be particularly pleaded. See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). Plaintiff makes no other allegations of this fraud, so he has neither complied with Rule 9(b) nor pleaded himself out of court. This court should dismiss without prejudice his claims seeking a remedy for the fraudulent deprivation of his copyright. SAC, Counts 13, 35, pp. 59, 89.

On the other hand, plaintiff does suggest that the Fulton 55 defendants obtained his copyright through the same fraud by which they induced him to perform. See SAC ¶ 154, p. 59. He alleges in his count seeking a constructive trust that his "motion picture work and copyright attendant thereon ... were procured and obtained by the F55 defendants through acts of fraud ... as pleaded in [¶¶] '41'–'45', '48', and '52' ... ." *Id.* (nonstandard punctuation as in original). Paragraphs 41 through 45 include Martin's allegedly fraudulent statement to him to induce him to perform at Fulton 55. See *id.*, ¶¶ 41–43, p. 29. If plaintiff alleges that a single fraud induced him both to perform and to relinquish his copyright, then the statute of limitations bars any fraud claim.

2

**b.  The statute of limitations bars Plaintiff's claim of fraud inducing him to perform.**

**i.  Plaintiff need not know of Martin's specific intent before the statute of limitations begins to run.**

Plaintiff's ignorance of Martins' fraudulent intent did not stop the statute of limitations from running. *Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1058 (9th Cir. 2008). The three-year period in which to bring an action for fraud accrues when the plaintiff discovers the facts constituting the fraud. Cal. Code Civ. Proc. § 338(d). The plaintiff need not have notice of the defendant's specific intention to deceive before a fraud action accrues. *Platt Elec. Supply v. EOFF Elec.*, at 1058, citing *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir.2007).

California "'courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing.'" *Platt Elec. Supply v. EOFF Elec.*, 522 F.3d at 1057, quoting *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (2001). The plaintiff need only suspect "'that someone has done something wrong to him, wrong being used, not in any technical sense, but rather in accordance with its lay understanding.'" *Id.*, quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397–398 (1999). The statute of limitations begins to run when the plaintiff suspects "'the generic elements of wrongdoing, causation, and harm. ... Rather than examining whether [Plaintiff] suspect[s] facts supporting each specific legal element of a particular cause of action, we look to whether [he has] reason to at least suspect that a type of wrongdoing has injured them.'" *Id.*, quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

Plaintiff pleaded that Martin promised to compensate him with $400 and a percentage of the receipts if he performed. SAC ¶ 43, p. 22. The next night,

March 28, 2013, Plaintiff performed in reliance on that promise. *Id.*, ¶ 44. After performing, Martin replied to his request for payment with, "'You ain't getting a fucking thing.'" *Id.*, ¶ 48., p. 22. Fulton 55 did not pay him as promised. *Id.*, ¶ 156, at 59. Plaintiff thus pleaded that, on March 28, 2013, he knew of wrongdoing (the failure to pay as promised) causing him harm (the failure to receive the promised pay).  See *Platt Elec. Supply v. EOFF Elec.*, 522 F.3d at 1507. The three-year statute began to run then and bars this action filed over ten years later.

### ii.   Plaintiff had no more knowledge of fraud in 2023 than he had in 2013.

Plaintiff argues that he could not have known of Martin's fraudulent intent until the Netflix documentary was released in 2023. ECF 193, at 6. The documentary included Gabriel Sanchez's statement, "'We said "yes" [to Kai's performance at Fulton 55] because we wanted Kai's crowd. We wanted who was going to come out to see Kai, and then we wanted to kill it and win them over." SAC ¶ 85, p. 38. Only then, Plaintiff argues, did he realize that Martin never intended to pay him.

Nothing that Sanchez said at all suggests an intention not to pay Plaintiff for performing. Martin's alleged March 28, 2013, statement, on the other hand, "'You ain't getting a fucking thing. You better get the fuck outta here or you're going back to Canada,'" (SAC ¶ 48, p. 22), shows that intention unambiguously. If Plaintiff had cause in 2023 to suspect Martin was defrauding him, he had cause in 2013. If he had no cause in 2013, he has no cause now, and his claim is implausible. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 2.   Plaintiff has failed to allege defamation.

Plaintiff's opposition to the Fulton 55 defendants' motion conflates the two

discrete slanders he alleged in his complaint. The complaint first alleges that in 2013 Martin and Gabriel defamed him to other music venues. SAC ¶ 50, p. 23; see *id.*, Count 17, pp. 64–65. It then alleges that Martin again defamed him in the 2023 Netflix documentary. *Id.*, ¶ 87, pp. 40–41; see *id.*, Count 23, p. 70. Neither alleged slander is actionable, but for separate reasons.

### a.  Plaintiff fails to allege any slander, plausible or not, in 2013.

Plaintiff's general allegations that Martin said bad things about him in 2013 do not state a claim for slander. See *Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1079 (S.D. Cal. 2021). He alleges that Martin slandered him by "claiming that he was a bad business partner and maligning his character, business, quality of performance, marks in use in commerce and right of publicity."  SAC ¶ 50, p. 23. But he gives no suggestion about what Martin said about him to claim that he was a bad business partner or to malign his business, quality of performance, trademarks, or right of publicity.  Stating that Martin defamed him by maligning his character simply begs the question.

Plaintiff cannot allege a single detail about how Martin slandered him because he has no reason to believe Martin did so. His only basis for thinking that Martin slandered him is Sanchez's statement in the Netflix documentary that he and Martin wanted to "kill it." SAC ¶ 85, at 38. But nothing in what Sanchez said suggests that he and Martin wanted to kill anything, either literally or figuratively. They would not want to kill either Plaintiff's crowd or his reputation. They wanted to take advantage of them.

Plaintiff accuses the Fulton 55 defendants of "semantics" to deny him his strained interpretation of "kill it." Exactly so. Semantics is "the study of meanings." Merriam-Webster.com Dictionary, s.v. "semantics," accessed May 2, 2024, https://www.merriam-webster.com/dictionary/semantics. The issue is what Sanchez meant by, "We wanted to kill it." In context, no reasonable

1   interpretation of his statement allows the conclusion that he meant that he and

2   Martin planned to commit a tort against Plaintiff.

3

4       **b.   Plaintiff must allege special damages to state a claim arising out of the**

5           **2021 alleged slander.**

6       A claim for slander requires that the plaintiff plead and proof either slander

7   per se (Cal. Civ. Code § 46(1)–(4)) or special damages (*id.*, subd. (5)). *Regalia v.*

8   *The Nethercutt Collection*, 172 Cal. App. 4th 361, 367 (2009). Plaintiff asserts that

9   Martin's statements in the Netflix documentary injured his trade or business as

10  a musician, but those statements were slander per se only if Plaintiff was carrying

11  on the trade or business at the time Martin made them. See *Jarman v. Rea*, 137

12  Cal. 339, 344 (1902) (dictum), overruled on other grounds by *Snively v. Rec. Pub.*

13  *Co.*, 185 Cal. 565, 576 (1921).  "The rule has ... been held to be, where one is

14  defamed in his office or occupation, that the plaintiff must always allege in the

15  pleading that he was carrying on the profession or trade, or holding the office, at

16  the time the words were spoken." *Ibid.* "Thus, where an action is brought for

17  words (not actionable in themselves) spoken of a person in a particular calling,

18  or profession or employment, it must appear that he followed such profession or

19  employment when the words were spoken." *Forward v. Adams*, 7 Wend. 204,

20  208, 1831 WL 3075 (N.Y. Sup. Ct. 1831), cited *id.*; accord *Allen v. Hillman*, 29

21  Mass. 101, 107 (1831); *Scott v. Harrison*, 2 S.E.2d 1, 3 (N.C. 1939); Prosser &

22  Keeton on Torts, § 112, p. 791 (5th ed. 1984).

23      Plaintiff has not pleaded that he was carrying on the trade or business when

24  Martin allegedly defamed him in 2021. Nor can he; he still faced 49 years in

25  prison before resuming his career as a professional musician. Plaintiff's slander

26  claim falls on his failure to allege special damages.

27

28

Fulton 55 Defendants' Reply ISO Motion to Dismiss

**c.  Plaintiff's argument that he is not libel-proof responds to nothing in the Fulton 55 defendants' motion.**

Plaintiff expends significant energy rebutting the argument that he is libel-proof. See ECF 193, pp. 12–14. The Fulton 55 defendants never alleged he was libel-proof; they alleged that he could not recover for libel without pleading and proving special damages. Undeterred, Plaintiff quotes extensively from a footnote in *Shelton v Bauer Pub. Co.*, 2016 U.S. Dist LEXIS 52484 at *19 n.6 (C.D. Cal. April 18, 2016), in which, he asserts, the "Defendant ... cited the same case as the Defendant in this case ... ." ECF 193, p. 12. Plaintiff never identifies the case that the Fulton 55 defendants supposedly cited. The footnote Plaintiff cites refers to reliance by that case's defendant on *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 928 (C.D. Cal. 1982), which the Fulton 55 defendants nowhere cite.

**3.  Plaintiff has failed to allege the intentional interference with prospective economic opportunity.**

The elements for a claim about prospective economic relationships are "(1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendants knowledge of the relationship (3) intentionally wrongful acts designed to disrupt the relationship,  which acts are wrongful by some legal measure other than the fact of interference itself; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendants action." *Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.*, 2 Cal. 5th 505, 512 (2017) Plaintiff argues that he pleads a claim based on Martin's alleged 2013 and 2021 slanders. Not only has he failed to plead the requisite slanders, but neither slander caused him any lawful injury.

7

**a.   The alleged 2021 slander disrupted no economic relationships.**

Martin's statements about Plaintiff in the Netflix documentary disrupted no prospective economic advantage because Plaintiff had no prospective economic advantage to disrupt. When the documentary was released, Plaintiff had been in prison for a decade, and he was to remain there for another 47 years. Even if upon his release at the age of 81 he is able to resume his career as a performer, he cannot show that Martin disrupted any economic relationship.

A claim for the intentional interference with a prospective business advantage requires "the existence of a business relationship with which the tortfeasor interfered." *Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994). The relationship need not be contractual, but it must exist. *Id.* The tort requires interference with a particular economic relationship with a specific, identifiable person, not just an expectation of a future relationship. *George v. eBay, Inc.*, 71 Cal. App. 5th 620, 639 (2021), citing *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 523, 527 (1996). Plaintiff has not pleaded, and cannot plead, any business relationship that he had in 2021 that Martin disrupted. Any allegation that he would be able to capitalize on such a relationship upon his 2070 release is too remote or speculative to support a claim in tort. See *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal. App. 4th 1118, 1132 (2012).

**b.   Plaintiff has pleaded no lawful business relationships that the alleged 2013 slander could have disrupted.**

Only the defendant's interference with lawful economic relationships is tortious. See *Roy Allan Slurry Seal v. Am. Asphalt S.*, 2 Cal. 5th at 517 (interference with a bidder's relationship with public entity not tortious because a statute prohibits such a relationship). Plaintiff does not deny that his immigration status in 2013 prohibited any economically beneficial relationship with

8

Fresno music promotors and venues. His argument that statutes compel this court to overlook that prohibition is incorrect. Cf. Cal. Gov't Code § 7285; Cal. Civ. Code § 3339.

Government Code section 7285(a) states California public policy: "All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to all individuals regardless of immigration status who have applied for employment, or who are or who have been employed, in this state." Further, for "purposes of enforcing state labor, employment, civil rights, consumer protection, and housing laws, a person's immigration status is irrelevant to the issue of liability ... ." *Id.*, subd. (b). Civil Code section 3339's provisions are identical.

The California Legislature enacted sections 3339 and 7285, along with Health & Safety Code section 24000 and Labor Code section 1171.5, in 2002 as Senate Bill 1818. Cal. Stats. 2002, ch. 1071, §§ 1–4. It passed SB 1818 in reaction to *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002), which held that the National Labor Relations Board could not award backpay to a foreign national not legally entitled to work in the United States. *Manuel v. Superior Court*, 82 Cal. App. 5th 719, 730 (2022). SB 1818 ensures that an employer who hires an undocumented worker bears the burden of complying with state wage, hour, and workers' compensation laws. *Id.*, at 729.

SB 1818 does not protect Plaintiff because he does not plead that he applied for employment or was employed in this state. Cf. Cal Civ. Code § 3339(a); Cal. Gov't Code 7285(a). Nor does he seek to plead any violations of "state labor, employment, civil rights, consumer protection, [or] housing laws." Cf. Cal Civ. Code § 3339(b); Cal. Gov't Code 7285(b). Legal protections for employees do not automatically extend to independent contractors. See *Sistare-Meyer v. Young Men's Christian Assn.*, 58 Cal. App. 4th 10, 16–17 (1997).

California law has long distinguished between employees and independent

9

contractors. *Sistare-Meyer v. YMCA*, 58 Cal. App. 4th at 16; see Cal. Lab. Code § 3353 (defining "independent contractor"). "Independent contractors typically have greater control over the way in which they carry out their work than employees, and businesses assume fewer duties with respect to independent contractors than employees." *Sistare-Meyer v. YMCA*, 58 Cal. App. 4th at 16. As a result, independent contractors cannot bring statutory discrimination actions against their hirers, nor may they claim the wrongful termination in violation of public policy. *Id.*, at 17; cf. *Fitzsimons v. Cal. Emergency Physicians Med. Grp.*, 205 Cal. App. 4th 1423, 1430 (2012), citing Cal. Gov't Code § 12940(j)(1) (extending protection of statute prohibiting harassment, not that prohibiting discrimination, to contract workers). Thus SB 1818 does not allow Plaintff to recover for Martin's interference with unlawful economic relationships.

**4.   Plaintiff has not plausibly alleged a RICO violation.**

As Plaintiff states, a civil claim under the Racketeering Influenced Corrupt Organization Act requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property. *Coronavirus Reporter; CALID, Inc. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023). Plaintiff plausibly alleges none of these elements.

**a.   The alleged RICO enterprise is not plausible.**

Plaintiff alleges that the Fulton 55 defendants had formed an enterprise by associating in fact intended to conduct a pattern of racketeering activity. SAC ¶¶ 41, 42, 322, pp. 21, 102. He bases this association on the supposed March 27, 2013 meeting between Martin and Sanchez "at or around 11:00 a.m." in which they agreed to induce him to perform and to "'[k]ill'" his reputation "'to get plaintiff's crowd'; in a campaign of false and defamatory statements about

plaintiff, and commercial disparagement about plaintiff ... ." *Id.*, ¶ 41, p. 21. His allegations do not allege the conduct of an enterprise througha pattern of racketeering activity.

Plaintiff's allegations are implausible. He bases them entirely on Sanchez's comment about "want[ing] to kill it." Not only has he misunderstood what Sanchez said, but, even accepting his interpretation does not create an inference that Sanchez and Martin agreed to act tortiously. Sanchez's statement that they wanted to "kill it," whatever "it" was, does not mean that they engaged in a campaign of defamation and disparagement.

### b.   Plaintiff has not alleged an enterprise under RICO.

Nor has plaintiff alleged an enterprise. Cf. *Odom v. Microsoft Corp.*, 486 F.3d 541, 552–553 (9th Cir. 2007). An associated-in-fact enterprise must have "'an ongoing organization, formal or informal," and the various associates must "function as a continuing unit." *Id.*, at 552, citing *United States v. Turkette*, 452 U.S. 576, 583 (1981). The "ongoing organization is "a vehicle for the commission of two or more predicate crimes.'" *Id.*, quoting *United States v. Cangina*, 697 F.2d 915, 921–922 (11th Cir. 1983). Every member need not be involved in the each of the underlying racketeering acts, and the predicate acts need be interrelated. *Id.,* 486 F.3d at 552. Instead, the associates function as a continuing unit if their behavior was "ongoing" rather than isolated. *Ibid.* But a mere conspiracy to commit a RICO predicate offense does not establish participation in a RICO enterprise. *Boyle v. United States*, 556 U.S. 938, 949–950 (2009).

Plaintiff alleges neither an ongoing organization nor a continuing unit. He alleges only that Martin and Sanchez met once, at 11:00 a.m., and agreed to "kill it." As agreed in that meeting, one of them (he does not allege which)  said bad things about him (he does not allege what) to promotors and venue

1  operators (he does not allege to whom). His speculative allegations do not

2  support a RICO claim.

3  Courts in other circuits have held that whether the a conspiracy's "closed-

4  ended continuity" subjects it to liability under RICO depends on the related

5  predicate acts' duration and on the entire scheme's effectiveness. See *Johnson v.*

6  *Heath*, 56 F.4th 851, 860 (10th Cir. 2022). "[C]losed-ended continuity consists

7  of a closed period of repeated, related racketeering acts that do not necessarily

8  threaten future repetition." *Id.*, citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

9  241–242 (1989). "Because RICO targets long-term racketeering conduct,

10 closed-ended continuity requires a series of related racketeering acts over a

11 'substantial period of time.'" *Id.*, citing *H.J., Inc*, 492 U.S. at 242.

12 Plaintiff's allegations regarding Martin and Vasquez's conduct—that they

13 sought to take his fan base by destroying him—show no threat of future

14 repetition. This closed-ended continuity requires sufficient duration and

15 extensiveness, which Plaintiff does not plead. The complaint pleads the

16 enterprise lasted from March 27, 2013, only through April 7, 2013, when

17 Martin and Sanchez allegedly contacted other venue owners to "'burn'"

18 plaintiff. SAC 41, 50, pp. 21, 23. This eleven-day period is far shorter than the

19 minimum from which continuity could be inferred. Cf. *Resolution Tr. Corp. v.*

20 *Stone*, 998 F.2d 1534, 1544 (10th Cir. 1993) (duration between seven and

21 eighteen months is enough for a finding of continuity, given the extensiveness of

22 the scheme).

23 Plaintiff cannot show an extensive scheme. *Johnson v. Heath*, 56 F.4th at 860.

24 Extensiveness depends on "the number of victims, the number of racketeering

25 acts, the variety of racketeering acts, whether the injuries were distinct, the

26 complexity and size of the scheme, and the nature or character of the

27 enterprise." *Id.* Plaintiff pleads just one victim, just one type of racketeering act

28 (defaming him), and a small, simple scheme (involving two people, planned in a

single meeting). This alleged scheme does not support RICO liability.

    **c.   Plaintiff alleges no loss no business or property for which RICO provides a remedy.**

        **i.   Plaintiff's opportunity to perform at other venues was a mere expectancy, for which RICO provides no remedy.**

    The RICO act gives a private right of action to "any person injured in his business or property by reason of a violation." 18 U.S.C. § 1964(c). The requirement of injury to business or property has a "restrictive significance" that "helps to assure that RICO is not expanded to provide 'a federal cause of action and treble damages to every tort plaintiff.'" *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994). The showing of injury requires a concrete financial loss, not mere injury to a valuable intangible property interest. *Id.* An injury to a mere expectancy is not enough to create standing under *RICO. Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1087 (9th Cir. 2002), citing *Price v. Pinnacle Brands, Inc.* 138 F.3d 602, 607 (5th Cir. 1998) (per curiam). Plaintiff has had no such concrete loss. He pleads just a disappointed expectancy of not playing other venues. That disappointment gives him no standing under RICO.

    **ii. RICO provides no remedy for loss of unlawful business or property.**

    Even if Plaintiff could show that he suffered a concrete financial loss, he still have suffered no cognizable injury under RICO. See *Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992) cited at *Diaz v. Gates*, 420 F.3d 897, 899 (9th Cir. 2005) (per curiam). In *Doe,* the plaintiff filed an action against her former divorce lawyer for compelling her to have sex with him. She cited the value of her sexual services as damages under RICO. Rejecting her RICO claim, the court noted that, because sexual labor had no legal value under Illinois law, she could not have suffered injury to her business or property. *Id.*

13

Under *Doe*, a plaintiff suffers no injury under RICO to an unlawful business or property interest. *Scivally v. Graney*, 1993 U.S. Dist. LEXIS 7826, at *9 (D. Mass. June 7, 1993), citing *Doe v. Roe*, 958 F.2d at 768–769 (cited as "*Roe v. Roe*"). As Plaintiff admits, he had not entered the United States lawfully and therefore had no lawful right to conduct work here. He suffered no concrete injury to his business or property and has no RICO claim.

**CONCLUSION**

Whether this court dismisses the second amended complaint with prejudice in its entirety depends on whether the alleged fraud that induced him to relinquish his copyright differed from the alleged fraud that induced him to perform at Fulton 55. If plaintiff asserts that they were two different frauds, this court should dismiss the former fraud claim (SAC Count 13, p. 59) without prejudice to allow him to meet Rule 9(b)'s pleading requirements. If they are the same fraud, the court should dismiss that count along with the rest of his pleading with prejudice. The statute of limitations bars any claim that he was fraudulently induced to perform at Fulton 55 (*id.*, Counts 14, 35, pp. 59, 89), regardless of when he discovered that Martin intended to defraud him.

Plaintiff has pleaded only conclusory allegations of Martin slandering him in 2013; he cannot plead the required specificity because he has no reason to believe the slander actually happened. He has failed to plead any special damages that Martins 2021 comments caused him; he had no trade or business at the time that could render false statements about him slander per se. This court should dismiss all slander allegations (SAC Counts 5, 17, 23, pp. 55, 64–65, 70) with prejudice.

The court should also dismiss with prejudice any claim for the intentional interference with prospective economic advantage (SAC Count 43, p. 95). Plaintiff has not and cannot allege either any underlying wrongdoing or any

specific lawful economic relationships interfered with. Finally, the court should dismiss his RICO claim (SAC Count 47, pp. 102–104) with prejudice. Not only can plaintiff plead no concrete loss to his business or property, but an 11-day scheme among two individuals to "kill" his reputation does not constitute a racketeering organization.

Respectfully submitted,

May 5, 2024

/s/James C. Eschen
James C. Eschen
Attorney for defendants Fulton 55,
LLC and Tony Martin

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for defendants Fulton 55, LLC and Tony Martin, certifies that this brief contains 4,513 words, which complies with the word limit of L.R. 11-6.1

Dated: April 24, 2024

James C. Eschen
James C. Eschen
Attorney for defendants Fulton 55,
LLC and Tony Martin

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2024, a true copy of the foregoing was

served on Plaintiff via U.S. Mail to the address provided in his pleadings:

> Caleb L. McGillvary
> #1222655/SBI#102317G
> New Jersey State Prison
> P.O. Box 861
> Trenton, NJ 08625

I further certify that I caused a true copy of the foregoing to be served on all

defendants' counsel of record via ECF.


Dated: April 24, 2024                 *James C. Eschen*

                                      James C. Eschen

16