

FILED
CLERK, U.S. DISTRICT COURT

MAY 2 0 2024

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Caleb L. McGillvary<br>    PLAINTIFF<br><br>V.<br><br>Netflix et al<br>    DEFENDANT | ) CIVIL ACTION NO.<br>) 2:23-cv-01195-JLS-SK<br>) Hon. Josephine L. Staton, USDJ<br>) Hon. Steve Kim, USMJ<br>) Motion Date: To be determined<br>) by the Court<br>)<br>) |

BRIEF IN OPPOSITION TO BUNIM MURRAY'S MOTION TO DISMISS UNDER RULE 12(b)

# TABLE OF CONTENTS

INTRODUCTION ...1

RELEVANT FACTUAL BACKGROUND ...1

STANDARD OF REVIEW ...5

    A. PLAINTIFF IS PRO SE ...5

    B. FED. R. CIV. P. 8 ...5

    C. MOTION TO DISMISS UNDER RULE 12 ...5

LEGAL ARGUMENT ...5

POINT I: DEFENDANT HAS ADMITTED TO EMPLOYING SAMSKY AND RUFE, WHICH IPSO FACTO ESTABLISHES AGENCY; ADDITIONALLY, AGENCY WAS NOT PLED AS A SEPARATE COUNT IN THE SAC, AND THE CONSTRUCTIVE TRUST WAS PLED AS A REMEDY FOR FRAUD ...5

POINT II: DEFENDANT HAS PLED FACTS SHOWING THAT DEFENDANTS ESTABLISHED A CONFIDENTIAL RELATIONSHIP WITH PLAINTIFF, ACQUIRED CONFIDENTIAL INFORMATION THROUGH THAT RELATIONSHIP, AND THEREAFTER PUBLISHED THAT INFORMATION IN BREACH OF CONFIDENCE ...7

POINT III: PLAINTIFF HAS PLED THE WHO, WHEN, WHERE, AND SUBSTANCE OF THE FRAUD, AND HAS SATISFIED THE PLEADING REQUIREMENTS OF RULE 8(a) and 9(b) ...9

POINT III: DEFENDANT MISAPPLIES A DEBUNKED LEGAL THEORY AND CHALLENGES THE FACTUAL SUFFICIENCY OF PLAINTIFF'S DEFAMATION CLAIM, WHICH IS A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS A MATTER OF LAW ...10

    A. A. THE LIBEL-PROOF DOCTRINE IS TO BE SPARINGLY APPLIED, AND DEFENDANT HAS NOT SHOWN PLAINTIFF TO BE LIBEL-PROOF FOR ACCUSATIONS OF CRIMINALITY ON FEBRUARY 1, 2013 NOR ACCUSATIONS OF RECKLESS ENDANGERMENT THROUGH BRANDISHING DEADLY WEAPONS ...10

    B. PLAINTIFF IS A LIMITED-PURPOSE PUBLIC FIGURE FOR SPECIFIC SUBJECTS, NOT A GENERAL-PURPOSE PUBLIC FIGURE ...12

    C. RUFE'S FALSE ASSERTIONS OF FACT ARE DEFAMATORY PER SE, AND THE FACTS ALLEGED WOULD ENTITLE PLAINTIFF TO RELIEF IF PROVEN AT TRIAL ...13

POINT IV: DEFENDANT HAS PLED ALL THE ELEMENTS OF A RICO CLAIM AGAINST RUFE, AND SAMSKY, WHICH REQUIRES A RICO CASE ORDER TO ISSUE, NOT DISMISSAL. ...17

POINT V: PLAINTIFF HAS FILED A MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT, WHICH CONSOLIDATES THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND PUBLIC DISCLOSURE OF PRIVATE FACT CLAIMS AGAINST DEFENDANTS INTO THE BREACH OF CONFIDENCE/ BREACH OF CONFIDENTIAL RELATIONSHIP LEGAL THEORY

...19

POINT VI: DEFENDANTS HAVE WAIVED ANY ARGUMENTS AGAINST THE SUFFICIENCY OF SERVICE OR PROCESS UPON BUNIM MURRAY

...19

CONCLUSION

...20

## TABLE OF AUTHORITIES

CASELAW

Aliotti v. Dakin, 831 F.2d 898 (CA9 1987)
...8

Amalgamated Bank v. Facebook, Inc. 84 F.4th 844 (CA9 2023)
...9

Aton Ctr., Inc. v. United Healthcare Ins. Co., 93 Cal.App.5th 1214 (2023)
...9

Boyle v. United States, 556 U.S. 938 (2009)
...17

Bredberg v. Middaugh, 2022 WL 2662878 (CA9 2022)
...18

CALID, Inc. v. Apple, Inc. 85 F.4th 948 (CA9 2023)
...9

Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969 (CA9 2008)
...17,18

Crowe v Cty. of San Diego, 608 F.3d 406 (CA9 2010)
...13

Erickson v Pardus 551 U.S. 89 (2007)
...5

Greenberg v. Sala, 822 F.2d 882 (CA9 1987)
...6

H.J. Inc. v. Nw. Bell Tel. Co., 492, U.S. 229 (1989)
...18

Karasek v. Regents of the Univ of Cal., 956 F.3d 1093 (CA9 2020)
...5

Masson v. New Yorker Magazine, Inc. 895 F.2d 1535 (CA9 1989)
...11

Masson v. New Yorker Magazine, Inc. 501 U.S. 496 (1991)
...12

Masson v New Yorker Magazine, Inc. 960 F.2d 896 (CA9 1992)
...12

Mattel, Inc. v. MGA Ent., Inc., 616 F.3d 904 (CA9 2010)
...6

Planet Aid, Inc. v. Reveal, 2022 U.S. App. LEXIS 22258 (CA9 2022)
...14

Ramirez v. County of San Bernardino, 806 F.3d 1002 (CA9 2015)
...19

Reves v. Ernst & Young, 507 U.S. 170 (1993)
...17

Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257 (2003)
...7

Rivera v. Nat'l R.R.Passenger Corp., 331 F.3d 1074 (CA9) amd'd, 340 F.3d 767(CA9 2003)
...6

Shelton v Bauer Pub. Co. L.P. 2016 U.S. Dist LEXIS 52484 (C.D. CA 2016)
...10

Taus v. Loftus, 40 Cal. 4th 683 (2007)
...12

United Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't. AFL-CIO 770 F.3d 834 (CA9 2014)

Weller v. Am. Broad. Co., 283 Cal. Rptr. 644 (1991) ...16

Wynberg v. Nat'l Enquirer, Inc., 564 F.Supp. 924 (C.D. CA 1982) ...13

STATUTES

8 U.S.C. 1324 ...11

17 U.S.C. 201 ...3,5,17

17 U.S.C. 501 ...18

18 U.S.C. 1343 ...18

18 U.S.C. 1957 ...17

27 U.S.C. 802 ...5,18

Cal. Civ. Code 2223 ...17

Cal. Civ. Code 3344(a) ...7

COURT RULES
Fed. R. Civ. P. 8 ...18

Fed. R. Civ. P. 8(a) ...5

Fed. R. Civ. P. 9(b) ...5,8

Fed. R. Civ. P. 10(c) ...9

Fed. R. Civ. P. 12 ...1
...5

## INTRODUCTION

Plaintiff has pled that he still has a viable and valuable reputation, conviction for killing a rapist notwithstanding, which allegation must be taken as true on motion under Rule 12. The Defendant, acting through its employees and coconspirators, engaged in predatory practices of fraudulently inducing a confidential relationship, while engaging in a pattern of RICO predicate acts, to thereafter disclose the confidential information so obtained and transact with criminally-derived property for their pecuniary gain. In the course of this breach of confidence, employee and coconspirator Jensen Rufe made defamatory statements concerning Plaintiff's heroic acts. Defendants now claim a conviction for killing a rapist has made Defendant "libel proof" for being called anything else under the sun. The Court should see this for what it is: an attempted end-run around the 6th Amendment right to trial by jury on each alleged crime one is accused of. This lawsuit ensues.

## RELEVANT FACTUAL BACKGROUND

Defendant Bunim-Murray has made the judicial admissions in their memorandum in support of this motion, that Lisa Samsky and Jensen Rufe were "two Bunim Murray employees"; and "in fact, both Samsky and Rufe worked for Bunim Murray." It's hornbook law that employees are considered agents of their employers, so Plaintiff thanks Bunim Murray for this conclusive admission of agency, and invokes judicial estoppel against retractions thereof.

Plaintiff has alleged in his Second Amended Complaint ("SAC") that Lisa Samsky ("Samsky") and Jensen Rufe ("Rufe"), as individuals and as agents of Bunim-Murray ("BM") (Collectively, "Defendants") conspired at or about 10am on February 5, 2013 and agreed with each other to use the interstate wires to fraudulently induce a confidential relationship with Plaintiff, who was known to them to have just survived an ordeal likely to cause Post Traumatic Stress Disorder ("PTSD") in a normal person. ECF 115, P13L14-25.

Pursuant to this agreement, Lisa Samsky in Los Angeles contacted Plaintiff in Santa Rosa using the interstate wires via Facebook and telephone on February 9, 2013 at or around 1PM, 1:15PM, 3PM, 5PM, and 6PM; and in each communication misrepresented to Plaintiff that she was a legitimate agent of Jimmy Kimmel himself, knowing the falsity of the representation and intending to induce Plaintiff to rely upon it to form a confidential relationship. ECF 115, P14L3-15.

Plaintiff in fact relied upon these representations and met with Samsky and Rufe, who were actually agents of BM. Id. at P13L29-32.

Plaintiff was vulnerable to Defendants because of his extreme intoxication and PTSD, and Defendants knowing of this accepted and even solicited empowerment over Plaintiff which rendered him unable to protect himself. They further plied Plaintiff with more intoxicants, keeping him in a state of extreme intoxication while they abused their position of empowerment to extract information of an embarrassing nature

2

from him and even attempt to form an unconscionable contract when he couldn't spell his own name due to incapacity. Id. at P14L32-P15L19.

During this confidential relationship, Plaintiff conveyed novel information in the form of drunken and foolish behaviors, which are embodied by the observations described by Defendants in the Netflix movie. Defendants also made motion pictures of Plaintiff, which were only possible because of their wire fraud and violations of 8 U.S.C. 1324. Id. at P15L30-16L28.

Contrary to Defendant's assertion that Plaintiff "does not allege that he had any further contact with Samsky and Rufe folowing February 10, 2013"; Plaintiff has alleged that Samsky and Rufe transported him from San Francisco to Los Angeles, and around different locations in Greater Los Angeles; Id. at P16L29-35; and that on or about August 16, 2021, Plaintiff sent a letter to Defendants and their counsel specifically and explicitly insisting that the confidential information resulting from that confidential relationship not be disclosed. Id. at P43L3-6, Exhibit J. Notwithstanding this, Defendants disclosed the confidential information embodied by their observations of Plaintiff's behavior while the confidential relationship was in effect. Id. P50L33-P51L20. This has caused damages to Plaintiff. Id. P51L21-35.

Rufe has published false statements about Plaintiff implying that his actions on February 1, 2013 constituted unlawful conduct. Rufe also falsely accused Plaintiff of brandishing a knife on a public sidewalk and throwing it into

a hard surface where it could ricochet and maim others, constituting criminal conduct. Id. P37L13-P38L3.

The breaches of confidence based on a fraudulently induced confidential relationship, and defamatory statements, both were published on January 10, 2023 as part of a documentary film which had an overarching theme of falsely accusing Plaintiff of criminal conduct on February 1, 2013. Also published in this film were motion pictures created during the course of the confidential relationship and as a result of the wire fraud and violations of 8 U.S.C. 1324; which were the subject of transactions in which money was exchanged for the license to use same, in violation of 18 U.S.C. 1957. Id. at paragraph 77.

Plaintiff filed his Second Amended Complaint on February 28, 2024; ECF 153; and Defendants filed their motion to dismiss his SAC on March 4, 2024; ECF 158.

Although a Third Amended Complaint is pending as of the time of writing, ECF 172, the claims in it are largely the same under Rule 8(d)(2), and since Defendants will be precluded by Rule 12(g)(2) and Rule 12(h)(1) from raising any objections or defenses that they failed to raise in this initial Rule 12(b) motion; it is in the interests of justice to allow only supplemental briefing of this fully briefed motion if the Court allows amendment; See, e.g. ECF 153.

Plaintiff hereby opposes Defendants' motion to dismiss his SAC.

4

STANDARD OF REVIEW

A. **PLAINTIFF IS PRO SE**

All documents filed by a pro se litigant are entitled to liberal interpretation. Erickson v Pardus 551 U.S. 89 (2007)

B. FED. R. CIV. P. 8

A party is only required to give notice of the facts constituting a claim, not to plead every nuance of the legal theories applicable to the claim. Fed. R. Civ. P. 8(a).

C. MOTION TO DISMISS UNDER RULE 12

On a motion under Fed. R. Civ. P. 12, all of a Plaintiff's well-pleaded allegations of fact are accepted as true. See Karasek v. Regents of the Univ of Cal., 956 F.3d 1093, 1104 (CA9 2020).

LEGAL ARGUMENT

**POINT I: DEFENDANT HAS ADMITTED TO EMPLOYING SAMSKY AND RUFE, WHICH IPSO FACTO ESTABLISHES AGENCY; ADDITIONALLY, AGENCY WAS NOT PLED AS A SEPARATE COUNT IN THE SAC, AND THE CONSTRUCTIVE TRUST WAS PLED AS A REMEDY FOR FRAUD**

Defendant has admitted that **Rufe and Samsky** were employees of BM, which renders undisputed Plaintiff's pleaded allegations that show that Rufe and Samsky were agents of Bunim-Murray, ECF 115, 103; during the events at issue. Plaintiff has pleaded the existence of an association in fact including BM, Samsky, and Rufe, which continued through the events at issue and rendered BM liable for the acts and omission of Samsky and Rufe. Id. at 350. Plaintiff has also pleaded allegations that Rufe and Samsky had formed a conspiracy with BM, which was still in effect when they signed contracts with an alter

5

ego of ALL3MEDIA AMERICA, LLC; creating an agent-principal relationship for which BM are liable under the theories of respondeat superior, coconspirator liability, and aiding and abetting liability. Id. at 16, 110-115. Under California law, an employer "may be held liable for defamatory statements made by its employees under the doctrine of respondeat superior." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1080 (CA9) amd'd, 340 F.3d 767 (CA9 2003). "As long as the statement was made within the scope of employment, the principal need not know about it and the statement need not have been made for the benefit of the principal." Id. This concept extends to other torts such as breach of confidence, even though "as a matter of law, allegations of agency, vicarious liability, and/or respondeat superior are not required." Greenberg v. Sala, 822 F.2d 882, 886 (CA9 1987).

Likewise, a constructive trust is an equitable remedy that compels the transfer of wrongfully held property to its rightful owner. "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner ... A plaintiff seeking imposition of a constructive trust must show: (1) the existence of a res (property or some interest in property); (2) the right to that res; and (3) the wrongful acquisition or detention of the res by another party who is not entitled to it." Mattel, Inc. v. MGA Ent., Inc., 616 F.3d 904, 908-09 (CA9 2010)(Internal quotations and citations omitted, emphasis added)(quoting Cal. Civ. Code 2223); See also ECF 115, 16-29, 146 (Alleging facts consistent with these elements).

It's hornbook law that constructive trust is an equitable remedy for property procured or obtained through fraud, unjust enrichment, and breach of fiduciary duty. See ECF 115, 146 ("...which were procured and obtained by BM Defendants and/or BMJKL Defendants through acts of fraud ... undue influence ... and the violation of fiduciary trust...").

**POINT II: DEFENDANT HAS PLED FACTS SHOWING THAT DEFENDANTS ESTABLISHED A CONFIDENTIAL RELATIONSHIP WITH PLAINTIFF, ACQUIRED CONFIDENTIAL INFORMATION THROUGH THAT RELATIONSHIP, AND THEREAFTER PUBLISHED THAT INFORMATION IN BREACH OF CONFIDENCE**

Breach of confidential relationship is established when: (1) one party is vulnerable to the other; (2) this vulnerability results in the empowerment of the stronger party; (3) empowerment has been solicited or accepted by the stronger party; and (4) prevents the weaker party from effectively protecting itself. Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257, 272 (2003). "[V]ulnerability ... usually arises from ... lack of education, weakness of mind ... or some other incapacity." Id. at 273.

Plaintiff has alleged facts of his vulnerability due to weakness of mind through PTSD and incapacity due to intoxication. See ECF 115, 4, 16-31. Defendant BM has acted by and through its employees, agents, and coconspirators Rufe and Samsky. Id. at 16-32, 110-115. Rufe has made a coconspirator admission of knowing Plaintiff was incapacitated through intoxication. Id. at 84. Samsky has implied she "enticed" Plaintiff while he was so vulnerable. Id. at 82. Both have admitted knowledge of Plaintiff recently surviving an incident likely to induce PTSD. Id. at 101 (Documentary containing such

admissions incorporated by reference into the SAC). And Plaintiff has pled that Defendants solicited, accepted, and thereafter ruthlessly exploited their empowerment over Plaintiff in his vulnerable state. Id. at 16-31 This empowerment prevented Plaintiff from protecting himself.

To establish a breach of confidence, Plaintiff must show that: (1) He conveyed confidential and novel information; (2) Defendant had knowledge that the information was being disclosed in confidence; (3) there was an understanding between the parties that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding. Aliotti v. Dakin, 831 F.2d 898, 903 (CA9 1987). The confidential relationship heretofore described resulted in Plaintiff conveying by conduct information about his drunken behaviors to Rufe and Samsky; which information was novel and which Defendants accepted knowing it was confidential because of the "babysitter" relationship they had solicited. ECF 115, 118 ("information conveyed by Plaintiff ... verbally and through conduct"). Plaintiff sent Defendants and their counsel written notice that he expected the confidence to be maintained, Id. at 91, yet notwithstanding this, Defendants disclosed the confidential information embodied by their observations of Plaintiff during the confidential relationship; Id. at 82-84; and Plaintiff was thereby damaged; Id. at 120. This has all been pled with specificity not required by Rule 8(a), and has stated a viable claim which must proceed.

8

POINT III: PLAINTIFF HAS PLED THE WHO, WHEN, WHERE, AND SUBSTANCE OF THE FRAUD, AND HAS SATISFIED THE PLEADING REQUIREMENTS OF RULE 8(a) and 9(b)

The elements of fraud are: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) actual and justifiable reliance, and (5) resulting damage. Aton Ctr., Inc. v. United Healthcare Ins. Co., 93 Cal.App.5th 1214, 1245 (2023).

Plaintiff has pled the identity of the transmittor of the fraud, the date and means of transmission which will show the location of same upon discovery, and the tenor of the misrepresentation. See SAC, 18; See also CALID, Inc. v. Apple, Inc. 85 F.4th 948, 958 (CA9 2023)(Rule 9(b) requires parties to state the who, when, where, and how of the misconduct alleged). This is enough information and detail to put Defendants on notice of the claims against them. See Amalgamated Bank v. Facebook, Inc. 84 F.4th 844, 857 (CA9 2023)(Fraud allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged). Plaintiff has pleaded with specificity that, antecedent to this, there was a meeting of the minds and agreement amongst the perpetrators of the fraud, Lisa Samsky and Jensen Rufe, as employee agents of Bunim-Murray, who BM admits were "working for Bunim Murray" when they committed the wire fraud. ECF 115, 16-17. Plaintiff has alleged that he was fraudulently induced to enter into a confidential relationship with defendants, Id. at 18-32, who breached the relationship and confidence which Plaintiff discovered on January 10, 2023; Id. at 117-120, 406.

This caused damage to Plaintiff in the form of diminution in the value of his intellectual property and right of publicity; Id. at 124; and in the form of unjust enrichment and deprivation of money resulting from disclosure of confidential information; Id. at 257. Because the damage resulting from the fraud didn't occur until the breach of the confidential relationship so induced, the claim was not ripe until damage occurred. Ibid. ("BM Defendants were unjustly enriched ... through disclosure ... of fraudulently obtained information in breach of fiduciary confidence as pleaded in "16"-"32").

POINT IV: DEFENDANT MISAPPLIES A DEBUNKED LEGAL THEORY AND CHALLENGES THE FACTUAL SUFFICIENCY OF PLAINTIFF'S DEFAMATION CLAIM, WHICH IS A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS A MATTER OF LAW
A. THE LIBEL-PROOF DOCTRINE IS TO BE SPARINGLY APPLIED, AND DEFENDANT HAS NOT SHOWN PLAINTIFF TO BE LIBEL-PROOF FOR ACCUSATIONS OF CRIMINALITY ON FEBRUARY 1, 2013 NOR ACCUSATIONS OF RECKLESS ENDANGERMENT THROUGH BRANDISHING DEADLY WEAPONS

The Defendant attempts to subvert the Jury's function of determining the fact of Plaintiff's reputation, in the context of whether the defamatory statements pleaded in the complaint caused damages thereto; by characterizing such finding as a matter of law under the "libel proof" doctrine. Plaintiff has pled facts showing he still has a valuable reputation, and those facts would survive a summary judgment motion, if the Defendant attempts to introduce evidence to rebut them. ECF 115, P76L34-P78L34

The Defendant in Shelton v Bauer Pub. Co. L.P. 2016 U.S. Dist LEXIS 52484 at *19 n.6 (C.D. CA 2016) cited the same case as Defendant in this case, to accuse Blake Shelton of being "Libel-proof" regarding his excessive drinking:

"As an initial matter, the Court rejects defendants' contentions that Shelton is 'libel proof', as a matter of law ... First, Courts have cautioned that the libel-proof plaintiff doctrine is to be sparingly applied, as it is unlikely that many plaintiffs will have such tarnished reputations that their reputations cannot sustain further damage ... Thus, even if plaintiff is 'libel proof' as to false assertions regarding his 'excessive drinking', this does not mean defendants may make false assertions regarding his treatment in 'REHAB' with impunity ... It is shameful that Benedict Arnold was a traitor; but he was not a shoplifter to boot, and one should not have been able to make that charge while knowing it was false with impunity." Id. (internal quotations and citations omitted, emphasis added)

To put it in terms relevant to this case, even if Plaintiff is "libel proof" for killing a rapist, this does not mean defendants may make false assertions regarding vehicular terrorism, hate crimes, lacing joints, committing arson, nor trashing hotel rooms with impunity.

The line of cases stemming from **Wynberg v. Nat'l Enquirer, Inc.**, 564 F.Supp. 924, 928 (C.D. CA 1982) culminated in **Masson v. New Yorker Magazine, Inc.** 895 F.2d 1535 (CA9 1989); in which the 9th Circuit held a Plaintiff to be unable to recover for incremental harm under the "libel proof" doctrine. The Supreme Court overturned this decision, holding that there was no First Amendment basis for such a doctrine, and remanding to the 9th Circuit to consider whether State Law provided an

11

alternate basis. **Masson v.** New Yorker Magazine, Inc. 501 U.S. 496, 523 (1991). On remand, the 9th Circuit specifically rejected an independent State Law basis for such a doctrine, adopting the reasoning in their holding that:

"The theory must be rejected because it rests upon the assumption that one's reputation is a monolith, which stands or falls in its entirety. The law, however, proceeds upon the optimistic premise that there is a little bit of good in all of us - or perhaps upon the pessimistic assumption that no matter how bad someone is, he can always be worse ... ('He was a liar and a thief, but for all that he was a good family man.')" Masson v New Yorker Magazine, Inc. 960 F.2d 896, 898-99 (CA9 1992).

Defendants' assertions of the libel-proof plaintiff doctrine fail as a matter of law, and the fact of Plaintiff's reputation is one for the jury to decide. Certainly, Plaintiff has pleaded facts that must be accepted as true, showing he has a strong positive reputation despite a conviction for killing a rapist.

**B. PLAINTIFF IS A LIMITED-PURPOSE PUBLIC FIGURE FOR SPECIFIC SUBJECTS, NOT A GENERAL-PURPOSE PUBLIC FIGURE**

The Supreme Court has distinguished general-purpose public figures from limited-purpose public figures: "In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Gertz. V. Robert Welch, Inc., 418 U.S. 323, 351 (1974). Although individuals

12

who have been convicted or accused of crimes may become public figures, the Supreme Court has rejected the contention "that any person who engages in criminal conduct automatically becomes a public figure for purposes of comment on a limited range of issues relating to his conviction." Wolston v. Reader's Digest Ass'n, Inc., 443 U.S. 157, 168 (1979). "To hold otherwise would create an 'open season' for all who sought to defame persons convicted of a crime." Id. at 169.

C. RUFE'S FALSE ASSERTIONS OF FACT ARE DEFAMATORY PER SE, AND THE FACTS ALLEGED WOULD ENTITLE PLAINTIFF TO RELIEF IF PROVEN AT TRIAL

The "tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." Taus v. Loftus, 40 Cal4th 683, 720 (2007). Defamation that has a natural tendency to injure is slander per se. A statement is considered slander per se if it charges any person with a crime they didn't commit. Crowe v Cty. of San Diego, 608 F.3d 406, 422 (CA9 2010). To state a claim for implied defamation, however, the published statement must reasonably "be understood as implying the alleged defamatory content." Weller v. Am. Broad. Co., 283 Cal. Rptr. 644, 651 n.8.

As alleged, BM is liable for the acts of its coconspirators and employees. Rufe's statement must be viewed in the context of the documentary as a whole. Taken in the context of the documentary as a whole, each statement which BM and Rufe ratified and aided in the commission of per "139-140" in the SAC; cumulatively states about the February 1, 2013

13

incident that McBride "fuck[ed Plaintiff] in the ass and [Plaintiff had] to keep it real and take him out"; so Plaintiff "handed him a laced joint]" in which there was "all these drugs"; after which Plaintiff "made the assumption they were both ghosts" and said "I bet we could drive through that truck right now and nobody would even see us"; after which, Plaintiff "like starting a fire so you can put it out after", "bludgeon[ed] someone over the head with a deadly weapon" which was not justified force because "hitting someone in the head with a hatchet 3 times, blunt or not is violent"; and thereafter people who "know[] who kai was" give lay opinion that he perjured himself concerning "what actually happened in Fresno that day."

To begin with, Rufe's observations of Plaintiff while in a confidential relationship are not matters of public interest, even if this false allegation were true. See Planet Aid, Inc. v. Reveal, 2022 U.S. App. LEXIS 22258 at *15 (CA9 2022)("Limited purpose public figures, who have assumed prominence on a limited range of issues, need only prove actual malice for speech touching upon those issues."). Although Defendant did not raise the First Amendment defense in the context of defamation, Plaintiff is not a limited purpose public figure for his purported actions while in a confidential relationship with Defendants. And in regards to the events of February 1, 2013, the First Amendment is not a defense for statements made with knowledge of, or reckless disregard of falsity. Id. at *14. "Actual malice is a subjective test; it means that the [Defendant] must have published a statement with

14

knowledge it was false or reckless disregard of whether it was false or not. Reckless disregard, in turn, means that [they] in fact entertained serious doubts as to the truth of the statement in question." Id. at *24(Internal quotations and citations omitted). Plaintiff has pled that Jensen Rufe knew of the proceeding described in "2" of the SAC; which would give a reasonable person obvious reasons to doubt the implication that Plaintiff had committed a criminal act of assault with a deadly weapon on February 1, 2013. Plaintiff has pleaded that Rufe's statement implied criminal conduct on that date, and that reasonable persons had understood the implication. Taken in the context of the movie as a whole, the statement that Plaintiff "bludgeon[ed] somebody over the head with a deadly weapon" implies that Plaintiff committed the crime of assault with a deadly weapon, which is slander per se. Such an implication is not "substantially true"; it is substantially false, because Plaintiff committed no crime on February 1, 2013. And couching it in those terms in that context was known by Rufe to imply that meaning. Certainly, Plaintiff has pleaded so, and not unreasonably. Defendant's contention that "Plaintiff is serving a 57-year sentence" and "Stating Plaintiff bludgeoned another person with a deadly weapon ... will not change the public's opinion of him" misses the fact that the public had a strong and positive opinion of him, as pleaded, precisely for his actions on February 1, 2013: conviction notwithstanding.

Likewise, Rufe's assertion that Plaintiff "pulled out a huge knife" and tried to throw it into the sidewalk outside

the Hollywood Roosevelt is false, and known by Rufe to be false. He contends that such a statement "will not change the public's opinion of him" as a considerate person who never endangers bystanders, even when using deadly force in defense of himself or another. A huge knife, ricocheting off the pavement, in a crowded location, is more likely than not to injure or maim a bystander. A reasonable person would say, if it didn't, "it's a miracle that didn't cut someone." A police officer, witnessing that event, would likely arrest the perpetrator and charge them with reckless endangerment from brandishing a deadly weapon. And Plaintiff has pled that a reasonable people in fact understood that criminal act is implied by Defendant's statement. ECF 115, 84, 202. Defendant's claim that Plaintiff being known for wielding an axe in defense of a crowd of people somehow renders him libel-proof for false assertions of brandishing deadly weapons hither and yon, is palpably frivolous. Saying a Marine received a medal of honor for shooting Taliban insurgents, and was thereafter convicted for killing a rapist, doesn't render him libel-proof for false accusations of firing an M16 in a shopping mall. And although Plaintiff isn't a Marine, Rayshawn Neely was, and Plaintiff saved his life. He shouldn't be slandered for that act or sundry other false assertions, for the same reason the hypothetical Marine wouldn't be libel-proof for false claims that the Taliban insurgent was given a laced joint first. A terrorist is a terrorist, whether a Taliban or a crazy white supremacist. People who protect Americans from that should be rewarded, not smeared. Never let

16

it be said no good deed goes unpunished.

POINT VII: DEFENDANT HAS PLED ALL THE ELEMENTS OF A RICO CLAIM
AGAINST RUFE, SAMSKY, AND BUNIM-MURRAY WHICH REQUIRES A RICO
CASE ORDER TO ISSUE, NOT DISMISSAL.

The elements of a civil RICO claim under 18 U.S.C. 1964
are: "(1) conduct, (2) of an enterprise, (3) through a pattern,
(4) of racketeering activity (known as 'predicate acts'), (5)
causing injury to Plaintiff's business or property." United
Brotherhood of Carpenters & Joiners of Am. v. Bldg. & Const.
Trades Dep't. AFL-CIO 770 F.3d 834, 837 (CA9 2014).

Plaintiff has pleaded facts showing the formation of
an associated-in-fact enterprise consisting of Rufe, Samsky,
and Bunim-Murray (collectively, "BM Enterprise"); ECF 115,16,
350; and an associated-in-fact enterprise consisting of BM,
Mulcahy, and Jimmy Kimmel Live! (collectively, "BMJKL"); Id.
at 17, 368. See Boyle v. United States, 556 U.S. 938, 948-49
(2009). The fact that BM Enterprise and BMJKL are both still
acting in concert after ten years, engaging in transactions
involving information and intellectual property derived from
their violations of 18 U.S.C. 1343 and 8 U.S.C. 1324; ECF 115,
353, 370-71; clearly shows that each Defendant so acting is
"participating in the operation or management of the enterprise
itself." Reves v. Ernst & Young, 507 U.S. 170, 183 (1993); and
is "evidence of an ongoing organization" and "that the various
associates function as a continuing unit." Bredberg v. Middaugh,
2022 WL 2662878 at *1 (CA9 2022).

Contrary to Defendants' assertion that "the FAC alleges
only a single, completed plan and purpose""; Plaintiff alleged

that motion pictures Plaintiff directed were derived from, or were acquired through, wire fraud and violations of 8 U.S.C. 1324 and 27 U.S.C. 802-related state law; ECF 115, 16, 18, 30, 353, 370-71; and that criminally derived property was transacted in violation of 18 U.S.C. 1957 within ten years hence; Ibid.; and that further transactions threaten to occur each time a sequel documentary is made; SAC 350-385; see also Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (CA9 2008)(A pattern of racketeering activity requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. 1961(d), within a period of ten years). Plaintiff pleaded all the elements of fraud, as elaborated in POINT II above, and has plausibly alleged that such fraud was perpetrated using the interstate wires. SAC 351, 369. Plaintiff has thus alleged a nexus with interstate commerce. SAC 354, 372. Likewise, the pattern of racketeering alleged; SAC 352-364, 369-382; threatens to continue in the form of repeated violations of 18 U.S.C. 1957; SAC 358, 376; See also H.J. Inc. v. Nw. Bell Tel. Co., 492, U.S. 229, 239 (1989)("the term pattern itself requires the showing of a relationship between the predicates, and the threat of continuing activity. It is this factor of continuity plus relationship which combines to produce a pattern"). Plaintiff has alleged facts of concrete financial loss embodied by revenues he was deprived of, embodied by the transaction for license of the fraudulently obtained motion picture, proximately caused by Defendants' pattern of predicate acts. SAC 77; 327; 328, 333-335; see also Canyon County, 519 F.3d at 976 (Wrongful deprivation

of money is injury to property), Cal. Civ. Code 3344 (Plaintiff has property interest in right of publicity), 17 U.S.C. 201 (Plaintiff has property right in works he has authored), 17 U.S.C. 501 (Plaintiff has property right to revenues from use of his works of authorship).

Defendants' arguments cannot withstand these facts, and these facts merit development through the standard RICO Case Order and subsequent discovery.

POINT V: PLAINTIFF HAS FILED A MOTION FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT, WHICH CONSOLIDATES THE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND PUBLIC DISCLOSURE OF PRIVATE FACT CLAIMS AGAINST DEFENDANTS INTO THE BREACH OF CONFIDENCE/ BREACH OF CONFIDENTIAL RELATIONSHIP LEGAL THEORY

The filing of Plaintiff's Third Amended Complaint will render Defendant's motion to dismiss these claims moot. See Ramirez v. County of San Bernardino, 806 F.3d 1002 (CA9 2015).

POINT VI: DEFENDANTS HAVE WAIVED ANY ARGUMENTS AGAINST THE SUFFICIENCY OF SERVICE OR PROCESS UPON BUNIM MURRAY

Defendant Bunim Murray has acquiesced by conduct to personal jurisdiction over themselves, and has failed to raise any defenses under Fed. R. Civ. P. 12(b)(2)-(5) in their initial Rule 12(b) motion. They are therefore estopped from challenging sufficiency of service or of process, See Rule 12(h)(1).

CONCLUSION

Plaintiff has pleaded the elements of several meritorious causes of action against Defendants, and their motion to dismiss is nothing more than an attempt to misconstrue and obfuscate his pro se pleading. Plaintiff is entitled to liberal construction, and for all of his allegations to be taken as true for the purposes of this motion. The construction set forth herein entitles him to relief as a matter of law, if the Court assumes that the allegations are true. For ese reasons, the Court should deny Defendants' motion and allow the case to proceed.

Date: 5/8/24

Respectfully Submitted,

Caleb L. McGillwary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861