UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

        Charles A. Rojas                          N/A
        Deputy Clerk                         Court Reporter

    Attorneys Present for Plaintiffs:      Attorneys Present for Defendant:

          Not Present                              Not Present

**PROCEEDINGS:   (IN CHAMBERS)  ORDER RE: (1) DEFENDANT STRICKER'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. 129); (2) DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM (Docs. 126, 127, 132, 147, 151 & 187); (3) DEFENDANTS NETFLIX, INC.'S AND BRAD MULCAHY'S ANTI-SLAPP MOTIONS (Docs. 131 & 152); AND (4) PLAINTIFF'S MISCELLANEOUS MOTIONS (Docs. 148, 165, 169, 172, 209, 210, 211, 228, 231 & 232)**

       Before the Court are eight motions to dismiss and two anti-SLAPP motions filed by Defendants.  (KMPH MTD, Doc. 126; Samsky & Rufe MTD, Doc. 127; Stricker MTD, Doc. 129; Stricker Mem., Doc. 129-1; Netflix MTD, Doc. 132; Fulton 55 & Martin MTD, Doc. 147; Mulcahy Joinder in MTDs, Doc. 151; Bunim Murray MTD, Doc. 187; Netflix Anti-SLAPP Mot., Doc. 131; Mulcahy Joinder in Anti-SLAPP Mot., Doc. 152)  Plaintiff Caleb McGillvary opposed.  (Opp. to Stricker MTD, Doc. 162; Opp. to Samsky & Rufe MTD, Doc. 188; Opp. to Mulcahy Anti-SLAPP Mot., Doc. 189; Opp. to Mulcahy MTD, Doc. 190; Opp. to KMPH MTD, Doc. 191; Opp. to Netflix MTD, Doc. 192; Opp. to Fulton 55 MTD, Doc. 193; Opp. to Netflix MTD, Doc. 199; Opp to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

Bunim Murray MTD, Doc. 215.[1])  Because McGillvary sought leave to amend his complaint after most Defendants had filed their motions and the proposed amendments to his complaint were minimal, the Court construed Defendants' motions as directed to the amended complaint and authorized Defendants to file supplemental briefs addressing any relevant amendments.  (Feb. 28 Order, Doc. 153; *see* KMPH Supp. Br., Doc. 157; Samsky & Rufe Supp. Br., Doc. 158; Netflix Supp. Br. re: Anti-SLAPP Mot., Doc. 159; Fulton 55 & Martin Supp. Br., Doc. 160.)  Defendants also replied in support of their motions.  (Samsky & Rufe Reply, Doc. 200; KMPH Reply, Doc. 201-2; Fulton 55 & Martin Reply, Doc. 203; Netflix Anti-SLAPP Reply, Doc. 223; Netflix MTD Reply, Doc. 224; Bunim Murray MTD Reply, Doc. 225.)

Having taken this matter under submission and for the following reasons, the Court DENIES Stricker's motion to dismiss for lack of personal jurisdiction (Doc. 129). The Court GRANTS Defendants' motions to dismiss for failure to state a claim to the extent described below.  (*Infra* section V.)  The Court GRANTS Netflix and Mulcahy's anti-SLAPP motions (Docs. 131 & 152).  And the Court rules on McGillvary's motions in the manner described below.  (*Infra* section VII.)

## I.   BACKGROUND

### A.   Factual Background

Plaintiff Caleb McGillvary rose to fame in February 2013 as the "hatchet-wielding hitchhiker" after he gave interviews to a Fresno, California local-news station in which he described "smash, smash, suh-mash[ing]" an individual in the head with a hatchet after that individual crashed his car into a pedestrian and attacked a bystander.  (*See* Second Amended Compl. ("SAC"), Doc. 115-2 ¶¶ 1, 3, 8.)  Fresno authorities concluded that

---

[1] Excluded from this list are the docket entries for duplicates of some of the oppositions that McGillvary filed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                      Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

McGillvary used justifiable force in protection of the bystander and cleared him of any wrongdoing.  (*See id.* ¶ 1.)  But McGillvary was subsequently found guilty and sentenced to fifty-seven years in prison for the unrelated May 2013 murder of an elderly man in New Jersey.  (*See id.* ¶ 54 (referencing New Jersey "imprison[ment]"); *State v. McGillvary*, 2021 WL 3378024, at *1 (N.J. Super. Ct. App. Div. Aug. 4, 2021).[2])  In 2023, Netflix released a documentary about McGillvary entitled *The Hatched Wielding Hitchhiker* that described his background; interviewed those around him during his rise to fame; and detailed his subsequent murder conviction.  (*See* SAC ¶ 101.[3])

McGillvary now sues a raft of Defendants who were involved in the airing of the local-news interviews that prompted his rise to fame, were involved in the production or distribution of the Netflix documentary, or were interviewed in the Netflix documentary:

- **KMPH:** Sinclair Television of Fresno, LLC ("KMPH"), incorrectly sued as KMPH Fox News, is the Fresno, California-based local-news channel that aired the 2013 interviews featuring McGillvary;

- **Samsky, Rufe, and Bunim/Murray:** Bunim/Murray is a production company that, in 2013, was interested in producing a reality television show about

---

[2] The Court takes judicial notice of the Superior Court of New Jersey, Appellate Division's opinion affirming McGillvary's murder conviction.  *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it[] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] The documentary was incorporated by reference into McGillvary's complaint. Incorporation by reference is a doctrine that "treats certain [materials] as though they are part of the complaint itself."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Materials are incorporated by reference into a complaint "if the plaintiff refers extensively" to them or they "form[] the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

McGillvary and for which Lisa Samsky and Jensen Rufe worked—Samsky and
Rufe were interviewed in the Netflix documentary;

- **Jeff Stricker:** Jeff Stricker is a Fresno County Deputy Sheriff who investigated
  the 2013 Fresno incident and who was interviewed in the Netflix documentary;

- **Netflix:** Netflix distributed the documentary about McGillvary;

- **Martin and Fulton 55:** Fulton 55, LLC is a venue, operated by Tony Martin, at
  which McGillvary performed in 2013—Martin was interviewed in the Netflix
  documentary; and

- **Mulcahy:** Brad Mulcahy worked for  the show *Jimmy Kimmel Live!* when
  McGillvary appeared on it in 2013—Mulcahy was interviewed in the Netflix
  documentary.[4]

**B.    Procedural Background**

McGillvary filed this action in February 2023 and then, in May 2023, filed a First
Amended Complaint.  (Compl., Doc. 1; FAC, Doc. 18.)  In August 2023, the Court
granted McGillvary's request to proceed *in forma pauperis*.  (IFP Order, Doc. 22.)
Because McGillvary is proceeding *in forma pauperis* and is incarcerated, the Court
directed the U.S. Marshal to effect service on McGillvary's behalf.  *See* 28 U.S.C.

---

[4] These bullet points describe only the Defendants who have appeared thus far in this
action.  However, in its analysis below, the Court dismisses a claim as to a non-appearing
Defendant where a ground for dismissal raised by an appearing Defendant plainly applies with
equal force to the non-appearing Defendant or where dismissal is obviously warranted.  For
example, as to McGillvary's copyright and defamation claims, Netflix (the distributor of the
documentary) is similarly situated to non-appearing Defendant RawTV (the producer of the
documentary).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

§ 1915(d); (Order re: Service Mots., Doc. 64.)  That order cautioned McGillvary "that he is ultimately responsible for providing the correct full name and address for each defendant" and that the Marshal's inability to serve a Defendant because of incorrect information "may result in dismissal of Plaintiff's claims against that Defendant pursuant to Federal Rule of Civil Procedure 4(m)."  (Order re: Service Mots. at 2.)

Using the information McGillvary provided, the U.S. Marshal was able to serve the following Defendants: Stricker; Gabriel Sanchez;[5] KMPH; Samsky; Bunim Murray; Alex Aguirre;[6] Mulcahy; and Fulton 55. (Stricker Process Receipt, Doc. 82; Sanchez Process Receipt, Doc. 83; KMPH Process Receipt, Doc. 84; Samsky Process Receipt, Doc. 86; Bunim Murray Proof of Service, Doc. 87; Aguirre Proof of Service, Docs. 89 & 90; Mulcahy Process Receipt, Doc. 120; Fulton 55 Process Receipt, Doc. 121.)  Although there is no process receipt as to Netflix and Rufe, both have appeared in this action.  (See Netflix Counsel Not. of Appearance, Doc. 67; Rufe Counsel Not. of Appearance, Doc. 70.)  The U.S. Marshal was unable to serve *Jimmy Kimmel Live!*—presumably because *Jimmy Kimmel Live!* is a show, not a person or an entity.  (*See* Jimmy Kimmel Live Process Receipt, Doc. 112.)  Moreover, there is no process receipt as to Ebaumsworld and Carter Harris, as well as the international Defendants: RawTV; Colette Camden; and Sally Brindle.  None of the Defendants in this latter group have appeared.[7]

Most Defendants moved to dismiss and strike McGillvary's state-law claims in February 2024—with Bunim Murray moving to dismiss in April 2024.  (*See* KMPH MTD; Samsky & Rufe MTD; Stricker MTD; Netflix MTD; Fulton 55 & Martin MTD; Mulcahy Joinder in MTDs; Bunim Murray MTD; Netflix Anti-SLAPP Mot.; Mulcahy Joinder in Anti-SLAPP Mot.)  After the initial batch of motions were filed, McGillvary moved for leave to file a Second Amended Complaint.  (Mot. to file SAC, Doc. 115;

---

[5] Sanchez has not appeared in this action.
[6] Aguirre has not appeared in this action.
[7] Defendant All3 Media America LLC was named as a Defendant for the first time in the SAC.  (*Compare* Compl & FAC, *with* SAC.)  Accordingly, they were never served.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

SAC, Doc. 115-2.)  The Court granted McGillvary's motion, construed Defendants' pending motions to dismiss and strike as directed at McGillvary's Second Amended Complaint, and continued the hearing on the motions to provide McGillvary additional time to oppose the motions.  (Feb. 28, 2024 Order; *see also* Mar. 1, 2024 Order, Doc. 156 (similarly continuing hearing on later-filed motions).)  Because of delays in the receipt and docketing of McGillvary's oppositions that were filed by mail, the Court further continued the hearing on the motions and granted Defendants additional time to reply in support of their motions.  (May 7, 2024 Order, Doc. 206.)  While Defendants motions have been pending, McGillvary has filed several additional motions—including a motion for leave to file a Third Amended Complaint (Mot. to File TAC, Doc. 172) and a motion that suggests McGillvary is contemplating dismissing the international Defendants who have not been served ("Contingent Mot. to Dismiss Int'l Defs.," Doc. 211).  The Court took this matter under submission.  (Submission Order, Doc. 226.)

## II.   <u>LEGAL STANDARD</u>

### A.   **Motion to Dismiss for Lack of Personal Jurisdiction**

Rule 12(b)(2) allows a party to assert lack of personal jurisdiction as a defense by motion.  "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                         Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

### B.      Motions to Dismiss for Failure to State a Claim

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Furthermore, courts must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Finally, the Court may not dismiss a complaint without leave to amend unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (internal quotation marks omitted).

### C.      Anti-SLAPP Motions

When exercising supplemental jurisdiction over California state law claims, the Court applies California substantive law.  *See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).  California's anti-SLAPP statute aims to identify, early in the litigation process, "meritless . . . cases aimed at chilling expression through costly, time-consuming litigation."  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                              Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

2003).  First, the defendant must "make an initial prima facie showing that the plaintiff's suit arises from an act [by the defendant] in furtherance of the defendant's rights of petition or free speech."  *Id.* (citation omitted).  Where a defendant makes the required prima facie showing, the Court proceeds to the second step of the anti-SLAPP analysis. *Vess*, 317 F.3d at 1110.  In this second step "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims."  *Id.*  In other words, the plaintiff must demonstrate that the challenged claims are "legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited."  *Metabolife*, 264 F.3d at 840 (quoting *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 823 (1994)) (internal quotation marks omitted); *see also DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 (9th Cir. 2013).

## III.   <u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

Stricker's motion to dismiss for lack of personal jurisdiction is DENIED.  Stricker argues that the Court lacks personal jurisdiction over him because he was allegedly served with only the summons—not the summons *and* the complaint.  (Stricker Mem. at 3–5.)  Generally, a "federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance" with Rule 4.  *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013) (cleaned up).  Rule 4(c)(1) provides that "[a] summons must be served with a copy of the complaint."  But "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Crowley*, 734 F.3d at 975 (cleaned up).

As mentioned, McGillvary is proceeding *in forma pauperis* and is incarcerated; therefore, the U.S. Marshal has effected service on McGillvary's behalf.  Stricker concedes he received a summons containing the case number (*see* Hawkins Decl., Doc. 93 ¶ 2) and Stricker clearly has access to the Court's CM/ECF system—as shown by his numerous electronic filings (*see, e.g.*, Docs. 93, 95, 129, 184-3; 217-3).  Rather than substantively address the complaint as his Co-Defendants have done, Stricker attempts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

be removed from this lawsuit on a technical violation that may well have not been the fault of McGillvary.  Because Stricker received a summons and had actual notice of the complaint, his motion to dismiss for lack of personal jurisdiction is DENIED.

## IV.    IMPROPER DEFENDANT

As an initial matter, the Court DISMISSES improperly named Defendant *Jimmy Kimmel Live!* from this action WITH PREJUDICE.  *Jimmy Kimmel Live!* is the show on which McGillvary appeared; it is neither an individual nor an entity that can serve as a Defendant.  *See Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (a court may *sua sponte* dismiss a "where the claimant cannot possibly win relief").

## V.    MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.    Breach of Confidence

McGillvary's claims under California law for breach of confidence against Bunim-Murray, Samsky, and Rufe (Claim 1); Netflix, RawTV, Rob Miller, and Sally Brindle (Claim 2); and Jane Doe (Claim 3) are DISMISSED WITH LEAVE TO AMEND.

To plausibly plead a claim for breach of confidence, a plaintiff must allege facts showing that: "(1) [he] conveyed confidential and novel information; (2) [the defendant] had knowledge that the information was being disclosed in confidence; (3) there was an understanding between [the defendant] and [the plaintiff] that the confidence be maintained; and (4) there was disclosure or use in violation of the understanding." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 903 (9th Cir. 1987).

Samsky and Rufe move to dismiss on the ground that Plaintiff "does not identify what, if any, 'confidential and novel' information" he allegedly conveyed to them. (Samsky & Rufe Mot., Doc. 127 at 12.)  Netflix moves to dismiss on the same ground.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

(Netflix MTD, Doc. 132 at 30.)  The Court agrees with Defendants and concludes that this ground also warrants dismissal of the claim against Jane Doe 1.

McGillvary alleges that he "sent notices of reservations of his rights and clear and explicit prohibitions against use of his *confidential information, materials, and intellectual property*" to Defendants, but he does not specify what that alleged information is.  (SAC ¶ 93 (emphasis added).[8])  To the extent McGillvary does specify some information that he allegedly conveyed, it is unclear whether that information was "confidential and novel," as McGillvary alleges that he provided those Defendants "information concerning videos of himself performing" and that he responded to a list of questions about his background, the incident that he described in his viral local-news interview, and his appearance on the *Jimmy Kimmel Live!*.  (*See id.* ¶¶ 58–59; Ex. G, Doc. 118.)  McGillvary's opposition briefs are to a similar effect.  He vaguely references, without sufficiently explaining, conveying "information about his drunken behaviors." (Opp. to Samsky & Rufe Mot. at 11; Opp. to Netflix MTD at 23.)

Therefore, McGillvary has failed to plausibly plead a claim for breach of confidence; Claims 1, 2, and 3 are DISMISSED WITH LEAVE TO AMEND.  In any amended complaint, McGillvary shall specify the information he allegedly conveyed and shall allege how that information is confidential and novel.[9]

---

[8] Netflix also moves to dismiss on the ground that, if McGillvary's breach-of-confidence is premised on misuse of his alleged "intellectual property," then it is preempted by the Copyright Act.  (Netflix MTD at 29.)  Because the Court cannot discern the basis of McGillvary's breach-of-confidence claims, it does not reach this argument.

[9] McGillvary should also plead additional information that would allow for the identification of Jane Doe 1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

**B.      Right of Publicity**

McGillvary's claim against Netflix for violation of California's right of publicity (Claim 4) is DISMISSED WITHOUT LEAVE TO AMEND.

McGillvary asserts both a statutory and common-law right-of-publicity claim. (*See* SAC at 53 (claim for relief title)); *Ross v. Roberts*, 222 Cal. App. 4th 677, 684 (2013) ("California recognizes both a common law and statutory right of publicity."). "The common law cause of action may be stated by pleading the defendant's unauthorized use of the plaintiff's identity; the appropriation of the plaintiff's name, voice, likeness, signature, or photograph to the defendant's advantage, commercially or otherwise; and resulting injury."  *Ross*, 222 Cal. App. 4th at 684–85.  The statutory claim similarly provides: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . . shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code § 3344(a).

Here, McGillvary alleges that Netflix used his "face and likeness" in the documentary and related advertisements without his consent.  (*See* SAC ¶¶ 125–134.) Netflix moves to dismiss on two grounds: (1) that both the statutory and common-law claims, if applied here, would violate the First Amendment; and (2) that the "news" or "public affairs" exception to the statutory claim applies here.  (Netflix MTD at 19–20.) The Court agrees with both of Netflix's arguments.

The First Amendment's Free-Speech Clause prevents McGillvary from imposing liability on Netflix for distributing and marketing its documentary.  In *Sarver v. Chartier*, the Ninth Circuit considered the application of the First Amendment to a right-of-publicity claim asserted by an individual who claimed a feature film was based on his life

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

story.  813 F.3d 891, 896, 902–06 (9th Cir. 2016).  The Ninth Circuit's analysis has direct application in this action:

> [The film] is speech that is fully protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books, movies, or plays.  If California's right of publicity law applies in this case, it is simply a content-based speech restriction.   As such, it is presumptively unconstitutional, and cannot stand unless [the plaintiff] can show a compelling state interest in preventing the defendants' speech.   Because [the plaintiff] cannot do so, applying California's right of publicity in this case would violate the First Amendment.

*Id.* at 905.  Therefore, McGillvary's right-of-publicity claim fails as a matter of law because Netflix's speech is protected under the First Amendment.

Additionally, the statutory right-of-publicity claim has exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign."  Cal. Civ. Code § 3344(d).  Here, Netflix's use of McGillvary's likeness falls within either the "news" or "public affairs" exception.  *See Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 961 (9th Cir. 2013) (concluding that "even if" a documentary series about "the criminal activities of a gang" does "not fall within the news exception . . . , it falls within the public affairs exception").

Because McGillvary cannot make any amendments that would remove this action from the sweep of the First Amendment or the news/public-affairs exception, amendment would be futile.  Therefore, this claim is DISMISSED WITHOUT LEAVE TO AMEND.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

### C.      Commercial Disparagement

McGillvary's claim for commercial disparagement against Martin, Sanchez, and Fulton 55, LLC (Claim 5) is DISMISSED WITHOUT LEAVE TO AMEND.

Commercial disparagement "is the publication of matter disparaging the quality of another's property, which the publisher should recognize is likely to cause pecuniary loss to the owner.  The tort encompasses all false statements concerning the quality of services or product of a business [that] are intended to cause that business financial harm and in fact do so.  To constitute trade libel, a statement must be false."  *City of Costa Mesa v. D'Alessio Invs., LLC*, 214 Cal. App. 4th 358, 376 (2013) (cleaned up); *see Hartford Cas. Ins. Co. v. Swift Distribution, Inc.*, 59 Cal. 4th 277, 289 (2014) ("commercial disparagement" and "trade libel" are used interchangeably).

Fulton 55 is a music venue at which Martin and Sanchez worked and performed, respectively.  (SAC ¶ 41.)  In 2013 following McGillvary's viral local-news interviews, Martin hired McGillvary to perform at Fulton 55.  (*Id.*)  Based on Martin's interview in the documentary, McGillvary alleges that Martin, Sanchez, and Fulton 55 conspired to "kill" his reputation as a performer and to "burn" him.  (*Id.* ¶¶ 41, 50, 85.)  Fulton 55 and Martin move to dismiss on the ground that McGillvary implausibly interprets Martin's statements to infer an alleged conspiracy to commercially disparage McGillvary's services as a performer.  (Fulton 55 & Martin Mot, Doc. 147 at 15–17.)  In his opposition, McGillvary does not discuss his commercial-disparagement claim at all, although he opposes Defendants' motion to dismiss his related defamation claims.  (*See generally* Opp. to Fulton 55 & Martin Mot.)

The Court agrees with Fulton 55 and Martin: McGillvary has not plausibly pleaded an "inten[t] to cause" harm because McGillvary implausibly interprets Defendants' statements.  Sanchez stated that he, Martin, and Fulton 55 "wanted to kill it and win [McGillvary's fans] over."  (SAC ¶ 85.)  Within context, that statement indicates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No.  2:23-cv-01195-JLS-SK                           Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

that Defendant wanted their collaboration with McGillvary to be successful, not that they
wanted to "'kill' Plaintiff's reputation"—as McGillvary construes it.  (*Id.* ¶ 85.)
Similarly, Martin stated: "If you get burned in this town, word spreads." (*Id.* ¶ 87.)
Again, within context, this statement cannot fairly be imbued with the meaning
McGillvary gives it: an admission that Defendants "contacted other venue owners to
'burn' plaintiff." (*Id.* ¶ 50.)  Because no amendment could cure these core deficiencies,
this claim is DISMISSED WITHOUT LEAVE TO AMEND.

### D.    Conspiracy

McGillvary's standalone claim for conspiracy (Claim 6) is DISMISSED
WITHOUT LEAVE TO AMEND, as "[c]onspiracy is not a cause of action."  *Applied
Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510 (1994).

### E.    Constructive Trust re: Title to Copyright

McGillvary asserts eight claims entitled "constructive trust equitably imposed . . .
for . . . res and title to copyright" (Claims 7 through 14).  (*See* SAC ¶¶ 141–156.)  These
claims are DISMISSED WITHOUT LEAVE TO AMEND.

#### 1.    KMPH

McGillvary's claim against Sinclair is DISMISSED WITHOUT LEAVE TO
AMEND because McGillvary is not the owner of the news clips in which he appeared.

KMPH moves to dismiss on three grounds: (1) that constructive trust is a remedy,
not a standalone claim for relief (Sinclair Mot., Doc. 126 at 15); (2) that, even if
constructive trust were a standalone claim for relief, McGillvary's claim would be
preempted by the Copyright Act (*id.* at 15–16); and (3) that, to the extent this is a claim
under the Copyright Act, it fails as a matter of law because McGillvary cannot claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

ownership of a copyright in the news clips in which he was interviewed (*id.* at 17).  In his opposition, McGillvary contends that Defendants had "mischaracterized" his claim and that he, in fact, alleged a claim for copyright ownership.  (Opp. to Sinclair Mot., Doc. 191 at 11 (capitalization standardized).)

McGillvary asserts copyright ownership in interviews and related clips filmed by KMPH employees for use in KMPH local-news broadcasts.  McGillvary's assertion of copyright ownership is foreclosed as a matter of law by the en banc Ninth Circuit's analysis in *Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc).  There, the court was presented with a claim of ownership by a plaintiff-actress in her specific performance within a movie.  *Id.* at 736–37.  The court rejected her claim, explaining:

> According to the Supreme Court, the author is the party who actually creates the work, that is, the person ***who translates an idea into a fixed, tangible expression*** entitled to copyright protection.  [The plaintiff] did nothing of the sort.  For better or for worse, [the director] and his crew 'fixed' [the plaintiff's] performance in the tangible medium, whether in physical film or in digital form. However one might characterize [the plaintiff's] performance, she played no role in fixation.

*Id.* at 743–44 (cleaned up); *see also* 17 U.S.C.A. § 101 ("A work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.").  Here, KMPH employees "fixed" McGillvary's performances—recording him using KMPH controlled- and operated-equipment.

Moreover, granting copyright ownership to each and every individual who appears in a news broadcast would create the same lack-of-administrability problems that the en banc Ninth Circuit in *Garcia* sought to avoid.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                     Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

> Untangling the complex, difficult-to-access, and often
> phantom chain of title to tens, hundreds, or even thousands of
> standalone copyrights is a task that could tie the distribution
> chain in knots.  And filming group scenes like a public parade,
> or the 1963 March on Washington, would pose a huge burden
> if each of the thousands of marchers could claim an
> independent copyright.

*Id.* at 743; *see also Taggart v. WMAQ Channel 5 Chicago*, 2000 WL 1923322, at *4
(S.D. Ill. Oct. 30, 2000) ("[A]affording [copyright] protection to materials gathered in the
daily task of the news reporter would essentially bring the industry to a halt.").
Therefore, McGillvary lacks copyright ownership in the news clips as a matter of law and
this claim is DISMISSED WITHOUT LEAVE TO AMEND.

### 2.      Bunim-Murray, Samsky and Rufe

McGillvary's constructive-trust claim against Samsky, Rufe, and BM Productions
(Claim 9) is DISMISSED WITHOUT LEAVE TO AMEND, as McGillvary disclaimed
any intent to plead it as a standalone claim.  (Opp. to Samsky & Rufe Mot., Doc. 188 at 4
("constructive trust was pled as a remedy for fraud" (capitalization standardized)).)

### 3.      Ebaumsworld; Carter; and Jane Doe 1

McGillvary's constructive-trust claims against Ebaumsworld, Carter, and Jane
Doe 1 (Claims 11 and 12) are DISMISSED WITHOUT LEAVE TO AMEND, as a
"constructive trust is not an independent cause of action but merely a type of remedy."
*Batt v. City & Cnty. of S.F.*, 155 Cal. App. 4th 65, 82 (2007) (cleaned up), *abrogated on
other grounds by McWilliams v. City of Long Beach*, 56 Cal. 4th 613 (2013).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

### 4.       Fulton 55 & Martin

McGillvary's constructive-trust claims against Fulton 55 and Martin (Claims 13 &
14) are DISMISSED WITHOUT LEAVE TO AMEND, as McGillvary failed to discuss
those claims in his opposition.  (*See generally* Opp. to Fulton 55 & Martin MTD.)  This
conclusion is further buttressed by the fact that McGillvary has either recast his
constructive-trust claim or abandoned it as to all other moving Defendants.

### F.     Copyright Infringement

McGillvary's copyright-infringement claims against Netflix and RawTV (Claims
15 and 16) are DISMISSED WITHOUT LEAVE TO AMEND.

McGillvary alleges that RawTV and Netflix infringed copyrights that he allegedly
has in the local-news interviews that he gave and in certain videos that he posted on
YouTube of him dancing, singing, and playing the guitar.  (*See id.* ¶¶ 157–159, 162–
164.)  The Court has already rejected his claim to copyright ownership in the local-news
materials.  (*Supra* section V.E.1.)  And even assuming *arguendo* that McGillvary has
plausibly pleaded ownership in the other works, the fair-use doctrine prevents any finding
of infringement stemming from their use in the documentary.

"[T]he fair use of a copyrighted work, . . . for purposes such as criticism,
comment, news reporting, teaching . . . , scholarship, or research, is not an infringement
of copyright."  17 U.S.C. § 107.  Fair-use factors include: "(1) the purpose and character
of the use, including whether such use is of a commercial nature or is for nonprofit
educational purposes; (2) the nature of the copyrighted work; (3) the amount and
substantiality of the portion used in relation to the copyrighted work as a whole; and (4)
the effect of the use upon the potential market for or value of the copyrighted work."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                     Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

The first factor weighs in favor of fair use.  "This factor considers the reasons for, and nature of, the copier's use of an original work.  The central question it asks is whether the new work merely supersedes the objects of the original . . . , or instead adds something new, with a further purpose or different character.  The larger the difference, the more likely the first factor weighs in favor of fair use.  A use that has a further purpose or different character is said to be 'transformative,' but that too is a matter of degree."  *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 510 (2023).  While a derivative work's commercial nature generally weighs against fair use, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994).  Here, while the documentary is a commercial work, its use of the allegedly protected works is transformative.  The allegedly protected works are the words comprising a stand-alone news interview and videos of McGillvary singing, dancing, and playing the guitar.  The documentary weaves these works together with additional information to provide a documentary detailing McGillvary's background, his rise to fame, and his subsequent New Jersey murder conviction—as well as to question whether the narrative underpinning his famous interviews about the Fresno incident was, in fact, true.  *See, e.g.*, *Calkins v. Playboy Enterprises Int'l, Inc.*, 561 F. Supp. 2d 1136, 1141 (E.D. Cal. 2008) (fair use to include Plaintiff's "[p]hotograph, in conjunction with other photographs of [Plaintiff] and a handwritten biography, for the purpose of personalizing [her] by providing insight into her life, including how she grew up and what her interests are").

The second factor weighs in favor of fair use.  When applying this factor, courts ask whether the underlying work is a "creative work" and whether the work has been published.  *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178 (9th Cir. 2013).  While some of the underlying works involved here are creative, they have been published and "widely disseminated" on the internet, meaning this factor "tends to weigh in favor of the fair use

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                        Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

of [those] work[s]." *Id.* One video of him singing and playing the guitar, for example, is available on YouTube and has over one million views.[10]

The third factor weighs in favor of fair use. This factor "asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586 (cleaned up). Here, the documentary includes about twenty to eighty seconds of the handful of several-minutes-long videos.

Finally, the fourth factor weighs in favor of fair use. This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original." *Campbell,* 510 U.S. at 590 (cleaned up). While Plaintiff argues that the documentary is a "ready market substitute for Plaintiff's videos," the Court rejects that argument. (Opp. to Netflix Mot. at 37.) "No one would purchase the right to view [the documentary] as a substitute for" viewing Plaintiff's videos online for free at sites, such as YouTube. *Threshold Media Corp. v. Relativity Media, LLC,* 2013 WL 12331550, at *12 (C.D. Cal. Mar. 19, 2013).

Because no amendment could alter the Court's fair-use conclusion, amendment would be futile. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008) (defendant's "assertion of fair use may be considered on a motion to dismiss"). McGillvary's copyright claims are DISMISSED WITHOUT LEAVE TO AMEND.

---

[10] See YouTube, *Kai The Hatchet Wielding Hitchhiker's Original Song [Official Video]* (last visited May 3, 2024), *available at* https://www.youtube.com/watch?v=sDxKp22hmBY. The Court can consider the works because they are incorporated by reference into McGillvary's complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

### G.    Defamation/False Light

Defamation is a (1) false and (2) unprivileged publication (3) exposing a person to "hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.  "The sine qua non of recovery for defamation is the existence of falsehood.  Because the statement must contain a provable falsehood, courts distinguish between statements of fact and statements of opinion for purposes of defamation liability." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 695 (2012) (cleaned up).  "When a false light claim is coupled with a defamation claim, the false light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Sharij v. Vujicic*, 2022 WL 1843151, at *6 (C.D. Cal. Jan. 19, 2022) (quoting *Eisenberg v. Alameda Newsp.*, 74 Cal. App. 4th 1359, 1385 n.13 (1999)).

### 1.    Fulton 55 and Tony Martin[11]

McGillvary's defamation claims against Fulton 55 and Tony Martin (Claims 17 and 23) are DISMISSED WITHOUT LEAVE TO AMEND.

McGillvary alleges that the following statements were defamatory: (1) that Martin was "put off by him pretty quickly" due to the "way he talked, interacted, and treated [his] staff,"; (2) that McGillvary "walk[ed] up to the bar almost demanding, like, a free beer"; and (3) that McGillvary urinated on bushes outside of Fulton 55.

The first statement—that Martin was "put off" by McGillvary's behavior—is unactionable opinion. *See Summit Bank*, 206 Cal. App. 4th at 695–696.  The second

---

[11] McGillvary names Defendant Sanchez in this claim.  However, the Court does not see any allegations relating to Sanchez in this claim, so the Court construes it as just against Fulton 55 and Martin and addresses McGillvary's separate claims against Sanchez below (Claims 21 and 29).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                           Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

statement—that McGillvary "almost demand[ed], like, a free beer"—is, within context, also unactionable opinion.  McGillvary himself pleads that staff and patrons at Fulton 55 "bought him drinks as a result of his interactions with them."  (SAC ¶ 87.)  Thus, Martin's statement—made immediately after his "put off" comment—is simply Martin's subjective assessment of how to characterize those "interactions."  The third statement— that McGillvary urinated on bushes outside of Fulton 55—does not have "a natural tendency" to injure McGillvary's reputation or "cause[] special damage" because, as shown in the documentary, McGillvary already has a reputation for public urination given two other public-urination incidents: one outside of the Roosevelt Hotel, and another outside of the studio where *Jimmy Kimmel Live!* is filmed.  Because no amendment could render these statements actionable, these claims are DISMISSED WITHOUT LEAVE TO AMEND.

### 2.    Alex Aguirre

McGillvary's defamation claim against Alex Aguirre (Claim 18) is DISMISSED WITHOUT LEAVE TO AMEND.  McGillvary alleges the following statement was defamatory: "Knowing who Kai was, part of me wondered what actually happened that day in Fresno.  Was that actually him saving the day?  Was this him being the hero or not."  (SAC ¶¶ 81, 198.)  This statement—that Aguirre is unsure whether McGillvary was actually the hero in the Fresno incident—is simply his opinion and is, therefore, unactionable.  (Netflix MTD at 17); *Summit Bank*, 206 Cal.App.4th at 695–696.[12]

---

[12] Aguirre has not appeared in this action.  However, McGillvary seeks to hold Netflix liable for publishing Aguirre and others' statements and Netflix raised arguments regarding the underlying statements.  (See Netflix MTD at 17–18.)  Therefore, where applicable, the Court dismisses both the claims against the speaker (here, Aguirre) and the publisher (Netflix).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

### 3.    Brad Mulcahy

McGillvary's defamation claim against Brad Mulcahy (Claim 19) is DISMISSED
WITHOUT LEAVE TO AMEND.

McGillvary alleges that the following statement is defamatory: "Hitting someone
in the head with a hatchet, three times, blunt or not[,] is violent."  (SAC ¶¶ 83, 200.)  This
statement, however, is simply Mulcahy's opinion about how to characterize McGillvary's
undisputed actions; it not an assertion of fact.  (*See* Netflix MTD at 17; Mulcahy Joinder,
Doc. 151 at 1–2.)  Therefore, this statement is not actionable.  *Summit Bank*, 206 Cal.
App. 4th at 695–696.

### 4.    Jensen Rufe

McGillvary's defamation claim against Jensen Rufe (Claim 20) is DISMISSED
WITHOUT LEAVE TO AMEND.  McGillvary alleges that the following statements are
defamatory: (1) "We were out on the sidewalk, and he took off running ahead of us, and
he pulled out a huge knife, and tried to throw it into the ground," and (2) McGillvary
"also just made the news for bludgeoning somebody over the head with a deadly
weapon."  (SAC ¶¶ 84, 202.)  As to the first statement, McGillvary claims that he
actually "pulled out his harmonica, which wasn't even all that big, and threw it into the
sidewalk[] because he was drunk and high on marijuana and LSD."  (*Id.* ¶ 84.)

Neither statement is actionable.  The first statement—involving an alleged
misidentification of what object McGillvary threw into the ground—is not a false
statement that exposes McGillvary to "hatred, contempt, ridicule or obloquy, or which
causes him to be shunned or avoided, or which has a tendency to injure him in his
occupation."  Cal. Civ. Code § 45; (Samsky & Rufe Mot. at 16.)  The second statement—
that McGillvary "bludgeoned" someone—is simply true by McGillvary's own famous
account of what happened in Fresno.  *See* Bludgeon, Merriam-Webster (verb: "to hit with

---

**CIVIL MINUTES – GENERAL**                                    **22**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

a heavy impact"), *available at* https://www.merriamwebster.com/dictionary/
bludgeon (last accessed July 29, 2024).

### 5.        Jeff Stricker

McGillvary's defamation claim against Jeff Stricker (Claim 22) is DISMISSED
WITHOUT LEAVE TO AMEND.  McGillvary's claim is based on Stricker's statement
that McGillvary has "some culpability" for what occurred in Stockton by virtue of giving
McBride drugs while he was driving.  (SAC ¶¶ 86, 206.)  This statement is non-
actionable opinion.  *Summit Bank*, 206 Cal.App.4th at 695–696.[13]

### 6.        Remaining Defamation Claims

McGillvary's remaining defamation claims—against Netflix, RawTV, and All3
Media (Claims 25 through 28) and against Sanchez and John Doe 1 (Claims 21, 24, and
29)—are DISMISSED WITHOUT LEAVE TO AMEND.

If an individual is a limited public figure, he or she can prevail on a defamation
claim only if he or she can show actual malice.  "Actual malice is a subjective test; it
means that the Reporters must have published a statement with knowledge that it was
false or reckless disregard of whether it was false or not."  *Planet Aid, Inc. v. Reveal*, 44
F.4th 918, 928 (9th Cir. 2022) (quotation omitted).

Netflix argues that McGillvary is an all-purpose public figure (Netflix MTD at 16–
17); McGillvary concedes he is a limited-purpose public figure but contends that he is not
an all-purpose public figure (Opp. to Netflix MTD at 15–16.)  Assuming without
deciding that McGillvary is correct, then McGillvary is still obligated to plausibly plead

---

[13] Stricker inexplicably did not address the merits of McGillvary's claims.  However,
because Netflix did so, the Court can dismiss both the claim against the speaker (here, Stricker)
and the publisher (Netflix).  (*See* supra n.4.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                              Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

"actual malice for speech touching upon" the subjects on which he is a limited-public figure. *Planet Aid*, 44 F.4th at 924.  Here, the entire documentary—and the interviewees' statements that comprise it—"touch upon" the subject on which McGillvary concedes he is a limited-purpose public figure: his rise to fame based on his 2013 local-news interviews regarding the incident in Fresno.  McGillvary, however, has not pleaded any facts supporting actual malice as to any of the Defendants—despite the fact that the Court is now evaluating McGillvary's *third* complaint.  Nor, in response to Netflix's motion to dismiss, did McGillvary suggest any facts he could allege in support of actual malice. (*See* Opp. to Netflix MTD at 15–16 (arguing only that he does not have to show actual malice as to certain statements).)   Therefore, the Court concludes that amendment would be futile, and these claims are DISMISSED WITHOUT LEAVE TO AMEND.[14]

### H.    Equitable Estoppel

McGillvary's equitable-estoppel claim asserted against Sinclair (Claim 30) is DISMISSED WITHOUT LEAVE TO AMEND, as "California does not recognize an independent cause of action for equitable estoppel."  *Moncada v. W. Coast Quartz Corp.*, 221 Cal. App. 4th 768, 782 (2013).

### I.    Implied-in-Fact Contract

McGillvary's claims for breach of an implied-in-fact contract (Claims 31 & 32) are DISMISSED WITH LEAVE TO AMEND, as McGillvary's complaint fails to specify what "works" and "materials" are the subjects of the alleged contract.[15]

---

[14] This conclusion also provides an additional ground to dismiss the claims composed of the statements discussed above that the Court found to be non-actionable.

[15] As with the breach-of-confidence claim, the Court does not reach Netflix's Copyright Act preemption argument because the Court cannot discern the alleged factual basis for McGillvary's claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                              Date: July 30, 2024

Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

J.     **Fraud**

1.     **Bunim-Murray; Samsky; Rufe**

McGillvary's fraud claims against Bunim-Murray, Samsky, and Rufe (Claim 33) and Jane Doe 1 (Claim 34) are DISMISSED WITH LEAVE TO AMEND because McGillvary's allegations fall short of what Rules 8 and 9(b) require.  (Samsky & Rufe Mot. at 13–14.)  McGillvary makes only the following vague allegation: "Defendants defrauded Plaintiff of the value of his performing services and of motion picture works derived therefrom and property rights."  (SAC ¶ 257.)

2.     **Fulton 55 and Martin**

McGillvary's fraud claim against Fulton 55 and Martin (Claim 35) is DISMISSED WITHOUT LEAVE TO AMEND.  The statute of limitations for fraud is three years from discovery of the fraud, *see* Cal. Code Civ. Proc. § 338(d), and McGillvary discovered the alleged fraud at the time it allegedly occurred in 2013—*i.e.*, when Defendants allegedly declined to pay him.  (Fulton 55 & Martin Mot. at 11.)  Because McGillvary cannot plead any facts that would render his claim timely, amendment would be futile.

K.     **Delaware-Law Claims**

All of McGillvary's claims arising under Delaware law (Claims 36, 39, 40, 41, and 42) ARE DISMISSED WITHOUT LEAVE TO AMEND, as there is no basis to apply Delaware law in this action.  (*See* Samsky & Rufe Supp. Br. at 3 & n.1.)

L.     **Intentional Infliction of Emotional Distress**

McGillvary's claims for intentional infliction of emotional distress (Claims 37 & 38) are DISMISSED WITHOUT LEAVE TO AMEND, as McGillvary has chosen to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                                      Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

voluntarily dismiss these claims.  (Opp. to Fulton 55 & Martin Mot. at 16–17 ("Plaintiff . . . is voluntarily consolidating this meritorious legal theory with another through amendment for personal and logistical reasons."); Opp. to Samsky & Rufe Mot. at 21–22 (suggesting Defendants' motion will be "rendered . . . moot" by amended complaint).)

### M.     Intentional Interference with Prospective Economic Relations

McGillvary's claim for intentional interference with prospective economic relations against Fulton 55 and Martin (Claim 43) is DISMISSED WITHOUT LEAVE TO AMEND.[16]  For conduct to constitute intentional interference with prospective economic relations, the conduct must be independently unlawful.  (Fulton 55 & Martin Mot. at 17); *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099,1108 (9th Cir. 2007).  Because the Court has already dismissed without leave to amend McGillvary's other claims against these Defendants, it similarly dismisses this derivative claim.

### N.     Trademark Infringement

McGillvary's claim for trademark infringement against Netflix (Claim 44) is DISMISSED WITHOUT LEAVE TO AMEND.

McGillvary alleges that Netflix infringed on his alleged ownership of the marks "Kai the Hitchhiker," "Kai the Hatchet Wielding Hitchhiker," "The Hatchet Wielding Hitchhiker," and "Smash, Smash, Smash," as well as his "hairstyle, garb, performance, and body appearance."  (SAC. ¶ 299.)  Even assuming without deciding that these alleged marks are protectible under the Lanham Act, McGillvary cannot plausibly plead that Netflix's use of the marks in its documentary constituted infringement.

---

[16] Although McGillvary alleges this claim alternatively as interference with contractual relations, he alleges only "anticipated[] economic relationships" with a "probability of economic benefit."  (SAC ¶ 281.)  Therefore, the Court construes it as a claim for intentional interference with prospective economic relations.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

"Traditionally, courts apply a likelihood-of-confusion test to claims brought under the Lanham Act." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1027 (9th Cir. 2024).  However, where the "allegedly infringing use of" a mark is "part of an expressive work protected by the First Amendment" and the mark is not used "to designate the source of [the alleged infringer's] own [products]," then the more use-protective *Rogers* test applies.  *Id.* (first quoting *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018); then quoting *Jack Daniel's Properties, Inc. v. VIP Prod. LLC*, 599 U.S. 140, 145 (2023)).  Where the *Rogers* test applies, a plaintiff must show that "the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* (quoting *Gordon*, 909 F.3d at 264).

Neither prong of the Rogers test "is easy to meet." *Id.* (quoting *Dr. Seuss Enterprises, L.P. v. ComicMix LLC*, 983 F.3d 443, 462 (9th Cir. 2020).  "'Artistic relevance' in *Rogers*'s first prong means artistic relevance merely above zero, such that a trademark infringement plaintiff can avoid *Rogers* only if the use of the mark has *no* artistic relevance to the underlying work *whatsoever. Id.*  And to be "explicitly misleading" under *Rogers*'s second prong, there must be an explicit indication, overt claim, or explicit misstatement about the source of the work." *Id.* (cleaned up).  Thus, "[w]hen the *Rogers* test applies, it often precludes claims of trademark infringement." *Id.*

That is the case here: The *Rogers* test applies and precludes McGillvary's trademark claim.  At the threshold inquiry, a documentary about the criminal acts of a public figure is obviously an expressive work and Netflix used the mark, "The Hatchet Wielding Hitchhiker," not to identify its source but to identify its subject-matter; no viewer would think that McGillvary was the source of a documentary describing in detail the evidence that led to his murder conviction.  Next, given that McGillvary is the subject of the documentary, the alleged marks are artistically relevant.  Finally, given that the documentary is not using the mark as a source identifier, it lacks anything "explicitly misleading" about the source of the documentary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:23-cv-01195-JLS-SK                                   Date: July 30, 2024
Title: Caleb L. McGillvary et al v. Netflix, Inc. et al

McGillvary seems to make two related arguments in opposition. First, McGillvary argues that the Supreme Court held in *Jack Daniel's* that the *Rogers* test does not apply to "[c]ommerical use" of a mark. (Opp. to Netflix MTD at 27.) Second, McGillvary argues that *Jack Daniel's* overruled "the line of 9th Circuit cases applying the *Rogers* analysis." (*Id.*) But *Jack Daniel's* simply added the non-source-identifying threshold requirement to the *Rogers* test, and "preexisting Ninth Circuit precedent adopting and applying *Rogers* otherwise remains intact and binding." *Punchbowl*, 90 F.4th at 1031. Because the *Rogers* test renders any amendment futile, McGillvary's trademark claim is DISMISSED WITHOUT LEAVE TO AMEND.

### O.     Public Disclosure of Private Facts

McGillvary's claims for public disclosure of private facts against Defendants (Claims 45 and 46) are DISMISSED WITHOUT LEAVE TO AMEND.

To state a claim for public disclosure of private facts, a plaintiff must allege: "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to the reasonable person and (4) which is not of legitimate public concern." *Hogan v. Weymouth*, 2019 WL 11055032, at *5 (C.D. Cal. Aug. 19, 2019). Even assuming McGillvary could meet the first three elements, he cannot meet the fourth element for statements made in a documentary about the rise to fame and subsequent murder conviction of a public figure. As such, amendment would be futile.

### P.     RICO

#### 1.     Fulton 55 and Martin

McGillvary's RICO claim against Fulton 55, Martin, and Sanchez (Claim 47) is DISMISSED WITHOUT LEAVE TO AMEND. McGillvary's allegations in support of an alleged RICO enterprise and racketeering activity are the same ones that supported his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                              Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

commercial-disparagement claims—misconstruing a statement that Defendants wanted to "kill it" as them wanting to kill McGillvary's business and reputation.  (*See* SAC ¶¶ 85, 136.)  The Court concluded that interpretation was implausible when alleged in support of a conspiracy to commit commercial disparagement, and concludes the same here.

### 2.        Bunim-Murray; Samsky; Rufe; Mulcahy

McGillvary's RICO claim against Bunim-Murray, Samsky, Rufe, and Mulcahy (Claims 49 and 50) are DISMISSED WITH LEAVE TO AMEND, as McGillvary has failed to plausibly plead, at a minimum, the existence of a RICO enterprise in fact and racketeering activity.  *See* 18 U.S.C. § 1961(1), (4)–(5); (Samsky & Rufe MTD at 17–21).  Plaintiffs' RICO claim contains no factual assertions; it is composed of only "legal conclusion[s] couched as . . . factual allegation[s].'"  *Twombly*, 550 U.S. at 555.

To allege an association-in-fact, the complaint must describe "a group of persons associated together for a common purpose of engaging in a course of conduct" and must provide both "evidence of an ongoing organization, formal or informal" and "evidence that the various associates function as a continuing unit."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 548 (9th Cir. 2007); *see also Bredberg v. Middaugh*, 2022 WL 2662878, at *1 (9th Cir. July 11, 2022) (unpublished) (an enterprise is not plausibly pleaded where "the alleged racketeering activity is the only apparent connection among the defendants").  Here, McGillvary offers the barebones legal conclusion that "[D]efendants described in [¶ 17] formed an association in fact intended to conduct the pattern of racketeering activity."  (SAC ¶ 368.)  And he supports that legal conclusion only with further conclusory allegations: "They did establish an informal decision-making process, coordinating their efforts to commit the predicate acts so described, and arranged for sharing of profits amongst themselves."  (*Id.*)

A plaintiff does not plausibly plead racketeering activity where he or she "conclusorily allege[s] that" defendants "engaged in a laundry-list of purported predicate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                              Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

acts" without alleging any facts asserting conduct that violates the cited statute.  *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 911 (E.D. Cal. 2006).  Plaintiff cites 18 U.S.C. § 1343 (wire fraud), 8 U.S.C. § 1324 ("harboring certain aliens"), and "27 U.S.C. § 802-related State law" (a non-existent federal provision), and 18 U.S.C. § 1957 (money laundering).  (*See* SAC ¶¶ 369–381.)  However, McGillvary does not allege any facts specifying what alleged conduct by Defendants would constitute a violation of these provisions.

In any amended complaint that repleads this RICO claim, McGillvary shall (1) allege facts showing the existence of an enterprise in fact, and (2) shall specify what alleged conduct he believes constitutes racketeering activity.

### 3.        Netflix and Related Defendants

McGillvary's RICO claim against Netflix and related Defendants (Claim 51) is DISMISSED WITH LEAVE TO AMEND for similar reasons as the previous RICO claim and, relatedly, for failing to allege the fraud-based RICO predicates with particularity.  See *Holloway v. Clackamas River Water*, 739 F. App'x 868, 869 (9th Cir. 2018) (unpublished) (holding that RICO claims based on fraud must meet Rule 9(b)'s heightened pleading standard).

## VI.  <u>ANTI-SLAPP MOTIONS</u>

Netflix's anti-SLAPP motion (Doc. 131) is granted.  For the reasons explained above, there is no probability that McGillvary would prevail on his claims for defamation, false light, right of publicity, and public disclosure of private facts against Netflix (Claims 4, 27, 28, 45).  Therefore, these claims are STRICKEN.

Mulcahy's anti-SLAPP motion  (Doc. 152) is GRANTED.  For the reasons explained above, there is no probability that McGillvary would prevail on his claims for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                          Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

defamation, false light, and public disclosure of private facts against Mulcahy (Claims 19
& 45).  Therefore, these claims are STRICKEN.[17]

## VII.  <u>MCGILLVARY'S MISCELLANEOUS FILINGS</u>

Also before the Court are several filings by McGillvary.

McGillvary's letters to the Court (Doc. 148, 228 & 232) are STRICKEN.  See
L.R. 83-2.5 ("Attorneys or parties to any action or proceeding shall refrain from writing
letters to the judge, sending e-mail messages to the judge, making telephone calls to
chambers, or otherwise communicating with a judge in a pending matter unless opposing
counsel is present. All matters must be called to a judge's attention by appropriate
application or motion filed in compliance with these Local Rules.").

McGillvary's self-styled motion to stay Defendants' motions to allow for filing a
third amended complaint (Doc. 165 & 169), as well as Defendants' motion for leave to
file an amended complaint (Doc. 172), are DENIED AS MOOT.

McGillvary's self-styled motions for an order for a RICO case statement (Doc.
209 & 210) are DENIED.  McGillvary cites no provision of the Central District's Local
Rules or this Court's procedures that requires the filing of such a document.  As
discussed above, any amended complaint alleging a RICO claim must contain factual
allegations—not legal conclusions—that plausibly and with particularity plead RICO's
elements.

McGillvary's self-styled contingent motion to dismiss the foreign defendants is
(Doc. 211) DENIED AS MOOT.  If McGillvary desires to dismiss the international

---

[17] McGillvary's claims discussed in this section clearly "arise[]from an act in furtherance
of the defendant[s'] rights of petition or free speech," *i.e.*, the production or appearance in a
documentary on a subject of public concern.  *Vess*, 317 F.3d at 1110.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024
Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

Defendants, he can do so by excluding any claims against them in any amended complaint.

McGillvary's third motion brought under Federal Rule of Civil Procedure 5(c) (Doc. 231) is DENIED.  The Court has already twice denied that motion as unnecessary. (*See* Feb. 28, 2024 Order; Jan. 25, 2024 Order, Doc. 94.)

## VIII.  <u>CONCLUSION</u>

Defendant Stricker's motion to dismiss for lack of personal jurisdiction (Doc. 129) is DENIED.  Defendants' motions to dismiss for failure to state a claim (Docs. 126, 127, 132, 147, 151 & 187) are GRANTED, and all claims are DISMISSED.

The following claims ONLY are DISMISSED WITHOUT PREJUDICE as to repleading against the parties named in such claims if McGillvary can do so in a manner consistent with this Order and with all Rule 11 obligations:

- Claims 1 through 3 (Breach of Confidence);
- Claims 31 through 32 (Breach of Implied-in-Fact Contract);
- Claims 33 through 34 (Fraud); and
- Claims 49 through 51 (RICO).

All other claims are DISMISSED WITH PREJUDICE and may not be included in any amended complaint. [18]

The following Defendants are dismissed WITH PREJUDICE and may not be named in any amended complaint:

---

[18] Because the Court did not address Claim 48 (RICO), McGillvary may also include that claim in any amended complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-01195-JLS-SK                    Date: July 30, 2024

Title:  Caleb L. McGillvary et al v. Netflix, Inc. et al

- Tony Martin;
- Fulton 55, LLC;
- *Jimmy Kimmel Live!*;
- Sinclair Television of Fresno, LLC;
- Alex Aguirre;
- Jeff Stricker; and
- Gabriel Sanchez.

Netflix and Mulcahy's anti-SLAPP motions (Docs. 131 & 152) are GRANTED. Therefore Claims 4, 19, 27, 28, 45 are also STRICKEN.

McGillvary is GRANTED LEAVE TO AMEND to the extent permitted in this Order.  Any amended complaint shall be filed within **thirty days** of the date of this Order.  Any claim not included in a timely-filed amended complaint will be deemed dismissed without leave to amend.  And failure to timely file an amended complaint will result in the dismissal of this action for failure to state a claim and for lack of prosecution without any further notice.

Initials of Deputy Clerk: cr