**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CALEB L. MCGILLVARY,<br><br>   Plaintiff - Appellant,<br><br>   v.<br><br>BUNIM MURRAY PRODUCTIONS, LLC; JIMMY KIMMEL LIVE; SINCLAIR TELEVISION OF FRESNO, LLC, Erroneously Sued as KMPH Fox News, EBAUMSWORLD; FULTON 55; RAW TV LIMITED, a British corporation; COLETTE CAMDEN; SALLY BRINDLE; BRAD MULCAHY; ALEX AGUIRRE; ROB MILLER; GABRIEL SANCHEZ; TONY MARTIN; LISA SAMSKY; JENSEN RUFE; JEFF STRICKER; CARTER HARRIS; JOHN DOES 1–10; JANE DOES, 1–5,<br><br>   Defendants - Appellees. | No. 24-6944<br><br>D.C. No. 2:23-cv-01195-JLS-SK<br>Central District of California<br>Los Angeles<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Submitted January 30, 2026[**]
San Francisco, California

Before: SCHROEDER, FRIEDLAND, and COLLINS, Circuit Judges.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. *See* FED. R. APP. P. 34(a)(2)(C).

Plaintiff-Appellant Caleb McGillvary, appearing pro se, timely appeals the district court's dismissal of his second amended complaint for failure to state a claim on which relief can be granted, *see* FED. R. CIV. P. 12(b)(6).  McGillvary, who is currently serving a 57-year sentence in a New Jersey prison for an unrelated May 2013 murder, "rose to fame in February 2013 as the 'hatchet-wielding hitchhiker' after he gave interviews to a Fresno, California local-news station" in which he recounted smashing the head of Jett McBride with a hatchet after McBride (who had picked up the hitchhiking McGillvary) "crashed his car into a pedestrian [Rayshawn Neely] and attacked a bystander."  "Fresno authorities concluded that McGillvary used justifiable force in protection of the bystander and cleared him of any wrongdoing."  Netflix made a documentary about McGillvary called "*The Hatchet Wielding Hitchhiker*," and McGillvary subsequently brought this suit against "a raft of Defendants who were involved in the airing of the local-news interviews that prompted his rise to fame, were involved in the production and distribution of the Netflix documentary, or were interviewed in the Netflix documentary."  We have jurisdiction under 28 U.S.C. § 1291.  Reviewing the district court's dismissal de novo, *see Miller v. Sawant*, 18 F.4th 328, 335 (9th Cir. 2021), we affirm in part and vacate and remand in part.

    1. McGillvary argues that, in evaluating the adequacy of his pleading, the district court failed to generously construe his claims in light of his pro se status.

We disagree. The record does not support McGillvary's contention that the district court generally failed to apply the proper pleading standards in light of his pro se status. *See Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) ("[W]here, as here, a plaintiff proceeds pro se, we must construe the pleadings liberally and afford the [plaintiff] the benefit of any doubt." (simplified)). In a detailed and thorough 33-page order, the district court carefully addressed each of McGillvary's 51 claims and repeatedly noted that he was proceeding in forma pauperis. Moreover, McGillvary makes no showing that an even *more* liberal construction of his complaint would have affected the district court's ruling on any of his claims. Because "a pro se litigant is not excused from knowing the most basic pleading requirements," *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107 (9th Cir. 2000), "a liberal construction of a pro se complaint . . . does not mean that the court will supply essential elements of a claim that are absent from the complaint," *Boquist*, 32 F.4th at 774. McGillvary has failed to show that the district court applied incorrect pleading standards in reviewing his claims.

    2. McGillvary contends that he sufficiently alleged that two Defendants—Jeff Stricker and Gabriel Sanchez—defamed him by "publishing false statements to Netflix."[1]

---

[1] Although McGillvary's opening brief argues that he sufficiently pleaded actual malice as to Defendants Alex Aguirre, Brad Mulcahy, Jensen Rufe, and Tony Martin, it does not otherwise discuss his claims against these Defendants or challenge the district court's resolution of those claims. McGillvary has

3

As to McGillvary's claim against Stricker, the district court correctly concluded that Stricker's allegedly defamatory statement that McGillvary had "some culpability" for what happened in Fresno "by virtue of giving McBride drugs while he was driving" was a non-actionable opinion. Such non-actionable opinions, under California law, fail to "present[] a prima facie case that the statements at issue . . . are reasonably capable of a defamatory meaning or are substantially false." *Summit Bank v. Rogers*, 142 Cal. Rptr. 3d 40, 63 (Ct. App. 2012).

McGillvary argues that Stricker's further alleged statement about McGillvary having told McBride to drive into Rayshawn Neely was a false assertion of fact, not an opinion, because "[McGillvary] had never said any such thing to McBride." Because McGillvary is a limited-public figure with respect to the 2013 Fresno incident, he "must establish that [Stricker] made [his] statements with 'actual malice,' *i.e.*, knowledge of their falsity or reckless disregard of their truth." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 270 (9th Cir. 2013) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974)). A declarant speaks with "reckless disregard of the truth" when he "entertain[s] serious doubts as to the truth of [his] statements." *Id*. (simplified). The complaint acknowledges that Stricker was recounting statements made by *McBride* during Stricker's interview with him,

---

accordingly forfeited any appeal of his claims against those Defendants.

4

not statements made by McGillvary, but McGillvary nonetheless contends that Stricker was aware that McBride's statements were untrue or that he repeated McBride's statements with reckless disregard of their truth. McGillvary suggests that (1) if Stricker, a law enforcement officer who worked on the *McBride* case, personally believed that McGillvary had told McBride to drive into Neely, Stricker would have said so at McBride's arraignment or at trial, and that (2) because Stricker had heard McGillvary testify about the sequence of events leading up to the Fresno incident, he had "grave reason to doubt" statements attributed to McGillvary that conflicted with McGillvary's testimony. The inferences that McGillvary seeks to draw from these limited allegations, however, are too speculative, and he therefore has failed to plead facts supporting a plausible inference that, in recounting McBride's statements about McGillvary, Stricker acted with actual malice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). We therefore affirm the dismissal of the defamation claim with respect to Stricker.

However, with respect to the defamation claim against Sanchez, we conclude that the district court erred in holding that McGillvary failed to plead "any facts supporting actual malice." McGillvary's operative complaint alleged that Sanchez, "while being filmed" for the Netflix documentary, recounted statements that Sanchez said that *McGillvary* told him, including that (1) McGillvary had given McBride a joint that "was laced" with multiple drugs,

5

which led McBride to "flip[] out," resulting in the accident and ensuing attacks; and (2) that McBride had "fuck[ed] [McGillvary] in the ass." The complaint squarely alleges that McGillvary "never, in fact, said any such thing" to Sanchez. Taking that well-pleaded allegation as true, and drawing all reasonable inferences in McGillvary's favor, we conclude that the complaint raises a plausible inference that Sanchez simply fabricated the statements that Sanchez claimed McGillvary *directly* said to Sanchez. And because wholesale fabrication of a self-defamatory quotation would be sufficient to establish actual malice, *see Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517–18 (1991) (holding that "a deliberate alteration of the words uttered by a plaintiff" may establish actual malice if "the alteration results in a material change in the meaning conveyed by the statement," such as by creating a "damning . . . self-portrait, told by [the plaintiff] in his own words"), we conclude that the district court erred in dismissing the defamation claim against Sanchez on that particular basis.

3. McGillvary challenges the dismissal of his various claims for constructive trust and equitable accounting, which rest on his alleged copyright ownership of his "spoken words" and "musical compositions" as captured in his interviews with KMPH, a local television station operated by Defendant Sinclair Television of Fresno, LLC.[2] The district court correctly rejected McGillvary's

---

[2] McGillvary does not challenge the district court's decision separately rejecting,

6

claim of ownership of any copyright in the KMPH interview footage. Copyright in a work "vests initially in the author" of the work, where "the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (simplified). The allegations of McGillvary's own complaint, considered together with the interview footage itself,[3] confirm that McGillvary is neither the author nor a co-author with KMPH of the recorded interviews, including his performance of a song for KMPH's camera. *See Garcia v. Google, Inc.*, 786 F.3d 733, 743–44 (9th Cir. 2015) (en banc) (rejecting co-ownership claim of an actress appearing in a movie, noting that, "[h]owever one might characterize [her] performance, she played no role in fixation"); *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (stating that whether a person is a co-author turns on factors such as control, objective manifestations of shared authorship, and contribution to audience appeal, with control typically being the most important factor). McGillvary's conclusory

---

on fair-use grounds, his distinct copyright infringement claims against Netflix, Inc. and RawTV.

[3] In reviewing the adequacy of a complaint, the court may properly consider the contents of undisputedly or indisputably authenticated documents, including electronic documents and videos, that are incorporated by reference by the allegations of the complaint and that (as here) were provided to the district court. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1248 n.7 (9th Cir. 2013); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

allegation that he "superintended" the creation of the interviews is not enough. *See Iqbal*, 556 U.S. at 678. And even assuming that McGillvary owns a copyright in the underlying song he performed in the interview, he still would not be a co-author of the KMPH footage of the interview that he freely and unreservedly conducted. Accordingly, the district court correctly held that McGillvary has no cognizable claim to copyright ownership of the recorded interviews.

    4. McGillvary challenges the district court's denial, as moot, of his "contingent" motion to amend his complaint to invoke diversity jurisdiction in the event that his sole surviving claims were state law claims. Specifically, McGillvary argues that he should be allowed to amend his complaint so as "to cure jurisdictional defects" with respect to his defamation claim against Sanchez. The district court, having dismissed that particular claim with prejudice, did not have the specific issue of such an amendment before it when it denied McGillvary's contingent motion. Given our reversal as to the defamation claim against Sanchez, we leave it to the district court to consider the amendment issue in the first instance on remand, and we express no view on it.

    **AFFIRMED in part, VACATED and REMANDED in part.**[4]

---

[4] All pending motions are denied.